**Teresa H. Pearson**, OSB No. 953750
teresa.pearson@millernash.com
**R. Gibson Masters**, OSB No. 051560
gib.masters@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

Attorneys for Plaintiff Axos Bank

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| AXOS BANK, a federally chartered savings and loan association, | CV No.  3:20-CV-01712-HZ |
| Plaintiff, | AMENDED COMPLAINT—DECLARATORY RELIEF/INJUNCTIVE RELIEF |
| v. | |
| ELLEN F. ROSENBLUM in her official capacity as the Attorney General of the STATE OF OREGON, | |
| Defendant. | |

Plaintiff Axos Bank alleges as follows:

## PARTIES

1.      Plaintiff Axos Bank is a federally chartered savings and loan association headquartered in San Diego, California.

Page 1 -     AMENDED COMPLAINT—DECLARATORY RELIEF/INJUNCTIVE RELIEF

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

2.      Defendant Ellen F. Rosenblum is the Attorney General of the State of Oregon, a political subdivision of the United States.  Plaintiff names Ms. Rosenblum in her official capacity.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction of this action under 28 U.S.C. § 1331.

4.      Venue is appropriate under 28 U.S.C. § 1391 because the defendant is the State of Oregon, located in Oregon.

## PRELIMINARY STATEMENT OF FACTS

**A.      The Shilo Portland Loan**

5.      On December 27, 2019, Plaintiff Axos Bank made a loan (the "Shilo Portland Loan") to Shilo Inn, Portland/205, LLC ("Shilo Portland").  The Shilo Portland Loan is evidenced by that certain Secured Promissory Note made by Shilo Portland in favor of Axos Bank, dated December 16, 2019, in the principal amount of $12,200,000.00 (the "Shilo Portland Note").  A copy of the Shilo Portland Note is attached as Exhibit 1.

6.      The Shilo Portland Loan is secured by, among other things, a first position lien on Shilo Portland's real property, as well as a security interest in all leases, rents, issues, profits and income generated from that real property, and all of Shilo Portland's personal property located thereon, used in connection with, or incorporated into the real property, and certain other personal property (collectively, the "Shilo Portland Collateral"), as that property is described in that certain Line of Credit Instrument Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, executed by Shilo Portland, dated as of December 16, 2019, and recorded on December 27, 2019, in the official records of Multnomah County, Oregon as Document No. 2019-141976 (the "Shilo Portland Deed of Trust").  A copy of the Shilo Portland Deed of Trust is attached as Exhibit 2.

Page 2 -      AMENDED COMPLAINT—DECLARATORY RELIEF/INJUNCTIVE RELIEF

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

7.      On December 27, 2019, a UCC Financing Statement was filed with the Oregon Secretary of State as Lien No. 92139609, naming Axos Bank as the secured party and Shilo Portland as the debtor, evidencing Plaintiff's security interest in all assets of Shilo Portland as set forth the schedule attached thereto (the "Shilo Portland UCC Financing Statement"). A copy of the Shilo Portland UCC Financing Statement is attached as Exhibit 3.

8.      The Shilo Portland Loan is a commercial loan. The Shilo Portland Collateral is primarily comprised of a hotel near the airport in Portland, Oregon, catering to business travelers and vacationers.

9.      In addition to the Shilo Portland Note, the Shilo Portland Deed of Trust, and the Shilo Portland UCC Financing Statement, the Shilo Portland Loan is supported by a number of additional documents, including but not limited to an Assignment and Subordination of Management Agreement and Franchise Agreement, an Environmental Indemnity Agreement, a Compliance Agreement, an Agreement to Amend or Comply, and an ADA Indemnity Agreement, each dated as of December 16, 2019 (these and all other documents which evidence, secure, or relate to the Shilo Portland Loan are hereinafter collectively referred to as the "Shilo Portland Loan Documents").

10.     Repayment of the Shilo Portland Loan is further supported by guarantees executed by Mark S. Hemstreet (the "Shilo Portland Hemstreet Guaranty") and Portland/205 Hotel (2) Corp. (the "Portland/205 Guaranty"). A copy of the Shilo Portland Hemstreet Guaranty is attached hereto as Exhibit 4. A copy of the Portland/205 Guaranty is attached hereto as Exhibit 5. The guarantors referenced herein are collectively referred to as the "Shilo Portland Guarantors" and the guarantees referenced herein are collectively referred to as the "Shilo Portland Guarantees."

11.     Under the terms of the Shilo Portland Loan Documents, Shilo Portland promised to pay to Axos Bank consecutive monthly installments on or before the first day of

Page 3 -     AMENDED COMPLAINT—DECLARATORY RELIEF/INJUNCTIVE RELIEF

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

each calendar month beginning in February 2020 of principal and interest in an amount equal to $74,918.67, subject to adjustment in accordance with Paragraph 5 of the Shilo Portland Note (the "Portland Monthly Debt Service").  Shilo Portland is also obligated to make monthly payments to Axos Bank for an escrow for taxes and insurance.  Exhibit 1, Sections 4.1 and 8.1.

        12.     Under Section 2 of the Shilo Portland Guarantees, each of the Shilo Portland Guarantors "irrevocably, absolutely and unconditionally guarantees to Lender the full, prompt and complete payment when due of the Guaranteed Obligations."  Exhibit 4, Section 2(a); Exhibit 5, Section 2(a).

        13.     Shilo Portland failed to make the Portland Monthly Debt Service payment due on March 1, 2020 and has, as of the date hereof, failed to make any further Portland Monthly Debt Service payments or any other payments required under the Shilo Portland Loan (the "Shilo Portland Defaults").

        14.     Shilo Portland's failure to make a Portland Monthly Debt Service payment within five days of when such payment is due under the Shilo Portland Loan Documents constitutes an Event of Default as defined in Article 7 of the Shilo Portland Deed of Trust. Exhibit 2, Art. 7.1(a).

        15.     Section 6.1 of the Shilo Portland Note provides that if any payment is not paid on or before the tenth calendar day of the month when it is due, Shilo Portland must pay a late charge equal to five percent (5%) of the amount of such unpaid payment.

        16.     Section 6.2 of the Shilo Portland Note provides that upon the occurrence of an Event of Default, interest shall accrue at the Default Rate (as defined in the Note). Exhibit 1, Section 6.2.

        17.     Section 7.1 of the Shilo Portland Note provides that a prepayment premium will apply to all prepayments of the Shilo Portland Note that may occur on or prior to January 1, 2025.

Page 4 -    AMENDED COMPLAINT—DECLARATORY RELIEF/INJUNCTIVE RELIEF

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

18.     Section 10 of the Shilo Portland Note, captioned "Acceleration," provides that if Shilo Portland fails to pay amounts when due under the Shilo Portland Loan, then Axos Bank has the right, at its sole option, to declare all sums owing under the Shilo Portland Note immediately due and payable.  These sums owing include the prepayment premium.  Exhibit 1, Section 10.

19.     Further, in Section 19.10 of the Shilo Portland Note and Section 4.3 of the Shilo Portland Deed of Trust, Shilo Portland agreed to pay, among other things, Plaintiff's costs and expenses in enforcing the terms of the Shilo Portland Loan Documents, including, without limitation, reasonable attorney fees incurred in exercising its rights and remedies.  Exhibit 1, Section 19.10; Exhibit 2, Article 4.3.

20.     On April 7, 2020, Plaintiff Axos Bank offered to provide forbearance to Shilo Portland through April 30, 2020.  Under the terms of this forbearance, Shilo Portland was required to bring its obligations to Plaintiff Axos Bank current by May 1, 2020.  Shilo Portland did not do so.

21.     On or about June 1, 2020, Plaintiff notified Shilo Portland and the Shilo Portland Guarantors in writing (each a "Shilo Portland Default Letter") of the occurrence of the Events of Default and gave notice of its intent to accelerate the Shilo Portland Loan if those Events of Default were not cured by June 30, 2020.  Copies of the Shilo Portland Default Letters are attached as Exhibit 6.

22.     Shilo Portland has not cured the defaults under the Shilo Portland Loan Documents, and Shilo Portland continues to be in default under the Shilo Portland Loan Documents for failing to make monthly payments on the Shilo Portland Loan.  The Shilo Portland Guarantors have not made payment to Plaintiff.

23.     Plaintiff has not waived Shilo Portland's defaults under the Shilo Portland Loan Documents.

Page 5 -     AMENDED COMPLAINT—DECLARATORY RELIEF/INJUNCTIVE RELIEF

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

24.     Under Article 7.3 of the Shilo Portland Deed of Trust, upon the occurrence of any Event of Default, Plaintiff's remedies include, among a host of other remedies, the right to pursue judicial or nonjudicial foreclosure, and the appointment of a receiver.  Exhibit 2, Article 7.3(b)-(d).

25.     There is now due and owing from Shilo Portland and the Shilo Portland Guarantors to Plaintiff pursuant to the Shilo Portland Loan Documents the principal amount of $12,200,000.00, together with the following amounts accrued as of September 30, 2020: (i) accrued interest in the amount of $1,336,214.66, and (ii) late charges in the amount of $60,071.08.   Shilo Portland has a positive escrow balance of $218,804.11, and the loan carries a prepayment penalty of $610,000.  Thus, the total amount due as of September 30, 2020, is $13,987,481.63.  Interest continues to accrue on the principal amount at the Default Rate of 18 percent per annum from October 1, 2020, until fully paid.  In addition, Plaintiff has incurred attorney fees and costs in collecting this obligation which Shilo Portland and the Shilo Portland Guarantors are obligated to pay.

26.     Plaintiff desires to accelerate the Shilo Portland Loan and exercise its remedies under the Shilo Portland Loan Documents, including, but not limited to, proceeding with the foreclosure under the Shilo Portland Loan Documents and seeking the appointment of a receiver to take possession of the Shilo Portland Collateral during the pendency of the foreclosure.

**B.      The Shilo Seaside Loan**

27.     On December 27, 2019, Plaintiff Axos Bank made a loan (the "Shilo Seaside Loan") to Shilo Inn, Seaside Oceanfront, LLC ("Shilo Seaside").  The Shilo Seaside Loan is evidenced by that certain Secured Promissory Note made by Shilo Seaside in favor of Axos Bank, dated December 16, 2019, in the principal amount of $12,300,000.00 (the "Shilo Seaside Note").  A copy of the Shilo Seaside Note is attached as Exhibit 7.

4853-1320-4173.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

28.    The Shilo Seaside Loan is secured by, among other things, a first position lien on Shilo Seaside's real property, as well as a security interest in all leases, rents, issues, profits and income generated from that real property, and all of Shilo Seaside's personal property located thereon, used in connection with, or incorporated into the real property, and certain other personal property (collectively, the "Shilo Seaside Collateral"), as that property is described in that certain Line of Credit Instrument Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, executed by Shilo Seaside, dated as of December 16, 2019, and recorded on December 27, 2019, in the official records of Clatsop County, Oregon as Document No. 201909985 (the "Shilo Seaside Deed of Trust").  A copy of the Shilo Seaside Deed of Trust is attached as Exhibit 8.

29.    On December 27, 2019, a UCC Financing Statement was filed with the Oregon Secretary of State as Lien No. 92139616, naming Axos Bank as the secured party and Shilo Seaside as the debtor, evidencing Plaintiff's security interest in all assets of Shilo Seaside as set forth the schedule attached thereto (the "Shilo Seaside UCC Financing Statement").  A copy of the Shilo Seaside UCC Financing Statement is attached as Exhibit 9.

30.    The Shilo Seaside Loan is a commercial loan.  The Shilo Seaside Collateral is primarily comprised of a hotel near the ocean in Seaside, Oregon, catering to vacationers.

31.    In addition to the Shilo Seaside Note, the Shilo Seaside Deed of Trust, and the Shilo Seaside UCC Financing Statement, the Shilo Seaside Loan is supported by a number of additional documents, including but not limited to an Assignment and Subordination of Management Agreement and Franchise Agreement, an Environmental Indemnity Agreement, a Compliance Agreement, an Agreement to Amend or Comply, and an ADA Indemnity Agreement, each dated as of December 16, 2019 (these and all other documents which evidence,

4853-1320-4173.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

secure, or relate to the Shilo Seaside Loan are hereinafter collectively referred to as the "Shilo Seaside Loan Documents").

32.     Repayment of the Shilo Seaside Loan is further supported by guarantees executed by Mark S. Hemstreet (the "Shilo Seaside Hemstreet Guaranty") and Shilo Seaside Oceanfront Corp. (the "Seaside Oceanfront Guaranty").  A copy of the Shilo Seaside Hemstreet Guaranty is attached hereto as Exhibit 10.  A copy of the Seaside Oceanfront Guaranty is attached hereto as Exhibit 11.  The guarantors referenced herein are collectively referred to as the "Shilo Seaside Guarantors" and guarantees referenced herein are collectively referred to herein as the "Shilo Seaside Guarantees."

33.     Under the terms of the Shilo Seaside Loan Documents, Shilo Seaside promised to pay to Axos Bank consecutive monthly installments on or before the first day of each calendar month beginning in February 2020 of principal and interest in an amount equal to $75,532.76, subject to adjustment in accordance with Paragraph 5 of the Shilo Seaside Note (the "Seaside Monthly Debt Service").  Shilo Seaside is also obligated to make monthly payments to Axos Bank for an escrow for taxes and insurance.  Exhibit 7, Sections 4.1 and 8.1.

34.     Under Section 2 of the Shilo Seaside Guarantees, each of the Shilo Seaside Guarantors "irrevocably, absolutely and unconditionally guarantees to Lender the full, prompt and complete payment when due of the Guaranteed Obligations."  Exhibit 10, Section 2(a); Exhibit 11, Section 2(a).

35.     Shilo Seaside failed to make the Seaside Monthly Debt Service payment due on March 1, 2020 and has, as of the date hereof, failed to make any further Seaside Monthly Debt Service payments or any other payments required under the Shilo Seaside Loan (the "Shilo Seaside Defaults").

36.     Shilo Seaside's failure to make a Seaside Monthly Debt Service payment within five days of when such payment is due under the Shilo Seaside Loan Documents

4853-1320-4173.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

constitutes an Event of Default as defined in Article 7 of the Seaside Deed of Trust.  Exhibit 8, Art. 7.1(a).

37.    Section 6.1 of the Shilo Seaside Note provides that if any payment is not paid on or before the tenth calendar day of the month when it is due, Shilo Seaside must pay a late charge equal to five percent (5%) of the amount of such unpaid payment.

38.    Section 6.2 of the Shilo Seaside Note provides that upon the occurrence of an Event of Default, interest shall accrue at the Default Rate (as defined in the Note).  Exhibit 1, Section 6.2.

39.    Section 7.1 of the Shilo Seaside Note provides that a prepayment premium will apply to all prepayments of the Shilo Seaside Note that may occur on or prior to January 1, 2025.

40.    Section 10 of the Shilo Seaside Note, captioned "Acceleration," provides that if Shilo Seaside fails to pay amounts when due under the Shilo Seaside Loan, then Axos Bank has the right, at its sole option, to declare all sums owing under the Shilo Seaside Note immediately due and payable.  These sums owing include the prepayment premium.  Exhibit 7, Section 10.

41.    Further, in Section 19.10 of the Shilo Seaside Note and Section 4.3 of the Shilo Seaside Deed of Trust, Shilo Seaside agreed to pay, among other things, Plaintiff's costs and expenses in enforcing the terms of the Shilo Seaside Loan Documents, including, without limitation, reasonable attorney fees incurred in exercising its rights and remedies.  Exhibit 7, Section 19.10; Exhibit 8, Article 4.3.

42.    On April 7, 2020, Plaintiff Axos Bank offered to provide forbearance to Shilo Seaside through April 30, 2020.  Under the terms of this forbearance, Shilo Seaside was required to bring its obligations to Plaintiff Axos Bank current by May 1, 2020.  Shilo Seaside did not do so.

Page 9 -    AMENDED COMPLAINT—DECLARATORY RELIEF/INJUNCTIVE RELIEF

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

43.     On or about June 1, 2020, Plaintiff notified Shilo Seaside and the Shilo Seaside Guarantors in writing (each a "Shilo Seaside Default Letter") of the occurrence of the Events of Default and gave notice of its intent to accelerate the Shilo Seaside Loan if those Events of Default were not cured by June 30, 2020.  True copies of the Shilo Seaside Default Letters are attached as Exhibit 12.

44.     Shilo Seaside has not cured the defaults under the Shilo Seaside Loan Documents, and Shilo Seaside continues to be in default under the Shilo Seaside Loan Documents for failing to make monthly payments on the Shilo Seaside Loan.  The Shilo Seaside Guarantors have not made payment to Plaintiff.

45.     Plaintiff has not waived Shilo Seaside's defaults under the Shilo Seaside Loan Documents.

46.     Under Article 7.3 of the Shilo Seaside Deed of Trust, upon the occurrence of any Event of Default, Plaintiff's remedies include, among a host of other remedies, the right to pursue judicial or nonjudicial foreclosure, and the appointment of a receiver.  Exhibit 8, Article 7.3(b)-(d).

47.     There is now due and owing from Shilo Seaside and the Shilo Seaside Guarantors to Plaintiff pursuant to the Shilo Seaside Loan Documents the principal amount of $12,299,633.91, together with the following amounts accrued as of September 30, 2020: (i) accrued interest in the amount of $1,350,055.65, and (ii) late charges in the amount of $60,561.78.   Shilo Seaside has a positive escrow balance of $127,785.95, and the loan carries a prepayment penalty of $614,981.69.  Thus, the total amount due as of September 30, 2020, is $14,197,447.08.  Interest continues to accrue on the principal amount at the Default Rate of 18 percent per annum from October 1, 2020, until fully paid.  In addition, Plaintiff has incurred attorney fees and costs in collecting this obligation which Shilo Seaside and the Shilo Seaside Guarantors are obligated to pay.

Page 10 -    AMENDED COMPLAINT—DECLARATORY RELIEF/INJUNCTIVE RELIEF

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

48.     Plaintiff desires to accelerate the Shilo Seaside Loan and exercise its remedies under the Shilo Seaside Loan Documents, including, but not limited to, proceeding with the foreclosure under the Shilo Seaside Loan Documents and seeking the appointment of a receiver to take possession of the Shilo Seaside Collateral during the pendency of the foreclosure.

**C.    Enactment and Effect of HB 4204**

49.     On June 30, 2020, the Governor of Oregon signed HB 4204. A copy of the enrolled HB 4204 is attached hereto as Exhibit 13.

50.     As of June 30, 2020, the date that HB 4204 was enacted, the Shilo Portland Loan and the Shilo Seaside Loan were already in default.  Shilo Portland and Shilo Seaside had not made their payments due on March 1, 2020, nor made any payments thereafter. Late charges were already incurred by Shilo Portland on the Shilo Portland Loan and by Shilo Seaside on the Shilo Seaside Loan.  Plaintiff had already notified Shilo Portland and the Shilo Portland Guarantors that interest was accruing on the Shilo Portland Loan at the Default Rate from and after March 1, 2020.  Plaintiff had also already notified Shilo Seaside and the Shilo Seaside Guarantors that interest was accruing on the Shilo Seaside Loan at the Default Rate from and after March 1, 2020.

51.     HB 4204 created an "emergency period" between March 8, 2020, and September 30, 2020.  Pursuant to the terms of HB 4204, the Oregon Governor extended the end date of the "emergency period" to December 31, 2020, in Executive Order 20-37.  The "emergency period" pre-dated the effective date of HB 4204.

52.     Shilo Portland and Shilo Seaside were in default prior to the commencement of the emergency period on March 8, 2020.

53.     Section 3(a) of HB 4204 provides that if a borrower at any time during the "emergency period" notifies the lender that the borrower will not be able to make a periodic

4853-1320-4173.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

installment payment, the lender may not treat as default the borrower's failure to make a periodic installment payment or to pay any other amount that is due to the lender during the "emergency period."  Under those circumstances, HB 4204 requires the lender to defer from collecting the periodic installment payment during the "emergency period" and permit the borrower to pay the payment at the scheduled or anticipated date on which full performance of the obligation is due.

54.     Shilo Portland and Shilo Seaside provided notice to Plaintiff as required by the terms of section 3(c) of HB 4204.  Shilo Portland and Shilo Seaside provided financial statements demonstrating a loss of income related to the COVID-19 pandemic, and their representative disclosed receipt of loans under Paycheck Protection Program to Plaintiff.

55.     Section 3(d) of HB 4204 provides that a lender may not impose or collect charges, fees, penalties, attorney fees, or other amounts that, but for the provisions of HB 4204, the lender might have imposed or collected from a borrower for failing to make a periodic payment during the "emergency period."

56.     At the time HB 4204 was enacted, Plaintiff had already imposed late charges and the provided notice that the default interest rate applied to the Shilo Portland Loan and the Shilo Seaside Loan during the "emergency period."  At the time Plaintiff imposed those late charges and provided that notice, Plaintiff was acting in compliance with Oregon law, because HB 4204 and its "emergency period" did not yet exist.

57.     Section 8 of HB 4204 purports to contain a private right of action, allowing borrowers to sue lenders for any action taken contrary to HB 4204's restrictions during the "emergency period," regardless of whether those actions were lawful at the time they were taken.

Page 12 -   AMENDED COMPLAINT—DECLARATORY RELIEF/INJUNCTIVE RELIEF

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment and Injunctive Relief re Federal Preemption, 28 U.S.C. §2201

58.     Plaintiff incorporates the allegations set forth in paragraphs 1-57 above, as if fully set forth herein.

59.     The Supremacy Clause of Article VI of the United States Constitution, provides that "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Plaintiff Laws of any State to the Contrary notwithstanding." State law that is contrary to federal law must yield, even if it is within the state's power to enact.

60.     The federal government has adopted legislation and regulations for loans made by federal savings associations.  Under the Home Owners' Loan Act ("HOLA"), 12 U.S.C. §1461 *et seq.*, which applies to federal savings associations, federal savings associations have authority to make nonresidential real property loans.  12 U.S.C. §1464(c)(2)(B); *see also* 12 C.F.R. 160.30.  Federal savings associations are required to meet certain federal standards regarding real estate lending, which includes standards for loan administration, payment processing, collection, and foreclosure.  *See, e.g.,* 12 C.F.R. 160.100-160.101.

61.     The State law preemption standards for federal savings associations making nonresidential real estate loans are the same laws and legal standards that are applicable to national banks.  12 U.S.C. §1465.

62.     The U.S. Supreme Court set forth the standards for defining the pre-emptive scope of statutes granting a power to national banks in *Barnett Bank of Marion County, N.A., v. Nelson*, 517 U.S. 25, 33, 116 S.Ct. 1103 (1996).

63.     Pursuant to the standards set forth in *Barnett Bank,* federal statutes and regulations that grant national banks the power to engage in specific activities preempt state laws that prohibit or significantly interfere with those activities.

Page 13 -   AMENDED COMPLAINT—DECLARATORY RELIEF/INJUNCTIVE RELIEF

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

64.     As a federal savings association, Plaintiff is regulated by the Comptroller of the Currency.

65.     The Comptroller of the Currency has promulgated regulations regarding the applicability of state law to real estate loans.  12 C.F.R. 34.4.  Those regulations are applicable to federal savings associations pursuant to 12 C.F.R. 34.6.  Under those regulations, a federal savings association may make real estate loans without regard to state law limitations concerning, among other things:

- "The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;"  12 C.F.R. 34.4(4)
- "Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;"  12 C.F.R. 34.4(10)
- "Disbursements and repayments;"  12 C.F.R. 34.4(11)
- "Rates of interest on loans;"  12 C.F.R. 34.4(12)

66.     On June 17, 2020, the Comptroller of the Currency issued OCC Bulletin 2020-62, which addresses state legislation in response to COVID-19, and particularly legislation involving "foreclosure and repossession moratoriums, loan forbearance, and limitations on the interest and fees banks may charge."  The OCC Bulletin makes clear that such actions are preempted by federal law.

67.     HB 4204 significantly interferes with Plaintiff's power to make, service and collect real estate loans by impairing Plaintiff's rights to declare defaults on the Shilo Portland Loan and the Shilo Seaside Loan, timely collect installment payments that are due on those loans, accelerate those loans, assess the default rate of interest on those loans, collect late

Page 14 -    AMENDED COMPLAINT—DECLARATORY RELIEF/INJUNCTIVE RELIEF

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

charges on those loans, collect attorney fees in connection with recovery on those loans, and to pursue remedies such as foreclosure and receivership. HB 4204 also significantly interferes with Plaintiff's power to make, service and collect real estate loans by providing a private right of action to Shilo Portland and Shilo Seaside for actions that Plaintiff lawfully took prior to the enactment of HB 4204. As a result, the restrictions placed on Plaintiff by HB 4204 are preempted by federal law.

68.     Plaintiff seeks a declaration that federal law preempts the application of HB 4204 to Plaintiff.

69.     Plaintiff has no adequate remedy at law, and seeks an injunction against the enforcement of HB 4204 against Plaintiff.

### SECOND CLAIM FOR RELIEF
**Declaratory Judgment and Injunctive Relief re Contracts Clause,**
**28 U.S.C. §2201; 42 U.S.C. §1983**

70.     Plaintiff incorporates the allegations set forth in paragraphs 1-57 above, as if fully set forth herein.

71.     The Contracts Clause (clause 2) of Article I, Section 10 of the United States Constitution provides: "No State shall . . . pass any Law impairing the obligation of Contracts."

72.     42 U.S.C. § 1983 prohibits any State from depriving any citizen of the United States of any of the "rights, privileges, or immunities secured by the Constitution and laws" of the United States.

73.     HB 4204 impairs Plaintiff's contractual relationships with Shilo Portland under the Shilo Portland Loan Documents and with Shilo Seaside under the Shilo Seaside Loan Documents. Specifically, HB 4204 impairs Plaintiff's contractual rights to declare defaults on the Shilo Portland Loan and the Shilo Seaside Loan, timely collect installment payments that are due on those loans, accelerate those loans, assess the default rate of interest on those loans,

4853-1320-4173.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

collect late charges on those loans, collect attorney fees in connection with recovery on those loans, and to pursue contractually-agreed remedies such as foreclosure and receivership. HB 4204 also significantly interferes with Plaintiff's power to enforce its contracts with Shilo Portland and Shilo Seaside by providing a private right of action to Shilo Portland and Shilo Seaside for actions that Plaintiff lawfully took pursuant to the terms of the Shilo Portland Loan Documents and the Shilo Seaside Loan Documents prior to the enactment of HB 4204.

74.     Plaintiff seeks a declaration that HB 4204 impairs Plaintiff's contractual rights in violation of the Contracts Clause (clause 2) of Article I, Section 10 of the United States Constitution.

75.     Plaintiff has no adequate remedy at law, and seeks an injunction against the enforcement of HB 4204 against Plaintiff.

76.     Plaintiff also requests the costs of prosecuting this action, including attorney's fees under 42 U.S.C. § 1988, and such other relief as the Court finds just and reasonable.

### THIRD CLAIM FOR RELIEF
**Declaratory Judgment and Injunctive Relief re Due Process and Retroactivity, 28 U.S.C. §2201; 42 U.S.C. §1983**

77.     Plaintiff incorporates the allegations set forth in paragraphs 1-57 above, as if fully set forth herein.

78.     The Due Process Clause of Section 1 of the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ."

79.     42 U.S.C. § 1983 prohibits any State from depriving any citizen of the United States of any of the "rights, privileges, or immunities secured by the Constitution and laws" of the United States.

Page 16 -    AMENDED COMPLAINT—DECLARATORY RELIEF/INJUNCTIVE RELIEF

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

80.  HB 4204 took effect on the date of its passage, June 30, 2020.

81.  Plaintiff legally exercised its rights under the Shilo Portland Loan Documents and the Shilo Seaside Loan Documents between March 8, 2020 (the beginning of HB 4204's "emergency period") through June 30, 2020 (the date HB 4204 was enacted), by, among other things, (i) declaring defaults based on Shilo Portland and Shilo Seaside's failure to make payments on March 1, 2020, (ii) notifying Shilo Portland, the Shilo Portland Guarantors, Shilo Seaside, and the Shilo Seaside Guarantors on June 1, 2020, that the default interest rate would be applicable as of March 1, 2020, and of Plaintiff's intent to accelerate the loans after 30 days, and (iii) assessing late charges.

82.  HB 4204 arbitrarily and irrationally creates a private right of action retroactively against, and imposes the risk of liability for, Plaintiff for actions it took between March 8, 2020, and June 30, 2020, despite the fact that those acts were in compliance with Oregon law at the time Plaintiff did them.

83.  The enactment and enforcement of HB 4204 are actions taken under the color of State law within the meaning of 42 U.S.C. § 1983, and are in contravention of Plaintiffs' constitutional rights.

84.  Plaintiffs seek a declaration either that, to the extent that HB 4204 purports to apply to actions taken by Plaintiff prior to June 30, 2020, HB 4204 violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

85.  Plaintiff has no adequate remedy at law, and seeks an injunction against the enforcement of HB 4204 against Plaintiff.

86.  Plaintiff also requests the costs of prosecuting this action, including attorney's fees under 42 U.S.C. § 1988, and such other relief as the Court finds just and reasonable.

4853-1320-4173.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Axos Bank prays for the following relief:

1.    A judgment declaring that: (a) federal law preempts the application of HB 4204 to Plaintiff; (b) HB 4204 impairs Plaintiff's contractual rights in violation of the Contracts Clause (clause 2) of Article I, Section 10 of the United States Constitution; and (c) to the extent that HB 4204 purports to apply to actions taken by Plaintiff prior to June 30, 2020, HB 4204 violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

2.    An injunction against the enforcement of HB 4204 against Plaintiff;

3.    A judgment awarding Plaintiff its attorney fees, costs and expenses; and

4.    Such other and further relief that the Court may deem just and proper.

DATED this 5th day of October, 2020.

MILLER NASH GRAHAM & DUNN LLP

*/s/ Teresa H. Pearson*
Teresa H. Pearson, OSB No. 953750
teresa.pearson@millernash.com
R. Gibson Masters, OSB No. 051560
gib.masters@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Attorneys for Plaintiff Axos Bank

4853-1320-4173.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Loan Number ██████████

## SECURED PROMISSORY NOTE

$12,200,000.00                                                    December 16, 2019

1.    Promise to Pay

For value received, SHILO INN, PORTLAND/205, LLC, an Oregon limited liability company ("**Borrower**"), promises to pay to the order of AXOS BANK™, a federally chartered savings association ("**Lender**"), at 4350 La Jolla Village Drive, Suite 100, San Diego, California, 92122, or at such other place as may be designated in writing by Lender, the principal sum of Twelve Million Two Hundred Thousand and No/100 Dollars ($12,200,000.00), with interest on the unpaid principal balance as set forth below.  All sums owing hereunder are payable in lawful money of the United States of America, in immediately available funds, without offset, deduction or counterclaim of any kind.

2.    Secured by Security Instrument

This Note is secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (as the same may hereinafter be amended, modified, restated, renewed or extended from time to time, the "**Security Instrument**") of even date herewith, encumbering the Property (hereinafter defined).

3.    Definitions

For the purposes of this Note, the following terms shall have the following meanings:

"**Adjusted Rate**" shall mean, from and after each Rate Change Date (as defined below), a per annum interest rate that is the sum (rounded, as necessary, to the nearest 1/1000 of 1%) of the Index and the Margin; provided, however, the Adjusted Rate, in each case, shall never: (w) on the first Rate Change Date, increase by more than six percentage points higher than the Initial Interest Rate; (x) on each Rate Change Date subsequent to the first Rate Change Date, change by more than one percentage point (whether higher or lower) than the Adjusted Rate in effect immediately preceding the Rate Change Date;  (y) exceed 11.50**%**; or (z) be less than 5.50**%**, at any time and for the life of the loan (it being understood that this sub-clause (z), without limiting any provision requiring a higher Interest Rate, shall constitute a minimum Interest Rate irrespective of other parameters regarding the Adjustable Rate provided by this definition).

"**Affiliate**" shall mean, as to any Person, any other Person (i) which directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with, such Person; or (ii) which, directly or indirectly, beneficially owns or holds ten percent (10%) or more of any class of stock or any other ownership interest in such Person; or (iii) ten percent (10%) or more of the direct or indirect ownership of which is beneficially owned or held by such Person; or (iv) which is a member of the family of such Person or which is a trust or estate, the beneficial owners of which are members of the family of such Person; or (v) which directly or indirectly is a general partner, controlling shareholder, managing member, officer, director, trustee or employee of such Person.

"**Business Day**" shall mean any day other than a Saturday, Sunday, legal holiday or other day on which commercial banks in New York, New York are authorized or required by law to close.  All references in this Note to a "day" or a "date" shall be to a calendar day unless specifically referenced as a Business Day.

"**Closing Date**" shall mean the earlier of the date Lender releases any part of the Loan proceeds to Borrower or the date in which the Security Instrument is recorded in the official records of the county in which the Property is located.

"**Default Rate**" shall be the lesser of (i) eighteen percent (18%) and (ii) the maximum amount permitted by law applicable to Lender.

**EXHIBIT 1**
**Page 1 of 12**

Loan Number ▮▮▮▮▮▮▮

"**Event of Default**" shall have the meaning set forth in the Security Instrument.

"**First Payment Date**" shall mean February 1, 2020.

"**Guarantor**" shall mean Mark S. Hemstreet and Portland/205 Hotel (2) Corp., an Oregon corporation.

"**Index**" shall mean the six month U.S. Dollar denominated London Inter-Bank Offered Rate ("LIBOR USD") as published in a reference publication of general circulation (the "Reference Publication") forty-five (45) days prior to applicable Rate Change Date, or if not published on such date, then most recently prior thereto. The initial Reference Publication shall be *The Wall Street Journal*. Lender, in Lender's sole discretion, shall have the right to select a substitute Reference Publication at any time and from time to time by written notice to Borrower delivered to Borrower not less than thirty (30) days prior to the Rate Change Date to which such substitution shall first apply. If LIBOR USD, or another Index as then in effect, is no longer available, Lender shall choose a replacement index (a "Replacement Index") in its sole and absolute discretion, which selection shall be final, conclusive and binding on Borrower in all respects, and which shall for all purposes be the Index hereunder; provided, however, that the Interest Rate shall not at any time be less than 5.50% per annum. Without limiting Lender in any way, Borrower acknowledges and agrees that either Ameribor or Secured Overnight Financing Rate may be a Replacement Index hereunder. Lender shall notify Borrower of any Replacement Index not less than thirty (30) days prior to the Rate Change Date to which such Replacement Index shall first apply. **Borrower's Initials** _MH_.

"**Initial Interest Rate**" shall mean 5.50% per annum.

"**Interest Rate**" shall mean the Initial Interest Rate or the Adjusted Rate, as applicable.

"**Loan**" shall mean the aggregate of all principal and interest payments that accrue or are due and payable hereunder, together with any other amounts for which Borrower is liable under the Loan Documents.

"**Loan Documents**" shall mean this Note, the Security Instrument and any document executed in connection herewith or therewith. For the avoidance of doubt, notwithstanding any other clause of this Note, any "Guaranty" or "Environmental Indemnity Agreement" (including any rider(s) or successor documents thereto) shall not be secured by the Security Instrument.

"**Margin**" shall mean three and one half percent (3.50%).

"**Maturity Date**" shall mean January 1, 2030.

"**Patriot Act**" shall mean United State Public Law 107-56, Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as amended from time to time, together with all rules and regulations promulgated thereunder from time to time thereunder.

"**Person**" means any individual, corporation, partnership, limited liability company, joint venture, estate, trust, unincorporated association, any other person or entity, and any federal, state, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing.

"**Payment Change Date**" shall mean January 1, 2025 and each six months thereafter until the Maturity Date (as defined herein).

"**Property**" shall mean that certain real property and improvements thereon owned by Borrower, together with all rights pertaining to such real property and improvements, located at the property commonly known as 11707 North East Airport Way, Portland, OR 97220.

"**Rate Change Date**" shall mean January 1, 2025 and each six (6) months thereafter until the Maturity Date (as defined herein).

**EXHIBIT 1**
**Page 2 of 12**

Loan Number █████████

4.      Payment of Principal, Interest and Processing Fee

4.1     Payments.

Except as provided in the following sentence, consecutive monthly installments of principal and interest each in the amount of Seventy-Four Thousand Nine Hundred Eighteen and 67/100 Dollars ($74,918.67) shall be payable on the first (1st) day of each month, commencing on the First Payment Date, subject to adjustment as set forth in Section 5 hereof, and continuing through the Maturity Date (each, a "**Payment Date**"), to Lender at the address set forth above.

On the Maturity Date, all unpaid principal and accrued but unpaid interest shall be due and owing in full. All interest shall be paid in arrears, except that on the Closing Date, Borrower shall pre-pay all interest that will accrue from the date of funding through the end of that month.  Whenever any payment to be made under this Note or any other Loan Document shall be stated to be due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day, unless such next succeeding Business Day would fall in the next calendar month, in which case such payment be payable on the next preceding Business Day.

4.2     Interest Accrual.  Interest on the outstanding principal balance of this Note shall accrue at an annual rate equal to the Interest Rate calculated on an Actual/360 Basis.  "**Actual/360 Basis**" shall mean on the basis of a 360-day year, charged based on the number of actual days elapsed for any whole or partial month in which interest is being calculated.

4.3     Processing Fee.  On or prior to the Closing Date, Borrower shall pay to Lender $2,700.00 as the "**Processing Fee**".  The Processing Fee shall be deemed fully earned by Lender upon execution of this Note.  In addition to the Processing Fee, Borrower shall also pay to Lender on or prior to the Closing Date, a $30.00 wire fee.

4.4     Application of Payments.  In the absence of a specific determination by Lender to the contrary, all payments paid by Borrower to Lender in connection with the obligations of Borrower under this Note and under the other Loan Documents shall be applied in the following order of priority:  (a) to amounts, other than principal and interest, due to Lender pursuant to this Note or the other Loan Documents; (b) to accrued but unpaid interest on this Note; and (c) to the unpaid principal balance of this Note.

5.      Interest Rate Change.

Prior to the first Rate Change Date, Borrower will pay interest at a yearly rate of 5.50**%** ("**Initial Interest Rate**").  On the Rate Change Date and on each Rate Change Date thereafter, Lender will determine the new interest rate and the changed amount of the monthly payments based on the Adjusted Rate.  The new interest rate shall become effective on each Rate Change Date.  Borrower shall pay the amount of the new monthly payment beginning on the first payment date after the Payment Change Date until the amount of the monthly payment changes again.  Lender will provide Borrower with notice of any changes in the amount of the monthly payment due under this Note.  However, if Lender has not provided Borrower with prior notice of the monthly payment due on any Payment Date, then Borrower will pay on that Payment Date an amount equal to the monthly payment for which Borrower last received notice.  If Lender at any time determines that Borrower has paid one or more monthly payments in an incorrect amount because of the preceding sentence, or because Lender has miscalculated the adjustable rate or has otherwise miscalculated the amount of any monthly payment, then Lender will give notice to Borrower of such determination.  If such determination discloses that Borrower has paid less than the full amount due, Borrower, within thirty (30) calendar days after receipt of the notice from Lender, will pay to Lender the full amount of the deficiency.  If such determination discloses that Borrower has paid more than the full amount due, then the amount of the overpayment will be credited to the next payment(s) of principal and interest due under this Note (or, if an Event of Default has occurred and is continuing, such overpayment will be credited against any amount owing by Borrower to Lender).

**EXHIBIT 1**
**Page 3 of 12**

Loan Number ▮▮▮▮▮▮▮

6.      Late Charge; Default Rate; NSF Charges

6.1     Late Charge.  If any payment required hereunder is not paid on or before the tenth (10th) calendar day of the month in which it is due, or the payment is returned to Lender as a result of insufficient funds in Borrower's bank account, Borrower shall pay a late or collection charge equal to five percent (5%) of the amount of such unpaid payment.  Borrower acknowledges that Lender will incur additional expenses as a result of any late payments hereunder, which expenses would be impracticable to quantify, and that Borrower's payments under this paragraph are a reasonable estimate of such expenses and do not constitute a penalty.  The foregoing to the contrary notwithstanding, no late or collection charge shall be payable by Borrower as a result of any delay in the payment of any sum due and payable on the Maturity Date.

6.2     Default Rate.  Commencing upon an Event of Default and continuing until such Event of Default shall have been cured by Borrower, all sums owing on this Note shall bear interest until paid in full at a rate per annum equal to the Default Rate.

6.3     Non-Sufficient Funds Charge.  Any checks received that are returned to Lender marked for "non-sufficient funds" shall require payment by Borrower of a NSF fee of $25 or such other amount then charged by Lender in accordance with applicable law.

7.      Prepayments

7.1     Prepayment Premium.  Prepayment of the Loan other than: (i) as provided in Section 4.1 hereof with respect to the interest pre-paid on the Closing Date; (ii) as a result of application of insurance proceeds or a condemnation award received by Lender pursuant to the Security Instrument; or (iii) a prepayment made after January 1, 2025, as long as Lender has not granted forbearance or otherwise altered the payment schedule during the term of the Loan by written agreement with the Borrower prior to such date (in a writing signed by an officer of Lender holding a title of Executive Vice President or higher), shall result in Borrower owing to Lender a prepayment premium detailed as follows:

        (a)     Five percent (5%) of the amount of principal amount of this Note that is then outstanding if the prepayment occurs on or prior to January 1, 2021;

        (b)     Four percent (4%) of the amount of principal amount of this Note that is then outstanding if the prepayment occurs on or prior to January 1, 2022;

        (c)     Three percent (3%) of the amount of principal amount of this Note that is then outstanding if the prepayment occurs on or prior to January 1, 2023;

        (d)     Two percent (2%) of the amount of principal amount of this Note that is then outstanding if the prepayment occurs on or prior to January 1, 2024; and

        (e)     One percent (1%) of the amount of principal amount of this Note that is then outstanding if the prepayment occurs on or prior to January 1, 2025.

7.2     PREPAYMENT WAIVER.  BORROWER HEREBY EXPRESSLY WAIVES THE RIGHT TO PREPAY THE INDEBTEDNESS EVIDENCED HEREBY IN WHOLE OR PART WITHOUT PENALTY, AND EXPRESSLY AGREES TO PAY THE AMOUNTS REQUIRED HEREIN IN THE EVENT OF AN ACCELERATION.  BORROWER AGREES THAT THE PREPAYMENT CONSIDERATION REQUIRED HEREIN IS REASONABLE. BORROWER HAS GIVEN INDIVIDUAL WEIGHT TO THE CONSIDERATION IN THIS TRANSACTION FOR THIS WAIVER AND AGREEMENT.  Any such prepayment shall not result in a reamortization, deferral, postponement, suspension or waiver of any and all other payments due under this Note.  Borrower has initialed this provision of the Note expressly waiving the right to prepay the Note except as expressly permitted herein.

Loan Number ▇▇▇▇▇

Borrower Initials: _MⱮ_

8.   Taxes and Insurance

8.1   Borrower shall pay to Lender on each Payment Date an amount determined by Lender that will result in the deposit with Lender of sufficient funds to pay all such Taxes at least thirty (30) days prior to their respective due dates, and (ii) an amount determined by Lender that will result in the deposit with Lender of sufficient funds to pay all insurance premiums at least thirty (30) days prior to the expiration of the applicable insurance policies.  "**Taxes**" shall mean all real estate and personal property taxes, assessments, water rates or sewer rents, maintenance charges, impositions, vault charges and license fees, now or hereafter levied or assessed or imposed against all or part of the Property.  Such amounts will be transferred by Lender to an account maintained by Lender (the "**Tax and Insurance Account**").  Lender will (a) apply funds in the Tax and Insurance Account to payments of Taxes and insurance premiums required to be made by Borrower, provided that Borrower has promptly supplied Lender with notices of all Taxes and insurance premiums due, or (b) reimburse Borrower for such amounts within thirty (30) days after Lender's receipt of evidence of payment.  In making any payment relating to Taxes and insurance premiums, Lender may do so according to any bill, statement or estimate procured from the appropriate public office (with respect to Taxes) or insurer or agent (with respect to insurance premiums), without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof.  If Lender determines in its reasonable judgment that the funds in the Tax and Insurance Account will be insufficient to pay (or in excess of) the Taxes or insurance premiums next coming due, Lender may increase (or decrease) the monthly contribution required to be made by Borrower to the Tax and Insurance Account.  Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this Section.  Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes and insurance premiums such portion of such payments as Lender may in its absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby.

8.2   Should Borrower fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes or insurance premiums, at least thirty (30) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured by the Security Instrument and shall be repayable to Lender, or at the option of Lender the Lender may, without making any advance whatever, apply any sums held by it upon any obligation of Borrower secured by the Security Instrument.

8.3   As security for payment of the Loan and the performance by Borrower of all other terms, conditions and provisions of the Loan Documents, Borrower hereby pledges and assigns to Lender, and grants to Lender a security interest in, all Borrower's right, title and interest in and to the Tax and Insurance Account.  Borrower hereby grants to Lender a continuing security interest in, and agrees to hold in trust for the benefit of Lender, all funds in the Tax and Insurance Account.  Borrower shall not, without obtaining the prior written consent of Lender, further pledge, assign or grant any security interest in the Tax and Insurance Account, or permit any lien to attach thereto, or any levy to be made thereon, or any financing statements, except those naming Lender as the secured party, to be filed with respect thereto.  This Note is, among other things, intended by the parties to be a security agreement for purposes of the UCC.  Upon the occurrence and during the continuance of an Event of Default, Lender may apply any sums in the Tax and Insurance Account in any order and in any manner as Lender shall elect in Lender's discretion without seeking the appointment of a receiver and without adversely affecting the rights of Lender to foreclose the lien of the Security Instrument or exercise its other rights under the Loan Documents.  The Tax and Insurance Account shall not constitute trust funds and may be commingled with other monies held by Lender.  Upon repayment in full of this Note, all remaining funds in the Tax and Insurance Account, if any, shall be promptly disbursed to Borrower.

**EXHIBIT 1**
**Page 5 of 12**

Loan Number ████████

9.     Maximum Rate Permitted By Law

Neither this Note nor any of the other Loan Documents may be construed to require the payment or permit the collection of, in each case, any interest or any late payment charge to be charged to Borrower in excess of the maximum rate permitted by law applicable to Lender as a federally chartered savings association.  If any such excess interest or late payment charge is provided for under this Note or any of the other Loan Documents or if this Note or any of the other Loan Documents shall be adjudicated to provide for such excess, neither Borrower nor Borrower's successors or assigns shall be obligated to pay such excess, and the right to demand the payment of any such excess shall be and hereby is waived, and this provision shall control any other provision of this Note or any of the other Loan Documents.  If Lender shall collect amounts that are deemed to constitute interest and that would increase the effective interest rate to a rate in excess of the maximum rate permitted by law to be charged to Borrower, all such amounts deemed to constitute interest in excess of the maximum legal rate shall, upon such determination, at the option of Lender, be returned to Borrower or credited against the outstanding principal balance of this Note.

10.     Acceleration

If (a) Borrower shall fail to pay when due any sums payable under this Note; (b) Guarantor shall fail to pay when due all taxes, assessments or other liens or charges against Guarantor related to tax payments, including, without limitation, each payment due under any payment plan or settlement established with the Internal Revenue Service, State of Oregon, State of California and State of Washington; (c) Guarantor fails to provide to Bank, within three Business Days after Bank's request therefor, evidence in form and substance satisfactory to Bank of Guarantor's timely payment of taxes, assessments or liens or charges related to Guarantor's tax liability, release of tax liens that have been paid in full, and Guarantor's good standing with all tax authorities with jurisdiction over Guarantor and its assets; (d) any other Event of Default shall occur (taking into account the provisions of Section 14 hereof); or (e) any other event or condition shall occur which, under the terms of the Security Instrument or any other Loan Document, gives rise to a right of acceleration of sums owing under this Note, then Lender, at its sole option, shall have the right to declare all sums owing under this Note immediately due and payable; provided, however, if the Security Instrument or any other Loan Document provides for the automatic acceleration of payment of sums owing under this Note, all sums owing under this Note shall be automatically due and payable in accordance with the terms of the Security Instrument or such other Loan Document.

11.     Recourse

Borrower shall have full recourse liability to Lender under all of the Loan Documents for the payment of the Loan and for the performance of all other obligations of Borrower under the Loan Documents.

12.     Disbursement of Loan Proceeds; Limitation of Liability

Borrower hereby authorizes Lender to disburse the proceeds of the Loan, after deducting any and all fees owed by Borrower to Lender in connection with the Loan to Borrower.  With respect to such disbursement, Borrower understands and agrees that Lender does not accept responsibility for errors, acts or omissions of others, including, without limitation, the escrow company, other financial institutions, communications carriers or clearinghouses through which the transfer of Loan proceeds may be made or through which Lender receives or transmits information, and no such entity shall be deemed Lender's agent.  As a consequence, Lender shall not be liable to Borrower for any actual (whether direct or indirect), consequential or punitive damages, whether or not (a) any claim for such damages is based on tort or contract; or (b) either Lender or Borrower knew or should have known of the likelihood of such damages in any situation.

13.     Notices.

All notices and other communications that are required or permitted to be given to a party under this Note shall be in writing and shall be sent to such party, either by personal delivery, by overnight delivery service,

**EXHIBIT 1**
**Page 6 of 12**

or by certified first-class mail, return receipt requested.  All notices and other communications shall include reference to Lender's loan number.  Any party may change its address for notice hereunder to any other location within the continental United States by giving thirty (30) days' notice to the other parties in the manner set forth above.  All such notices and communications shall be effective upon receipt, or in the case of notice via certified first-class mail, return receipt requested, upon the earlier of (i) receipt or (ii) five days of mailing.

The initial addresses of the parties shall be:

LENDER:
Axos Bank
9205 West Russell Rd., Suite 400
Las Vegas, NV  89148
Attn:  Loan Servicing

WITH A COPY TO:
Axos Bank
4350 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Attn:  Legal Department

BORROWER:

Shilo Inn, Portland/205, LLC
11707 NE Airport Way
Portland, OR 97220
Attn: Mark S. Hemstreet

14.    Non-Trustor Borrower

If any Borrower is not also a trustor under the Security Instrument, such Borrower hereby makes all representations and warranties in favor of Lender contained in Article 5 of the Security Instrument, all covenants contained in Sections 6.4, 6.5, 6.6, 6.7, 6.23, 6.24 of the Security Instrument, and all indemnities in favor of Lender contained in Section 6.18 of the Security Instrument, jointly and severally with the trustor. In addition, if any Borrower is not also a trustor under the Security Instrument, any reference to the Trustor in the description of the Events of Default thereunder shall also be deemed to reference any such Borrower.

15.    Debt Service Coverage Ratio

Until the Loan is repaid in full, the NOI Debt Service Coverage Ratio shall not fall below 1.30:1.00, as may be determined by Lender in its sole discretion, at Borrower's sole cost and expense, from time to time. Borrower shall reimburse Lender its costs and expenses in determining the foregoing within ten (10) business days of Lender's written request. The "**NOI Debt Service Coverage Ratio**" shall mean, as of any date, the ratio calculated by Lender of (i) the Net Operating Income with respect to any period to (ii) the Debt Service with respect to such period.  The "**Net Operating Income**" shall mean the difference between Approved Income and Approved Expenses.  "**Approved Expenses**" shall mean, as determined by Lender, for the relevant period, the greater of (a) all expenses to be incurred by Borrower (determined on the actual basis of accounting) in connection with the operation of the Property and (b) the expenses of the Property as reflected in the appraisal received by Lender in connection with the Loan subject to any adjustment thereto made by Lender in connection with its underwriting of the Loan).  "**Approved Income**" shall mean as determined by Lender, for the relevant period, the lesser of (a) the income, revenue and other receipts to be received by Borrower under the Leases in connection with the operation of the Property in the ordinary course of business (and excluding any extraordinary income or receipts, refundable deposits, lease termination payments, principal or interest received by Borrower with respect to loans to tenants and fees

**EXHIBIT 1**
**Page 7 of 12**

and reimbursements for work performed by Borrower for tenants), less an appropriate market rate for vacancy and collection loss, (b) the effective gross income from the operation of the Property as reflected in the appraisal received by Lender in connection with the Loan (subject to any adjustment thereto made by Lender in connection with its underwriting of the Loan), in either case reduced by the amount of any free rent or other tenant concessions under the leases then in effect with respect to the Property.  "**Debt Service**" shall mean, with respect to any particular period, the scheduled principal and interest payments due under the Note in such period.

16.    Assignment

This Note may be freely transferred and assigned by Lender, its successors, endorsees and assigns. Borrower's ability to assign, delegate, or otherwise, directly or indirectly, transfer its rights or obligations with respect to, in each case, its indebtedness, duties under the Loan Documents, or to be released from liability under this Note as a result of such an assignment, delegation, or other transfer shall be governed, in each case, by Section 6.14 of the Security Instrument regarding the "Transfer" of the trustor's interest therein (it being understood that "Transfer" has the meaning ascribed to it in Section 6.14.1 of the Security Instrument).  The Borrower shall not "Transfer" its interest under any of the Loan Documents in violation of the provisions of Section 6.14 of the Security Instrument, such provisions being construed for the purposes of this Section of the Note as if the Borrower hereunder were the trustor under the Security Instrument.  Any "Transfer" by the Borrower of its interest under any of the Loan Documents contrary to this provision shall be null and void *ab initio.*  For clarity in construing these provisions, the trustor under the Security Instrument is referred to as "Borrower" in the text of the Security Instrument.

17.    Brokers and Financial Advisors

Borrower hereby represents that it has dealt with no financial advisors, brokers, underwriters, placement agents, agents or finders in connection with the Loan other than Colliers International and Tower Capital LLC ("**Broker**") whose fees shall be paid by Borrower pursuant to a separate agreement.  Borrower shall indemnify and hold Lender harmless from and against any and all claims, liabilities, costs and expenses (including attorneys' fees, whether incurred in connection with enforcing this indemnity or defending claims of third parties) of any kind in any way relating to or arising from a claim by any Person (including Broker) that such Person acted on behalf of Borrower in connection with the transactions contemplated herein.  The provisions of this Section shall survive the expiration and termination of this Note and the repayment of this Note and satisfaction of all of its monetary and nonmonetary obligations set forth under the Loan Documents.

18.    Compliance With Laws

Borrower hereby represents, warrants and covenants that:

18.1    Neither Borrower nor Guarantor nor any of their respective Affiliates is or will be a Person (a) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("**EO13224**"), (b) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons," (c) who commits, threatens to commit or supports "terrorism," as defined in EO13224, or (d) who is otherwise affiliated with any entity or Person listed above (any and all parties or Persons described in subparts (a) through (d) above are herein referred to as a "**Prohibited Person**").  Neither Borrower nor Guarantor nor any of their respective Affiliates will knowingly (i) conduct any business, nor engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224.  Borrower shall deliver (from time to time) to Lender any such certification or other evidence as may be requested by Lender in its sole and absolute discretion, confirming each such representation.

**EXHIBIT 1**
**Page 8 of 12**

18.2    Neither Borrower nor Guarantor, nor to the knowledge of Borrower, any agent or other Person acting on behalf of the Borrower or Guarantor, has (a) directly or indirectly, used any funds for unlawful contributions, gifts, entertainment or other unlawful expenses related to foreign or domestic political activity, (b) made any unlawful payment to foreign or domestic government officials or employees or to any foreign or domestic political parties or campaigns from corporate funds, (c) failed to disclose fully any contribution made by Borrower or Guarantor (or made by any Person acting on its behalf of which Borrower or Guarantor is aware) which is in violation of law, or (d) violated in any material respect any provision of the Foreign Corrupt Practices Act of 1977 (15 U.S.C. §§ 78dd-1, et seq.), as amended ("**FCPA**").  Each of Borrower and Guarantor shall cause any agent or other Person acting on its behalf to comply with the FCPA, including maintaining and complying with all policies and procedures to ensure compliance with this act.

19.    General Provisions

19.1    Joint and Several Liability.  If this Note is executed by more than one Person or entity as Borrower, the obligations of each such Person or entity shall be joint and several.  No Person or entity shall be a mere accommodation maker, but each shall be primarily and directly liable hereunder.

19.2    Waiver of Presentment.  Except as otherwise provided in any other Loan Document, Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of acceleration, notice of nonpayment, notice of costs, expenses or losses and interest thereon, and notice of interest on interest and late charges.

19.3    Delay in Enforcement.  No previous waiver or failure or delay by Lender in acting with respect to the terms of this Note or the Security Instrument shall constitute a waiver of any breach, default or failure of condition under this Note, the Security Instrument or the obligations evidenced or secured thereby.  A waiver of any term of this Note, the Security Instrument or of any of the obligations evidenced or secured thereby must be made in writing signed by Lender, shall be limited to the express terms of such waiver, and shall not constitute a waiver of any subsequent obligation of Borrower.  The acceptance at any time by Lender of any past due amount shall not be deemed to be a waiver of the right to require prompt payment when due of any other amounts then or thereafter due and payable.

19.4    Time of the Essence.  Time is of the essence with respect to all Borrower's obligations hereunder involving: (i) the payment of money and (ii) providing notice to Lender.

19.5    Governing Law.  This Note and the other Loan Documents shall be governed by and construed under the internal laws of the State of Oregon, except to the extent preempted by federal laws.

19.6    Consent to Jurisdiction.  Borrower irrevocably submits to the jurisdiction of:  (a) any state or federal court sitting in the State of Oregon over any suit, action, or proceeding, brought by Borrower against Lender, arising out of or relating to this Note or the Loan evidenced hereby; (b) any state or federal court sitting in the state where the Property is located or the state in which Borrower's principal place of business is located over any suit, action or proceeding, brought by Lender against Borrower, arising out of or relating to this Note or the Loan evidenced hereby; and (c) any state court sitting in the county of the state where the Property is located over any suit, action, or proceeding, brought by Lender to exercise its STATUTORY POWER OF SALE under the Security Instrument or any action brought by Lender to enforce its rights with respect to the Property.  Borrower irrevocably waives, to the fullest extent permitted by law, any objection that Borrower may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

19.7    Heirs, Successors and Assigns.

(a)    All of the terms, covenants, conditions and indemnities of Borrower contained in this Note and the other Loan Documents shall be binding upon the heirs, successors and assigns of Borrower and shall inure to the benefit of the successors, indorsees and assigns of Lender.  The foregoing sentence shall

**EXHIBIT 1
Page 9 of 12**

not be construed to permit Borrower to assign the Loan or otherwise directly or indirectly transfer its interest therein contrary to Section 14 hereof.

(b)      Lender may assign its right, title, and interest in any or all of the Secured Obligations (as defined in the Security Instrument) arising under this Note to any Person and any such assignee shall succeed to all of Lender's rights with respect thereto.  Upon such assignment, Lender shall be released from all responsibility for the Collateral (as defined in the Security Instrument) to the extent same is assigned to any transferee.  Lender may from time to time sell or otherwise grant participations in any of the Secured Obligations (as defined in the Security Instrument) and the holder of any such participation shall, subject to the terms of any agreement between Lender and such holder, be entitled to the same benefits as Lender with respect to any security for the Secured Obligations (as defined in the Security Instrument) in which such holder is a participant.

19.8    <u>Severability</u>.  If any term of this Note, or the application thereof to any Person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Note, or the application of such term to Persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term of this Note shall be valid and enforceable to the fullest extent permitted by law.

19.9    <u>Further Assurances</u>.  Borrower shall, upon demand by Lender, execute, acknowledge (if appropriate) and deliver any and all documents and instruments and do or cause to be done all further acts reasonably necessary or appropriate to effectuate the provisions hereof.

19.10   <u>Attorneys' Fees</u>.  In the event it is necessary for Lender to retain the services of an attorney or any other party to enforce or to commence any legal action to enforce the terms of this Note, the Security Instrument, or any of the other Loan Documents, or any portion hereof or thereof, Borrower agrees to pay to Lender, in addition to damages or other relief, any and all costs and expenses incurred in connection therewith.

19.11   <u>Disclaimers</u>. The relationship of Borrower and Lender under this Note and the other Loan Documents is, and shall at all times remain, solely that of borrower and lender; and Lender neither undertakes nor assumes any responsibility or duty to Borrower or to any third party with respect to the Property.  Notwithstanding any other provisions of this Note and the other Loan Documents:  (i) Lender is not, and shall not be construed to be, a partner, joint venturer, member, alter ego, manager, controlling Person or other business associate or participant of any kind of Borrower, and Lender does not intend to ever assume such status; (ii) Lender's activities in connection with this Note and the other Loan Documents shall not be outside the scope of activities of a lender of money, and Lender does not intend to ever assume any responsibility to any Person for the quality, suitability, safety or condition of the Property; and (iii) Lender shall not be deemed responsible for or a participant in any acts, omissions or decisions of Borrower.

19.12   <u>Separate and Community Property</u>.  Any married Person who executes this Note or any other Loan Document as a Borrower agrees that any money judgment which Lender obtains pursuant to the terms of this Note or any other Loan Document may be collected by execution upon any separate property or community property, in each case, of that Person.

19.13   <u>Integration; Interpretation</u>.  The Loan Documents contain or expressly incorporate by reference the entire agreement of the parties with respect to the matters contemplated therein and supersede all prior negotiations or agreements, written or oral.  The Loan Documents shall not be modified except by written instrument executed by all parties.  Any reference in any of the Loan Documents to the Property shall include all or any part of the Property.  Any reference to the Loan Documents includes any amendments, renewals or extensions now or hereafter approved by Lender in writing.

19.14   <u>Commercial Purpose</u>.  Borrower represents that the indebtedness evidenced by the Note is being incurred by Borrower solely for the purpose of carrying on a business or commercial enterprise, and not for personal, family or household purposes.

Loan Number ████████

20.    WAIVER OF RIGHT TO JURY TRIAL.

BORROWER HEREBY EXPRESSLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY ANY APPLICABLE LAWS, ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS NOTE OR ANY OTHER LOAN, DOCUMENT (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS NOTE OR ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. BORROWER HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY.  NOTWITHSTANDING THE FOREGOING TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, BORROWER HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE.  PURSUANT TO SUCH JUDICIAL REFERENCE, BORROWER AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE WITH LENDER.  IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL.  BORROWER ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN.  BORROWER HEREBY AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS AND HAS BEEN AFFORDED THE OPPORTUNITY TO HAVE ITS LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.

21.    PATRIOT ACT.  Lender hereby notifies Borrower that pursuant to the requirements of the Patriot Act, it is required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the Patriot Act. Borrower will provide such information promptly upon the request of Lender.

22.    **STATUTORY NOTICE.  UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.**

[SIGNATURE PAGE FOLLOWS]

Secured Promissory Note
Oregon Form (2019)
112038-0036/146596710.4

Page 11

EXHIBIT 1
Page 11 of 12

Loan Number ▮▮▮▮▮▮▮

IN WITNESS WHEREOF, Borrower has duly executed this Note to be effective the day and year first above written.

**BORROWER:**

SHILO INN, PORTLAND/205, LLC,
an Oregon limited liability company

By:   Portland/205 Hotel (2) Corp.,
      an Oregon corporation
      Its Manager

By:   *Mark S. Hemstreet* _____
      Mark S. Hemstreet
      Secretary

**EXHIBIT 1**
**Page 12 of 12**

| Multnomah County Official Records<br>E Murray, Deputy Clerk | **2019-141976** |
| --- | --- |
| | 12/27/2019 02:33:56 PM |
| MORT-MORT   Pgs=48 Stn=68 ATJN<br>$240.00 $15.00 $11.00 $6.00 $60.00 | $332.00 |

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

AXOS BANK™
9205 West Russell Road, Suite 400
Las Vegas, Nevada 89148

Tax Parcel(s)/APN: R237040; R237041

(Space Above For Recorder's Use)

**LINE OF CREDIT INSTRUMENT**
**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,**
**SECURITY AGREEMENT AND FIXTURE FILING**

SHILO INN, PORTLAND/205, LLC, an Oregon limited liability company (Trustor)

to

TICOR TITLE COMPANY OF OREGON (Trustee)

in favor of

AXOS BANK™ (Lender)

**DATED:** December 16, 2019

**PROPERTY ADDRESS: 11707 North East Airport Way, Portland, OR 97220**
**Tax Parcel(s)/APN: R237040; R237041**

THIS INSTRUMENT IS ALSO TO BE INDEXED IN THE INDEX OF FINANCING STATEMENTS. THIS
DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH ORS 79.0502.

THE NAMES OF THE DEBTOR AND THE SECURED PARTY, THE MAILING ADDRESS OF THE
SECURED PARTY FROM WHICH INFORMATION CONCERNING THE SECURITY INTEREST MAY
BE OBTAINED, THE MAILING ADDRESS OF THE DEBTOR AND A STATEMENT INDICATING THE
TYPES, OR DESCRIBING THE ITEMS, OF COLLATERAL, ARE DESCRIBED HEREIN, IN
COMPLIANCE WITH THE REQUIREMENTS OF THE UNIFORM COMMERCIAL CODE.

The maturity date of the promissory note secured by this Deed of Trust, exclusive of any option to
renew or extend such maturity date, is January 1, 2030.

The maximum principal amount to be advanced pursuant to the promissory note(s) secured by
this Deed of Trust is $12,200,000.00, which amount may be exceeded by advances to complete
construction pursuant to ORS 86.155(2)(c).

Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 1 of 48**

Recorded by TICOR TITLE    3029/800730

**LINE OF CREDIT INSTRUMENT**
**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,**
**SECURITY AGREEMENT AND FIXTURE FILING**

This DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "**Deed of Trust**"), dated as of December 16, 2019 is entered into by SHILO INN, PORTLAND/205, LLC, an Oregon limited liability company ("**Trustor**"), as Trustor, having its principal place of business at 11707 North East Airport Way, Portland, OR 97220, in favor of Ticor Title Company of Oregon ("**Trustee**"), as Trustee, located at 111 SW Columbia Street, Suite 1000, Portland, OR 97201, for the benefit of AXOS BANK™, a federally chartered savings association ("**Lender**"), as beneficiary, having its principal place of business at 4350 La Jolla Village Drive, Suite 100, San Diego, California, 92122.

RECITALS:

A.      Lender is making a loan (the "**Loan**") to Trustor ("**Borrower**"), which is evidenced by a Secured Promissory Note (all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms), collectively, the "**Note**") in the principal amount of Twelve Million Two Hundred Thousand and No/100 Dollars ($12,200,000.00), executed by Borrower in favor of Lender, dated the same date as this Deed of Trust, payable to the order of Lender.

B.      The loan documents include this Deed of Trust, the Note and the other documents described in the Note as Loan Documents (the "**Loan Documents**").

ARTICLE 1

DEED OF TRUST

1.1.      <u>Grant</u>. For the purposes of and upon the terms and conditions of this Deed of Trust, Trustor irrevocably grants, conveys and assigns to Trustee, in trust for the benefit of Lender, with power of sale and right of entry and possession, all estate, right, title and interest which Trustor now has or may hereafter acquire in, to, under or derived from any or all of the following:

(a)      All right, title and interest which Trustor now has or may later acquire in any real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances, strips and gores of land, streets, ways, alleys, passages, thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water, water courses and water rights and powers, and all sewers and sewer rights, pipes, conduits, wires and other facilities furnishing utility or services to the real property, air rights and development rights and credits, pumps, pipes, flumes and ditches and ditch rights, water stock, ditch and/or reservoir stock or interests, rights to oil, gas, minerals, coal and other substances of any kind or character (the "**Land**") located in the County of Multnomah, State of Oregon, and more particularly described on <u>Exhibit A</u> attached hereto;

(b)      All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected, used or placed on the Land,

0

**EXHIBIT 2**
**Page 2 of 48**

including, without limitation, all plant equipment, apparatus, machinery, appliances and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "**Improvements**");

(c)    All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Property (hereinafter defined);

(d)    All additions and accretions to the property described above;

(e)    All licenses, authorizations, certificates, variances, consents, approvals and other permits now or hereafter pertaining to the Land and all estate, right, title and interest of Trustor in, to, under or derived from all trade names or business names relating to the Land or the present or future development, construction, operation or use of the Land;

(f)    Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Property (hereinafter defined) which may be made with respect to the Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Property, which said award or awards are hereby assigned to Lender;

(g)    Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Property;

(h)    Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Property;

(i)    Any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Property, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

(j)    All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Property or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Property, together with any and all accessions, accessories, attachments and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Property;

(k)    All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights and transferable development rights; all of Trustor's right, title and interest in and to any awards, remunerations, settlements or compensation heretofore made or hereafter made by any

1

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 3 of 48**

and all courts, boards, agencies, commissions, offices or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

(l)    All leases of the Property, Personalty (as defined below), Fixtures (as defined below), or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Property; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Property;

(m)    All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property; and

(n)    All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Property, prepaid municipal and utility fees, bonds, revenues, income and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive.  It is the intent of Trustor to encumber hereby all property located or to be located upon the above-described real property.  Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "**Property**."  As used herein, the term "**Fixtures**" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures.  As used herein, the term "**Personalty**" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

ARTICLE 2

OBLIGATIONS SECURED

2.1.    <u>Obligations Secured</u>.    Trustor makes the foregoing grant and assignment for the purpose of securing the following obligations (the "**Secured Obligations**"):

2

**EXHIBIT 2**
**Page 4 of 48**

(a)      Full and punctual payment to Lender of all sums at any time owing under the Note by Borrower;

(b)      Payment and performance of all covenants and obligations of Trustor under this Deed of Trust including, without limitation, indemnification obligations and advances made to protect the Property;

(c)      Payment and performance of all additional covenants and obligations of Trustor and Borrower, in each case, under the Loan Documents except for the Trustor's and/or Borrower's covenants and obligations under any Environmental Indemnity Agreement, executed in favor of Lender, as of the date hereof, including any riders and amendments thereto or replacements thereof (collectively, the "**Environmental Indemnity Agreement**").  For the avoidance of doubt, the Secured Obligations, notwithstanding anything to the contrary contained herein, shall not include, obligations or covenants, in each case, pursuant to:  (i) any guarantee of the Loan, including, without limitation, any amendment thereto or replacement thereof (it being understood that the guarantor(s) under such guarantee/guarantees shall not be the Trustor); (ii) any environmental indemnity regarding the Property executed by, in each case, the Borrower, Trustor and/or any guarantor/additional indemnitor, including, without limitation, the Environmental Indemnity Agreement; and (iii) any similar guarantee or indemnity, including any rider(s) and amendments thereto or replacements thereof, by which a person guarantees or otherwise acts as a surety regarding the Trustor's obligations under the Loan Documents (it being understood that guarantee and guarantees, as used in this Section 2.1(c), shall not be construed to include this Deed of Trust, even if this Deed of Trust is executed by a Trustor that is not the Borrower).  For the avoidance of doubt and without limiting the generality of the foregoing provisions of this Section 2.1(c), this Deed of Trust does not secure and shall not be construed to secure, in each case, the Environmental Indemnity Agreement and any guarantee of the Loan.

(d)      Payment and performance of all covenants and obligations, if any, that any rider, attached as an exhibit to this Deed of Trust, recites are secured hereby;

(e)      Payment and performance of all future advances and other obligations that the then record owner of all or part of the Property may agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender when the obligation is evidenced by a writing that recites that it is secured by this Deed of Trust; however, any obligation secured by this Deed of Trust shall not be construed to be part of any guarantee or Environmental Indemnity Agreement (as the terms guarantee/guarantees and Environmental Indemnity Agreement are used in Section 2.1(c) hereof, including, in each case, any rider(s) or successor documents thereto);

(f)      All interest and charges on all obligations secured hereby including, without limitation, prepayment charges, late charges and Loan-related fees; and

(g)      All modifications, extensions and renewals of any of the obligations secured hereby, however evidenced, including, without limitation:  (i) modifications of the required principal payment dates or interest payment dates or both, as the case may be, deferring or accelerating payment dates wholly or partly; and (ii) modifications, extensions or renewals at a different rate of interest whether or not any such modification, extension or renewal is evidenced by a new or additional promissory note or notes.

2.2.    Obligations.    The term "**obligations**" is used herein in its broadest and most comprehensive sense and shall be deemed to include, without limitation, all interest and charges,

3

**EXHIBIT 2
Page 5 of 48**

prepayment charges, late charges, reimbursements for expenses, and Loan-related fees at any time accruing or assessed on any of the Secured Obligations.

2.3.    Incorporation.    All terms and conditions of the documents that evidence any of the Secured Obligations are incorporated herein by this reference.  All persons who may have or acquire an interest in the Property shall be deemed to have notice of the terms of the Secured Obligations and to have notice that the rate of interest on one or more Secured Obligations may vary from time to time.  As used in this Deed of Trust, "person" or "persons" shall refer to both a natural person and a legal person.

ARTICLE 3

ASSIGNMENT OF RENTS AND LEASES

3.1.    Assignment.    Trustor absolutely, irrevocably, and unconditionally grants, transfers and assigns to Lender all of Trustor's right, title and interest in, to and under:  (a) all present and future leases of the Property or any portion thereof, all licenses and agreements relating to the management, leasing or operation of the Property or any portion thereof, and all other agreements of any kind relating to the use or occupancy of the Property or any portion thereof, whether such leases, licenses and agreements are now existing or entered into after the date hereof (collectively, the "**Leases**"); and (b) the rents, issues, deposits and profits of the Property, including, without limitation, all amounts payable and all rights and benefits accruing to Trustor under the Leases (the "**Payments**").  The term "**Leases**" shall also include all guarantees of and security for the tenants' performance thereunder, and all amendments, extensions, renewals or modifications thereto that are permitted hereunder.  This is a present and absolute assignment, not an assignment for security purposes only, and Lender's right to the Leases and Payments is not contingent upon, and may be exercised without possession of, the Property.

3.2.    Grant of License.    Lender confers upon Trustor a revocable license (the "**License**") to collect and retain the Payments as they become due and payable, until the occurrence of an Event of Default (as hereinafter defined).  Upon an Event of Default, the License shall be automatically revoked and Lender may collect and apply the Payments pursuant to the terms hereof without notice and without taking possession of the Property.  All Payments thereafter collected by Trustor shall be held by Trustor as trustee under a constructive trust for the benefit of Lender.  Trustor hereby irrevocably authorizes and directs the tenants under the Leases to rely upon and comply with any notice or demand by Lender for the payment to Lender of any rental or other sums which may at any time become due under the Leases, or for the performance of any of the tenants' undertakings under the Leases, and the tenants shall have no right or duty to inquire as to whether any Event of Default has actually occurred or is then existing.  Trustor hereby relieves the tenants from any liability to Trustor by reason of relying upon and complying with any such notice or demand by Lender.  Lender may apply, in its sole discretion, any Payments so collected by Lender against any Secured Obligation or any other obligation of Trustor or any other person or entity, under any document or instrument related to or executed in connection with the Loan Documents, whether existing on the date hereof or hereafter arising.  Collection of any Payments by Lender shall not cure or waive any Event of Default or notice of an Event of Default or invalidate any acts done pursuant to such notice.

3.3.    Effect of Assignment.    The foregoing irrevocable assignment shall not cause Lender to be:  (a) a mortgagee in possession; (b) responsible or liable for the control, care, management or repair of the Property or for performing any of the terms, agreements, undertakings, obligations, representations, warranties, covenants and conditions of the Leases; (c) responsible or liable for any

4

**EXHIBIT 2**
**Page 6 of 48**

waste committed on the Property by the tenants under any of the Leases or by any other parties for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee, invitee or other person; or (d) responsible for or impose upon Lender any duty to produce rents or profits.  Lender shall not directly or indirectly be liable to Trustor or any other person as a consequence of:  (e) the exercise or failure to exercise any of the rights, remedies or powers granted to Lender hereunder; or (f) the failure or refusal of Lender to perform or discharge any obligation, duty or liability of Trustor arising under the Leases.

    3.4.   <u>Covenants</u>.

      (a)   <u>All Leases</u>.  Trustor shall, at Trustor's sole cost and expense:

        (i)    perform all obligations of the landlord under the Leases and use reasonable efforts to enforce performance by the tenants of all obligations of the tenants under the Leases;

        (ii)    use reasonable efforts to keep the Property leased at all times to tenants that Trustor in good faith believes are creditworthy, at rents not less than the fair market rental value (including, but not limited to, free or discounted rents to the extent the market so requires);

        (iii)    promptly upon Lender's request, deliver to Lender a copy of each requested Lease and all amendments thereto and waivers thereof, as well as any landlord or tenant estoppel certificates requested by Lender;

        (iv)    promptly upon Lender's request, execute and record any additional assignments of landlord's interest under any Lease to Lender and specific subordinations of any Lease to this Deed of Trust, in form and substance satisfactory to Lender; and

        (v)    promptly upon Lender's request, but in any event by June 30th of each year, provide Lender a current rent roll, certified by Trustor as being true and correct, containing the names of all tenants with respect to the Property, the terms of their respective Leases, the spaces occupied and the rentals or fees payable thereunder and the amount of each tenant's security deposit.

    Unless consented to in writing by Lender or otherwise permitted under any other provision of the Loan Documents, Trustor shall not:

        (vi)    grant any tenant under any Lease any option, right of first refusal or other right to purchase all or any portion of the Property under any circumstances;

        (vii)    grant any tenant under any Lease any right to prepay rent more than one (1) month in advance;

5

**EXHIBIT 2**
**Page 7 of 48**

(viii)    except upon Lender's request, execute any assignment of landlord's interest in any Lease;

(ix)    except as set forth in Section 3.4(a)(vii), collect rent or other sums due under any Lease in advance, other than to collect rent one (1) month in advance of the time when it becomes due;

(x)    modify any Lease in a manner inconsistent with the Loan Documents;

(xi)    convey or transfer or suffer or permit a conveyance or transfer of the Property so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees under Leases;

(xii)    consent to any assignment of or subletting under any Major Lease unless required in accordance with its terms;

(xiii)    cancel or terminate any Lease or accept a surrender thereof (except in the exercise of Trustor's commercially reasonable judgment in connection with a tenant default under a Lease that is not a Major Lease) or

(xiv)    execute any lease for a term of greater than five (5) years, which deviates materially from the standard form Lease approved by Lender in writing.

Any such attempted action in violation of the provisions of this Section 3.4(a) shall be null and void.

(b)    <u>Major Leases</u>.  Trustor shall, at Trustor's sole cost and expense, give Lender prompt written notice of any material default by landlord or tenant under any Major Lease (as defined below).  Unless consented to in writing by Lender or otherwise permitted under any other provision of the Loan Documents, Trustor, in each case, shall not:

(i)    enter into any Major Lease without first obtaining Lender's prior written consent, which consent shall not be unreasonably withheld unless an Event of Default has occurred;

(ii)    reduce any rent or other sums due from the tenant under any Major Lease;

(iii)    terminate or materially modify or amend any Major Lease; or

(iv)    release or discharge the tenant or any guarantor under any Major Lease from any material obligation thereunder.

Any such attempted action in violation of the provisions of this Section 3.4(b) shall be null and void.

Without in any way limiting the requirement of Lender's consent hereunder, any sums received by Trustor in consideration of any termination or material modification or amendment of any

6

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 8 of 48**

Major Lease or any release or discharge of any tenant under any Major Lease from any material obligation thereunder shall be applied to reduce the outstanding Secured Obligations (without payment of a prepayment charge) and any such sums received by Trustor shall be held in trust by Trustor for such purpose; provided, however, so long as no Event of Default exists at the time, any sums received by Trustor in consideration of any termination (or the release or discharge of any tenant), modification or amendment of any Major Lease that: (A) total less than $50,000 shall be payable to Trustor; and (B) total $50,000 or more shall be placed into an impound account and shall be released to Trustor from time to time upon delivery of an executed replacement tenant lease and satisfactory evidence as to the completion of re-tenanting work.  Following the completion of such re-tenanting work, and provided no Default exists at such time, Lender shall release any excess funds received by Trustor with respect to the termination of any Major Lease to Trustor.  "**Major Lease**," as used herein, shall mean, in each case, , (x) a Lease of more than twenty percent (20%) of the total rentable area of all buildings forming a part of the Property (assuming the exercise of all expansion rights and all preferential rights to lease additional space contained in any such Lease), as  determined by Lender, (y) cell tower Leases, (z) Leases of oil, gas and mineral rights.  Trustor's obligations with respect to Major Leases shall be governed by the provisions of Section 3.4(a) hereof applicable to all Leases as well as by the provisions of this Section 3.4(b).  Lender's failure to deny any written request by Trustor for consent as required by this Section 3.4(b) within twenty (20) Business Days after Lender's receipt of such request (and all documents and information reasonably related thereto) shall be deemed to constitute Lender's consent to such request. "**Business Day**" shall mean any day other than a Saturday, Sunday, legal holiday or other day on which commercial banks in New York, New York are authorized or required by law to close.  All references in this Deed of Trust to a "day" or a "date" shall be to a calendar day unless specifically referenced as a Business Day.

    3.5.    Estoppel Certificates.  Within thirty (30) days after request by Lender, Trustor shall deliver to Lender and to any party designated by Lender, estoppel certificates relating to the Leases (excluding Leases of storage units) executed by Trustor and by each of the tenants, in form and substance acceptable to Lender; provided, however, if any tenant fails or refuses to so execute and deliver any such estoppel certificate upon request, Trustor shall use reasonable efforts to cause such tenant to execute and deliver such estoppel certificate but such tenant's continued failure or refusal to do so, despite Trustor's reasonable efforts, shall not constitute a default by Trustor under this Section 3.5.

    3.6.    Right of Subordination.  Lender may at any time and from time to time by specific written instrument intended for the purpose unilaterally subordinate the lien of this Deed of Trust to any Lease, without joinder or consent of, or notice to, Trustor, any tenant or any other person.  Notice is hereby given to each tenant under a Lease of such right to subordinate.  No subordination referred to in this Section 3.6 shall constitute a subordination to any lien or other encumbrance, whenever arising, or improve the right of any junior lienholder.  Nothing herein shall be construed as subordinating this Deed of Trust to any Lease.

    3.7.    Perfection.  The assignment by Trustor of the Leases and payments related thereto is intended to be perfected upon the recording of this Deed of Trust as provided in ORS 93.806.

ARTICLE 4

SECURITY AGREEMENT AND FIXTURE FILING

    4.1.    Security Interest.  This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security

7

**EXHIBIT 2**
**Page 9 of 48**

interest can be perfected under and within the meaning of ORS Chapter 79 of the Oregon Uniform Commercial Code (the "**Collateral**"), and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, including but not limited to a fixture filing, pursuant to ORS Chapter 79 of the Oregon Uniform Commercial Code with respect to the Personalty and Fixtures. To this end, Trustor shall and hereby does grant to Lender, a first priority security interest in, under and to the Collateral.

    4.2.   <u>Financing Statements</u>.  Trustor authorizes Lender to file such financing statements and cause such financing statements and other assurances as Lender may from time to time require to be recorded and filed at such times and places as may be required or permitted by law to create, perfect and preserve such security interest.

    4.3.   <u>Remedies on Default</u>.  Upon an event of default, Lender may, at its option:  (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the Oregon Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in Oregon or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines.   All of Lender's rights and remedies shall be cumulative and not exclusive.

    4.4.   <u>Fixture Filing</u>.  This Deed of Trust shall constitute a fixture filing under the Oregon Uniform Commercial Code.

    4.5.   <u>Additional Covenants of Trustor</u>.  Trustor, at its sole cost and expense, (a) shall give Lender at least thirty (30) days' prior written notice of any change in Trustor's principal place of business and the acquisition or use of a trade name or style by Trustor; (b) shall promptly notify Lender in writing of any claim, lien, security interest, right, encumbrance or any other occurrence that may be adverse to Lender's security interest in the Collateral; (c) shall defend the Collateral from all claims, liens, security interests, rights, encumbrances and other matters that are adverse to Lender's security interest in the Collateral; (d) shall promptly pay all costs and expenses relating to the purchase, ownership, or use of the Collateral, including all liens, taxes, assessments and charges of any board, commission, department, agency, court, or other body of any governmental unit (e.g., without limitation, (i) the federal government and the departments thereof and (ii) applicable state governments and any cities, counties, or other political subdivisions or special districts organized thereunder) having jurisdiction over, in each case, the matter, thing, or person in question (collectively, "**Governmental Authorities**") levied, assessed or imposed on all or part of the Collateral; (e) shall not sell, transfer, pledge (including, without limitation, any assignment for the benefit of creditors other than Lender), hypothecate, lease or otherwise dispose of or abandon all or part of the Collateral without Lender's prior written consent, except for the sale of inventory in the ordinary course of Trustor's business or the disposition of any Collateral that is replaced with new Collateral of substantially comparable value and utility; (f) shall not remove any material part of the Collateral that consists of tangible personal property from its location on the Property without Lender's prior written consent; (g) shall, upon Lender's request, give notice, in form and substance acceptable to Lender, to any or all account debtors designated by Lender of Trustor's grant of a security interest in any Collateral that consists of accounts, contract rights, instruments, documents, or general intangibles (collectively, the "**Accounts**" and individually, an "**Account**"); (h) following the occurrence of any Event of Default, shall not compromise, settle, adjust, or grant any discount, credit, or allowance to any Account debtor without Lender's prior written consent;

8

**EXHIBIT 2**
**Page 10 of 48**

(i) shall undertake any and all other acts necessary or appropriate to maintain, preserve and protect the Collateral and Lender's security interest therein, including any actions requested by Lender; (j) shall not without Lender's prior written consent, given at Lender's sole discretion and signed by an officer of Lender holding the title of Executive Vice President or higher, make or acquiesce in Trustor making any changes to organizational documents of, in each case, Trustor or any affiliate thereof or interest holder therein (e.g., without limitation, articles of organization, articles of incorporation, operating agreement, bylaws, certificate of formation, partnership agreement) that, in each case, violate or are inconsistent with Trustor's obligations under the Loan Documents or materially alter Trustor's performance of its duties under the Loan Documents (each an "**Unauthorized Amendment**"), and Trustor hereby agrees that Unauthorized Amendments shall not adversely affect Lender's rights and remedies against Trustor under the Loan Documents and that Trustor shall be estopped from using any Unauthorized Amendment as a defense to or to otherwise impair, delay, or undermine Lender's remedies against Trustor under the Loan Documents; and (k) shall execute and deliver to Lender such other documents as Lender may request in order to evidence, effectuate, perfect, maintain, preserve or protect Lender's security interest in the Collateral, including, without limitation, financing statements, continuation financing statements, financing statement amendments, security agreements, and assignments.  If Trustor fails to execute and deliver to Lender any document requested by Lender pursuant to this Section 4.4 within ten (10) days after such request, then Trustor irrevocably appoints Lender, with full power of substitution, as Trustor's attorney-in-fact, coupled with an interest, with full power, in its own name or in the name of Trustor, to execute such document on behalf of Trustor.  Trustor has set forth above its full and correct name, and Trustor does not presently use any other names or tradenames, except for those tradenames specifically disclosed in writing by Trustor to Lender prior to the recordation of this Deed of Trust.  Nothing contained in this Article 4 may be construed to obligate Lender to act on behalf of Trustor as attorney-in-fact.

4.6.    FOR PURPOSES OF THE UCC THE FOLLOWING INFORMATION IS FURNISHED:

| | |
|---|---|
| Name, address of Debtor(s): | Shilo Inn, Portland/205, LLC<br>11707 North East Airport Way,<br>Portland, OR 97220<br>Attn: Mark Hemstreet |
| Name and address<br>of Secured Party | Axos Bank<br>4350 La Jolla Village Dr., Ste. 100<br>San Diego, CA 92122 |
| Description of the type<br>(or items) of property (constituting the<br>Collateral): | See Section 4.1. |
| Description of real property<br>to which the Collateral<br>is attached or upon which<br>it is or will be located: | See Exhibit A hereto. |

9

**EXHIBIT 2**
**Page 11 of 48**

ARTICLE 5

REPRESENTATIONS AND WARRANTIES

5.1.    <u>Trustor's Representations and Warranties</u>.  Trustor represents and warrants to Lender that the following statements are true and correct as of the date set forth in the preamble, each and every date during the existence of the Loan, or any portion thereof, as the context admits or requires:

(a)    <u>Legal Status</u>.  Trustor is qualified or licensed to do business in all jurisdictions in which such license or qualification is required.

(b)    <u>No Conflicts</u>.  The execution, delivery and performance of the Loan Documents by Trustor and the transactions contemplated hereby will not conflict with or result in a breach of any of the terms or provisions of, or constitute a default under, or result in the creation or imposition of any lien or encumbrance (other than pursuant to the Loan Documents) upon any of the property of Trustor pursuant to the terms of, any agreement or instrument to which Trustor is a party or by which its property is subject, nor will such action result in any violation of the provisions of any statute or any order, rule or regulation of any governmental authority having jurisdiction over Trustor or any of its properties.  Any consent, approval, authorization, order, registration or qualification of or with any governmental authority required for the execution, delivery and performance by Trustor of the Loan Documents has been obtained and is in full force and effect.

(c)    <u>Permits</u>.  Trustor, or an affiliate thereof if permitted to do so under applicable law, possess all permits, franchises, licenses, entitlements, trade names and fictitious names, necessary for Trustor to undertake the business activities related to its possession of the Property.

(d)    <u>Authorization and Validity</u>.  The execution and delivery of this Deed of Trust have been duly authorized and this Deed of Trust constitutes a valid and binding obligation of Trustor, in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, moratorium or other laws affecting the enforcement of creditors' rights, or by the application of rules of equity.

(i)    The person executing this Deed of Trust has all necessary power and authority to execute and deliver this Deed of Trust for, on behalf of, and in the name of such Trustor.

(ii)    If Trustor is a trust or Trustor has caused any trust documents to be delivered to Lender in connection with its organizational structure, Trustor's trust documents or such other trust documents have not been amended or altered (except for such amendments as have been provided to Lender) and are in full force and effect as of the date hereof.

(iii)    Trustor has had an adequate opportunity to consult with legal counsel of Trustor's choosing prior to executing and delivering this Deed of Trust.

(e)    <u>Non-Circumvention</u>.  The execution, delivery and performance by Trustor of this Deed of Trust do not violate any provision of any law or regulation, or result in any breach or default under any contract, obligation, indenture or other instrument to which Trustor is a party or by which Trustor is bound.

(f)    <u>Litigation</u>.  There are no pending or threatened actions, claims, investigations, suits or proceedings before any Governmental Authorities, court or administrative agency that may

10

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 12 of 48**

adversely affect the financial condition or operations of Trustor other than those previously disclosed in writing by Trustor to Lender.

(g)  Financial Statements.  The financial statements of Trustor, of each general partner (if Trustor is a partnership) and/or each member (if Trustor is a limited liability company) previously delivered by Trustor to Lender:  (i) are materially complete and correct; (ii) present fairly the financial condition of such party; and (iii) have been prepared in accordance with the same accounting standard used by Trustor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan, or other accounting standards approved by Lender.  Since the date of such financial statements, there has been no material adverse change in such financial condition, nor have any assets or properties reflected on such financial statements been sold, transferred, assigned, mortgaged, pledged or encumbered except as previously disclosed in writing by Trustor to Lender, prior to Lender's issuing a final commitment letter, and approved in writing by Lender.

(h)  Income Taxes.  There are no pending assessments or adjustments of Trustor's income tax payable with respect to any year.

(i)  Title.  Trustor lawfully holds and possesses fee simple title to the Property, without limitation on the right to encumber same.  This Deed of Trust is a first lien on the Property prior and superior to all other liens and encumbrances on the Property except:  (i) liens for real estate taxes and assessments not yet due and payable; (ii) senior exceptions previously approved by Lender and shown in the title insurance policy insuring the lien of this Deed of Trust; and (iii) other matters, if any, previously disclosed to Lender by Trustor and approved by Lender in a writing specifically referring to this representation and warranty.

(j)  Items Due and Payable.  No Event of Default exists under this Deed of Trust, and all of the following items regarding this Deed of Trust which have become due and payable have been paid.

(k)  Liens.  There are no mechanics' or similar liens or claims that have been filed for work, labor or material (and no rights are outstanding that under law could give rise to any such liens) affecting the Property that are or may be prior to or equal to the lien of this Deed of Trust.

(l)  Encroachments.  To the best of Trustor's knowledge, except as shown in the survey, if any, previously delivered to Lender, none of the buildings or other improvements that were included for the purpose of determining the appraised value of the Property lies outside of the boundaries or building restriction lines of the Property, and no buildings or other improvements located on adjoining properties encroach upon the Property.

(m)  Tax Returns.  Trustor has provided true, correct and complete copies of the tax returns for Trustor, or of the person whose tax return contains the tax liabilities of Trustor if Trustor is a disregarded entity (collectively, the "**Tax Return**"), which Tax Return is the most recent tax return prepared for Trustor.  The Tax Return gives a true, correct and complete statement of financial condition for Trustor as of the date hereof.

(n)  Taxes Paid.  Trustor has filed all federal, state, county and municipal tax returns required to have been filed by Trustor, and has paid all taxes which have become due pursuant to such returns or to any notice of assessment received by Trustor, and Trustor has no knowledge of any basis for additional assessment with respect to such taxes.  To the best of Trustor's knowledge, there are not presently pending any special assessments against the Property or any part thereof.

11

**EXHIBIT 2**
**Page 13 of 48**

(o)    <u>Leases</u>.  All existing Leases are in full force and effect and are enforceable in accordance with their respective terms.  No material breach or default by any party, or event that would constitute a material breach or default by any party after notice or the passage of time, or both, exists under any existing Lease.  None of the landlord's interests under any of the Leases, including, but not limited to, rents, additional rents, charges, issues or profits, has been transferred or assigned.  No rent or other payment under any existing Lease has been paid by any tenant for more than one (1) month in advance.

(p)    <u>Collateral</u>.  Trustor has good title to the existing Collateral.  Trustor has not previously assigned or encumbered Trustor's interest in any of the Collateral, and no financing statement that remains in force covering any of the Collateral has been delivered to any other person or entity.  Trustor's principal place of business is located at the address shown in Section 4.6.

(q)    <u>Condition and Use of Property</u>.  Except as shown in the property condition survey or other engineering reports, if any, previously delivered to or obtained by Lender, the Property is in good condition and repair and is free from any damage, waste or defect that would materially and adversely affect the value of the Property as security for the Loan or the intended use of the Property.  The Property is and shall remain for the term of Loan exclusively used for the same commercial purpose as existing as of the date this Deed of Trust is entered into.

(r)    <u>Wetlands</u>.  No part of the Property consists of or is classified as wetlands, tidelands or swamp and overflow lands.

(s)    <u>Compliance with Laws; ERISA</u>.

(i)    The Property is used exclusively for commercial hotel use and other appurtenant and related uses.  In the event that all or any part of the Improvements are destroyed or damaged, said Improvements shall be legally reconstructed to their condition prior to such damage or destruction, and thereafter exist for the same use without violating any zoning or other ordinances applicable thereto and without the necessity of obtaining any variances or special permits.  No legal proceedings are pending or, to the knowledge of Trustor, threatened with respect to the zoning of the Property.  Neither the zoning nor any other right to construct, use or operate the Property is in any way dependent upon or related to any property other than the Property.  All certifications, permits, licenses and approvals, including certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Property (collectively, the "**Licenses**"), have been obtained and are in full force and effect.  The use being made of the Property is in conformity with the certificate of occupancy issued for the Property and all other restrictions, covenants and conditions affecting the Property.

(ii)    Trustor shall not engage in any transaction that would cause any obligation, or action taken or to be taken, hereunder (or the exercise by Lender of any of its rights under the Note, this Agreement and the other Loan Documents) to be a non-exempt (under a statutory or administrative class exemption) prohibited transaction under the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**").

(iii)    Trustor (i) is not and shall not be an "employee benefit plan," as defined in Section 3(3) of ERISA, or a "plan," as defined in Section 4975 of the Code, (ii) none of the assets of Trustor constitutes or will constitute "plan assets" of one or more "benefit plan investors" (as those terms are defined in the Plan Asset Regulation), (iii) Trustor is not and shall not be a "governmental plan" within the meaning of Section 3(32) of ERISA, and (iv)

12

**EXHIBIT 2**
**Page 14 of 48**

transactions by or with Trustor are not and will not be subject to state statutes regulating investment of, and fiduciary obligations with respect to, governmental plans. As of the date hereof, neither Trustor, nor any ERISA affiliate maintains, sponsors or contributes to any Plan or any Welfare Plan that provides any benefits to any former employee (or the spouse or dependent of any such former employee) of the Trustor or any of its ERISA Affiliates after such employee's retirement or termination of employment (other than COBRA continuation coverage required to be provided pursuant to Sections 601 through 607 of ERISA or Section 4980B of the Code).

(t)    <u>Change in Business or Operation of Property</u>.  Borrower shall not cease to operate the Property as a commercial hotel property.

(u)    <u>Property Taxes and Other Liabilities</u>.  All taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, and ground rents, if any, that previously became due and owing in respect of the Property have been paid.

(v)    <u>Condemnation</u>.  There is no proceeding pending or threatened for the total or partial condemnation of the Property.

(w)    <u>Homestead</u>.  There is no homestead, dower, or other exemption available to Borrower that would materially interfere with the right to sell the Property at a trustee's sale or the right to foreclose this Deed of Trust.

(x)    <u>Property</u>.  Trustor owns (or will own, prior to the date set forth in the preamble) fee simple title to the Property.  This Deed of Trust creates the lien and security it purports to create and is a valid and binding obligation of Trustor enforceable against Trustor and the Property in accordance with its terms.

(y)    <u>No Default</u>.  The execution, delivery and performance of the obligations imposed on Trustor under this Deed of Trust will not cause Trustor to be in default under the provisions of any agreement, judgment or order to which Trustor is a party or by which Trustor is bound.

(z)    <u>Items Due and Payable</u>.  No Event of Default exists under the Loan, and all of the following items regarding the Property which have become due and payable have been paid, or, with the approval of Lender, an escrow fund sufficient to pay them has been established:  taxes; government assessments; insurance premiums; water, sewer and municipal charges; leasehold payments; ground rents; and any other charges affecting the Property.

(aa)    <u>Compliance with Applicable Laws and Regulations</u>.  All Improvements to the Property and the use of the Property comply with all applicable statutes, rules and regulations, including, without limitation, all applicable statutes, rules and regulations pertaining to requirements for equal opportunity, anti-discrimination, fair housing, environmental protection, zoning and land use. Improvements on the Property comply with applicable health, fire, and building codes and the Americans with Disabilities Act 42 U.S.C.A. Section 12101 et seq., as amended from time to time (the "**ADA**"), or, if exempt from the ADA, the Improvements are accessible to and useable by persons with disabilities and shall at all times during the term of the Loan be in compliance with applicable law and regulations. There is no evidence of any illegal activities relating to controlled substances on the Property. All required permits, licenses and certificates for the lawful use and operation of the Property, including, but limited to, certificates of occupancy, municipal licenses, or the equivalent, have been obtained and are current and in full force and effect.

13

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 15 of 48**

(bb)    Insurance Policies.  Trustor has furnished to Lender all insurance policies and certificates required pursuant to the Loan Documents.

(cc)    No Insolvency Proceeding or Judgment.  Trustor is not currently (a) the subject of or a party to any completed or pending bankruptcy, reorganization or insolvency proceeding; or (b) the subject of any judgment unsatisfied of record or docketed in any court of the state in which the Property is located or in any court located in the United States.

(dd)    No Subordinate Financing.  Except as otherwise expressly approved by Lender in writing signed by an officer of Lender holding the title Executive Vice President or more senior, no part of the Property is, or will become, subject to a subordinate mortgage, deed of trust, security instrument (other than this Deed of Trust), or other type of subordinate lien.

(ee)    No Labor or Material Supplier Claims.  All parties furnishing labor and materials have been paid in full and, except for such liens or claims insured against by the policy of title insurance to be issued in connection with the Loan, there are no mechanics', laborers' or material supplier's liens or claims outstanding for work, labor or materials affecting the Property, whether prior to, equal with or subordinate to the lien of this Deed of Trust.

(ff)    No Other Interests.  No person has (a) any possessory interest in the Property or right to occupy the same except under and pursuant to the provisions of existing leases by and between tenant and Trustor, the material terms of all such leases having been previously disclosed to Lender, or (b) an option to purchase the Property or an interest therein (including, without limitation, any right of first offer or refusal).

(gg)    Property Characteristics.  No part of the Property is included or assessed under or as part of another tax lot or parcel, no part of any other property is included or assessed under or as part of the tax lot or parcels for the Property, other than as expressly disclosed to Lender in writing and accepted by Lender during its underwriting process prior to Lender issuing its final commitment letter.

(hh)    Operating Statements.  Trustor has provided Lender a true, correct and complete copy of its most recent operating statement (the "**Operating Statement**") prepared for the Property.  The Operating Statement gives a true, correct and complete statement of financial conditions for the Property as of the date hereof.

(ii)    Service Contracts.  Trustor has provided Lender with a true, correct and complete list of all service contracts and service agreements relating to the Property and/or the ownership, maintenance and operation of the Improvements located on the Property (the "**Service Contracts**").  Each of the Service Contracts is in full force and effect in accordance with its terms; neither party is in default under any of the Service Contracts; true, correct and complete copies of each of the Service Contracts have been provided to Lender in connection with its underwriting of the Loan; and each of the Service Contracts is terminable on not more than thirty (30) days' notice without the payment of any fee, penalty, cost or expense.

(jj)    Furniture, Fixtures and Equipment.  Except for furniture and trade fixtures, equipment, and other personal property owned by any tenant of the Property, all furniture, fixtures and equipment used in connection with the ownership, management, operation and maintenance of the Property are free and clear of any right, title or interest of any other person or entity.

14

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 16 of 48**

(kk)    Financial Statements.  The financial statements of Trustor reflect a positive net worth as of the date thereof.

(ll)    Insolvency.  Trustor is not presently insolvent, and the Loan will not render Trustor insolvent.  The term "insolvent" means, either and in each case, that (i) the sum total of all of an a person's liabilities (whether secured or unsecured, contingent or fixed, or liquidated or unliquidated) is in excess of the value of all such entity's non-exempt assets, i.e., all of the assets of the entity that are available to satisfy claims of creditors or (ii) a person will not be able to pay all creditors as obligations are become due.

(mm)    Fraudulent Transfer.  Trustor has not entered into the Loan or any Loan Document with the actual intent to hinder, delay, or defraud any creditor, and Trustor has received reasonably equivalent value in exchange for its obligations under the Loan Documents.  Giving effect to the transactions contemplated by the Loan Documents, the fair saleable value of Trustor's assets exceeds and will, immediately following the execution and delivery of the Loan Documents, exceed Trustor's total probable liabilities, including subordinated, unliquidated, disputed or contingent liabilities, including the maximum amount of its contingent liabilities or its debts as such debts become absolute and matured.  Trustor's assets do not and, immediately following the execution and delivery of the Loan Documents will not, constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted.  Trustor does not intend to, and does not believe that it will, incur debts and liabilities (including contingent liabilities and other commitments) beyond its ability to pay such debts as they mature (taking into account the timing and amounts to be payable on or in respect of obligations of Trustor).

(nn)    Working Capital.  After the Loan is made, Trustor will have sufficient working capital, including cash flow from the Property or other assets, not only to adequately maintain the Property, but also to pay all of Trustor's outstanding debts as they come due.

(oo)    No Material Change.  There has been no material change in the occupancy of the Property or the business, financial condition or results of operations of Trustor, the Property or, to the best of Trustor's knowledge, any tenant of the Property, from the date of the application to Lender to make the Loan, other than in connection with the regular commencement and/or, expiration of short-term leases and rental agreements ordinarily occurring as part of the business conducted on the Property and as disclosed by Trustor to Lender in Lender's underwriting process for the Loan.

(pp)    Investigation and Inquiry.  Trustor makes the representations and warranties contained this Section 5.1 following Trustor's reasonable inquiry and investigation into the matters and facts to which Trustor is attesting, and Trustor's inquiry and investigation has confirmed the accuracy of Trustor's statements made in this Section 5.1.

(qq)    Federal Reserve Regulations; Investment Company Act.  No part of the proceeds of the Loan will be used for the purpose of purchasing or acquiring any "margin stock" within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or for any other purpose that would be inconsistent with such Regulation U or any other regulation of such Board of Governors, or for any purpose prohibited by Legal Requirements or any Loan Document.  Trustor is not (i) an "investment company" or a company "controlled" by an "investment company," within the meaning of the Investment Company Act of 1940, as amended; or (ii) subject to any other federal or state law or regulation which purports to restrict or regulate its ability to borrow money.

15

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 17 of 48**

ARTICLE 6

RIGHTS AND DUTIES OF THE PARTIES

6.1.    <u>Maintenance and Preservation of the Property</u>.  Trustor shall:  (a) keep the Property in good condition and repair; (b) complete or restore promptly and in workmanlike manner the Property or any part thereof which may be damaged or destroyed (unless, if and to the extent permitted under Section 6.11 hereof, Lender elects to require that insurance proceeds be used to reduce the Secured Obligations and after such repayment the ratio of Secured Obligations to the value of the Property, as reasonably determined by Lender is the same as or lower than it was immediately before the loss or taking occurred); (c) comply and cause the Property to comply with (i) all laws, ordinances, regulations and standards, (ii) all covenants, conditions, restrictions and equitable servitudes, whether public or private, of every kind and character and (iii) all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and pertain to acts committed or conditions existing thereon, including, without limitation, any work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (d) operate and manage the Property at all times in a professional manner and do all other acts that from the character or use of the Property may be reasonably necessary to maintain and preserve its value; (e) promptly after execution, deliver to Lender a copy of any management agreement concerning the Property and all amendments thereto and waivers thereof; and (f) execute and acknowledge all further documents, instruments and other papers as Lender or Trustee deems necessary or appropriate to preserve, continue, perfect and enjoy the benefits of this Deed of Trust and perform Trustor's obligations, including, without limitation, statements of the amount secured hereby then owing and statements of no offset.  Trustor shall not:  (g) remove or demolish all or any material part of the Property; (h) alter either (i) the exterior of the Property in a manner that materially and adversely affects the value of the Property or (ii) the roof or other structural elements of the Property in a manner that requires a building permit; (i) initiate or acquiesce in any change in any zoning or other land classification that affects the Property; (j) materially alter the type of occupancy or use of all or any part of the Property; or (k) commit or permit waste of the Property.

6.2.    <u>Compliance with Laws</u>.  Trustor shall comply with all federal, state and local laws, rules and regulations applicable to the Property, including, without limitation, all zoning and building requirements and all requirements of the ADA.  Trustor shall possess and maintain in full force and effect at all times (a) all certificates of occupancy and other licenses, permits and authorizations required by applicable law for the existing use of the Property and (b) all permits, franchises and licenses and all rights to all trademarks, trade names, patents and fictitious names, if any, required by applicable law for Trustor to conduct the business(es) in which Trustor is now engaged.

6.3.    <u>Litigation</u>.  Trustor shall promptly notify Lender in writing of any litigation pending or threatened against either Trustor claiming damages in excess of $50,000 and of all pending or threatened litigation against either Trustor if the aggregate damage claims against Trustor exceed $100,000.00.

6.4.    <u>Business Structure Change, Alienation of Assets</u>.  Trustor shall not:  (a) merge or consolidate with any other entity, except when authorized to do so with the prior written consent of Lender as expressly authorized pursuant to Section 6.14 hereof; (b) make any substantial change in the nature of Trustor's business or structure; (c) acquire all or substantially all of the assets of any other entity or permit Trustor to acquire all or substantially all of the assets of any other entity; or (d) sell, lease, assign, transfer or otherwise dispose of a material part of Trustor's assets except in the ordinary course of Trustor's business.

16

EXHIBIT 2
Page 18 of 48

6.5.    Accounting Records.    Trustor shall maintain adequate books and records in accordance with the same accounting standard used by Trustor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan or other accounting standards approved by Lender. Trustor shall permit any representative of Lender, at any reasonable time and from time to time, to inspect, audit and examine such books and records and make copies of same.

6.6.    Financial Statements and Accounts.

6.6.1.    Statements Required.    During the term of the Loan or while any liabilities of Trustor to Lender under any of the Loan Documents remain outstanding and unless Lender otherwise consents in writing, Trustor shall provide to Lender or cause to be provided to Lender, each in a form acceptable to Lender, the following:

(a)    Leasing Schedule.    Not later than thirty (30) days after written request by Lender, a schedule, signed and dated by Trustor, showing the following lease information regarding each tenant:  the name of the tenant, a description of the premises, monthly or other periodic rental amount, dates of commencement and expiration of the lease, and payment status;

(b)    Balance Sheet and Annual Financial Statements.    With respect to Trustor, not later than ninety (90) days after the close of the respective fiscal years of Trustor, any guarantor, and any indemnitor, balance sheet and financial statements, including, as applicable and without limitation:  (i) balance sheet for the Property, signed and dated by Trustor; (ii) a schedule, signed and dated by Trustor, showing all revenues and expenses during such fiscal year, relating to the Property; (iii) financial statements showing all assets and liabilities of Trustor that shall be certified by a principal, managing member or general partner of Trustor as being true, correct and complete, or upon the request of Lender, audited by an independent certified public accountant; and (iv) financial statements showing all assets and liabilities of each indemnitor and guarantor under any indemnity or guarantee, which shall be certified by such guarantor or indemnitor or the principal, managing member or general partner of such indemnitor or guarantor, as being true, correct and complete, or upon the request of Lender, audited by an independent certified public accountant;

(c)    Tax Returns.    Not later than April 30th of each year, copies of all tax returns (with all schedules) or extensions filed by Trustor (or on Trustor's behalf, if Trustor is a disregarded entity), unless an extension has been obtained, but no event later than the earlier of (i) September 1st of each year or (ii) within twenty (20) days after filing;

(d)    Other Information.    From time to time, such other information with regard to Trustor or the Property as Lender may reasonably request in writing.

6.6.2.    Form; Warranty.    Trustor agrees that all financial statements to be delivered to Lender, pursuant to Section 6.6.1 hereof, regardless of whether they pertain to Trustor shall:  (a) be complete and correct; (b) present fairly the financial condition of the party; (c) disclose all liabilities that are required to be reflected or reserved against; and (d) be prepared in accordance with the same accounting standard used by Trustor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan or other accounting standards acceptable to Lender.

17

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 19 of 48**

By delivering any such financial statement, Trustor shall be deemed to warrant and represent that, as of the date of delivery of any such financial statement, there has been no material adverse change in financial condition, nor have any assets or properties been sold, transferred, assigned, mortgaged, pledged or encumbered since the date of such financial statement except as disclosed by Trustor in a writing delivered to Lender.

Trustor agrees that all leasing schedules and other information to be delivered to Lender pursuant to Section 6.6.1 hereof and this Section 6.6.2, in each case, shall not contain any misrepresentation or omission of a material fact.

6.6.3.   <u>Accounts and Primary Banking Relationships</u>.   Trustor shall establish its primary deposit and operating accounts with Lender.

6.7.   <u>Costs, Expenses and Fees</u>.   Trustor agrees to pay to Lender immediately and upon demand all costs and expenses incurred by Trustee and Lender in the enforcement of the terms and conditions of this Deed of Trust (including, without limitation, statutory trustee's fees, court costs and attorneys' fees, whether incurred in litigation or not) with interest from the date of expenditure until said sums have been paid at the rate of interest applicable to the principal balance of the Note as specified therein. Trustor shall pay to Lender the full amount of all costs and expenses, including, without limitation, attorneys' fees (i.e., outside counsel), incurred by Lender in connection with: (a) appraisals and inspections of the Property or Collateral required by Lender as a result of (i) a Transfer (as hereinafter defined) or proposed Transfer, or (ii) an Event of Default; (b) any acts performed or proposed to be performed by Lender at Trustor's request or wholly or partially for the benefit of Trustor (including, without limitation, the preparation or review of amendments, consents, authorizations, assumptions, waivers, releases, reconveyances, estoppel certificates or statements of amounts owing under any Secured Obligation); (c) when permissible pursuant to applicable law and without limitation to Lender's rights under sub-clauses (a), (b), and (d) of this Section 6.7, any out-of-pocket expenses or costs incurred by Lender in taking any action prudent or reasonably necessary, in each case, in Lender's judgment to protect or preserve the priority of, in each case, Lender's liens securing the Secured Obligations; and (d) when permissible pursuant to applicable law and without limitation to Lender's rights under the preceding sub-clauses (a), (b), and (c) of this Section 6.7, any out-of-pocket costs and expenses incurred by Lender and its agents in responding to third-party legal process, subpoenas, or similar legal demands received by Lender and its agents as a result of or in relation to, in each case, the Secured Obligations, the Loan Documents, or Trustor's business with Lender, including, without limitation charges, expenses, attorney's fees and costs upon any appeal, and in any bankruptcy proceedings and in any arbitration proceeding (including, without limitation, any adversary proceeding, contested matter or motion) or otherwise incurred by Lender as a result thereof. Trustor shall pay all costs and expenses arising under this Section 6.7 immediately upon demand by Lender. Any administrative fees owed to Lender pursuant to the Loan Documents, including, without limitation, those owed pursuant to Section 6.14 hereof (but excluding 6.14.4(a)) shall be due and payable immediately upon Trustor requesting the action from Lender and shall be non-refundable, irrespective of the disposition of the request by Lender. Trustor shall have no expectation that Lender commence review of any matter or request prior to Trustor paying the required fee pursuant to the Loan Documents. In addition and without limitation to Lender's right to recover all its out-of-pocket expenses from Trustor on demand as provided in this Section 6.7, Lender shall have the right to require Trustor to provide a legal deposit (i.e., payment in advance) before engaging outside counsel to do any legal work and to refresh that deposit, at Lender's request, over the pendency of the matter. Trustor shall have no expectation that Lender commence any legal work with outside counsel prior to Trustor paying any legal deposit requested by Lender. For the avoidance of doubt, any reference in the Loan Documents to out-of-pocket costs or expenses incurred by Lender shall be construed, without limitation to other

18

EXHIBIT 2
Page 20 of 48

kinds of costs and expenses incurred by Lender, to include attorneys' fees (i.e., outside counsel). For the further avoidance of doubt, no other provision regarding Lender's right to payment of fees, costs, and expenses from Trustor contained in either (i) this Deed of Trust or (ii) any other Loan Document, in each case, may be construed to limit Lender's rights pursuant to this Section 6.7, including, without limitation, Lender's right to require an advance deposit for legal fees (it being understood that any other provision of the Loan Documents pertaining to Lender's right to payment of fees, costs, and expenses, from Trustor in each case, shall be construed consistent with this Section 6.7). Without limiting the generality of the immediately preceding sentence, no provision specifically requiring payment of a fee, cost, or expense to Lender by Trustor, by being so affirmatively and specifically stated in any Loan Document, may be construed to limit Lender's rights to payment pursuant to this Section 6.7 for any fee, cost, or expense, in each case, provided for by this Section 6.7, but not so specifically stated. In the event that any party brings any suit or other proceeding with respect to the subject matter or enforcement of this Deed of Trust, including without limitation, in appellate proceedings or in any action or participation in, or in connection with, any case or proceeding under Chapter 7, 11 or 13 of the Bankruptcy Code, 11 United States Code Sections 101 et seq., or any successor statutes, the prevailing party (as determined by the court, agency or other authority before which such suit or proceeding is commenced) shall, in addition to such other relief as may be awarded, be entitled to recover reasonable attorneys' fees, expenses and costs of investigation.

6.8.    No Other Liens, Encumbrances and Charges. Without obtaining Lender's prior written consent pursuant to Section 6.14 (which consent shall be granted or withheld in Lender's sole and absolute discretion and at Trustor's sole cost and expense), Trustor shall not incur against the Property any debt, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation), other than the Loan and trade debt incurred in the ordinary course of Trustor's business (with any such trade debt to be paid within sixty (60) days of the date such debt was incurred and, in any event, prior to delinquency). Trustor shall immediately discharge by bonding or otherwise any lien, charge or other encumbrance that attaches to the Property in violation of Section 6.14. Subject to Trustor's right to contest such matters under this Deed of Trust or as expressly permitted in the Loan Documents, Trustor shall pay when due all obligations secured by or reducible to liens and encumbrances that shall now or hereafter encumber or appear to encumber all or any part of the Property or any interest therein, whether senior or subordinate hereto, including, without limitation, all claims for work or labor performed, or materials or supplies furnished, in connection with any work of demolition, alteration, repair, improvement or construction of or upon the Property, except such as Trustor may in good faith contest or as to which a bona fide dispute may arise (provided that provision is made to the satisfaction of Lender for eventual payment thereof in the event that Trustor is obligated to make such payment and that any recorded claim of lien, charge or other encumbrance against the Property is immediately discharged by bonding or otherwise).

6.9.    Taxes and Other Liabilities. Trustor shall pay and discharge when due any and all indebtedness, obligations, assessments and taxes, both real and personal and including federal and state income taxes and state and local property taxes and assessments by or before the due date. Trustor shall promptly provide to Lender copies of all tax and assessment notices pertaining to the Property. Trustor hereby authorizes Lender to obtain, at Trustor's expense, a tax service contract which shall provide tax information on the Property to Lender for the term of the Loan and any extensions or renewals of the Loan.

6.10.    Insurance Coverage. Trustor shall insure the Property against loss or damage by fire and such other hazards as Lender shall from time to time require, however, not to exceed full replacement cost; provided, however, (a) Lender, at Lender's election, may only require flood insurance if all or any portion of the Improvements located on the Property is or becomes located in a special

19

EXHIBIT 2
Page 21 of 48

flood hazard area; and (b) Lender, at Lender's election, may only require earthquake insurance if all or any portion of the Property is or becomes located in an earthquake fault zone. Trustor shall also carry public liability insurance and such other insurance as Lender may require, including, without limitation, business interruption insurance or loss of rents insurance. Such policies shall contain a standard mortgage clause naming Lender and its successors and assigns as a loss payee or additional insured, as appropriate, and requiring at least thirty (30) days' prior notice to the holder at termination or cancellation. Trustor shall maintain all required insurance at Trustor's expense, in companies, and in substance and form satisfactory to Lender, including, without limitation, an agreed amount endorsement. Neither Lender nor Trustee, by reason of accepting, rejecting, approving or obtaining insurance shall incur any liability for: (c) the existence, nonexistence, form or legal sufficiency of any insurances; (d) the solvency of any insurer; or (e) the payment of claims.

If Trustor fails to maintain and deliver to Lender the original policies or certificates of insurance required by this Deed of Trust, upon ten (10) days' prior notice to Trustor, Lender may procure such insurance at Trustor's sole cost and expense. Trustor agrees to deliver to Lender promptly upon receipt, but in any event no later than thirty (30) days' prior to the termination of any of such insurance policies, a renewal policy (or certificate of insurance evidencing the same) satisfying the requirements of this Deed of Trust.

## FORCED PLACE INSURANCE NOTICE.

THIS NOTICE IS PROVIDED PURSUANT TO ORS 746.201(1):

WARNING: UNLESS BORROWER PROVIDES LENDER WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY THIS AGREEMENT, LENDER MAY PURCHASE INSURANCE AT BORROWER'S EXPENSE TO PROTECT LENDER'S INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT BORROWER'S INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE LENDER PURCHASES MAY NOT PAY ANY CLAIM BORROWER MAKES OR ANY CLAIM MADE AGAINST BORROWER. BORROWER MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT BORROWER HAS OBTAINED PROPERTY COVERAGE ELSEWHERE.

BORROWER IS RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY LENDER. THE COST OF THIS INSURANCE MAY BE ADDED TO BORROWER'S CONTRACT OR THE LOAN BALANCE. IF THIS COST IS ADDED TO BORROWER'S CONTRACT OR THE LOAN BALANCE, THE INTEREST RATE PAYABLE UNDER THE DEFAULT RATE WILL APPLY TO THE ADDED AMOUNT. THE EFFECTIVE DATE OF THE COVERAGE MAY BE THE DATE BORROWER'S PRIOR COVERAGE LAPSED OR THE DATE BORROWER FAILED TO PROVIDE PROOF OF COVERAGE.

THE COVERAGE PURCHASED BY LENDER MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE BORROWER CAN OBTAIN ON ITS OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR MANDATORY LIABILITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW.

6.11.    Insurance and Condemnation Proceeds.

20

**EXHIBIT 2**
**Page 22 of 48**

(a)    <u>Assignment of Claims</u>.  Trustor absolutely and irrevocably assigns to Lender all of the following rights, claims and amounts (collectively, the "**Claims**"), all of which shall be paid to Lender:  (i) all awards of damages and all other compensation payable directly or indirectly by reason of a condemnation or proposed condemnation for public or private use affecting all or any part of, or any interest in, the Property; (ii) all other claims and awards for damages to or decrease in value of all or any part of, or any interest in, the Property; (iii) all proceeds of any insurance policies payable by reason of loss sustained to all or any part of the Property; and (iv) all interest which may accrue on any of the foregoing.  Trustor shall give Lender prompt written notice of the occurrence of any casualty affecting, or the institution of any proceedings for eminent domain or for the condemnation of the, Property or any portion thereof.  Lender may, in each case, commence, appear in, defend or prosecute any Claim, and may adjust, compromise, and settle all Claims, but shall not be responsible for any failure to commence, appear in, defend, prosecute or collect any such Claim regardless of the cause of the failure.  All awards, proceeds, and other sums described herein shall be payable to Lender.

(b)    <u>Application of Proceeds; No Event of Default</u>.  (1) So long as no Event of Default has occurred and is continuing at the time of Lender's receipt of the proceeds of the Claims (the "**Proceeds**") and no Event of Default occurs thereafter, Lender shall apply the Proceeds in the following order of priority:  <u>First</u>, to Lender's expenses in settling, prosecuting or defending the Claims; <u>Second</u>, to the repair or restoration of the Property; and <u>Third</u>, to Trustor if and only if the repair or restoration of the Property has been completed to the satisfaction of Lender, but otherwise, to the Secured Obligations, in any order, without suspending, extending or reducing any obligation of Trustor to make installment payments if the repair or restoration of the Property has not been completed.  (2) Notwithstanding the foregoing, Lender shall not have any obligation to make any Proceeds available for the repair or restoration of the Property unless and until all the following conditions have been satisfied in Lender's sole and absolute discretion:  (i) delivery to Lender of the Proceeds plus any additional amount that is needed to pay all costs of the repair or restoration (including, without limitation, taxes, financing charges, insurance and rent during the repair period); (ii) establishment of an arrangement for lien releases and disbursement of funds acceptable to Lender; and (iii) delivery to Lender in form and content acceptable to Lender of all of the following:  (aa) plans and specifications for the work; (bb) a contract for the work, signed by a contractor acceptable to Lender; (cc) a cost breakdown for the work; (dd) if required by Lender, a payment and performance bond for the work; (ee) evidence of the continuation of all Leases unless consented to in writing by Lender; (ff) evidence that, upon completion of the work, the size, capacity, value, and income coverage ratios for the Property will be at least as great as those which existed immediately before the damage or condemnation occurred; and (gg) evidence of the satisfaction of any additional conditions that Lender may reasonably establish to protect Lender's security.  Trustor acknowledges that the specific conditions described above are reasonable.

(c)    <u>Application of Proceeds; Event of Default</u>.  If an Event of Default has occurred and is continuing at the time of Lender's receipt of the Proceeds or if an Event of Default occurs at any time thereafter, Lender may, at Lender's absolute discretion and regardless of any impairment of security or lack of impairment of security, but subject to applicable law governing use of the Proceeds, if any, apply all or any of the Proceeds to Lender's expenses in settling, prosecuting or defending the Claims and then apply the balance to the Secured Obligations in any order without suspending, extending or reducing any obligation of Trustor to make installment payments, and may release all or any part of the Proceeds to Trustor upon any conditions Lender chooses.

6.12.    <u>Defense and Notice of Losses, Claims and Actions</u>.  Trustor shall protect, preserve and defend the Property and title to and right of possession of the Property, the security and priority of this Deed of Trust, and the rights and powers of Lender and Trustee hereunder, in each case, at

21

**EXHIBIT 2**
**Page 23 of 48**

Trustor's sole expense against all adverse claims, whether the claim:  (a) is against a possessory or non-possessory interest; (b) arose prior or subsequent to the date set forth in the preamble; or (c) is senior or junior to Trustor's or Lender's rights.  Trustor shall provide Lender and Trustee prompt notice in writing of the assertion of any claim, of the filing of any action or proceeding, of the occurrence of any damage to the Property and of any condemnation offer or action.

6.13.    Right of Inspection.  Lender and its independent contractors, agents and employees may enter the Property from time to time at any reasonable time for the purpose of inspecting the Property and ascertaining Trustor's compliance with the terms of this Deed of Trust.  Lender will use commercially reasonable efforts to assure that Lender's entry upon and inspection of the Property will not materially and unreasonably interfere with the business or operations of Trustor's tenants on the Property.

6.14.    Transfer of Property or Interests in Trustor.

6.14.1.    Prohibition.  Trustor acknowledges that Lender has relied upon the principal(s) of Trustor and such principal's or principals' experience in owning and operating properties similar to the Property in connection with the closing of the Loan.  Accordingly, except pursuant to the prior written consent of Lender, which Lender may withhold, delay, or condition in Lender's sole discretion (including, without limitation, pursuant to the terms of Section 6.14.4 hereof), Trustor shall not cause or permit any Transfer (as defined herein) of, in each case, itself (i.e., the Trustor), the Property, the Collateral (except for equipment and inventory in the ordinary course of its business, with respect to the Collateral only), or this Deed of Trust.   "**Transfer**" means any:  (a) sale or exchange; (b) mortgage, pledge, hypothecation, lien, or encumbrance; (c) assignment, including, without limitation, assignment by operation of law or for the benefit of creditors or the delegation of duties; (d) direct or indirect conveyance, transfer, or disposition, including, without limitation, any direct transfer, grant, or release of title or legal ownership and any indirect transfer through the use of a nominee, trustee, or receiver (other than a receiver appointed at Lender's request); (e) direct or indirect change of control of the Trustor through any means, including without limitation, serial transactions, contracts, or a change in the ultimate control or beneficial ownership of Trustor (including, without limitation, any transfer of or by, in each case, (i) a general or limited partnership interest; (ii) stock, shares, or other equity; (iii) issuance of new or treasury stock, shares, or other equity or changes in voting rights or the creation of a new class of stock, shares, or other equity interests, in each case, that, whether through one action or a series of actions, effects a direct or indirect change of control in an entity; (iv) a limited liability company or membership interest; (v) direct or indirect control of a trust; (vi) interest in a joint venture contract; (vii) an Unauthorized Amendment made or permitted in violation of clause (j) of Section 4.4 hereof; or (viii) any other interest analogous or otherwise similar to items (i)-(vii) of this list), as well as changing of a key control person, whether legal or natural, relied upon by Lender as provided in this Section 6.14, such as, without limitation, the naming a new general partner of a partnership or manager or managing member of a limited liability company); and (f) any action, transfer, or event of similar effect to the preceding list of items (a)-(e), and the meaning of the meaning of Transfer shall include any of the foregoing circumstances listed in (a)-(f) whether occurring, in each case, voluntarily, involuntarily, by operation of law, through one action or event, or through a series of transactions, legal transfers, or other actions or events even if each individually would not constitute a change of (1) control in or (2) beneficial ownership of Trustor but as a series would constitute a Transfer.  If a Transfer is made without the prior written consent of Lender (including, without limitation, any Transfer requiring Lender's prior written consent under Section 6.14.2 hereof), Lender shall have the absolute right at its option, without prior demand or notice, to declare all of the Secured Obligations immediately due and payable, except to the extent prohibited by applicable law, and to pursue its rights and remedies under Article 7 hereof.  Lender's consent to one such Transfer shall apply only to the Transfer consented to

22

**EXHIBIT 2**
**Page 24 of 48**

in that instance and shall not be deemed to be a waiver of the right to require prior written consent to future or successive Transfers.  Without limiting the generality of the foregoing provisions of this Section 6.14.1, the capitalized term "**Assignment**" refers to the subset of Transfers encompassing:  (i) any assignment of Trustor's interest in this Deed of Trust, in each case, including, without limitation, an assignment by operation of law, and (ii) any delegation of duties by Trustor under this Deed of Trust. Unless Lender, in writing, subsequently ratifies an Assignment made contrary to this Section 6.14, any Assignment by Trustor, whether voluntarily or involuntarily, made contrary to this Section (including, without limitation, any Assignment requiring Lender's prior written consent under Section 6.14.2 hereof) shall be null and void *ab initio*.  Lender's consent to or ratification of, in each case, one such Assignment shall apply only to the Assignment consented to or ratified in that instance and shall not be deemed to be a waiver of the right to require prior written consent to future or successive Assignments.  With regard to any proposed Transfer or Assignment, or other assumption, substitution, or similar action provided for in this Section 6.14 or in Sections 7.1(m)-7.1(p) hereof, in each case, irrespective of whether Lender's consent is required for such action, Trustor shall (i) comply with the provisions of Section 7.1(o) hereof and (ii) provide to Lender or cause to be provided to Lender, in each case, at Lender's request, any information required by Section 6.14.4 hereof (it being understood that it is Lender's prerogative to review any proposed Transfer or Assignment, or other assumption, substitution, or similar action, unless exempt under the limited exception pursuant to Section 7.1(o) hereof applicable only to a Trustor that is a Public Company (as defined in Section 7.1(o)), to allow Lender to determine proper classification and disposition of the proposed action, as well as fees or reimbursements owed, if any, pursuant to, in each case this Section 6.14, Section 6.7 hereof, and Sections 7.1(m)-7.1(p) hereof.

      6.14.2.  <u>Other Permitted Transfers</u>.  Notwithstanding and without limiting the generality of the foregoing Section 6.14.1, the following actions shall be permitted subject to the terms of (i) this Section 6.14.2 and (ii) the terms of Section 6.14.1 with respect to any action that requiring Lender's prior written consent that is taken without such consent (e.g., regarding (x) the definition of Transfer, (y) Assignments that are void, and (z) Lender's rights and remedies, including, without limitation, acceleration, payment of the prepayment fee).  In the case of the actions described in clauses (a) and (c) of this Section 6.14.2, the actions described therein shall be permitted only with the prior written consent of Lender, which consent shall not be unreasonably withheld.  In the case of actions described in clause (b) of this Section 6.14.2, Lender's consent shall not be necessary; however, Trustor shall comply with all applicable terms of this Deed of Trust, including, without limitation, the terms this Section 6.14, Section 6.7 hereof, and of Sections 7.1(m)-7.1(p) regarding Lender's rights to:  (i) review the proposed action and determine its proper classification, (ii) request and receive any due diligence information as provided by Section 6.14.4 hereof, and (iii) receive an advance deposit for or reimbursement from Trustor, in each case, of any out-of-pocket expenses Lender may incur.  In addition, any Transfer contemplated pursuant to clauses (a), (b) and (c) of this Section 6.14.2, shall be permitted, subject to the provisions of this Section 6.14, only so long as Trustor remains as a legal person or, if required, e.g., in the case of a joint venture or general partnership, is reconstituted, following such Transfer, properly authorized hereunder, and so long as those persons responsible for the management of the Property and Trustor remain unchanged following such gift or that any replacement management is approved by Lender pursuant to the terms hereof.

        (a)      Without limiting the provisions of Sections 7.1(m)-7.1(p) hereof, the direct one-time transfer (i.e., of the interest itself, and not by a higher-level change in control) of up to forty-nine (49%) of:  the (i) limited partnership interests in any Trustor that is a limited partnership; (ii) membership interests in any Trustor that is a limited liability company (other than the membership interests (x) of a member that is the manager or managing member of such Trustor or (y) that otherwise enables direct or

23

**EXHIBIT 2**
**Page 25 of 48**

indirect control of such Trustor, which, in each case, shall not be transferable without the prior written consent of Lender, which may be withheld, conditioned or delayed by Lender in its sole and absolute discretion); or (iii) voting stock in any Trustor that is a corporation (other than preferred, special, or similar stock that, despite holding less than 50% of the corporation's total stock allows for direct or indirect control of, in each case, the corporation or its board of directors or other governing body, which shall not be transferable without the prior written consent of Lender, which may be withheld, conditioned or delayed by Lender in its sole and absolute discretion).

(b)     Without limiting the provisions of Sections 7.1(m)-7.1(p) hereof, any involuntary transfer caused by the death or court-adjudicated incapacity of any natural person that is (i) a general partner, shareholder, joint venturer or member of Trustor; (ii) any manager or managing member of Trustor if Trustor is a limited liability company; and (iii) a beneficial owner or other natural person that controls a trust.  For the avoidance of doubt, (x) this Section 6.14.2(b) applies only to involuntary transfers and not to planned estate gifts, which are provided for by Section 6.14.2(c) hereof and (y) this Section 6.14.2(b) applies to involuntary transfers caused by death or court-adjudicated incapacity of natural persons in the roles specified in this Section 6.14.2(b) and not where Trustor is a natural person (i.e., one individual), which is provided for in Section 7.1(p) hereof.

(c)     Without limiting the provisions of Sections 7.1(m)-7.1(p) hereof, gifts for estate planning purposes of any natural person's interests in Trustor or in any of Trustor's general partners, members or joint venturers to the spouse or any lineal descendant of such individual, or to a properly constituted trust for the benefit of any one or more of such individual, spouse or lineal descendant.  Notwithstanding the foregoing provisions of this Section 6.14.2(c), nothing in this Section 6.14.2(c) authorizes title to the Property to be transferred without Lender's prior written consent that would be otherwise required, in each case, under Section 6.14.1 hereof or any other provision this Deed of Trust.

6.14.3.  Lender's Written Consent or Ratification:  As used in this Section 6.14, any reference to Lender's written consent, approval, or ratification of a Transfer, in each case, requires a writing made by Lender executed by an officer of Lender holding the title Executive Vice President or higher.

6.14.4.  Transfer Costs:  In connection with any Transfer requiring Lender's consent:

(a)     Trustor shall pay an assumption fee in the amount of one percent (1%) of the then unpaid principal balance of the Loan, which shall be due and payable at the closing of the Transfer transaction.

(b)     Trustor shall pay to Lender both (i) an administrative fee of one thousand five hundred dollars ($1,500.00) for Lender processing the Transfer request (irrespective of the disposition thereof) and (ii) all Lender's out-of-pocket costs (including, without limitation, any out-of-pocket legal expenses paid to outside counsel and the cost of any appraisal); and

24

**EXHIBIT 2**
**Page 26 of 48**

(c)      The cost of either (i) a "date down" endorsed to Lender's title insurance policy, including any additional endorsements required by Lender, or (ii) a new title insurance policy, satisfactory to Lender in its discretion, if a "date down" is not available.

In addition to the above-stated, Trustor shall comply with all Lender's policies and procedures in connection with providing its consent to a Transfer, including but not limited to (i) Trustor and its transferee entering an assumption agreement acceptable to Lender and providing, as determined by Lender in Lender's sole and absolute discretion, (x) a reaffirmation of guarantee by a then guarantor and/or (y) a substitute guarantor (acceptable to Lender in Lender's sole and absolute discretion) who shall sign a guarantee agreement acceptable to Lender (in Lender's sole and absolute discretion) and (ii) compliance with the provisions of Sections 7.1(o) hereof.   Without limiting the generality of the foregoing sentence of this paragraph of this Section 6.14.4, Trustor shall require, in each case, any prospective recipient of the Transfer, prospective new guarantor, prospective new member, partner, or shareholder of Trustor, or prospective new joint venturer to comply with any requests for due diligence information regarding such prospective new interest holder in, as applicable, Trustor or the Property.  Nothing in this Section 6.14 may be construed to require Lender to accept any Transfer, Assignment, assumption or similar action where the prospective person receiving or becoming an interest holder in Trustor or the Property or assuming a role of guarantor is a person with which Lender may not conduct business pursuant to law applicable to Lender (a "**Prohibited Person**"), and Lender shall not be deemed to have breached its obligations under any of the Loan Documents for refusing to consent to, approve, or honor any action that requires or may foreseeably require Lender in the future to conduct business with a Prohibited Person.

Nothing in this Section 6.14.4 limits Lender's discretion to withhold, delay, or condition, in each case, its consent pursuant to the provisions of Sections 6.14.1 and 6.14.2 hereof, including, without limitation, Lender's right to:  (i) require other conditions not provided for in this Section 6.14.4; (ii) make decisions regarding Lender's assessment of the creditworthiness of any prospective substitute guarantor or party assuming the obligations hereunder as a result of a proposed Transfer; (iii) require additional conditions related to its credit evaluation of any Transfer or party thereto; (iv) require execution of additional documentation; or (v) refer matters to outside counsel at Trustor's expense to assist with reviewing or consummating any proposed Transfer.

6.15.    <u>Acceptance of Trust; Powers and Duties of Trustee</u>.   Trustee accepts this trust when this Deed of Trust is recorded.  From time to time upon written request of Lender and presentation of this Deed of Trust, or a certified copy thereof, for endorsement, and without affecting the personal liability of any person for payment of any indebtedness or performance of any Secured Obligation, Trustee may, if authorized by Lender, without liability therefor and without notice:  (a) reconvey all or any part of the Property; (b) consent to the making of any map or plat of the Property; (c) join in granting any easement on the Property;  (d) join in any declaration of covenants and restrictions; or (e) join in any extension agreement or any agreement subordinating the lien or charge of this Deed of Trust.  Nothing contained in the immediately preceding sentence shall be construed to limit, impair or otherwise affect the rights of Trustor in any respect.  Except as may otherwise be required by applicable law, Trustee or Lender may from time to time apply to any court of competent jurisdiction for aid and direction in the execution of the trusts hereunder and the enforcement of the rights and remedies available hereunder, and Trustee or Lender may obtain orders or decrees directing or confirming or approving acts in the execution of said trusts and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding (including, without limitation, actions in which Trustor, Lender or Trustee shall be a party) unless held or commenced and maintained by Trustee under this Deed of Trust.  Trustee shall not be obligated to perform any act required of it

25

**EXHIBIT 2**
**Page 27 of 48**

hereunder unless the performance of the act is requested in writing and Trustee is reasonably indemnified and held harmless against loss, cost, liability and expense.

6.16.   Compensation of Trustee.  Trustor shall pay to Trustee reasonable compensation and reimbursement for services and expenses in the administration of this trust, including, without limitation, reasonable attorneys' fees.   Trustor shall pay all indebtedness arising under this Section 6.16 immediately upon demand by Trustee or Lender.

6.17.   Exculpation.  Lender shall not directly or indirectly, be liable to Trustor or any other person as a consequence of:  (a) the exercise of the rights, remedies or powers granted to Lender in this Deed of Trust; (b) the failure or refusal of Lender to perform or discharge any obligation or liability of Trustor under any agreement related to the Property or under this Deed of Trust; or (c) any loss sustained by Trustor or any third party resulting from Lender's failure to lease the Property after an Event of Default or from any other act or omission of Lender in managing the Property after an Event of Default unless the loss is caused by the willful misconduct and bad faith of Lender.   No liability contrary to the terms of this Section 6.17 may be asserted or enforced against Lender, and Trustor expressly waives all such liability, and to the fullest extent permitted by applicable law, releases Lender therefrom.

6.18.   Indemnity.  (1) Without in any way limiting any other indemnity contained in this Deed of Trust, Trustor agrees to defend, indemnify and hold harmless Trustee and the Lender Group (hereinafter defined) from and against any claim, loss, damage, cost, expense or liability directly or indirectly arising out of:  (a) the making of the Loan, except for violations of banking laws or regulations by the Lender Group, but subject to the terms of clause (g) of this Section 6.18; (b) this Deed of Trust; (c) the execution of this Deed of Trust or the performance of any act required or permitted hereunder or by law; (d) any failure of Trustor to perform its obligations under this Deed of Trust or the other Loan Documents; (e) any alleged obligation or undertaking on the Lender Group's part to perform or discharge any of the representations, warranties, conditions, covenants or other obligations contained in any other document related to the Property; (f) any act or omission by Trustor or any contractor, agent, employee or representative of Trustor with respect to the Property; or (g) any prohibited transaction, in the sale of a prohibited loan, or in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Lender's sole discretion (it being understood that the indemnification owed under this Section 6.18 shall not be limited by clause (a) of this Section 6.18 hereof to the extent a prohibited transaction, sale of a prohibited loan, or transaction with a Prohibited Person may otherwise fall within clause (a) of this Section 6.18; and (h) an Event of Default under Article 7 hereof, including, without limitation, Lender's exercise of rights and remedies provided pursuant to Article 7 hereof.  (2) Notwithstanding the foregoing provisions of this Section 6.18(1), this indemnity shall not include any claim, loss, damage, cost, expense or liability directly or indirectly arising out of the gross negligence or willful misconduct of any member of the Lender Group or Trustee, or any claim, loss, damage, cost, expense or liability incurred by the Lender Group or Trustee arising from any act or incident on the Property occurring after the full reconveyance and release of the lien of this Deed of Trust on the Property; however, this indemnity shall include, without limitation: (aa) all consequential and incidental damages (including, without limitation, any third party tort claims or governmental claims, fines or penalties against Trustee or the Lender Group) and (bb) all court costs and attorneys' fees (including, without limitation, expert witness fees) paid or incurred by Trustee or the Lender Group, "**Lender Group**," as used in this Deed of Trust, shall mean (i) Lender (including, without limitation, any participant in the Loan); (ii) any entity controlling, controlled by or under common control with Lender; (iii) the directors, officers, employees, and agents of Lender and such other entities of the Lender Group; and (iv) the successors, heirs and assigns of the entities and persons described in foregoing clauses (i) through (iii).  Trustor shall pay immediately upon Trustee's or Lender's demand any amounts owing

26

**EXHIBIT 2**
**Page 28 of 48**

under this indemnity. Trustor agrees to use legal counsel acceptable to Trustee and the Lender Group in any action or proceeding arising under this indemnity. IF THE TRUSTOR IS ALSO THE BORROWER, THE PROVISIONS OF THIS SECTION 6.18 SHALL SURVIVE THE TERMINATION AND RELEASE OF THIS DEED OF TRUST, BUT SUCH PROVISIONS SHALL REMAIN SUBJECT TO ANY LIMITATIONS SET FORTH IN THE NOTE.

6.19.    Substitution of Trustee. From time to time, by a writing signed and acknowledged by Lender and recorded in the official records of the county in which the Property is located, Lender may appoint another trustee to act in the place and stead of Trustee or any successor. Such writing shall set forth any information required by applicable law. The execution of such instrument of substitution shall discharge Trustee herein named and shall appoint the new trustee as the trustee hereunder with the same effect as if originally named trustee herein. A writing recorded pursuant to the provisions of this Section 6.19 shall be conclusive proof of the proper substitution of such new trustee.

6.20.    Releases, Extensions, Modifications and Additional Security. Without notice to or the consent, approval or agreement of any persons or entities having any interest at any time in the Property or in any manner obligated under the Secured Obligations (the "**Interested Parties**"), Lender may, from time to time: (a) fully or partially release any person or entity from liability for the payment or performance of any Secured Obligation; (b) extend the maturity of any Secured Obligation; (c) make any agreement with Trustor increasing the amount or otherwise altering the terms of any Secured Obligation; (d) accept additional security for any Secured Obligation; or (e) release all or any portion of the Property, Collateral and other security for any Secured Obligation. None of the foregoing actions releases or reduces the personal liability of any of the Interested Parties, or releases or impairs the priority of the lien of this Deed of Trust upon the Property.

6.21.    Reconveyance. Upon Lender's written request, and upon surrender of this Deed of Trust or certified copy thereof and any note, instrument or instruments setting forth all obligations secured hereby to Trustee for cancellation, Trustee shall reconvey, without warranty, the Property or that portion thereof then held hereunder. The recitals of any matters of fact or facts in any reconveyance executed hereunder shall be conclusive proof of the truthfulness thereof. To the extent permitted by law, the reconveyance may describe the grantee as "the person or persons legally entitled thereto." Neither Lender nor Trustee has any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance. When the Property has been fully released reconveyed, the last such reconveyance shall operate as a reassignment of all future rents, issues and profits of the Property to the person or persons legally entitled thereto.

6.22.    Subrogation. If and in each case, (i) any or all of the proceeds of the Note have been used to pay, reduce, extinguish, extend or renew any indebtedness heretofore existing against the Property or (ii) if Lender pays or discharges any lien or encumbrance against or affecting the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property (collectively, "**Subrogated Interests**") heretofore held by, or in favor of, the holder of such indebtedness or other Subrogated Interest. If any Subrogated Interest exists, without adversely affecting the priority of this Deed of Trust and the Secured Obligations, any such Subrogated Interest shall be construed in favor of Lender, whether or not it is of record, or has been released, or has been paid in whole or in part. Nothing in this Section 6.22 may be construed to (x) limit the rights and remedies of Lender under, in each case, this Deed of Trust or any of the other Loan Documents or (y) make the Lender liable for any act or omission of any person previously entitled to enforce or collect amounts due in relation to any Subrogated Interest.

27

**EXHIBIT 2**
**Page 29 of 48**

6.23.   Sale or Participation of Loan.  Trustor agrees that Lender may at any time sell, assign, participate or securitize all or any portion of Lender's rights and obligations under this Deed of Trust, and that any such sale, assignment, participation or securitization may be to one or more financial institutions or other entities, to private investors, and/or into the public securities market, in Lender's sole discretion.  Trustor further agrees that Lender may disseminate to any such actual or potential purchaser(s), assignee(s) or participant(s) all documents and financial and other information heretofore or hereafter provided to or known to Lender with respect to:  (a) the Property and its operation; and/or (b) any party connected with the Loan (including, without limitation, Trustor, any partner or member of Trustor, or any constituent partner or member of Trustor).  In the event of any such sale, assignment, participation or securitization, Lender and the other parties to the same shall share in the rights and obligations of Lender set forth in this Deed of Trust as and to the extent they shall agree among themselves.  In connection with any such sale, assignment, participation or securitization, Trustor further agrees that this Deed of Trust shall be sufficient evidence of the obligations of Trustor to each purchaser, assignee or participant, and Trustor within fifteen (15) days after request by Lender, deliver an estoppel certificate verifying for the benefit of Lender and any other party designated by Lender the status and the terms and provisions of the Loan in form and substance acceptable to Lender, and enter into such amendments or modifications to this Deed of Trust as may be reasonably required in order to facilitate any such sale, assignment, participation or securitization without impairing Trustor's rights or increasing Trustor's obligations.  The indemnity obligations of Trustor under this Deed of Trust shall also apply with respect to any purchaser, assignee or participant.

6.24.   ERISA.

(a)     Trustor shall not engage in any transaction which would cause any obligation, or action taken or to be taken, hereunder (or the exercise by Lender of any of its rights under the Note, this Agreement or the other Loan Documents) to constitute a "prohibited transaction" (as defined in Section 406 of ERISA or Section 4975 of the Code) for which there is no applicable statutory or administrative exemption.

(b)     Trustor shall not (i) maintain, sponsor, contribute to or become obligated to contribute to, or suffer or permit any ERISA Affiliate of Trustor to, maintain, sponsor, contribute to or become obligated to contribute to, any Plan or any Welfare Plan that provides any benefits to any former employee (or the spouse or dependent of any such former employee) of the Trustor or any of its ERISA Affiliates after such employee's retirement or termination of employment (other than COBRA continuation coverage required to be provided pursuant to Sections 601 through 607 of ERISA or Section 4980B of the Code) or (ii) permit the assets of Trustor to become "plan assets" within the meaning of the Plan Asset Regulation.

(c)     Trustor shall deliver to Lender such certifications or other evidence from time to time throughout the Term, as requested by Lender in its sole discretion, that (A) Trustor is not and does not maintain a Plan or a "governmental plan" within the meaning of Section 3(32) of ERISA; (B) Trustor is not subject to state statutes regulating investments and fiduciary obligations with respect to governmental plans; and (C) the assets of Trustor do not constitute "plan assets" within the meaning of the Plan Asset Regulation.

28

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 30 of 48**

ARTICLE 7

DEFAULT AND REMEDIES

7.1.     <u>Event of Default</u>.  An "**Event of Default**" occurs automatically upon the occurrence of any one or more of the following events:

(a)     <u>Monetary</u>.  Borrower or Trustor (as applicable) fails to, in any case:  (i) pay when due any sums that by their express terms require immediate payment without any grace period or sums that are payable on the Maturity Date hereunder or under any of the other Loan Documents secured by this Deed of Trust; or (ii) pay within five (5) days when due any other sums payable hereunder or under any of the other Loan Documents secured by this Deed of Trust, including, without limitation, any monthly payment due under the Note.

(b)     <u>Borrower's Performance of Non-Monetary Obligations Under Other Loan Documents</u>.    If Borrower fails to observe, perform or discharge any of its obligations, covenants, conditions or agreements to Lender or any third person, other than Borrower's payment obligations, under any of the Loan Documents (excluding this Deed of Trust); provided that Borrower's breach or failure to perform obligations to a third person shall be a default hereunder only where such breach or failure may materially affect Borrower's assets or Borrower's ability to repay the Loan or perform its obligations under the Loan Documents.

(c)     <u>Trustor's Performance of Non-Monetary Obligations Under Deed of Trust</u>. Trustor fail to observe, perform or discharge any of Trustor's obligations, covenants, conditions or agreements, other than Trustor's payment obligations, under this Deed of Trust, other than as specifically provided in this Section 7.1, and (i) such failure shall remain uncured for thirty (30) days after written notice thereof shall have been given to Trustor, as the case may be, by Lender; or (ii) if such failure is of such a nature that it cannot be cured within such thirty (30) day period, Trustor shall fail to commence to cure such failure within such thirty (30) day period or shall fail to diligently prosecute such curative action thereafter or shall fail to cure such default within ninety (90) days after written notice thereof was first given to Trustor.

(d)     <u>Representations and Warranties</u>.  Any representation, warranty, certificate or other statement (financial or otherwise) made or furnished by or on behalf of Trustor, if any, to Lender or in connection with any of the Loan Documents, or as an inducement to Lender to make the Loan or to take any action for the benefit of Trustor, in each case, is false, incorrect, incomplete or misleading in any material respect when made or furnished.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(d).

(e)     <u>Condemnation, Attachment</u>.  The condemnation, seizure or appropriation of any material portion (as reasonably determined by Lender) of the Property, or the sequestration or attachment of, or levy or execution upon any of the Property, the Collateral or any other collateral provided by Trustor under any of the Loan Documents, or any material portion of the other assets of Trustor, which sequestration, attachment, levy or execution is not released or dismissed within forty-five (45) days after its occurrence, or the sale of any assets affected by any of the foregoing.

(f)     <u>Uninsured Casualty</u>.  The occurrence of an uninsured casualty with respect to any material portion (as determined by Lender) of the Property unless:  (i) no other Event of Default has occurred and is continuing at the time of such casualty or occurs thereafter; (ii) Trustor promptly notifies Lender of the occurrence of such casualty; and (iii) not more than forty-five (45) days after the

29

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 31 of 48**

occurrence of such casualty, Trustor delivers to Lender immediately available funds ("**Restoration Funds**") in an amount sufficient, in Lender's reasonable opinion, to pay all costs of the repair or restoration (including, without limitation, taxes, financing charges, insurance and rent during the repair period). So long as no Event of Default has occurred and is continuing at the time of Lender's receipt of the Restoration Funds and no Event of Default occurs thereafter, Lender shall make the Restoration Funds available for the repair or restoration of the Property. Notwithstanding the foregoing, Lender shall have no obligation to make any Restoration Funds available for repair or restoration of the Property unless and until all the conditions set forth in clauses (ii) and (iii) Section 6.11(b)(2) of this Deed of Trust have been satisfied. Trustor acknowledges that the specific conditions described above are reasonable.

       (g)    <u>Adverse Financial Change</u>. Any adverse change in the financial condition of Trustor, or any of their partners, or members, or any guarantor, or any other person or entity from the condition shown on the financial statements submitted to Lender and relied upon by Lender in making the Loan, and which change Lender determines will have a material adverse effect on (i) the business, operations or condition of the Property; or (ii) the ability of Trustor to pay or perform Trustor's obligations in accordance with the terms of this Deed of Trust, and the other Loan Documents.

       (h)    <u>Voluntary Bankruptcy, Insolvency, Dissolution</u>. (i) Trustor's filing a petition for relief under the Bankruptcy Reform Act of 1978, as amended or recodified ("**Bankruptcy Code**"), or under any other present or future state or federal law regarding bankruptcy, reorganization or other relief to debtors (collectively, "**Debtor Relief Law**"); or (ii) Trustor's filing any pleading in any involuntary proceeding under the Bankruptcy Code or other Debtor Relief Law that admits the jurisdiction of a court to regulate Trustor or the Property or the petition's material allegations regarding Trustor's insolvency; or (iii) Trustor's making a general assignment for the benefit of creditors; or (iv) Trustor's applying for, or the appointment of, a receiver, trustee, custodian or liquidator of Trustor or any of its property; or (v) the filing by or against Trustor of a petition seeking the liquidation or dissolution of Trustor or the commencement of any other procedure to liquidate or dissolve Trustor. There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(h).

       (i)    <u>Involuntary Bankruptcy</u>. Trustor's failure to effect a full dismissal of any involuntary petition under the Bankruptcy Code or other Debtor Relief Law that is filed against Trustor or in any way restrains or limits Trustor or Lender regarding the Loan or the Property, prior to the earlier of the entry of any order granting relief sought in the involuntary petition or forty-five (45) days after the date of filing of the petition.

       (j)    <u>Shareholders, Members and Partners</u>.

           (1)    If an event specified in Sections 7(h) or 7(i) hereof occurs as to Trustor or any general partner, shareholder or member of Trustor, there shall be no cure period for any Event of Default arising from a breach of this Section 7.1(j)(1).

           (2)    If all or any material part of the assets of Trustor, or any shareholder, director, general partner or manager of Trustor are attached, seized, subjected to a writ or levied upon by any court process and Trustor fails to cause such attachment, seizure, writ or levy to be fully released or removed within sixty (60) days after the occurrence of such event. The cure provision contained in this Section 7.1(j)(2) shall be in lieu of,

30

**EXHIBIT 2**
**Page 32 of 48**

and not in addition to, any and all other cure periods contained in the Loan Documents.

(3)    For the avoidance of doubt, the provisions of this Section 7.1(j) shall not be limited because a shareholder, member or general partner of Trustor, in each case, may also be a guarantor of the Loan; rather, in that instance, an Event of Default under this Section 7.1(j) shall exist regarding the condition of such shareholder, member or general partner of Trustor, and the provisions of Section 7.1(k) hereof shall apply regarding Trustor's duty to obtain an acceptable substitute guarantor. The cure provisions contained in this Section 7.1(j) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(k)    <u>Guarantors</u>.

(1)    If any an event specified in Sections 7(h) or 7(i) hereof as to any guarantor of the Loan, remains uncured for at least forty-five (45) days, and Trustor fails to provide a substitute guarantor acceptable to Lender within sixty (60) days after the occurrence an event specified in Sections 7(h) or 7(i) hereof as to any guarantor of the Loan.

(2)    If all or any material part of the assets of any guarantor of the Loan are attached, seized, subjected to a writ or levied upon by any court process and Trustor fails to either (i) cause such attachment, seizure, writ or levy to be fully released or removed within sixty (60) days after the occurrence of such event or (ii) provide a substitute guarantor acceptable to Lender within sixty (60) days after all or any material part of the assets of any guarantor of the Loan are attached, seized, subjected to a writ or levied upon by any court process.

(3)    If any guarantor of the Loan dies and Trustor fails to provide a substitute guarantor of the Loan acceptable to Lender within sixty (60) days after the death of such guarantor; however, nothing in this Section 7.1(k)(3) may be construed to reduce or limit any rights and remedies Lender may have against the estate of or successors in interest to such guarantor of the Loan who has died, including, without limitation, any right to enforce a guarantee of the Loan against the estate of a guarantor of the Loan who has died.

(4)    For the avoidance of doubt, Trustor acknowledges that, in consideration of the Loan, Borrower and Trustor (as applicable) are required to provide a guarantor of the Loan acceptable to Lender, in Lender's sole discretion, and this Section 7.1(k) shall be construed consistent with such obligation of Trustor. Nothing in this Section 7.1(k) may be construed to suggest that this Deed of Trust secures any obligations under any guarantee of the Loan (it being understood that this Deed of Trust does not secure any guarantee of the Loan). The cure provisions contained in this Section 7.1(k) shall

31

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

EXHIBIT 2
Page 33 of 48

be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(l)    <u>Injunctions</u>.  If a court order is entered against Trustor or any shareholder, general partner, member or manager of Trustor enjoining the conduct of all or part of such person's business and Trustor fails to cause such injunction to be fully stayed, dissolved or removed within sixty (60) days after such order is entered.  The cure provision contained in this Section 7.1(l) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(m)    <u>Dissolution</u>.  If Trustor or any shareholder, general partner, member or manager of Trustor is a corporation, partnership, limited liability company or trust, the dissolution, liquidation, or termination of existence of such person.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(m).

(n)    <u>Unauthorized Transfers and Assignments</u>.  Any Transfer made or attempted, in each case, in violation of to Section 6.14 hereof (For the avoidance of doubt, the term Transfer includes any Assignment, as defined in Section 6.14 hereof).  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(n).

(o)    <u>Admission of New Partners, Members, or Shareholders</u>.  If applicable, unless Trustor is a publicly traded company listed on a nationally recognized stock exchange (a "**Public Company**") and the trading of shares in such Public Company or other transaction affecting such Public Company does not constitute a Transfer pursuant to Section 6.14 hereof, the admission to Trustor of any new member, partner, shareholder, or joint venturer, in each case, without having first having (i) informed Lender of the proposed admission of a new member, partner, shareholder, or joint venturer, in each case, and (ii) Trustor having received a written response from Lender regarding Lender's review and disposition of the request pursuant to this Section 7.1(o) and Section 6.14 hereof.  Any admission of a new member, partner, joint venturer contrary to this Section 7.1(o) shall be deemed a Transfer in violation of Section 6.14 hereof (For the avoidance of doubt, this Section 7.1(o) does not provide and shall not be construed to provide any Trustor that is a Public Company any right to make or participate in a Transfer in violation of Section 6.14 hereof).  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(o).

(p)    <u>Death; Incompetency</u>.  If Trustor or any general partner, manager, or managing member of Trustor is an individual (i.e., a natural person), the death or incompetency of such person, except (i) where applicable law limits or prohibits Lender's declaration of a default based on such occurrences and (ii) in the case of the death or mental incompetence of a general partner, manager, or managing member, Trustor causes a substitute general partner, manager or managing member, as applicable, to be admitted to Trustor or appointed to such role and Lender, pursuant to Section 6.14 hereof, in good faith determines that the financial condition, credit history, character, experience, ability and expertise of such substitute general partner, manager, or managing member are comparable to the affected general partner or manager and that such substitute general partner or manager is otherwise acceptable to Lender (For the avoidance of doubt, any substitutions or Transfers contemplated by this Section 7.1(p) shall be made consistent with the terms of both Section 7.1(o) hereof and Section 6.14 hereof).

(q)    <u>Impairment of Priority</u>.  If (i) the priority of this Deed of Trust or Lender's security interest under any of the other agreements securing any or all of the Secured Obligations is impaired for any reason; or (ii) the value of the Property has deteriorated, declined or depreciated as a

32

**EXHIBIT 2**
**Page 34 of 48**

result of any intentional tortious act or omission by Trustor. There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(q).

(r)    <u>Condemnation</u>. If all or any material part of the Property is transferred to any Governmental Authorities as a result of any condemnation proceeding or action with respect to all or any material part of the Property. There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(r).

(s)    <u>Failure to Repair Casualty</u>. If there is an uninsured casualty with respect to the Property, and Trustor (i) fails to commence repairs and reconstruction of the Property within ninety (90) days after such damage or (ii) thereafter fails to diligently prosecute such repairs and reconstruction to completion. The cure provisions contained in this Section 7.1(s) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(t)    <u>Licenses</u>. Trustor fails to do any act or execute any document at any time requested by Lender to provide it an assignment of all licenses necessary to operate the business for its intended use. There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(t).

7.2.    <u>Acceleration</u>. Upon the occurrence of an Event of Default, Lender may, at its option, declare all sums owing to Lender under the Note and the other Loan Documents immediately due and payable.

7.3.    <u>Rights and Remedies</u>. In addition to the rights and remedies in Section 7.2 above and as otherwise provided to Lender in this Deed of Trust, at any time after an Event of Default, Lender and Trustee shall each have all of the following rights and remedies:

(a)    <u>Entry on Property</u>. With or without notice, and without releasing Trustor from any Secured Obligation, and without becoming a mortgagee in possession, to enter upon the Property from time to time and to do such acts and things as Lender or Trustee deem necessary or desirable in order to inspect, investigate, assess and protect the security hereof or to cure any Event of Default, including, without limitation:  (i) to take and possess all documents, books, records, papers and accounts of Trustor or the then owner of the Property that relate to the Property; (ii) to make, terminate, enforce or modify leases of the Property upon such terms and conditions as Lender deems proper; (iii) to make repairs, alterations and improvements to the Property necessary, in Trustee's or Lender's sole judgment, to protect or enhance the security hereof; (iv) to appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender or Trustee hereunder; (v) to pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien which, in the sole judgment of either Lender or Trustee, is or may be senior in priority hereto, the judgment of Lender or Trustee being conclusive, as between the parties hereto; (vi) to obtain insurance; (vii) to pay any premiums or charges with respect to insurance required to be carried hereunder; and/or (viii) to employ legal counsel, accountants, engineers, consultants, contractors and other appropriate persons to assist them;

(b)    <u>Appointment of Receiver</u>. To apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Property as a matter of strict right and without regard to:  (i) the adequacy of the security for the repayment of the Secured Obligations; (ii) the existence of a declaration that the Secured Obligations are immediately due and payable; or (iii) the filing of a notice of default; and Trustor consents to such appointment;

33

**EXHIBIT 2**
**Page 35 of 48**

(c)    Judicial Foreclosure, Injunction.    To commence and maintain an action or actions in any court of competent jurisdiction to foreclose this instrument as a mortgage or to obtain specific enforcement of the covenants of Trustor hereunder, and Trustor agrees that such covenants shall be specifically enforceable by injunction or any other appropriate equitable remedy and that for the purposes of any suit brought under this subparagraph, Trustor waives the defense of laches and any applicable statute of limitations and shall not require Lender to post a point to seek an injunction or any other kind of specific performance;

(d)    Nonjudicial Foreclosure.    To execute a written notice of such an Event of Default and of the election to cause the Property to be sold to satisfy the Secured Obligations.  Trustee shall give and record such notice as applicable law then requires as a condition precedent to a trustee's sale.  When the minimum period of time required by law after such notice has elapsed, Trustee, without notice to or demand upon Trustor except as required by applicable law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, at one or several sales, either as a whole or in separate parcels and in such manner and order, all as Lender in its sole discretion may determine, at public auction to the highest bidder for cash, in lawful money of the United States, payable at time of sale.  Neither Trustor nor any other person other than Lender has the right to direct the order in which the Property is sold.  Subject to requirements and limits imposed by applicable law, Trustee may, from time to time postpone sale of all or any portion of the Property by public announcement at such time and place of sale previously stated, and from time to time, may also postpone the sale by public announcement at the time and place fixed by the preceding postponement.  A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein.  Trustee shall deliver to the purchaser at such sale a deed conveying the Property or portion thereof so sold, but without any covenant or warranty, express or implied from Lender.  The recitals in the deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including Trustee, Trustor or Lender may purchase at the sale;

Upon sale of the Property at any judicial or nonjudicial foreclosure, Lender may credit bid (as determined by Lender in its sole and absolute discretion) all or any portion of the Secured Obligations.  In determining such credit bid, Lender may, but is not obligated to, take into account all or any of the following:  (i) appraisals of the Property as such appraisals may be discounted or adjusted by Lender in its sole and absolute underwriting discretion; (ii) expenses and costs incurred by Lender with respect to the Property prior to foreclosure; (iii) expenses and costs that Lender anticipates will be incurred with respect to the Property after foreclosure, but prior to resale, including, without limitation, costs of structural reports and other due diligence, costs to carry the Property prior to resale, costs of resale (e.g., commissions, attorneys' fees, and taxes), costs of deferred maintenance, repair, refurbishment and retrofit, costs of defending or settling litigation affecting the Property, and lost opportunity costs (if any), including the time value of money during any anticipated holding period by Lender; (iv) declining trends in real property values generally and with respect to properties similar to the Property; (v) anticipated discounts upon resale of the Property as a distressed or foreclosed property; (vi) the existence of additional collateral (if any), for the Secured Obligations; and (vii) such other factors or matters that Lender (in its sole and absolute discretion) deems appropriate.  In regard to the above, Trustor acknowledges and agrees that:  (viii) Lender is not required to use any or all of the foregoing factors to determine the amount of its credit bid; (ix) this paragraph does not impose upon Lender any additional obligations that are not imposed by law at the time the credit bid is made; (x) the amount of Lender's credit bid need not have any relation to any loan-to-value ratios specified in the Loan Documents or previously discussed between Trustor and Lender; (xi) Lender's credit bid may be (at Lender's sole and absolute discretion) higher or lower than any appraised value of the Property; and (xii) Trustor acknowledges and understands that Lender has no duty to act in Trustor's best interest

34

**EXHIBIT 2**
**Page 36 of 48**

and expects that Lender will act in Lender's best interest, as determined by Lender, in Lender's sole discretion;

(e)   <u>Multiple Foreclosures</u>.  To resort to and realize upon the security hereunder and any other security now or later held by Lender concurrently or successively and in one or several consolidated or independent judicial actions or lawfully taken nonjudicial proceedings, or both, and to apply the proceeds received upon the Secured Obligations all in such order and manner as Trustee and Lender or either of them determine in their sole discretion;

(f)   <u>Rights to Collateral</u>.  To exercise all rights Trustee or Lender may have with respect to the Collateral under this Deed of Trust, the UCC or otherwise at law; and

(g)   <u>Other Rights</u>.  To exercise such other rights as Trustee or Lender may have at law or in equity or pursuant to the terms and conditions of this Deed of Trust or any of the other Loan Documents.

In connection with any sale or sales hereunder, Lender may elect to treat any of the Property that consists of a right in action or that is property that can be severed from the Property (including, without limitation, any Improvements) without causing structural damage thereto as if the same were personal property or a fixture, as the case may be, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Property.  Any sale of Collateral hereunder shall be conducted in any manner permitted by the UCC.

No specific right or remedy provided in this Section 7.3 may be construed, in each case, to create a duty for Lender to act or exercise any specific right or remedy or make Lender liable for any failure to exercise such right or remedy.  Without limiting the generality of the immediately preceding sentence, nothing in this Section 7.3 may be construed to make Lender responsible for the Property; its operation, maintenance, or condition; or any circumstances occurring on the Land, in each case, prior to Lender taking title to the Land.  No failure to exercise any right or remedy provided by this Section 7.3 may be construed as a waiver of such right or remedy by Lender or as any limitation on Lender's ability to exercise such right or remedy.  The provisions of this Article 7 are intended to benefit Lender and Lender's interests preserving and enforcing its security interest in the Property and obtaining full and timely repayment of the Secured Obligations, and thus, the parties hereto intend that such provisions are interpreted consistent with the best interests of Lender, in Lender's determination thereof, to the fullest extent permitted by applicable law.

7.4.   <u>Application of Foreclosure Sale Proceeds</u>.  If any foreclosure sale is effected, Trustee shall apply the proceeds of such sale in the following order of priority:  <u>First</u>, to the costs, fees and expenses of exercising the power of sale and of the sale, including, without limitation, the payment of the Trustee's fees and attorneys' fees; <u>Second</u> to the payment of the Secured Obligations that are secured by this Deed of Trust, in such order as Lender shall determine in its sole discretion; <u>Third</u>, to satisfy the outstanding balance of obligations secured by any junior liens or encumbrances in the order of their priority; and <u>Fourth</u>, to the Trustor or the Trustor's successor in interest, or in the event the Property has been sold or transferred to another, to the vested owner of record at the time of the Trustee's sale.

7.5.   <u>Waiver of Marshaling Rights</u>.  Trustor, for itself and for all parties claiming through or under Trustor, and for all parties who may acquire a lien on or interest in the Property, hereby waives all rights to have the Property and/or any other property, including, without limitation, the Collateral,

35

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 37 of 48**

which is now or later may be security for any Secured Obligation, marshaled upon any foreclosure of this Deed of Trust or on a foreclosure of any other security for any of the Secured Obligations.

7.6.    No Cure or Waiver.  Neither Lender's nor Trustee's nor any receiver's entry upon and taking possession of all or any part of the Property, nor any collection of rents, issues, profits, insurance proceeds, condemnation proceeds or damages, other security or proceeds of other security, or other sums, nor the application of any collected sum to any Secured Obligation, nor the exercise of any other right or remedy by Lender or Trustee or any receives cures or waives any Event of Default or notice of default under this Deed of Trust, or nullifies the effect of any notice of default or sale (unless all Secured Obligations then due have been paid or performed and Trustor has cured all other Events of Default hereunder, in each case, as determined by Lender), or impairs the status of the security, or prejudices Lender or Trustee in the exercise of any right or remedy, or may be construed as an affirmation by Lender of any tenancy, lease or option or a subordination of the lien of this Deed of Trust.

7.7.    Power to File Notices and Cure Events of Default.  Trustor hereby irrevocably appoints Lender and its successors and assigns, as its attorney-in-fact, which power of attorney is coupled with an interest, to perform any obligation of Trustor hereunder upon the occurrence of an event, act or omission that, with notice or passage of time or both, would constitute an Event of Default; provided, however, (a) Lender as such attorney-in-fact shall only be accountable for such funds as are actually received by Lender; and (b) Lender shall not be liable to Trustor or any other person or entity for any failure to act under this Section 7.8.

7.8.    Remedies Cumulative.  All rights and remedies of Lender and Trustee provided hereunder are cumulative and are in addition to all rights and remedies provided by applicable law (including specifically, and without limitation, that of foreclosure of this Deed of Trust as though it were a mortgage) or in any other agreements between Trustor and Lender.  Lender may enforce any one or more remedies or rights hereunder successively or concurrently.

ARTICLE 8

INTENTIONALLY OMITTED

ARTICLE 9

GENERAL PROVISIONS

9.1.    Integration and Additional Provisions.  The Loan Documents contain the complete and entire agreement of the parties with respect to matters contemplated by the Loan Documents, and the Loan Documents supersede all prior and contemporaneous agreements, negotiations, communications, understandings, and discussions, in each case, whether written or oral.  The Loan Documents grant further rights to Lender and contain further agreements and affirmative and negative covenants by Trustor that apply to this Deed of Trust and to the Property and such further rights and agreements are incorporated herein by this reference.  Without limiting the generality of the preceding provisions of this Section 9.1.  IF THE TRUSTOR IS ALSO THE BORROWER, THE PROVISIONS OF THIS SECTION 9.1 SHALL SURVIVE THE TERMINATION AND RELEASE OF THIS DEED OF TRUST, BUT SUCH PROVISIONS SHALL REMAIN SUBJECT TO ANY LIMITATIONS SET FORTH IN THE NOTE.

9.2.    Non-Waiver.  By accepting payment of any amount secured hereby after its due date or late performance of any other Secured Obligation, Lender shall not waive its right against any person obligated directly or indirectly hereunder or on any Secured Obligation, either to require prompt

36

EXHIBIT 2
Page 38 of 48

payment or performance when due of all other sums and obligations so secured or to declare default for failure to make such prompt payment or performance. No exercise of any right or remedy by Lender or Trustee hereunder constitutes a waiver of any other right or remedy herein contained or provided by applicable law. No failure by Lender or Trustee to exercise any right or remedy hereunder arising upon any Event of Default may be construed to prejudice Lender's or Trustee's rights or remedies upon, in each case, the continued existence of such Event of Default or occurrence of any other or subsequent Event of Default. No delay by Lender or Trustee in exercising any such right or remedy may be construed to preclude Lender or Trustee from the exercise thereof at any time while that Event of Default is continuing. No notice to or demand on Trustor shall by itself or the fact that was provided, in each case, entitle Trustor to any other or further notice or demand in similar or other circumstances.

9.3.    <u>Consents and Approvals</u>.    Wherever Lender's consent, approval, acceptance or satisfaction is required under any provision of this Deed of Trust or any of the other Loan Documents, unless either applicable law or a specific provision of one of the Loan Documents requires a different standard of Lender, such consent, approval, acceptance or satisfaction shall be in Lender's sole and absolute discretion.

9.4.    <u>Permitted Contests</u>.    After prior written notice to Lender, Trustor may contest, by appropriate legal or other proceedings conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of any lien, levy, tax or assessment, or any lien of any laborer, mechanic, materialman, supplier or vendor, or the application to Trustor or the Property of any law or the validity thereof, the assertion or imposition of which, or the failure to pay when due, would constitute an Event of Default, subject to the requirements that: (a) Trustor pursues the contest diligently, in a manner that Lender determines is not prejudicial to Lender, and that does not impair the lien of this Deed of Trust; (b) the Property, or any part hereof or estate or interest therein, shall not be in any danger of being sold, forfeited, damaged, or lost by reason of such proceedings; (c) in the case of the contest of any law or other legal requirement, Lender shall not be in any danger of any civil or criminal liability; and (d) if required by Lender, Trustor deposits with Lender any funds or other forms of assurance (including a bond or letter of credit) satisfactory to Lender to protect Lender from the consequences of the contest being unsuccessful. Trustor's right to contest pursuant to the terms of this provision shall not relieve Trustor of its obligations under the Loan or to make payments to Lender as and when due.

9.5.    <u>Further Assurances</u>.    Trustor shall, upon demand by Lender or Trustee, execute, acknowledge (if appropriate) and deliver any and all documents and instruments and do or cause to be done all further acts reasonably necessary or appropriate to effectuate the provisions hereof.

9.6.    <u>Attorneys' Fees</u>.    In the event it is necessary for Lender to retain the services of an attorney or any other party to enforce or to commence any legal action to enforce the terms of this Deed of Trust, or any of the other Loan Documents, or any portion hereof or thereof, Trustor agrees to pay to Lender, in addition to damages or other relief, any and all costs and expenses, including, without limitation, expert witness fees and reasonable attorney's fees incurred by Lender as a result thereof.

9.7.    <u>Trustor and Lender Defined</u>.    The term "**Trustor**" includes both the original Trustor including all persons executing this Deed of Trust as a trustor and any subsequent owner or owners of any of the Property; however, while any subsequent owner may have duties under this Deed of Trust by having taken title subject to this Deed of Trust, this Security Agreement does not affirmatively grant any rights against Lender to a subsequent owner who did not take title to the Property through a Transfer that fully complies with the terms of this Deed of Trust. The term "**Lender**" includes the original Lender and any future owner or holder, including assignees, pledgees and participants, of the Note or

37

**EXHIBIT 2**
**Page 39 of 48**

any interest therein. Nothing in this Section 9.7 may be construed to authorize Trustor to make or participate in a Transfer prohibited by the terms of this Deed of Trust, including, without limitation, the provisions of Section 6.14 hereof.

9.8.    Disclaimers.

(a)    Relationship. The relationship of Trustor and Lender under this Deed of Trust and the other Loan Documents is, and shall at all times remain, solely that of Trustor and Lender; and Lender neither undertakes nor assumes any responsibility or duty to Trustor or to any third party with respect to the Property. Notwithstanding any other provisions of this Deed of Trust and the other Loan Documents: (i) Lender is not, and shall not be construed to be, a partner, joint venturer, member, alter ego, manager, controlling person or other business associate or participant of any kind of Trustor, and Lender does not intend to ever assume such status; (ii) Lender's activities in connection with this Deed of Trust and the other Loan Documents shall not be outside the scope of activities of a Lender of money, and Lender does not intend to ever assume any responsibility to any person for the quality, suitability, safety or condition of the Property; and (iii) Lender shall not be deemed responsible for or a participant in any acts, omissions or decisions of Trustor; and

(b)    No Liability. Lender shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any person or property arising from any construction on, or occupancy or use of, the Property, whether caused by or arising from: (i) any defect in any building, structure, grading, fill, landscaping or other improvements thereon or in any on-site or off-site improvement or other facility therein or thereon; (ii) any act or omission of Trustor or any of Trustor's agents, employees, independent contractors, licensees or invitees; (iii) any accident in or on the Property or any fire, flood or other casualty or hazard thereon; (iv) the failure of Trustor or any of Trustor's licensees, employees, invitees, agents, independent contractors or other representatives to maintain the Property in a safe condition; or (v) any nuisance made or suffered on any part of the Property.

9.9.    Severability. Each representation, warranty, promise, covenant, or similar statement by the Trustor contained herein (in each case a "**Statement**") shall constitute a separate Statement upon which the Lender may rely. Wherever possible, each Statement shall be interpreted in such manner as to be effective and valid under applicable law, but if any Statement of this Deed of Trust shall be prohibited by or invalid under applicable law, such Statement shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such Statement or the remaining Statements of this Deed of Trust. If and only if a Statement cannot be interpreted in a manner to be valid under applicable law, such Statement deemed to be prohibited or invalid may be reformed to have the meaning as close as possible to the meaning provided in this Deed of Trust, as long as such reformed meaning is consistent with the intent and purpose of this Deed of Trust to benefit Lender's interests regarding (i) full and timely payment and performance of the Secured Obligations and (ii) Lender's protection of its interests in the Property and the Collateral. Without limiting the preceding provisions of this Section 9.9, if any provision (for the avoidance of doubt, including not only Statements, but other terms of this Deed of Trust that would not be defined as "Statements") of this Deed of Trust is deemed, in a final non-appealable decision, by a competent court with jurisdiction over the parties and the subject matter to be prohibited or unenforceable under applicable law, the particular provision of this Deed of Trust shall be deemed modified so as to constitute a provision conforming as nearly as possible to the void or unenforceable provision while still remaining valid and enforceable under applicable law, and the remaining terms or provisions of this Deed of Trust shall not be affected thereby; however, if and only if, a provision is prohibited by or unenforceable under applicable law and cannot be reformed as contemplated by the preceding clauses of this Section 9.9, such void or unenforceable

38

**EXHIBIT 2**
**Page 40 of 48**

provision shall be ineffective to the extent it is void or unenforceable and be severed from the rest of this Deed of Trust without, in each case, invalidating this Deed of Trust; adversely affecting the other terms of this Deed of Trust; or limiting the enforceability of this Deed of Trust.

9.10.   _Relationship of Articles_.  The rights, remedies and interests of Lender under this Deed of Trust established by Article 1 and the security agreement established by Article 4 are independent and cumulative, and there shall not be a merger of any lien created by this Deed of Trust with any security interest created by any other pledge or security agreement, if any exists among the Loan Documents.  Lender may elect to exercise or enforce any of its rights, remedies or interests under either or both this Deed of Trust and any other security agreement, if any, as Lender may from time to time deem appropriate.  The Assignment of Rents and Leases established by Article 3 is similarly independent of and separate from this Deed of Trust and the Security Agreement and may be enforced separately without adversely affecting the priority or enforceability, in each case, of this Deed of Trust and the lien on the Property it creates.

9.11.   _Merger_.  No merger shall occur as a result of Lender's acquiring any other estate in, or any other lien on, the Property unless Lender consents to a merger in writing (signed by an officer of Lender holding the title of Executive Vice President or higher).

9.12.   _Obligations of Trustor, Joint and Several_.  If more than one person has executed this Deed of Trust as "**Trustor**," the obligations of all such persons hereunder shall be joint and several.

9.13.   _Separate and Community Property_.  Any married person who executes this Deed of Trust as a Trustor agrees that any money judgment that Lender or Trustee obtains pursuant to the terms of this Deed of Trust or any other obligation of that married person secured by this Deed of Trust may be collected by execution upon any separate property or community property of that person.

9.14.   _Interpretation and Amendment_.  The Loan Documents shall not be modified except by written instrument executed by all parties, and in the case of Lender, to be binding upon Lender, such written instrument must be signed by an officer of Lender holding the title of Executive Vice President or higher.  With respect to this Deed of Trust, in addition to complying with the immediately foregoing sentence, to be valid, such amendment must also be recorded in the official records of the county in which the Land is situated, with Lender having expressly authorized such recording in writing.  Any reference in any of the Loan Documents to the Property or Collateral shall include all or any part of the Property or Collateral.  Any reference to the Loan Documents includes any amendments, renewals or extensions now or hereafter approved by Lender in writing pursuant to the terms hereof.  When the identity of the parties or other circumstances make it appropriate, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.  Article, section, and sub-section headings used herein are for convenience of reference only, are not part of this Agreement, and are not to affect the construction of or to be taken into consideration in interpreting this Agreement.  This Agreement shall be construed without regard to which party drafted this Agreement (it being understood that the parties reject any rule of construction favoring a presumption against the drafter).

9.15.   _Capitalized Terms_.  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Loan Documents.

9.16.   _Successors in Interest_.  The terms, covenants, and conditions herein contained shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties hereto.  The foregoing sentence shall not be construed to permit Trustor to Transfer the Loan, the Property, or any interest it has in either the Loan or the Property, in each case, except as otherwise permitted under this

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 41 of 48**

Deed of Trust or the other Loan Documents, including, without limitation, the terms of Section 6.14 hereof.

9.17.    <u>Governing Law</u>.  This Deed of Trust and the other Loan Documents and the obligations arising hereunder and thereunder shall be governed by, and construed in accordance with, the laws of the State of Oregon applicable to contracts made and performed in Oregon and any applicable federal law, including, to the extent, with respect to Lender's rights and obligations, that federal law preempts the laws of the State of Oregon.  Except as provided in the immediately preceding sentence, Trustor hereby unconditionally and irrevocably waives, to the fullest extent permitted by law, any claim to assert that the law of any jurisdiction other than Oregon governs this Deed of Trust and other Loan Documents.

9.18.    <u>Consent to Jurisdiction</u>.  Trustor irrevocably submits to the Jurisdiction of:  (a) any state or federal court sitting in the State of Oregon over any suit, action, or proceeding, brought by Trustor against Lender, arising out of or relating to this Deed of Trust or the Loan; (b) any state or federal court sitting in the state where the Property is located or the state in which Trustor's principal place of business is located over any suit, action or proceeding, brought by Lender against Trustor, arising out of or relating to this Deed of Trust or the Loan; and (c) any state court sitting in the county of the state where the Property is located over any suit, action, or proceeding, brought by Lender to exercise its STATUTORY POWER OF SALE under this Deed of Trust or any action brought by Lender to enforce its rights with respect to the Collateral.  Trustor irrevocably waives, to the fullest extent permitted by law, any objection that Trustor may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

9.19.    <u>Exhibits</u>.  Any and all Exhibits are incorporated into this Deed of Trust by this reference.

9.20.    <u>Addresses; Request for Notice</u>.  All notices and other communications that are required or permitted to be given to a party under this Deed of Trust shall be in writing, refer to the Loan number, and shall be sent to such party, either by personal delivery, by overnight delivery service, or by certified first-class mail, return receipt requested to the addressee below.  All such notices and communications shall be effective upon receipt of such delivery, or if refused or deemed undeliverable, in each case, on the date the first delivery was attempted.  The addresses of the parties are set forth on page 1 of this Deed of Trust.  Trustor's principal place of business is at the address set forth on page 1 of this Deed of Trust.

Any Trustor whose address is set forth on page 1 of this Deed of Trust hereby requests that a copy of notice of default and notice of sale be delivered to it at that address.  Failure to insert an address shall constitute a designation of Trustor's last known address as the address for such notice.  Any party shall have the right to change its address for notice hereunder to any other location within the continental United States by giving thirty (30) days' notice to the other parties in the manner set forth above.

9.21.    <u>Counterparts</u>.  This Deed of Trust may be executed in any number of counterparts, each of which, when executed and delivered, will be deemed an original and all of which taken together, will be deemed to be one and the same instrument.

9.22.    <u>Time is of the Essence</u>.  Time is of the essence with respect to all of Trustor's obligations and agreements hereunder regarding, in each case, (i) the payment of money; (ii) where any deadline or period for performance is provided; and (iii) where notice, reports, financial statements,

40

**EXHIBIT 2**
**Page 42 of 48**

information concerning the Property and its operation, or other information is required to be delivered to Lender.

9.23.    <u>Customer Identification - USA Patriot Act Notice</u>.  Lender hereby notifies Trustor that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56, signed into law October 26, 2001, as amended (the "**Act**"), and Lender's policies and practices, Lender is required to obtain, verify and record certain information and documentation that identifies Trustor, which information includes the name and address of Trustor and such other information that will allow Lender to identify Trustor in accordance with the Act.

9.24.    **Waiver of Jury Trial and Dispute Resolution**.

(a)    TO THE FULLEST EXTENT PERMITTED BY LAW, TRUSTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE BY JURY AND WAIVES ANY RIGHT TO TRIAL BY JURY WITH REGARD TO THIS DEED OF TRUST OR ANY OTHER LOAN DOCUMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY TRUSTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  BENEFICIARY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY TRUSTOR.

(b)    With respect to any Dispute (as defined below) which arises under the terms of this Deed of Trust, the following paragraphs ("**Dispute Resolution Provision**") concern the resolution of any and all controversies or claims between Trustor (including any persons claiming by or through Trustor) and Lender, whether arising in contract or tort or by statute, that arise out of or relate to (i) this Deed of Trust (including any renewals, extensions or modifications) or (ii) any of the other Loan Documents (collectively, a "**Dispute**"); <u>provided</u>, <u>however</u>, in no event may any Collection Action (as defined herein) by Lender be within the meaning of a Dispute.

(i)    As used herein, (i) the "**Act**" means the Federal Arbitration Act (Title 9, U.S. Code), and (ii) "**JAMS**" means JAMS (a/k/a JAMS Mediation, Arbitration, ADR Services) or any successor thereto.

(ii)    Intentionally Omitted.

(iii)    This Subsection (iii) of this Section 9.24(b) is itemized by paragraphs with numerals, as follows:

(1)    If and only if both Trustor and Lender so consent, any Dispute shall be resolved by binding arbitration in accordance with the Act.  The Act shall apply even though this Deed of Trust provides that it is governed by the law of a specified state; however, the decision of the arbitrators shall be consistent with applicable law, to the extent not preempted by the Act (whether by law or by this Deed of Trust's election of the Act).  Arbitration proceedings will be determined in accordance with the Act, the rules and procedures for the arbitration of financial services disputes of JAMS, and the terms of this Dispute Resolution Provision.  In the event of any inconsistency, the terms of this Dispute Resolution Provision shall control.

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 43 of 48**

(2)    The arbitration shall be administered by JAMS and conducted in any U.S. state where real or tangible personal property collateral for the Loan is located.  All Disputes shall be determined by one arbitrator; however, if any Dispute exceeds FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00), or if more than one Dispute is made at the same time and cumulatively the Disputes exceed FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00), upon the request of any party, the Disputes shall be decided by three (3) arbitrators.  All arbitration hearings shall commence within ninety (90) days of the demand for arbitration and close within ninety (90) days of commencement, and the award of the arbitrator(s) shall be issued within thirty (30) days of the close of the hearing.  However, the arbitrator(s), upon a showing of good cause, may extend the commencement of the hearing for up to an additional sixty (60) days.  The arbitrator(s) shall provide a concise written statement of reasons for the award.  The arbitration award may be submitted to any court having jurisdiction to be confirmed and enforced.

(3)    The arbitrator(s) will have the authority to decide whether any Dispute is barred by the statute of limitations and, if so, to dismiss the arbitration on that basis.  For purposes of the application of the statute of limitations, the service on JAMS under applicable JAMS rules of a notice of Dispute is the equivalent of the filing of a lawsuit.  Any dispute concerning this arbitration provision or whether a Dispute is arbitrable shall be determined by the arbitrator(s).  The arbitrator(s) shall have the power to award legal fees pursuant to the terms of this Deed of Trust.

(c)    This Dispute Resolution Provision shall not limit the right of Lender, in each case, to (v) exercise self-help remedies, when permitted by applicable law, including, without limitation, setoff or acting as an attorney-in-fact to receive Accounts; (w) initiate judicial or non-judicial foreclosure against any real or personal property (e.g., without limitation, the Property and the Collateral, in each case); (x) exercise any judicial or power of sale rights, (y) act in a court of law to obtain an interim remedy, including, without limitation and in each case, injunctive relief, writ of possession or appointment of a receiver, or additional or supplementary remedies, or (z) bring any action for payment.  Each of the actions described in the foregoing subclauses (v) through (z) of this Section 9.24(d) shall constitute a "**Collection Action**."

(d)    The filing of a court action is not intended to constitute a waiver of the right of Lender, including, without limitation, on behalf of the suing party, to require thereafter submission of the Dispute to a referee.

## ARTICLE 10

### INTENTIONALLY OMITTED

## ARTICLE 11

### STATE-SPECIFIC PROVISIONS

11.1.    Principles of Construction.  In the event of any inconsistencies between the terms and conditions of this Article 11 and the other terms and conditions of this Deed of Trust, the terms and conditions of this Article 11 will control and be binding.  To the extent that any provision in this Deed of Trust is inconsistent with ORS 86.705 through 86.795, such provision shall be disregarded and relevant provisions of ORS 86.705 to 86.795 shall be substituted therefor.

42

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 44 of 48**

11.2.    <u>Commercial Property</u>.  This Deed of Trust is not, and will not be, a "residential trust deed" (as that term is defined in ORS 86.705(6)).

11.3.    <u>**Statutory Notice**</u>.  **UNDER OREGON LAW, MOST AGREEMENTS, PROMISES, AND COMMITMENTS MADE BY TRUSTOR CONCERNING LOANS AND OTHER CREDIT EXTENSIONS THAT ARE NOT FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.**

[Signature page follows]

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 45 of 48**

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the day and year set forth above.

BORROWER:

SHILO INN, PORTLAND/205, LLC,
an Oregon limited liability company

By:     Portland/205 Hotel (2) Corp.,
        an Oregon corporation
        Its Manager

By:     _____
        Mark S. Hemstreet
        Secretary

44

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 46 of 48**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
                                                ) ss.
County of _Orange_____                )

On _____Dec 23_____,  ____20_19__,  before  me,
_____Kayla  Moreau_____, a Notary Public, personally appeared
_____Mark  Hemstreet_____, who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

[Affix seal here]

KAYLA CHERE MOREAU-BRADFORD
Notary Public - California
Orange County
Commission # 2193499
My Comm. Expires Apr 24, 2021

Signature of Notary Public

**EXHIBIT A**

LEGAL DESCRIPTION

Parcels 1 and 2, PARTITION PLAT 1991-30, in the City of Portland, County of Multnomah and State of Oregon, described as follows:

Beginning at a point in the North line of Block 1, SIVERS INDUSTRIAL PARK, that is South 88° 26' 29" East 109.17 feet from the Northwest corner of said Block 1; thence South 39° 59' 29" West 24.60 feet to a point of curve; thence on the arc of a 49.00 foot radius curve to the left (the chord of which bears South 5° 00' 31" East 69.30 feet) a distance of 76.97 feet to a point in the Northerly right of way of NE Airport Way; thence along said Northerly right of way line South 50° 00' 31" East 181.13 feet to a point of curve; thence on the arc of an 853.51 foot radius curve to the left (the chord of which bears South 52° 47' 01" East 82.64 feet) a distance of 82.68 feet to a point of curve; thence on the arc of a 892.83 foot radius curve to the left (the chord of which bears South 75° 01' 30" East 617.39 feet) a distance of 628.33 feet to a point of tangency; thence North 01° 33' 31" East 384.41 feet; thence North 88° 26' 29" West 802.00 feet, more or less, to the point of beginning.

45

Security Instrument
Oregon Form (2019)
112038-0036/146596688.4

**EXHIBIT 2**
**Page 48 of 48**

FILED: DEC 27, 2019 02:00 PM
OREGON SECRETARY OF STATE

UCC



LIEN NO. 92139609          SHILO INN, PORTLAND/

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. | NAME & PHONE OF CONTACT AT FILER (optional) |
| B. | E-MAIL CONTACT AT FILER (optional) |
| C. | SEND ACKNOWLEDGMENT TO: (Name and Address) |

**CORPSMART**
106 5th Ave SE Olympia, WA
800.737.6012
www.corp-smart.com
orders@corp-smart.com

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of Item 1 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| SHILO INN, PORTLAND/205, LLC | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 11707 North East Airport Way | Portland | | OR | 97220 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of Item 2 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| **Axos Bank** | | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 9205 West Russell Road, Suite 400 | Las Vegas | | NV | 89148 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

ALL ASSETS OF THE DEBTOR, INCLUDING, WITHOUT LIMITATION, ALL OF THE COLLATERAL DESCRIBED ON SCHEDULE "1" ATTACHED HERETO AND MADE A PART HEREOF.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:  ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:  ☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Oregon Form (2019) Property Name: 11707 North East Airport Way, Portland, OR 97220 (112038-0036/146596694.2)

**EXHIBIT 3**
**Page 1 of 5**

UCC-1 Financing Statement (cont'd)
Secured Party:        Axos Bank™, a federally chartered savings association
Debtor:               SHILO INN, PORTLAND/205, LLC, an Oregon limited liability company

## SCHEDULE 1

As used herein, **"Deed of Trust"** shall mean that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (as amended, modified, restated, renewed or extended from time to time) dated as of December 16, 2019, encumbering the Property (hereinafter defined).

All of the Debtor's right, title and interest in and to the following:

(a)        All right, title and interest which Debtor now has or may later acquire in any real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances, strips and gores of land, streets, ways, alleys, passages, thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Debtor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water, water courses and water rights and powers, and all sewers and sewer rights, pipes, conduits, wires and other facilities furnishing utility or services to the real property, air rights and development rights and credits, pumps, pipes, flumes and ditches and ditch rights, water stock, ditch and/or reservoir stock or interests, rights to oil, gas, minerals, coal and other substances of any kind or character (the "Land") located in the County of Multnomah, State of Oregon, and more particularly described on Exhibit A attached hereto;

(b)        All right, title and interest which Debtor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected, used or placed on the Land, including, without limitation, all plant equipment, apparatus, machinery, appliances and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "**Improvements**");

(c)        All right, title and interest which Debtor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Property (hereinafter defined);

(d)        All additions and accretions to the property described above;

(e)        All licenses, authorizations, certificates, variances, consents, approvals and other permits now or hereafter pertaining to the Land and all estate, right, title and interest of Debtor in, to, under or derived from all trade names or business names relating to the Land or the present or future development, construction, operation or use of the Land;

(f)        Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Debtor and all subsequent owners of the Property (hereinafter defined) which may be made with respect to the Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Property, which said award or awards are hereby assigned to Secured Party;

(g)        Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Property; .

(h)        Any and all claims or demands which Debtor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Property;

Oregon Form (2019)

**EXHIBIT 3**
**Page 2 of 5**

(i)       Any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Property, now or hereafter, whether or not such policies name Secured Party as an insured and whether or not such policies are required by Secured Party, and whether or not such claims thereunder are characterized as personal claims;

(j)       All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Property or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Property, together with any and all accessions, accessories, attachments and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Property;

(k)      All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights and transferable development rights; all of Debtor's right, title and interest in and to any awards, remunerations, settlements or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Debtor from non-governmental sources;

(l)       All leases of the Property, Personalty (as defined below), Fixtures (as defined below), or any part thereof, now or hereafter entered into and all right, title and interest of Debtor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Debtor now or hereafter existing pertaining to the use and enjoyment of the Property; and all right, title and interest of Debtor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Property;

(m)     All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property;

(n)      All rents, income, issues and profits (subject, however, to the rights given in the Deed of Trust to Secured Party to collect and apply same), including, without limitation, the accounts, revenues and proceeds of any business operation conducted by or on behalf of Debtor on or through the use of the Property, prepaid municipal and utility fees, bonds, revenues, income and other benefits to which Debtor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Debtor to encumber hereby all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if the Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the **"Property."** As used herein, the term **"Fixtures"** shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term **"Personalty"** shall include all furniture, furnishings, equipment, machinery, goods,

**EXHIBIT 3**
**Page 3 of 5**

contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in the Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Debtor's right, title, and interest in and to all such property.

## EXHIBIT A

### Legal Description of Property

Parcels 1 and 2, PARTITION PLAT 1991-30, in the City of Portland, County of Multnomah and State of Oregon, described as follows:

Beginning at a point in the North line of Block 1, SIVERS INDUSTRIAL PARK, that is South 88° 26' 29" East 109.17 feet from the Northwest corner of said Block 1; thence South 39° 59' 29" West 24.60 feet to a point of curve; thence on the arc of a 49.00 foot radius curve to the left (the chord of which bears South 5° 00' 31" East 69.30 feet) a distance of 76.97 feet to a point in the Northerly right of way of NE Airport Way; thence along said Northerly right of way line South 50° 00' 31" East 181.13 feet to a point of curve; thence on the arc of an 853.51 foot radius curve to the left (the chord of which bears South 52° 47' 01" East 82.64 feet) a distance of 82.68 feet to a point of curve; thence on the arc of a 892.83 foot radius curve to the left (the chord of which bears South 75° 01' 30" East 617.39 feet) a distance of 628.33 feet to a point of tangency; thence North 01° 33' 31" East 384.41 feet; thence North 88° 26' 29" West 802.00 feet, more or less, to the point of beginning.

<u>**GUARANTY**</u>

This **GUARANTY** (this "**Guaranty**"), dated as of December 16, 2019, made by MARK S. HEMSTREET, an individual, having an address at 11707 North East Airport Way, Portland, OR 97220 ("**Guarantor**"), in favor of AXOS BANK™, a federally chartered savings association (together with its successors and assigns, hereinafter referred to as "**Lender**"), having an address of 4350 La Jolla Village Drive, Suite 100, San Diego, California 92122.

R E C I T A L S:

A.      Pursuant to that certain Secured Promissory Note dated as of the date hereof (as the same may be amended, modified, supplemented or replaced from time to time, the "**Note**") between SHILO INN, PORTLAND/205, LLC, an Oregon limited liability company ("**Borrower**") and Lender, Lender has agreed to make a loan (the "**Loan**") to Borrower in an aggregate principal amount not to exceed $12,200,000.00, subject to the terms and conditions of the Note;

B.      As a condition to Lender's making the Loan, Lender is requiring that Guarantor execute and deliver to Lender this Guaranty; and

C.      Guarantor hereby acknowledges that Guarantor will materially benefit from Lender's agreeing to make the Loan;

**NOW, THEREFORE**, in consideration of the premises set forth herein and as an inducement for and in consideration of the agreement of Lender to make the Loan pursuant to the Note, Guarantor hereby agrees, covenants, represents and warrants to Lender as follows:

1.      **Definitions**.

(a)      All capitalized terms used and not defined herein shall have the respective meanings given such terms in the Note.

(b)      The term "**Guaranteed Obligations**" means:  (a) all indebtedness and obligations, of any nature whatsoever, of the Borrower under the Note and other Loan Documents and any and all extensions, renewals, substitutions, replacements, and modifications thereof, whether now in existence or hereafter created, including, without limitation, (i) all principal of and interest on the Note, and (ii) all fees, charges, costs, and other amounts payable by Borrower under the Note and the other Loan Documents; (b) the payment and performance of all obligations of Borrower under each Loan Document; and (c) all costs and expenses, including reasonable fees and out of pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under this Guaranty, the Security Instrument, and any other Loan Document.

(c)      The term "**Governmental Authority**" means, collectively (a) the United States; (b) the state, county, city, and any other political subdivision of the jurisdiction in which the Property is located; (c) all other governmental or quasi-governmental authorities, boards, bureaus, agencies, commissions, departments, administrative tribunals, and other instrumentalities or authorities including, without limitation all judicial authorities and public utilities having or exercising jurisdiction over Borrower or the Property.

2.      **Guaranty**.

1

**EXHIBIT 4**
**Page 1 of 10**

(a)     Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Lender the full, prompt and complete payment when due of the Guaranteed Obligations.

(b)     All sums payable to Lender under this Guaranty shall be payable on demand and without reduction for any offset, claim, counterclaim or defense.

(c)     Guarantor hereby agrees to indemnify, defend and save harmless Lender from and against any and all costs, losses, liabilities, claims, causes of action, expenses and damages, including reasonable attorneys' fees and disbursements, which Lender may suffer or which otherwise may arise by reason of Borrower's failure to pay any of the Guaranteed Obligations when due, irrespective of whether such costs, losses, liabilities, claims, causes of action, expenses or damages are incurred by Lender prior or subsequent to (i) Lender's declaring the unpaid principal, interest and other sums evidenced or secured by the Loan Documents to be due and payable, (ii) the commencement or completion of a judicial or non-judicial foreclosure of the Security Instrument or (iii) the conveyance of all or any portion of the Property by deed-in-lieu of foreclosure.

(d)     Guarantor agrees that no portion of any sums applied (other than sums received from Guarantor in full or partial satisfaction of its obligations hereunder), from time to time, in reduction of the Loan shall be deemed to have been applied in reduction of the Guaranteed Obligations until such time as the Loan has been paid in full, or Guarantor shall have made the full payment required hereunder, it being the intention hereof that the Guaranteed Obligations shall be the last portion of the Loan to be deemed satisfied.

(e)     Notwithstanding anything to the contrary herein or in the other Loan Documents, this Guaranty is and shall remain unsecured.

**3.     Representations and Warranties**.  Guarantor hereby represents and warrants to Lender as follows (which representations and warranties shall be given as of the date hereof and shall survive the execution and delivery of this Guaranty):

(a)     **Execution**.  This Guaranty has been duly executed and delivered by Guarantor.

(b)     **Enforceability**.  This Guaranty constitutes a legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally.

(c)     **No Violation**.  The execution, delivery and performance by Guarantor of its obligations under this Guaranty do not and will not violate any law, regulation, order, writ, injunction or decree of any court or governmental body, agency or other instrumentality applicable to Guarantor, or result in a breach of any of the terms, conditions or provisions of, or constitute a default under, or result in the creation or imposition of any mortgage, lien, charge or encumbrance of any nature whatsoever upon any of the assets of Guarantor pursuant to the terms of any mortgage, indenture, agreement, trust instrument, or other instrument to which Guarantor is a party or by which it or any of its properties is bound.  Guarantor is not in default under any other guaranty which it has provided to Lender.

(d)     **No Litigation**.  There are no actions, suits or proceedings at law or at equity, pending or, to Guarantor's best knowledge, threatened against or affecting Guarantor or

**EXHIBIT 4
Page 2 of 10**

which involve or might involve the validity or enforceability of this Guaranty or which might materially adversely affect the financial condition of Guarantor or the ability of Guarantor to perform any of its obligations under this Guaranty. Guarantor is not in default beyond any applicable grace or cure period with respect to any order, writ, injunction, decree or demand of any Governmental Authority which might materially adversely affect the financial condition of Guarantor or the ability of Guarantor to perform any of its obligations under this Guaranty.

(e)    **Consents**. All consents, approvals, orders or authorizations of, or registrations, declarations or filings with, all Governmental Authorities (collectively, the "**Consents**") that are required in connection with the valid execution, delivery and performance by Guarantor of this Guaranty have been obtained and Guarantor agrees that all Consents required in connection with the carrying out or performance of any of Guarantor's obligations under this Guaranty will be obtained when required.

(f)    **Financial Statements and Other Information**. All financial statements of Guarantor heretofore delivered to Lender are true and correct in all material respects and fairly present the financial condition of Guarantor as of the respective dates thereof, and no materially adverse change has occurred in the financial conditions reflected therein since the respective dates thereof. None of the aforesaid financial statements or any certificate or statement furnished to Lender by or on behalf of Guarantor in connection with the transactions contemplated hereby, and none of the representations and warranties in this Guaranty contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein or herein not misleading. Guarantor is not insolvent within the meaning of the United States Bankruptcy Code or any other applicable law, code or regulation and the execution, delivery and performance of this Guaranty will not render Guarantor insolvent.

(g)    **Consideration**. Guarantor is the owner, directly or indirectly, of certain legal and beneficial equity interests in Borrower.

4.    **Financial and Tax Reporting**.

(a)    Guarantor shall from time to time, upon request by Lender, deliver to Lender such financial statements as Lender may reasonably require, including as applicable as determined by Lender, a balance sheet, an income and expense statement, a personal financial statement including schedule of real estate and a statement of financial affairs, all in form and content acceptable to Lender. Guarantor shall also furnish to Lender complete copies of all federal and state income tax returns (including accompanying schedules and related K-1's) filed by Guarantor within thirty (30) days after filing (provided that if returns are not filed on time then a copy of any applicable extension filings shall be made available for delivery to Lender upon Lender's request as provided above within thirty (30) days after the extension filing due date). Upon request by Lender, all such tax returns must be prepared by an independent certified public accountant or attorney. Each of the statements, schedules, documents, items and reports required by this paragraph shall be certified to be complete and accurate by Guarantor (or for an entity Guarantor, an individual having authority to bind Guarantor), and shall be in such form and contain such detail as Lender may reasonably require. Lender may at Lender's discretion require that any statements, schedules or reports be audited at Borrower's expense by independent certified public accountants acceptable to Lender. Guarantor acknowledges and agrees that (a) the reporting requirements of this paragraph apply to each Guarantor if more than one Guarantor is executing this Guaranty, and (b) that failure of any Guarantor to provide financial statements, information, documents or tax returns required by this paragraph within thirty (30) days of request by Lender shall constitute a material Event of Default under the Loan. Guarantor acknowledges

Oregon Form (2019)
112038-0036/146596703.2

**EXHIBIT 4**
**Page 3 of 10**

and agrees that Lender may from time to time (i) verify and re-verify any information contained in Borrower's application for the Loan, (ii) order additional credit reports from any credit reporting agency with respect to Borrower and Guarantor, and (iii) report Borrower's and Guarantor's name(s), account information and payment history to any credit reporting agency.

(b)    **Tax Reporting.**  Guarantor pay when due all taxes, assessments and other liens and charges against Guarantor related to tax payments, including, without limitation, each payment due under any payment plan or settlement established with the Internal Revenue Service, State of Oregon, State of California and State of Washington.  Guarantor shall provide to Lender, within three Business Days after Lender's request therefor, evidence in form and substance satisfactory to Lender of Guarantor's timely payment of taxes, assessments or liens or charges related to Guarantor's tax liability, release of tax liens that have been paid in full, and Guarantor's good standing with all tax authorities with jurisdiction over Guarantor and its assets.

5.    **Unconditional Character of Obligations of Guarantor**.

(a)    The obligations of Guarantor hereunder shall be irrevocable, absolute and unconditional, irrespective of the validity, regularity or enforceability, in whole or in part, of the other Loan Documents or any provision thereof, or the absence of any action to enforce the same, any waiver or consent with respect to any provision thereof, the recovery of any judgment against Borrower, Guarantor or any other Person or any action to enforce the same, any failure or delay in the enforcement of the obligations of Borrower under the other Loan Documents or Guarantor under this Guaranty, or any setoff, counterclaim, and irrespective of any other circumstances which might otherwise limit recourse against Guarantor by Lender or constitute a legal or equitable discharge or defense of a guarantor or surety.  Lender may enforce the obligations of Guarantor under this Guaranty by a proceeding at law, in equity or otherwise, independent of any loan foreclosure or similar proceeding or any deficiency action against Borrower or any other Person at any time, either before or after an action against the Property or any part thereof, Borrower or any other Person. **This Guaranty is a guaranty of payment and performance and not merely a guaranty of collection.**  Guarantor waives diligence, notice of acceptance of this Guaranty, filing of claims with any court, any proceeding to enforce any provision of any other Loan Document, against Guarantor, Borrower or any other Person, any right to require a proceeding first against Borrower or any other Person, or to exhaust any security (including, without limitation, the Property) for the performance of the Guaranteed Obligations or any other obligations of Borrower or any other Person, or any protest, presentment, notice of default or other notice or demand whatsoever (except to the extent expressly provided to the contrary in this Guaranty).

(b)    The obligations of Guarantor under this Guaranty, and the rights of Lender to enforce the same by proceedings, whether by action at law, suit in equity or otherwise, shall not be in any way affected by any of the following:

(i)    any insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting Borrower, the Property or any part thereof, Guarantor or any other Person;

(ii)    any failure by Lender or any other Person, whether or not without fault on its part, to perform or comply with any of the terms of the Note, or any other Loan Documents, or any document or instrument relating thereto;

4

(iii)    the sale, transfer or conveyance of the Property or any interest therein to any Person, whether now or hereafter having or acquiring an interest in the Property or any interest therein and whether or not pursuant to any foreclosure, trustee sale or similar proceeding against Borrower or the Property or any interest therein;

(iv)    the conveyance to Lender, any Affiliate of Lender or Lender's nominee of the Property or any interest therein by a deed-in-lieu of foreclosure;

(v)    the release of Borrower or any other Person from the performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law or otherwise; or

(vi)    the release in whole or in part of any collateral for any or all Guaranteed Obligations or for the Loan or any portion thereof.

(c)    Except as otherwise specifically provided in this Guaranty, Guarantor hereby expressly and irrevocably waives all defenses in an action brought by Lender to enforce this Guaranty based on claims of waiver, release, surrender, alteration or compromise and all setoffs, reductions, or impairments, whether arising hereunder or otherwise.

(d)    Lender may deal with Borrower and Affiliates of Borrower in the same manner and as freely as if this Guaranty did not exist and shall be entitled, among other things, to grant Borrower or any other Person such extension or extensions of time to perform any act or acts as may be deemed advisable by Lender, at any time and from time to time, without terminating, affecting or impairing the validity of this Guaranty or the obligations of Guarantor hereunder.

(e)    No compromise, alteration, amendment, modification, extension, renewal, release or other change of, or waiver, consent, delay, omission, failure to act or other action with respect to, any liability or obligation under or with respect to, or of any of the terms, covenants or conditions of, the Loan Documents shall in any way alter, impair or affect any of the obligations of Guarantor hereunder, and Guarantor agrees that if any Loan Document are modified with Lender's consent, the Guaranteed Obligations shall automatically be deemed modified to include such modifications.

(f)    Lender may proceed to protect and enforce any or all of its rights under this Guaranty by suit in equity or action at law, whether for the specific performance of any covenants or agreements contained in this Guaranty or otherwise, or to take any action authorized or permitted under applicable law, and shall be entitled to require and enforce the performance of all acts and things required to be performed hereunder by Guarantor.  Each and every remedy of Lender shall, to the extent permitted by law, be cumulative and shall be in addition to any other remedy given hereunder or now or hereafter existing at law or in equity.

(g)    No waiver shall be deemed to have been made by Lender of any rights hereunder unless the same shall be in writing and signed by Lender, and any such waiver shall be a waiver only with respect to the specific matter involved and shall in no way impair the rights of Lender or the obligations of Guarantor to Lender in any other respect or at any other time.

(h)    At the option of Lender, Guarantor may be joined in any action or proceeding commenced by Lender against Borrower in connection with or based upon any other

5

Loan Documents and recovery may be had against Guarantor in such action or proceeding or in any independent action or proceeding against Guarantor to the extent of Guarantor's liability hereunder, without any requirement that Lender first assert, prosecute or exhaust any remedy or claim against Borrower or any other Person, or any security for the obligations of Borrower or any other Person.

(i)     Guarantor agrees that this Guaranty shall continue to be effective or shall be reinstated, as the case may be, if at any time any payment is made by Borrower or Guarantor to Lender and such payment is rescinded or must otherwise be returned by Lender (as determined by Lender in its sole and absolute discretion) upon insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting Borrower or Guarantor, all as though such payment had not been made.

(j)     In the event that Guarantor shall advance or become obligated to pay any sums under this Guaranty or in connection with the Guaranteed Obligations or in the event that for any reason whatsoever Borrower or any subsequent owner of the Property or any part thereof is now, or shall hereafter become, indebted to Guarantor, Guarantor agrees that (i) the amount of such sums and of such indebtedness and all interest thereon shall at all times be subordinate as to lien, the time of payment and in all other respects to all sums, including unpaid principal and interest and other amounts, at any time owed to Lender under the Loan Documents, and (ii) Guarantor shall not be entitled to enforce or receive payment thereof until all principal, interest and other sums due pursuant to the Loan Documents have been paid in full.  Nothing herein contained is intended or shall be construed to give Guarantor any right of subrogation in or under the Loan Documents or any right to participate in any way therein, or in the right, title or interest of Lender in or to any collateral for the Loan, notwithstanding any payments made by Guarantor under this Guaranty, until the actual and irrevocable receipt by Lender of payment in full of all principal, interest and other sums due with respect to the Loan or otherwise payable under the Loan Documents.  If any amount shall be paid to Guarantor on account of such subrogation rights at any time when any such sums due and owing to Lender shall not have been fully paid, such amount shall be paid by Guarantor to Lender for credit and application against such sums due and owing to Lender.

(k)     Guarantor's obligations hereunder shall survive a foreclosure, deed-in-lieu of foreclosure or similar proceeding involving the Property and the exercise by Lender of any or all of its remedies pursuant to the Loan Documents.

(l)     Intentionally Omitted.

**6.     Entire Agreement/Amendments**.   This instrument represents the entire agreement between the parties with respect to the subject matter hereof.  The terms of this Guaranty shall not be waived, altered, modified, amended, supplemented or terminated in any manner whatsoever except by written instrument signed by Lender and Guarantor.

**7.     Successors and Assigns**.  This Guaranty shall be binding upon Guarantor, and Guarantor's estate, heirs, personal representatives, successors and assigns, may not be assigned or delegated by Guarantor and shall inure to the benefit of Lender and its successors and assigns.

**8.     Applicable Law and Consent to Jurisdiction**.  This Guaranty shall be governed by, and construed in accordance with, the substantive laws of the state in which the Property is

Oregon Form (2019)
112038-0036/146596703.2

**EXHIBIT 4
Page 6 of 10**

located.  Guarantor irrevocably (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Guaranty may be brought in a court of record with jurisdiction in the county and state in which the Property is located, or in the courts of the United States of America located in California, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.  Guarantor irrevocably consents to the service of any and all process in any such suit, action or proceeding by service of copies of such process to Guarantor at its address provided in Section 13 hereof.  Nothing in this Section 8, however, shall affect the right of Lender to serve legal process in any other manner permitted by law or affect the right of Lender to bring any suit, action or proceeding against Guarantor or its property in the courts of any other jurisdictions.

9.     **Section Headings**.  The headings of the sections and paragraphs of this Guaranty have been inserted for convenience of reference only and shall in no way define, modify, limit or amplify any of the terms or provisions hereof.

10.     **Severability**.  Any provision of this Guaranty which may be determined by any competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.  To the extent permitted by applicable law, Guarantor hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.

11.     **WAIVER OF TRIAL BY JURY**.  GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.   THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

12.     **Other Guaranties**.  The obligations of Guarantor hereunder are separate and distinct from, and in addition to, the obligations of Guarantor now or hereafter arising under any other guaranties, indemnification agreements or other agreements to which Guarantor is now or hereafter becomes a party.  In no event shall Guarantor be entitled to any credit against amounts due under this Guaranty by reason of amounts paid to Lender by Guarantor or any other Person under or by reason of the other guaranties, indemnification agreements or other agreements to which Guarantor is now or hereafter becomes a party.

13.     **Notices**.  All notices, consents, approvals and requests required or permitted hereunder (a "**Notice**") shall be given in writing and shall be effective for all purposes if either hand delivered with receipt acknowledged, or by a nationally recognized overnight delivery service (such as Federal Express), or by certified or registered United States mail, return receipt requested, postage prepaid, or by facsimile and confirmed by facsimile answer back, in each case addressed as follows (or to such other address or Person as a party shall designate from time to time by notice to the other party):  If to Lender: Axos Bank, 4350 La Jolla Village Drive, Suite 100,

7

San Diego, California 92122, Attention:  Legal Department; if to Guarantor: 11707 North East Airport Way, Portland, OR 97220.  A notice shall be deemed to have been given:  in the case of hand delivery, at the time of delivery; in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day; or in the case of overnight delivery, upon the first attempted delivery on a Business Day; or in the case of facsimile, upon the confirmation of such facsimile transmission.

**14.    Guarantor's Receipt of Loan Documents**.  Guarantor by its execution hereof acknowledges receipt of true copies of all of the Loan Documents, the terms and conditions of which are hereby incorporated herein by reference.

**15.    Interest; Expenses.**

(a)    If Guarantor fails to pay all or any sums due hereunder upon demand by Lender, the amount of such sums payable by Guarantor to Lender shall bear interest from the date of demand until paid at the Default Rate in effect from time to time.

(b)    Guarantor hereby agrees to pay all costs, charges and expenses, including reasonable attorneys' fees and disbursements, that may be incurred by Lender in enforcing the covenants, agreements, obligations and liabilities of Guarantor under this Guaranty.

**16.    Joint and Several Obligations**.  If Guarantor consists of more than one Person, each such Person shall have joint and several liability for the obligations of Guarantor hereunder.

**17.    State Specific Provisions.**

(a)    In the event of any inconsistencies between the terms and conditions of this Section 17, and the other terms and conditions of this Guaranty, the terms of this Section 17 will control and be binding.

(b)    The obligations of Guarantor under this Guaranty are in addition to the obligations of all other guarantors of the Loan.

(c)    Guarantor's obligations under this Guaranty are not secured by the Security Instrument granted by Borrower.

(d)    With respect to any references in the Guaranty related to attorneys' fees, such fees shall include, without limitation, all costs and expenses (both in-house and outside counsel), incurred by Lender in enforcing this Guaranty against Guarantor, whether incurred at the trial or appellate level, in an arbitration proceeding, in bankruptcy (including, without limitation, any adversary proceeding, contested matter or motion) or otherwise.

(e)    Guarantor understands that a nonjudicial foreclosure of the Security Instrument granted by Borrower or any other deed of trust or trust deed securing the indebtedness of Borrower to Lender, granted by any person other than Guarantor, could impair or eliminate any subrogation, reimbursement or contribution rights Guarantor may have against the grantor of such Security Instrument or other deed of trust or trust deed; nevertheless, Guarantor waives and relinquishes any defense based upon the loss of such rights or any other defense that may otherwise arise out of ORS 86.797 or any other applicable anti-deficiency statute of another state. Guarantor understands and agrees that Lender may in its discretion nonjudicially foreclose one or more Security Instrument or other deeds of trust granted to it by Borrower, then collect from

Oregon Form (2019)
112038-0036/146596703.2

**EXHIBIT 4
Page 8 of 10**

Guarantor a sum equal to the difference between the total amount of the Obligations and the amount of the successful bid at each trustee sale.

(f)      The death of Guarantor will not revoke this Guaranty as to such decedent unless and until written notice is actually received by Lender and until all of the Guaranteed Obligations then existing are fully paid and discharged.

(g)      Guarantor expressly agrees that this Guaranty is for the benefit of his or her marital community and that recourse may be had against Guarantor's separate property and all of the community property of Guarantor and his or her spouse for all of Guarantor's obligations hereunder.

**UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.**

[*Signature Page Follows.*]

Oregon Form (2019)
112038-0036/146596703.2

**EXHIBIT 4**
**Page 9 of 10**

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the date first above written.  Where applicable law so provides, Guarantor intends that this Guaranty shall be deemed to be signed and delivered as a sealed instrument.

GUARANTOR:

MARK S. HEMSTREET

10

Oregon Form (2019)
112038-0036/146596703.2

**EXHIBIT 4**
**Page 10 of 10**

<u>**GUARANTY**</u>

This **GUARANTY** (this "**Guaranty**"), dated as of December 16, 2019, made by PORTLAND/205 HOTEL (2) CORP., an Oregon corporation, having an address at 11707 North East Airport Way, Portland, OR 97220 ("**Guarantor**"), in favor of AXOS BANK™, a federally chartered savings association (together with its successors and assigns, hereinafter referred to as "**Lender**"), having an address of 4350 La Jolla Village Drive, Suite 100, San Diego, California 92122.

R E C I T A L S:

A.      Pursuant to that certain Secured Promissory Note dated as of the date hereof (as the same may be amended, modified, supplemented or replaced from time to time, the "**Note**") between SHILO INN, PORTLAND/205, LLC, an Oregon limited liability company ("**Borrower**") and Lender, Lender has agreed to make a loan (the "**Loan**") to Borrower in an aggregate principal amount not to exceed $12,200,000.00, subject to the terms and conditions of the Note;

B.      As a condition to Lender's making the Loan, Lender is requiring that Guarantor execute and deliver to Lender this Guaranty; and

C.      Guarantor hereby acknowledges that Guarantor will materially benefit from Lender's agreeing to make the Loan;

**NOW, THEREFORE**, in consideration of the premises set forth herein and as an inducement for and in consideration of the agreement of Lender to make the Loan pursuant to the Note, Guarantor hereby agrees, covenants, represents and warrants to Lender as follows:

1.      **Definitions**.

(a)      All capitalized terms used and not defined herein shall have the respective meanings given such terms in the Note.

(b)      The term "**Guaranteed Obligations**" means:  (a) all indebtedness and obligations, of any nature whatsoever, of the Borrower under the Note and other Loan Documents and any and all extensions, renewals, substitutions, replacements, and modifications thereof, whether now in existence or hereafter created, including, without limitation, (i) all principal of and interest on the Note, and (ii) all fees, charges, costs, and other amounts payable by Borrower under the Note and the other Loan Documents; (b) the payment and performance of all obligations of Borrower under each Loan Document; and (c) all costs and expenses, including reasonable fees and out of pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under this Guaranty, the Security Instrument, and any other Loan Document.

(c)      The term "**Governmental Authority**" means, collectively (a) the United States; (b) the state, county, city, and any other political subdivision of the jurisdiction in which the Property is located; (c) all other governmental or quasi-governmental authorities, boards, bureaus, agencies, commissions, departments, administrative tribunals, and other instrumentalities or authorities including, without limitation all judicial authorities and public utilities having or exercising jurisdiction over Borrower or the Property.

1

**EXHIBIT 5**
**Page 1 of 10**

2.      **Guaranty**.

(a)      Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Lender the full, prompt and complete payment when due of the Guaranteed Obligations.

(b)      All sums payable to Lender under this Guaranty shall be payable on demand and without reduction for any offset, claim, counterclaim or defense.

(c)      Guarantor hereby agrees to indemnify, defend and save harmless Lender from and against any and all costs, losses, liabilities, claims, causes of action, expenses and damages, including reasonable attorneys' fees and disbursements, which Lender may suffer or which otherwise may arise by reason of Borrower's failure to pay any of the Guaranteed Obligations when due, irrespective of whether such costs, losses, liabilities, claims, causes of action, expenses or damages are incurred by Lender prior or subsequent to (i) Lender's declaring the unpaid principal, interest and other sums evidenced or secured by the Loan Documents to be due and payable, (ii) the commencement or completion of a judicial or non-judicial foreclosure of the Security Instrument or (iii) the conveyance of all or any portion of the Property by deed-in-lieu of foreclosure.

(d)      Guarantor agrees that no portion of any sums applied (other than sums received from Guarantor in full or partial satisfaction of its obligations hereunder), from time to time, in reduction of the Loan shall be deemed to have been applied in reduction of the Guaranteed Obligations until such time as the Loan has been paid in full, or Guarantor shall have made the full payment required hereunder, it being the intention hereof that the Guaranteed Obligations shall be the last portion of the Loan to be deemed satisfied.

(e)      Notwithstanding anything to the contrary herein or in the other Loan Documents, this Guaranty is and shall remain unsecured.

3.      **Representations and Warranties**.  Guarantor hereby represents and warrants to Lender as follows (which representations and warranties shall be given as of the date hereof and shall survive the execution and delivery of this Guaranty):

(a)      **Execution**.  This Guaranty has been duly executed and delivered by Guarantor.

(b)      **Enforceability**.  This Guaranty constitutes a legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally.

(c)      **No Violation**.  The execution, delivery and performance by Guarantor of its obligations under this Guaranty do not and will not violate any law, regulation, order, writ, injunction or decree of any court or governmental body, agency or other instrumentality applicable to Guarantor, or result in a breach of any of the terms, conditions or provisions of, or constitute a default under, or result in the creation or imposition of any mortgage, lien, charge or encumbrance of any nature whatsoever upon any of the assets of Guarantor pursuant to the terms of any mortgage, indenture, agreement, trust instrument, or other instrument to which Guarantor is a party or by which it or any of its properties is bound.  Guarantor is not in default under any other guaranty which it has provided to Lender.

2

(d)  **No Litigation**.  There are no actions, suits or proceedings at law or at equity, pending or, to Guarantor's best knowledge, threatened against or affecting Guarantor or which involve or might involve the validity or enforceability of this Guaranty or which might materially adversely affect the financial condition of Guarantor or the ability of Guarantor to perform any of its obligations under this Guaranty.  Guarantor is not in default beyond any applicable grace or cure period with respect to any order, writ, injunction, decree or demand of any Governmental Authority which might materially adversely affect the financial condition of Guarantor or the ability of Guarantor to perform any of its obligations under this Guaranty.

(e)  **Consents**.  All consents, approvals, orders or authorizations of, or registrations, declarations or filings with, all Governmental Authorities (collectively, the "**Consents**") that are required in connection with the valid execution, delivery and performance by Guarantor of this Guaranty have been obtained and Guarantor agrees that all Consents required in connection with the carrying out or performance of any of Guarantor's obligations under this Guaranty will be obtained when required.

(f)  **Financial Statements and Other Information**.  All financial statements of Guarantor heretofore delivered to Lender are true and correct in all material respects and fairly present the financial condition of Guarantor as of the respective dates thereof, and no materially adverse change has occurred in the financial conditions reflected therein since the respective dates thereof.  None of the aforesaid financial statements or any certificate or statement furnished to Lender by or on behalf of Guarantor in connection with the transactions contemplated hereby, and none of the representations and warranties in this Guaranty contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein or herein not misleading.  Guarantor is not insolvent within the meaning of the United States Bankruptcy Code or any other applicable law, code or regulation and the execution, delivery and performance of this Guaranty will not render Guarantor insolvent.

(g)  **Consideration**.  Guarantor is the owner, directly or indirectly, of certain legal and beneficial equity interests in Borrower.

4.  **Financial Reporting**.  Guarantor shall from time to time, upon request by Lender, deliver to Lender such financial statements as Lender may reasonably require, including as applicable as determined by Lender, a balance sheet, an income and expense statement, a personal financial statement including schedule of real estate and a statement of financial affairs, all in form and content acceptable to Lender.  Guarantor shall also furnish to Lender complete copies of all federal and state income tax returns (including accompanying schedules and related K-1's) filed by Guarantor within thirty (30) days after filing (provided that if returns are not filed on time then a copy of any applicable extension filings shall be made available for delivery to Lender upon Lender's request as provided above within thirty (30) days after the extension filing due date).  Upon request by Lender, all such tax returns must be prepared by an independent certified public accountant or attorney.  Each of the statements, schedules, documents, items and reports required by this paragraph shall be certified to be complete and accurate by Guarantor (or for an entity Guarantor, an individual having authority to bind Guarantor), and shall be in such form and contain such detail as Lender may reasonably require.  Lender may at Lender's discretion require that any statements, schedules or reports be audited at Borrower's expense by independent certified public accountants acceptable to Lender.  Guarantor acknowledges and agrees that (a) the reporting requirements of this paragraph apply to each Guarantor if more than one Guarantor is executing this Guaranty, and (b) that failure of any Guarantor to provide financial statements, information, documents or tax returns required by this paragraph within thirty (30) days of request by Lender shall constitute a material Event of Default under the Loan.  Guarantor acknowledges

3

and agrees that Lender may from time to time (i) verify and re-verify any information contained in Borrower's application for the Loan, (ii) order additional credit reports from any credit reporting agency with respect to Borrower and Guarantor, and (iii) report Borrower's and Guarantor's name(s), account information and payment history to any credit reporting agency.

**5.    Unconditional Character of Obligations of Guarantor**.

(a)    The obligations of Guarantor hereunder shall be irrevocable, absolute and unconditional, irrespective of the validity, regularity or enforceability, in whole or in part, of the other Loan Documents or any provision thereof, or the absence of any action to enforce the same, any waiver or consent with respect to any provision thereof, the recovery of any judgment against Borrower, Guarantor or any other Person or any action to enforce the same, any failure or delay in the enforcement of the obligations of Borrower under the other Loan Documents or Guarantor under this Guaranty, or any setoff, counterclaim, and irrespective of any other circumstances which might otherwise limit recourse against Guarantor by Lender or constitute a legal or equitable discharge or defense of a guarantor or surety.  Lender may enforce the obligations of Guarantor under this Guaranty by a proceeding at law, in equity or otherwise, independent of any loan foreclosure or similar proceeding or any deficiency action against Borrower or any other Person at any time, either before or after an action against the Property or any part thereof, Borrower or any other Person.  **This Guaranty is a guaranty of payment and performance and not merely a guaranty of collection.**  Guarantor waives diligence, notice of acceptance of this Guaranty, filing of claims with any court, any proceeding to enforce any provision of any other Loan Document, against Guarantor, Borrower or any other Person, any right to require a proceeding first against Borrower or any other Person, or to exhaust any security (including, without limitation, the Property) for the performance of the Guaranteed Obligations or any other obligations of Borrower or any other Person, or any protest, presentment, notice of default or other notice or demand whatsoever (except to the extent expressly provided to the contrary in this Guaranty).

(b)    The obligations of Guarantor under this Guaranty, and the rights of Lender to enforce the same by proceedings, whether by action at law, suit in equity or otherwise, shall not be in any way affected by any of the following:

(i)    any insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting Borrower, the Property or any part thereof, Guarantor or any other Person;

(ii)    any failure by Lender or any other Person, whether or not without fault on its part, to perform or comply with any of the terms of the Note, or any other Loan Documents, or any document or instrument relating thereto;

(iii)    the sale, transfer or conveyance of the Property or any interest therein to any Person, whether now or hereafter having or acquiring an interest in the Property or any interest therein and whether or not pursuant to any foreclosure, trustee sale or similar proceeding against Borrower or the Property or any interest therein;

(iv)    the conveyance to Lender, any Affiliate of Lender or Lender's nominee of the Property or any interest therein by a deed-in-lieu of foreclosure;

(v)    the release of Borrower or any other Person from the performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law or otherwise; or

(vi)    the release in whole or in part of any collateral for any or all Guaranteed Obligations or for the Loan or any portion thereof.

(c)    Except as otherwise specifically provided in this Guaranty, Guarantor hereby expressly and irrevocably waives all defenses in an action brought by Lender to enforce this Guaranty based on claims of waiver, release, surrender, alteration or compromise and all setoffs, reductions, or impairments, whether arising hereunder or otherwise.

(d)    Lender may deal with Borrower and Affiliates of Borrower in the same manner and as freely as if this Guaranty did not exist and shall be entitled, among other things, to grant Borrower or any other Person such extension or extensions of time to perform any act or acts as may be deemed advisable by Lender, at any time and from time to time, without terminating, affecting or impairing the validity of this Guaranty or the obligations of Guarantor hereunder.

(e)    No compromise, alteration, amendment, modification, extension, renewal, release or other change of, or waiver, consent, delay, omission, failure to act or other action with respect to, any liability or obligation under or with respect to, or of any of the terms, covenants or conditions of, the Loan Documents shall in any way alter, impair or affect any of the obligations of Guarantor hereunder, and Guarantor agrees that if any Loan Document are modified with Lender's consent, the Guaranteed Obligations shall automatically be deemed modified to include such modifications.

(f)    Lender may proceed to protect and enforce any or all of its rights under this Guaranty by suit in equity or action at law, whether for the specific performance of any covenants or agreements contained in this Guaranty or otherwise, or to take any action authorized or permitted under applicable law, and shall be entitled to require and enforce the performance of all acts and things required to be performed hereunder by Guarantor.  Each and every remedy of Lender shall, to the extent permitted by law, be cumulative and shall be in addition to any other remedy given hereunder or now or hereafter existing at law or in equity.

(g)    No waiver shall be deemed to have been made by Lender of any rights hereunder unless the same shall be in writing and signed by Lender, and any such waiver shall be a waiver only with respect to the specific matter involved and shall in no way impair the rights of Lender or the obligations of Guarantor to Lender in any other respect or at any other time.

(h)    At the option of Lender, Guarantor may be joined in any action or proceeding commenced by Lender against Borrower in connection with or based upon any other Loan Documents and recovery may be had against Guarantor in such action or proceeding or in any independent action or proceeding against Guarantor to the extent of Guarantor's liability hereunder, without any requirement that Lender first assert, prosecute or exhaust any remedy or claim against Borrower or any other Person, or any security for the obligations of Borrower or any other Person.

(i)    Guarantor agrees that this Guaranty shall continue to be effective or shall be reinstated, as the case may be, if at any time any payment is made by Borrower or Guarantor to Lender and such payment is rescinded or must otherwise be returned by Lender (as determined

Oregon Form (2019)
112038-0036/146601681.2

**EXHIBIT 5**
**Page 5 of 10**

by Lender in its sole and absolute discretion) upon insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting Borrower or Guarantor, all as though such payment had not been made.

(j)      In the event that Guarantor shall advance or become obligated to pay any sums under this Guaranty or in connection with the Guaranteed Obligations or in the event that for any reason whatsoever Borrower or any subsequent owner of the Property or any part thereof is now, or shall hereafter become, indebted to Guarantor, Guarantor agrees that (i) the amount of such sums and of such indebtedness and all interest thereon shall at all times be subordinate as to lien, the time of payment and in all other respects to all sums, including unpaid principal and interest and other amounts, at any time owed to Lender under the Loan Documents, and (ii) Guarantor shall not be entitled to enforce or receive payment thereof until all principal, interest and other sums due pursuant to the Loan Documents have been paid in full.  Nothing herein contained is intended or shall be construed to give Guarantor any right of subrogation in or under the Loan Documents or any right to participate in any way therein, or in the right, title or interest of Lender in or to any collateral for the Loan, notwithstanding any payments made by Guarantor under this Guaranty, until the actual and irrevocable receipt by Lender of payment in full of all principal, interest and other sums due with respect to the Loan or otherwise payable under the Loan Documents. If any amount shall be paid to Guarantor on account of such subrogation rights at any time when any such sums due and owing to Lender shall not have been fully paid, such amount shall be paid by Guarantor to Lender for credit and application against such sums due and owing to Lender.

(k)      Guarantor's obligations hereunder shall survive a foreclosure, deed-in-lieu of foreclosure or similar proceeding involving the Property and the exercise by Lender of any or all of its remedies pursuant to the Loan Documents.

(l)      Intentionally Omitted.

**6.      Entire Agreement/Amendments**.   This instrument represents the entire agreement between the parties with respect to the subject matter hereof.   The terms of this Guaranty shall not be waived, altered, modified, amended, supplemented or terminated in any manner whatsoever except by written instrument signed by Lender and Guarantor.

**7.      Successors and Assigns**.  This Guaranty shall be binding upon Guarantor, and Guarantor's estate, heirs, personal representatives, successors and assigns, may not be assigned or delegated by Guarantor and shall inure to the benefit of Lender and its successors and assigns.

**8.      Applicable Law and Consent to Jurisdiction**.  This Guaranty shall be governed by, and construed in accordance with, the substantive laws of the state in which the Property is located.  Guarantor irrevocably (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Guaranty may be brought in a court of record with jurisdiction in the county and state in which the Property is located, or in the courts of the United States of America located in California, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.  Guarantor irrevocably consents to the service of any and all process in any such suit, action or proceeding by service of copies of such process to Guarantor at its address provided in Section 13 hereof.  Nothing in this Section 8,

6

however, shall affect the right of Lender to serve legal process in any other manner permitted by law or affect the right of Lender to bring any suit, action or proceeding against Guarantor or its property in the courts of any other jurisdictions.

9.    **Section Headings**.  The headings of the sections and paragraphs of this Guaranty have been inserted for convenience of reference only and shall in no way define, modify, limit or amplify any of the terms or provisions hereof.

10.    **Severability**.  Any provision of this Guaranty which may be determined by any competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.  To the extent permitted by applicable law, Guarantor hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.

11.    **WAIVER OF TRIAL BY JURY**.  GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

12.    **Other Guaranties**.  The obligations of Guarantor hereunder are separate and distinct from, and in addition to, the obligations of Guarantor now or hereafter arising under any other guaranties, indemnification agreements or other agreements to which Guarantor is now or hereafter becomes a party.  In no event shall Guarantor be entitled to any credit against amounts due under this Guaranty by reason of amounts paid to Lender by Guarantor or any other Person under or by reason of the other guaranties, indemnification agreements or other agreements to which Guarantor is now or hereafter becomes a party.

13.    **Notices**.  All notices, consents, approvals and requests required or permitted hereunder (a "**Notice**") shall be given in writing and shall be effective for all purposes if either hand delivered with receipt acknowledged, or by a nationally recognized overnight delivery service (such as Federal Express), or by certified or registered United States mail, return receipt requested, postage prepaid, or by facsimile and confirmed by facsimile answer back, in each case addressed as follows (or to such other address or Person as a party shall designate from time to time by notice to the other party):  If to Lender: Axos Bank, 4350 La Jolla Village Drive, Suite 100, San Diego, California 92122, Attention:  Legal Department; if to Guarantor: 11707 North East Airport Way, Portland, OR 97220.  A notice shall be deemed to have been given:  in the case of hand delivery, at the time of delivery; in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day; or in the case of overnight delivery, upon the first attempted delivery on a Business Day; or in the case of facsimile, upon the confirmation of such facsimile transmission.

**EXHIBIT 5**
**Page 7 of 10**

**14.    Guarantor's Receipt of Loan Documents**.  Guarantor by its execution hereof acknowledges receipt of true copies of all of the Loan Documents, the terms and conditions of which are hereby incorporated herein by reference.

**15.    Interest; Expenses.**

(a)    If Guarantor fails to pay all or any sums due hereunder upon demand by Lender, the amount of such sums payable by Guarantor to Lender shall bear interest from the date of demand until paid at the Default Rate in effect from time to time.

(b)    Guarantor hereby agrees to pay all costs, charges and expenses, including reasonable attorneys' fees and disbursements, that may be incurred by Lender in enforcing the covenants, agreements, obligations and liabilities of Guarantor under this Guaranty.

**16.    Joint and Several Obligations**.  If Guarantor consists of more than one Person, each such Person shall have joint and several liability for the obligations of Guarantor hereunder.

**17.    State Specific Provisions.**

(a)    In the event of any inconsistencies between the terms and conditions of this Section 17, and the other terms and conditions of this Guaranty, the terms of this Section 17 will control and be binding.

(b)    The obligations of Guarantor under this Guaranty are in addition to the obligations of all other guarantors of the Loan.

(c)    Guarantor's obligations under this Guaranty are not secured by the Security Instrument granted by Borrower.

(d)    With respect to any references in the Guaranty related to attorneys' fees, such fees shall include, without limitation, all costs and expenses (both in-house and outside counsel), incurred by Lender in enforcing this Guaranty against Guarantor, whether incurred at the trial or appellate level, in an arbitration proceeding, in bankruptcy (including, without limitation, any adversary proceeding, contested matter or motion) or otherwise.

(e)    Guarantor understands that a nonjudicial foreclosure of the Security Instrument granted by Borrower or any other deed of trust or trust deed securing the indebtedness of Borrower to Lender, granted by any person other than Guarantor, could impair or eliminate any subrogation, reimbursement or contribution rights Guarantor may have against the grantor of such Security Instrument or other deed of trust or trust deed; nevertheless, Guarantor waives and relinquishes any defense based upon the loss of such rights or any other defense that may otherwise arise out of ORS 86.797 or any other applicable anti-deficiency statute of another state. Guarantor understands and agrees that Lender may in its discretion nonjudicially foreclose one or more Security Instrument or other deeds of trust granted to it by Borrower, then collect from Guarantor a sum equal to the difference between the total amount of the Obligations and the amount of the successful bid at each trustee sale.

**UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY**

8

**EXHIBIT 5
Page 8 of 10**

**BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.**

[*Signature Page Follows.*]

9

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the date first above written.  Where applicable law so provides, Guarantor intends that this Guaranty shall be deemed to be signed and delivered as a sealed instrument.

**GUARANTOR**

PORTLAND/205 HOTEL (2) CORP.,
an Oregon corporation

By: _____
Mark S. Hemstreet
Secretary

10

Oregon Form (2019)
112038-0036/146601681.2

**EXHIBIT 5**
**Page 10 of 10**



**6/1/2020**

SHILO INN, PORTLAND/205,LLC
11707 NORTH EAST AIRPORT WAY
PORTLAND CA 97220

Re: ████████████

11707 NORTH EAST AIRPORT WAY, PORTLAND, OR 97220

## <u>NOTICE OF INTENT TO ACCELERATE</u>

Dear SHILO INN, PORTLAND/205,LLC

 Axos Bank ("Noteholder") is the current holder of that certain promissory note (the "Note").  The loan evidenced by the Note (the "Loan") is in default on account of your failure to make the payment due on 03/01/2020, and all subsequent payments (the "Default").

Pursuant to the Note, so long as any monthly installment remains past due for thirty (30) days or more, interest shall accrue on the unpaid principal from the payment due date of the first such unpaid monthly installment at the default rate of 18% (the "Default Rate").  As the Loan is currently due for 03/01/2020, interest accrues at the Default Rate from and after that date.

You have the right to cure the Default.  Demand is hereby made for the payment of the unpaid amounts due and owing under the Loan, which, as of 06/01/2020, are in the amount of $476,409.21, plus any interest, late charges, and other fees that may accrue under the Loan subsequent to the date of this notice (the "Cure Amount"). If you have any questions regarding the Cure Amount, please contact the Noteholder's representative, Special Assets, at 877-764-9998 to obtain the exact amount.  The Cure Amount should be made in certified funds and mailed to the Noteholder at the following address: Axos Bank, 4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122 Attn: Special Assets.

Please be advised that if the Cure Amount is not received by the Noteholder within thirty (30) days from the date of this letter: (1) the Loan balance will be accelerated with the full amount remaining on the Loan becoming due and payable in full; (2) the power of sale clause in the trust deed or mortgage securing the Loan will be invoked; and (3) foreclosure proceedings will be initiated against the property securing the Loan. Accordingly, the failure to cure the Default may result in the foreclosure and sale of your property.  If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the Default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, the Noteholder shall be entitled to collect all fees and costs incurred in pursuing any of its remedies, including but not

MEMBER
**FDIC**

EQUAL HOUSING
LENDER

**EXHIBIT 6**
**Page 1 of 12**

limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

You may request a copy of the loan documents, including the promissory note, deed of trust or mortgage, any assignment of the deed of trust or mortgage, as applicable, and your payment history.

If you are a service member, or the dependent of a service member, you may be entitled to certain additional protections under the federal Servicemembers Civil Relief Act.

Please be advised that any acceptance by the Noteholder, or any of its respective representatives, of any amounts less than the amount due and owing on the Loan is not intended, and shall not be deemed, to constitute a waiver of any of the Noteholder's rights, remedies or recourse under the Loan documents, or at law or in equity, and application of such payments is not intended, nor shall it be deemed, to be a modification, rearrangement or extension of the Loan documents. Any such payments will be applied in such order as the Noteholder may elect in its sole and absolute discretion, without any waiver by the Noteholder of its right to pursue any of its rights and remedies under the Loan documents, or at law or in equity.

Nothing set forth herein is intended, nor shall it be deemed, to modify, limit, release, reduce or waive any of the Noteholder's rights, remedies and/or privileges under the Loan documents, or at law or in equity, all of which are specifically reserved.

**TO THE EXTENT THAT ANY OF YOUR OBLIGATIONS HAVE BEEN DISCHARGED, DISMISSED, OR ARE SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR ANY ATTEMPT TO COLLECT ANY SUCH OBLIGATION. IF APPLICABLE, THIS NOTICE IS GIVEN PURSUANT TO 11 U.S.C. §362(b)(11).**

If you have any questions regarding this notice, please contact me directly at 877-764-9998.

Sincerely,

Erik Bowen
ebowen@axosbank.com
VP Portfolio Management

**Notice Date:  06/01/2020**

**EXHIBIT 6**
**Page 2 of 12**



**Account No.:** ████████████

**Property Address: 11707 NORTH EAST AIRPORT WAY, PORTLAND, OR 97220**

---

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

We want you to know that assistance may be available to help you avoid foreclosure. We want to talk with you about your current loan situation to see if you qualify for one of our options, such as:

- **Loan Modification -** *Modifying the current terms of your loan to give you a more affordable and sustainable monthly home loan payment*

- **Repayment Arrangements -** *Developing a plan to repay the full amount owed over time*

- **Deed-in-Lieu -** *Signing a deed transferring title to the property over to Axos Bank to avoid foreclosure*

- **Short Sale -** *Selling the property and then Axos agrees to accept less than a full payoff of the loan from the sale of the property rather than foreclosing on it*

- **Full Reinstatement -** *Paying all past due amounts to bring your loan current*

---

**WHAT YOU NEED TO DO**

Please call us at 855-818-4115, so we can discuss in greater detail your situation and the various options available to help you. Please be prepared to provide us with your financial information (for example, income and expenses). We may also require you to provide additional documentation so we can better understand your situation. All options listed above are subject to Axos Bank approval. There is no guarantee that your request will be approved, but we will diligently work with you toward that goal.

If your loan and debt has been discharged in Bankruptcy, this letter should not be understood as an attempt to collect a debt or a demand for payment from you. You do not have to discuss or enter into a loan modification or other loss mitigation arrangement with Axos Bank. If you have previously filed for bankruptcy and your personal liability on your mortgage has been discharged, we intend to honor that discharge. However, your home remains subject to foreclosure if you are not current on the payments required by the mortgage. Axos Bank would like to discuss with you options that may help you to avoid foreclosure. If you would like to discuss these options, please contact us.

Additionally, we want to make you aware of free or low cost housing counseling made possible by the U.S. Department of Housing and Urban Development (HUD). Housing counselors can help you understand the law and your options. They can also help you organize your finances and represent you in negotiations with your lender if you need this assistance. You may find a HUD-approved housing counselor near you by calling 1-800-569-4287 or online at http://www.consumerfinance.gov/find-a-housing-counselor/. For hearing-impaired customers, HUD Counseling Agency (TDD) numbers are available at 1-800-877-8339.

This communication is from Axos Bank, the servicer of your home loan.

---

4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122
Phone: 877-764-9998 • Fax: 858-649-2821
www.axosbank.com



**EXHIBIT 6**
**Page 3 of 12**

Servicemembers Civil Relief
Act Notice Disclosure

**U.S Department of Housing
and Urban Development
Office of Housing**

OMB Approval  2502 -0584
Exp 3/31/2021

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC §§ 3901-4043) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).

- Reserve and  National Guard personnel who have been activated and are on Federal active duty

- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section

- 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds

- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.

- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.

- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.

- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. Contact information for the Bank can be found on the cover sheet of this packet.

- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php

- "Military OneSource" is the U. S. Department of Defense's information  resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800- 342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form **HUD - 92070**
(6/2017)

**EXHIBIT 6
Page 4 of 12**



6/1/2020

MARK S HEMSTREET
11707 NORTH EAST AIRPORT WAY
PORTLAND CA 97220


Re:  ████████████

     11707 NORTH EAST AIRPORT WAY, PORTLAND, OR 97220

## <u>NOTICE OF INTENT TO ACCELERATE</u>

Dear MARK S HEMSTREET

 Axos Bank ("Noteholder") is the current holder of that certain promissory note (the "Note").  The loan evidenced by the Note (the "Loan") is in default on account of your failure to make the payment due on 03/01/2020, and all subsequent payments (the "Default").

Pursuant to the Note, so long as any monthly installment remains past due for thirty (30) days or more, interest shall accrue on the unpaid principal from the payment due date of the first such unpaid monthly installment at the default rate of 18% (the "Default Rate").  As the Loan is currently due for 03/01/2020, interest accrues at the Default Rate from and after that date.

You have the right to cure the Default.  Demand is hereby made for the payment of the unpaid amounts due and owing under the Loan, which, as of 06/01/2020, are in the amount of $476,409.21, plus any interest, late charges, and other fees that may accrue under the Loan subsequent to the date of this notice (the "Cure Amount"). If you have any questions regarding the Cure Amount, please contact the Noteholder's representative, Special Assets, at 877-764-9998 to obtain the exact amount.  The Cure Amount should be made in certified funds and mailed to the Noteholder at the following address: Axos Bank, 4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122 Attn: Special Assets.

Please be advised that if the Cure Amount is not received by the Noteholder within thirty (30) days from the date of this letter: (1) the Loan balance will be accelerated with the full amount remaining on the Loan becoming due and payable in full; (2) the power of sale clause in the trust deed or mortgage securing the Loan will be invoked; and (3) foreclosure proceedings will be initiated against the property securing the Loan. Accordingly, the failure to cure the Default may result in the foreclosure and sale of your property.  If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the Default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, the Noteholder shall be entitled to collect all fees and costs incurred in pursuing any of its remedies, including but not

4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122
Phone: 877-764-9998 • Fax: 858-649-2821
www.axosbank.com

MEMBER
FDIC

EQUAL HOUSING
LENDER

EXHIBIT 6
Page 5 of 12

limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

You may request a copy of the loan documents, including the promissory note, deed of trust or mortgage, any assignment of the deed of trust or mortgage, as applicable, and your payment history.

If you are a service member, or the dependent of a service member, you may be entitled to certain additional protections under the federal Servicemembers Civil Relief Act.

Please be advised that any acceptance by the Noteholder, or any of its respective representatives, of any amounts less than the amount due and owing on the Loan is not intended, and shall not be deemed, to constitute a waiver of any of the Noteholder's rights, remedies or recourse under the Loan documents, or at law or in equity, and application of such payments is not intended, nor shall it be deemed, to be a modification, rearrangement or extension of the Loan documents. Any such payments will be applied in such order as the Noteholder may elect in its sole and absolute discretion, without any waiver by the Noteholder of its right to pursue any of its rights and remedies under the Loan documents, or at law or in equity.

Nothing set forth herein is intended, nor shall it be deemed, to modify, limit, release, reduce or waive any of the Noteholder's rights, remedies and/or privileges under the Loan documents, or at law or in equity, all of which are specifically reserved.

**TO THE EXTENT THAT ANY OF YOUR OBLIGATIONS HAVE BEEN DISCHARGED, DISMISSED, OR ARE SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR ANY ATTEMPT TO COLLECT ANY SUCH OBLIGATION. IF APPLICABLE, THIS NOTICE IS GIVEN PURSUANT TO 11 U.S.C. §362(b)(11).**

If you have any questions regarding this notice, please contact me directly at 877-764-9998.

Sincerely,

Erik Bowen
ebowen@axosbank.com
VP Portfolio Management

**Notice Date:  06/01/2020**

**EXHIBIT 6**
**Page 6 of 12**



**Account No.:** ████████████████

**Property Address: 11707 NORTH EAST AIRPORT WAY, PORTLAND, OR 97220**

---

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

We want you to know that assistance may be available to help you avoid foreclosure.  We want to talk with you about your current loan situation to see if you qualify for one of our options, such as:

- **Loan Modification -** *Modifying the current terms of your loan to give you a more affordable and sustainable monthly home loan payment*

- **Repayment Arrangements -** *Developing a plan to repay the full amount owed over time*

- **Deed-in-Lieu -** *Signing a deed transferring title to the property over to Axos Bank to avoid foreclosure*

- **Short Sale -** *Selling the property and then Axos agrees to accept less than a full payoff of the loan from the sale of the property rather than foreclosing on it*

- **Full Reinstatement -** *Paying all past due amounts to bring your loan current*

---

**WHAT YOU NEED TO DO**

Please call us at 855-818-4115, so we can discuss in greater detail your situation and the various options available to help you.  Please be prepared to provide us with your financial information (for example, income and expenses). We may also require you to provide additional documentation so we can better understand your situation.  All options listed above are subject to Axos Bank approval.  There is no guarantee that your request will be approved, but we will diligently work with you toward that goal.

If your loan and debt has been discharged in Bankruptcy, this letter should not be understood as an attempt to collect a debt or a demand for payment from you.  You do not have to discuss or enter into a loan modification or other loss mitigation arrangement with Axos Bank.  If you have previously filed for bankruptcy and your personal liability on your mortgage has been discharged, we intend to honor that discharge.  However, your home remains subject to foreclosure if you are not current on the payments required by the mortgage.  Axos Bank would like to discuss with you options that may help you to avoid foreclosure.  If you would like to discuss these options, please contact us.

Additionally, we want to make you aware of free or low cost housing counseling made possible by the U.S. Department of Housing and Urban Development (HUD).  Housing counselors can help you understand the law and your options.  They can also help you organize your finances and represent you in negotiations with your lender if you need this assistance.  You may find a HUD-approved housing counselor near you by calling 1-800-569-4287 or online at http://www.consumerfinance.gov/find-a-housing-counselor/.  For hearing-impaired customers, HUD Counseling Agency (TDD) numbers are available at 1-800-877-8339.

This communication is from Axos Bank, the servicer of your home loan.



**EXHIBIT 6**
**Page 7 of 12**

Servicemembers Civil Relief
Act Notice Disclosure

**U.S Department of Housing
and Urban Development
Office of Housing**

OMB Approval 2502 -0584
Exp 3/31/2021

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC §§ 3901-4043) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).

- Reserve and National Guard personnel who have been activated and are on Federal active duty

- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section

- 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds

- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.

- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.

- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.

- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. Contact information for the Bank can be found on the cover sheet of this packet.

- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php

- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800- 342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form **HUD - 92070**
(6/2017)

**EXHIBIT 6
Page 8 of 12**



**6/1/2020**

Portland/205 Hotel (2) Corp.
11707 NORTH EAST AIRPORT WAY
PORTLAND CA 97220

Re:  ████████████
11707 NORTH EAST AIRPORT WAY, PORTLAND, OR 97220

## <u>NOTICE OF INTENT TO ACCELERATE</u>

Dear Portland/205 Hotel (2) Corp.

 Axos Bank ("Noteholder") is the current holder of that certain promissory note (the "Note").  The loan evidenced by the Note (the "Loan") is in default on account of your failure to make the payment due on 03/01/2020, and all subsequent payments (the "Default").

Pursuant to the Note, so long as any monthly installment remains past due for thirty (30) days or more, interest shall accrue on the unpaid principal from the payment due date of the first such unpaid monthly installment at the default rate of 18% (the "Default Rate").  As the Loan is currently due for 03/01/2020, interest accrues at the Default Rate from and after that date.

You have the right to cure the Default.  Demand is hereby made for the payment of the unpaid amounts due and owing under the Loan, which, as of 06/01/2020, are in the amount of $476,409.21, plus any interest, late charges, and other fees that may accrue under the Loan subsequent to the date of this notice (the "Cure Amount"). If you have any questions regarding the Cure Amount, please contact the Noteholder's representative, Special Assets, at 877-764-9998 to obtain the exact amount.  The Cure Amount should be made in certified funds and mailed to the Noteholder at the following address: Axos Bank, 4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122 Attn: Special Assets.

Please be advised that if the Cure Amount is not received by the Noteholder within thirty (30) days from the date of this letter: (1) the Loan balance will be accelerated with the full amount remaining on the Loan becoming due and payable in full; (2) the power of sale clause in the trust deed or mortgage securing the Loan will be invoked; and (3) foreclosure proceedings will be initiated against the property securing the Loan. Accordingly, the failure to cure the Default may result in the foreclosure and sale of your property.  If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the Default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, the Noteholder shall be entitled to collect all fees and costs incurred in pursuing any of its remedies, including but not

4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122
Phone: 877-764-9998 • Fax: 858-649-2821
www.axosbank.com

MEMBER
FDIC

EQUAL HOUSING
LENDER

**EXHIBIT 6**
**Page 9 of 12**

limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

You may request a copy of the loan documents, including the promissory note, deed of trust or mortgage, any assignment of the deed of trust or mortgage, as applicable, and your payment history.

If you are a service member, or the dependent of a service member, you may be entitled to certain additional protections under the federal Servicemembers Civil Relief Act.

Please be advised that any acceptance by the Noteholder, or any of its respective representatives, of any amounts less than the amount due and owing on the Loan is not intended, and shall not be deemed, to constitute a waiver of any of the Noteholder's rights, remedies or recourse under the Loan documents, or at law or in equity, and application of such payments is not intended, nor shall it be deemed, to be a modification, rearrangement or extension of the Loan documents.  Any such payments will be applied in such order as the Noteholder may elect in its sole and absolute discretion, without any waiver by the Noteholder of its right to pursue any of its rights and remedies under the Loan documents, or at law or in equity.

Nothing set forth herein is intended, nor shall it be deemed, to modify, limit, release, reduce or waive any of the Noteholder's rights, remedies and/or privileges under the  Loan documents, or at law or in equity, all of which are specifically reserved.

**TO THE EXTENT THAT ANY OF YOUR OBLIGATIONS HAVE BEEN DISCHARGED, DISMISSED, OR ARE SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR ANY ATTEMPT TO COLLECT ANY SUCH OBLIGATION.  IF APPLICABLE, THIS NOTICE IS GIVEN PURSUANT TO 11 U.S.C. §362(b)(11).**

If you have any questions regarding this notice, please contact me directly at 877-764-9998.

Sincerely,

Erik Bowen
ebowen@axosbank.com
VP Portfolio Management


**Notice Date:  0 6 / 0 1 / 2 0 2 0**

**EXHIBIT 6**
**Page 10 of 12**



**Account No.:** ████████████████

**Property Address: 11707 NORTH EAST AIRPORT WAY, PORTLAND, OR 97220**

---

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

We want you to know that assistance may be available to help you avoid foreclosure.  We want to talk with you about your current loan situation to see if you qualify for one of our options, such as:

- **Loan Modification -** *Modifying the current terms of your loan to give you a more affordable and sustainable monthly home loan payment*

- **Repayment Arrangements -** *Developing a plan to repay the full amount owed over time*

- **Deed-in-Lieu -** *Signing a deed transferring title to the property over to Axos Bank to avoid foreclosure*

- **Short Sale -** *Selling the property and then Axos agrees to accept less than a full payoff of the loan from the sale of the property rather than foreclosing on it*

- **Full Reinstatement -** *Paying all past due amounts to bring your loan current*

---

**WHAT YOU NEED TO DO**

Please call us at 855-818-4115, so we can discuss in greater detail your situation and the various options available to help you.  Please be prepared to provide us with your financial information (for example, income and expenses). We may also require you to provide additional documentation so we can better understand your situation.  All options listed above are subject to Axos Bank approval.  There is no guarantee that your request will be approved, but we will diligently work with you toward that goal.

If your loan and debt has been discharged in Bankruptcy, this letter should not be understood as an attempt to collect a debt or a demand for payment from you.  You do not have to discuss or enter into a loan modification or other loss mitigation arrangement with Axos Bank.  If you have previously filed for bankruptcy and your personal liability on your mortgage has been discharged, we intend to honor that discharge.  However, your home remains subject to foreclosure if you are not current on the payments required by the mortgage.  Axos Bank would like to discuss with you options that may help you to avoid foreclosure.  If you would like to discuss these options, please contact us.

Additionally, we want to make you aware of free or low cost housing counseling made possible by the U.S. Department of Housing and Urban Development (HUD).  Housing counselors can help you understand the law and your options.  They can also help you organize your finances and represent you in negotiations with your lender if you need this assistance.  You may find a HUD-approved housing counselor near you by calling 1-800-569-4287 or online at http://www.consumerfinance.gov/find-a-housing-counselor/.  For hearing-impaired customers, HUD Counseling Agency (TDD) numbers are available at 1-800-877-8339.

This communication is from Axos Bank, the servicer of your home loan.



**EXHIBIT 6**
**Page 11 of 12**

Servicemembers Civil Relief
Act Notice Disclosure

**U.S Department of Housing
and Urban Development
Office of Housing**

OMB Approval 2502-0584
Exp 3/31/2021

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC §§ 3901-4043) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).

- Reserve and National Guard personnel who have been activated and are on Federal active duty

- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section

- 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds

- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.

- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.

- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.

- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. Contact information for the Bank can be found on the cover sheet of this packet.

- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php

- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800- 342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form **HUD - 92070**
(6/2017)

**EXHIBIT 6
Page 12 of 12**

Loan Number [REDACTED]

## SECURED PROMISSORY NOTE

$12,300,000.00                                                                December 16, 2019

1.      Promise to Pay

For value received, SHILO INN, SEASIDE OCEANFRONT, LLC, an Oregon limited liability company ("**Borrower**"), promises to pay to the order of AXOS BANK™, a federally chartered savings association ("**Lender**")**,** at 4350 La Jolla Village Drive, Suite 100, San Diego, California, 92122, or at such other place as may be designated in writing by Lender, the principal sum of Twelve Million Three Hundred Thousand and No/100 Dollars ($12,300,000.00), with interest on the unpaid principal balance as set forth below.  All sums owing hereunder are payable in lawful money of the United States of America, in immediately available funds, without offset, deduction or counterclaim of any kind.

2.      Secured by Security Instrument

This Note is secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (as the same may hereinafter be amended, modified, restated, renewed or extended from time to time, the "**Security Instrument**") of even date herewith, encumbering the Property (hereinafter defined).

3.      Definitions

For the purposes of this Note, the following terms shall have the following meanings:

"**Adjusted Rate**" shall mean, from and after each Rate Change Date (as defined below), a per annum interest rate that is the sum (rounded, as necessary, to the nearest 1/1000 of 1%) of the Index and the Margin; provided, however, the Adjusted Rate, in each case, shall never: (w) on the first Rate Change Date, increase by more than six percentage points higher than the Initial Interest Rate; (x) on each Rate Change Date subsequent to the first Rate Change Date, change by more than one percentage point (whether higher or lower) than the Adjusted Rate in effect immediately preceding the Rate Change Date;  (y) exceed 11.50**%**; or (z) be less than 5.50**%**, at any time and for the life of the loan (it being understood that this sub-clause (z), without limiting any provision requiring a higher Interest Rate, shall constitute a minimum Interest Rate irrespective of other parameters regarding the Adjustable Rate provided by this definition).

"**Affiliate**" shall mean, as to any Person, any other Person (i) which directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with, such Person; or (ii) which, directly or indirectly, beneficially owns or holds ten percent (10%) or more of any class of stock or any other ownership interest in such Person; or (iii) ten percent (10%) or more of the direct or indirect ownership of which is beneficially owned or held by such Person; or (iv) which is a member of the family of such Person or which is a trust or estate, the beneficial owners of which are members of the family of such Person; or (v) which directly or indirectly is a general partner, controlling shareholder, managing member, officer, director, trustee or employee of such Person.

"**Business Day**" shall mean any day other than a Saturday, Sunday, legal holiday or other day on which commercial banks in New York, New York are authorized or required by law to close.  All references in this Note to a "day" or a "date" shall be to a calendar day unless specifically referenced as a Business Day.

"**Closing Date**" shall mean the earlier of the date Lender releases any part of the Loan proceeds to Borrower or the date in which the Security Instrument is recorded in the official records of the county in which the Property is located.

"**Default Rate**" shall be the lesser of (i) eighteen percent (18%) and (ii) the maximum amount permitted by law applicable to Lender.

**EXHIBIT 7
Page 1 of 12**

Loan Number [redacted]

"**Event of Default**" shall have the meaning set forth in the Security Instrument.

"**First Payment Date**" shall mean February 1, 2020.

"**Guarantor**" shall mean Mark S. Hemstreet and Shilo Seaside Oceanfront Corp, an Oregon corporation.

"**Index**" shall mean the six month U.S. Dollar denominated London Inter-Bank Offered Rate ("LIBOR USD") as published in a reference publication of general circulation (the "Reference Publication") forty-five (45) days prior to applicable Rate Change Date, or if not published on such date, then most recently prior thereto. The initial Reference Publication shall be *The Wall Street Journal*. Lender, in Lender's sole discretion, shall have the right to select a substitute Reference Publication at any time and from time to time by written notice to Borrower delivered to Borrower not less than thirty (30) days prior to the Rate Change Date to which such substitution shall first apply. If LIBOR USD, or another Index as then in effect, is no longer available, Lender shall choose a replacement index (a "Replacement Index") in its sole and absolute discretion, which selection shall be final, conclusive and binding on Borrower in all respects, and which shall for all purposes be the Index hereunder; provided, however, that the Interest Rate shall not at any time be less than 5.50% per annum. Without limiting Lender in any way, Borrower acknowledges and agrees that either Ameribor or Secured Overnight Financing Rate may be a Replacement Index hereunder. Lender shall notify Borrower of any Replacement Index not less than thirty (30) days prior to the Rate Change Date to which such Replacement Index shall first apply. **Borrower's Initials** *[handwritten initials]*.

"**Initial Interest Rate**" shall mean 5.50% per annum.

"**Interest Rate**" shall mean the Initial Interest Rate or the Adjusted Rate, as applicable.

"**Loan**" shall mean the aggregate of all principal and interest payments that accrue or are due and payable hereunder, together with any other amounts for which Borrower is liable under the Loan Documents.

"**Loan Documents**" shall mean this Note, the Security Instrument and any document executed in connection herewith or therewith. For the avoidance of doubt, notwithstanding any other clause of this Note, any "Guaranty" or "Environmental Indemnity Agreement" (including any rider(s) or successor documents thereto) shall not be secured by the Security Instrument.

"**Margin**" shall mean three and one half percent (3.50%).

"**Maturity Date**" shall mean January 1, 2030.

"**Patriot Act**" shall mean United State Public Law 107-56, Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as amended from time to time, together with all rules and regulations promulgated from time to time thereunder.

"**Person**" means any individual, corporation, partnership, limited liability company, joint venture, estate, trust, unincorporated association, any other person or entity, and any federal, state, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing.

"**Payment Change Date**" shall mean January 1, 2025 and each six months thereafter until the Maturity Date (as defined herein).

"**Property**" shall mean that certain real property and improvements thereon owned by Borrower, together with all rights pertaining to such real property and improvements, located at the property commonly known as 30 North Promenade, Seaside, OR 97138.

"**Rate Change Date**" shall mean January 1, 2025 and each six (6) months thereafter until the Maturity Date (as defined herein).

**EXHIBIT 7**
**Page 2 of 12**

Loan Number ▆▆▆▆▆▆▆

4.    Payment of Principal, Interest and Processing Fee

4.1    Payments.

Except as provided in the following sentence, consecutive monthly installments of principal and interest each in the amount of Seventy Five Thousand Five hundred Thirty Two and 76/100 Dollars ($75,532.76) shall be payable on the first (1st) day of each month, commencing on the First Payment Date, subject to adjustment as set forth in Section 5 hereof, and continuing through the Maturity Date (each, a "**Payment Date**"), to Lender at the address set forth above.

On the Maturity Date, all unpaid principal and accrued but unpaid interest shall be due and owing in full. All interest shall be paid in arrears, except that on the Closing Date, Borrower shall pre-pay all interest that will accrue from the date of funding through the end of that month.  Whenever any payment to be made under this Note or any other Loan Document shall be stated to be due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day, unless such next succeeding Business Day would fall in the next calendar month, in which case such payment be payable on the next preceding Business Day.

4.2    Interest Accrual.  Interest on the outstanding principal balance of this Note shall accrue at an annual rate equal to the Interest Rate calculated on an Actual/360 Basis.  "**Actual/360 Basis**" shall mean on the basis of a 360-day year, charged based on the number of actual days elapsed for any whole or partial month in which interest is being calculated.

4.3    Processing Fee.  On or prior to the Closing Date, Borrower shall pay to Lender $2,700.00 as the "**Processing Fee**".  The Processing Fee shall be deemed fully earned by Lender upon execution of this Note.  In addition to the Processing Fee, Borrower shall also pay to Lender on or prior to the Closing Date, a $30.00 wire fee.

4.4    Application of Payments.  In the absence of a specific determination by Lender to the contrary, all payments paid by Borrower to Lender in connection with the obligations of Borrower under this Note and under the other Loan Documents shall be applied in the following order of priority:  (a) to amounts, other than principal and interest, due to Lender pursuant to this Note or the other Loan Documents; (b) to accrued but unpaid interest on this Note; and (c) to the unpaid principal balance of this Note.

5.    Interest Rate Change.

Prior to the first Rate Change Date, Borrower will pay interest at a yearly rate of 5.50% ("**Initial Interest Rate**").  On the Rate Change Date and on each Rate Change Date thereafter, Lender will determine the new interest rate and the changed amount of the monthly payments based on the Adjusted Rate.  The new interest rate shall become effective on each Rate Change Date.  Borrower shall pay the amount of the new monthly payment beginning on the first payment date after the Payment Change Date until the amount of the monthly payment changes again.  Lender will provide Borrower with notice of any changes in the amount of the monthly payment due under this Note.  However, if Lender has not provided Borrower with prior notice of the monthly payment due on any Payment Date, then Borrower will pay on that Payment Date an amount equal to the monthly payment for which Borrower last received notice.  If Lender at any time determines that Borrower has paid one or more monthly payments in an incorrect amount because of the preceding sentence, or because Lender has miscalculated the adjustable rate or has otherwise miscalculated the amount of any monthly payment, then Lender will give notice to Borrower of such determination.  If such determination discloses that Borrower has paid less than the full amount due, Borrower, within thirty (30) calendar days after receipt of the notice from Lender, will pay to Lender the full amount of the deficiency.  If such determination discloses that Borrower has paid more than the full amount due, then the amount of the overpayment will be credited to the next payment(s) of principal and interest due under this Note (or, if an Event of Default has occurred and is continuing, such overpayment will be credited against any amount owing by Borrower to Lender).

Secured Promissory Note
Oregon Form (2019)
112038-0035/146601994.6

Page 3

**EXHIBIT 7
Page 3 of 12**

6.      Late Charge; Default Rate; NSF Charges

6.1      Late Charge.  If any payment required hereunder is not paid on or before the tenth (10th) calendar day of the month in which it is due, or the payment is returned to Lender as a result of insufficient funds in Borrower's bank account, Borrower shall pay a late or collection charge equal to five percent (5%) of the amount of such unpaid payment.  Borrower acknowledges that Lender will incur additional expenses as a result of any late payments hereunder, which expenses would be impracticable to quantify, and that Borrower's payments under this paragraph are a reasonable estimate of such expenses and do not constitute a penalty.  The foregoing to the contrary notwithstanding, no late or collection charge shall be payable by Borrower as a result of any delay in the payment of any sum due and payable on the Maturity Date.

6.2      Default Rate.  Commencing upon an Event of Default and continuing until such Event of Default shall have been cured by Borrower, all sums owing on this Note shall bear interest until paid in full at a rate per annum equal to the Default Rate.

6.3      Non-Sufficient Funds Charge.  Any checks received that are returned to Lender marked for "non-sufficient funds" shall require payment by Borrower of a NSF fee of $25 or such other amount then charged by Lender in accordance with applicable law.

7.      Prepayments

7.1      Prepayment Premium.  Prepayment of the Loan other than: (i) as provided in Section 4.1 hereof with respect to the interest pre-paid on the Closing Date; (ii) as a result of application of insurance proceeds or a condemnation award received by Lender pursuant to the Security Instrument; or (iii) a prepayment made after January 1, 2025, as long as Lender has not granted forbearance or otherwise altered the payment schedule during the term of the Loan by written agreement with the Borrower prior to such date (in a writing signed by an officer of Lender holding a title of Executive Vice President or higher), shall result in Borrower owing to Lender a prepayment premium detailed as follows:

(a)      Five percent (5%) of the amount of principal amount of this Note that is then outstanding if the prepayment occurs on or prior to January 1, 2021;

(b)      Four percent (4%) of the amount of principal amount of this Note that is then outstanding if the prepayment occurs on or prior to January 1, 2022;

(c)      Three percent (3%) of the amount of principal amount of this Note that is then outstanding if the prepayment occurs on or prior to January 1, 2023;

(d)      Two percent (2%) of the amount of principal amount of this Note that is then outstanding if the prepayment occurs on or prior to January 1, 2024; and

(e)      One percent (1%) of the amount of principal amount of this Note that is then outstanding if the prepayment occurs on or prior to January 1, 2025.

7.2      PREPAYMENT WAIVER.  BORROWER HEREBY EXPRESSLY WAIVES THE RIGHT TO PREPAY THE INDEBTEDNESS EVIDENCED HEREBY IN WHOLE OR PART WITHOUT PENALTY, AND EXPRESSLY AGREES TO PAY THE AMOUNTS REQUIRED HEREIN IN THE EVENT OF AN ACCELERATION.  BORROWER AGREES THAT THE PREPAYMENT CONSIDERATION REQUIRED HEREIN IS REASONABLE.  BORROWER HAS GIVEN INDIVIDUAL WEIGHT TO THE CONSIDERATION IN THIS TRANSACTION FOR THIS WAIVER AND AGREEMENT.  Any such prepayment shall not result in a reamortization, deferral, postponement, suspension or waiver of any and all other payments due under this Note.  Borrower has initialed this provision of the Note expressly waiving the right to prepay the Note except as expressly permitted herein.

Secured Promissory Note
Oregon Form (2019)
112038-0035/146601994.6

Page 4

EXHIBIT 7
Page 4 of 12

Loan Number ████████

**Borrower Initials:** _M. H._

8.       Taxes and Insurance

8.1       Borrower shall pay to Lender on each Payment Date an amount determined by Lender that will result in the deposit with Lender of sufficient funds to pay all such Taxes at least thirty (30) days prior to their respective due dates, and (ii) an amount determined by Lender that will result in the deposit with Lender of sufficient funds to pay all insurance premiums at least thirty (30) days prior to the expiration of the applicable insurance policies. "**Taxes**" shall mean all real estate and personal property taxes, assessments, water rates or sewer rents, maintenance charges, impositions, vault charges and license fees, now or hereafter levied or assessed or imposed against all or part of the Property. Such amounts will be transferred by Lender to an account maintained by Lender (the "**Tax and Insurance Account**"). Lender will (a) apply funds in the Tax and Insurance Account to payments of Taxes and insurance premiums required to be made by Borrower, provided that Borrower has promptly supplied Lender with notices of all Taxes and insurance premiums due, or (b) reimburse Borrower for such amounts within thirty (30) days after Lender's receipt of evidence of payment. In making any payment relating to Taxes and insurance premiums, Lender may do so according to any bill, statement or estimate procured from the appropriate public office (with respect to Taxes) or insurer or agent (with respect to insurance premiums), without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof. If Lender determines in its reasonable judgment that the funds in the Tax and Insurance Account will be insufficient to pay (or in excess of) the Taxes or insurance premiums next coming due, Lender may increase (or decrease) the monthly contribution required to be made by Borrower to the Tax and Insurance Account. Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this Section. Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes and insurance premiums such portion of such payments as Lender may in its absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby.

8.2       Should Borrower fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes or insurance premiums, at least thirty (30) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured by the Security Instrument and shall be repayable to Lender, or at the option of Lender the Lender may, without making any advance whatever, apply any sums held by it upon any obligation of Borrower secured by the Security Instrument.

8.3       As security for payment of the Loan and the performance by Borrower of all other terms, conditions and provisions of the Loan Documents, Borrower hereby pledges and assigns to Lender, and grants to Lender a security interest in, all Borrower's right, title and interest in and to the Tax and Insurance Account. Borrower hereby grants to Lender a continuing security interest in, and agrees to hold in trust for the benefit of Lender, all funds in the Tax and Insurance Account. Borrower shall not, without obtaining the prior written consent of Lender, further pledge, assign or grant any security interest in the Tax and Insurance Account, or permit any lien to attach thereto, or any levy to be made thereon, or any financing statements, except those naming Lender as the secured party, to be filed with respect thereto. This Note is, among other things, intended by the parties to be a security agreement for purposes of the UCC. Upon the occurrence and during the continuance of an Event of Default, Lender may apply any sums in the Tax and Insurance Account in any order and in any manner as Lender shall elect in Lender's discretion without seeking the appointment of a receiver and without adversely affecting the rights of Lender to foreclose the lien of the Security Instrument or exercise its other rights under the Loan Documents. The Tax and Insurance Account shall not constitute trust funds and may be commingled with other monies held by Lender. Upon repayment in full of this Note, all remaining funds in the Tax and Insurance Account, if any, shall be promptly disbursed to Borrower.

**EXHIBIT 7**
**Page 5 of 12**

9.      <u>Maximum Rate Permitted By Law</u>

Neither this Note nor any of the other Loan Documents may be construed to require the payment or permit the collection of, in each case, any interest or any late payment charge to be charged to Borrower in excess of the maximum rate permitted by law applicable to Lender as a federally chartered savings association.  If any such excess interest or late payment charge is provided for under this Note or any of the other Loan Documents or if this Note or any of the other Loan Documents shall be adjudicated to provide for such excess, neither Borrower nor Borrower's successors or assigns shall be obligated to pay such excess, and the right to demand the payment of any such excess shall be and hereby is waived, and this provision shall control any other provision of this Note or any of the other Loan Documents.  If Lender shall collect amounts that are deemed to constitute interest and that would increase the effective interest rate to a rate in excess of the maximum rate permitted by law to be charged to Borrower, all such amounts deemed to constitute interest in excess of the maximum legal rate shall, upon such determination, at the option of Lender, be returned to Borrower or credited against the outstanding principal balance of this Note.

10.     <u>Acceleration</u>

If (a) Borrower shall fail to pay when due any sums payable under this Note; (b) Guarantor shall fail to pay when due all taxes, assessments or other liens or charges against Guarantor related to tax payments, including, without limitation, each payment due under any payment plan or settlement established with the Internal Revenue Service, State of Oregon, State of California and State of Washington; (c) Guarantor fails to provide to Bank, within three Business Days after Bank's request therefor, evidence in form and substance satisfactory to Bank of Guarantor's timely payment of taxes, assessments or liens or charges related to Guarantor's tax liability, release of tax liens that have been paid in full, and Guarantor's good standing with all tax authorities with jurisdiction over Guarantor and its assets; (d) any other Event of Default shall occur (taking into account the provisions of Section 14 hereof); or (e) any other event or condition shall occur which, under the terms of the Security Instrument or any other Loan Document, gives rise to a right of acceleration of sums owing under this Note, then Lender, at its sole option, shall have the right to declare all sums owing under this Note immediately due and payable; provided, however, if the Security Instrument or any other Loan Document provides for the automatic acceleration of payment of sums owing under this Note, all sums owing under this Note shall be automatically due and payable in accordance with the terms of the Security Instrument or such other Loan Document.

11.     <u>Recourse</u>

Borrower shall have full recourse liability to Lender under all of the Loan Documents for the payment of the Loan and for the performance of all other obligations of Borrower under the Loan Documents.

12.     <u>Disbursement of Loan Proceeds; Limitation of Liability</u>

Borrower hereby authorizes Lender to disburse the proceeds of the Loan, after deducting any and all fees owed by Borrower to Lender in connection with the Loan to Borrower.  With respect to such disbursement, Borrower understands and agrees that Lender does not accept responsibility for errors, acts or omissions of others, including, without limitation, the escrow company, other financial institutions, communications carriers or clearinghouses through which the transfer of Loan proceeds may be made or through which Lender receives or transmits information, and no such entity shall be deemed Lender's agent.  As a consequence, Lender shall not be liable to Borrower for any actual (whether direct or indirect), consequential or punitive damages, whether or not (a) any claim for such damages is based on tort or contract; or (b) either Lender or Borrower knew or should have known of the likelihood of such damages in any situation.

13.     <u>Notices.</u>

Secured Promissory Note
Oregon Form (2019)
112038-0035/146601994.6

Page 6

**EXHIBIT 7**
**Page 6 of 12**

Loan Number ███████████

All notices and other communications that are required or permitted to be given to a party under this Note shall be in writing and shall be sent to such party, either by personal delivery, by overnight delivery service, or by certified first-class mail, return receipt requested.  All notices and other communications shall include reference to Lender's loan number.  Any party may change its address for notice hereunder to any other location within the continental United States by giving thirty (30) days' notice to the other parties in the manner set forth above.  All such notices and communications shall be effective upon receipt, or in the case of notice via certified first-class mail, return receipt requested, upon the earlier of (i) receipt or (ii) five days of mailing.

The initial addresses of the parties shall be:

> LENDER:
> Axos Bank
> 9205 West Russell Rd., Suite 400
> Las Vegas, NV  89148
> Attn:  Loan Servicing
>
> WITH A COPY TO:
> Axos Bank
> 4350 La Jolla Village Drive, Suite 100
> San Diego, CA 92122
> Attn:  Legal Department
>
>
> BORROWER:
> Shilo Inn, Seaside Oceanfront, LLC
> 11707 NE Airport Way
> Portland, OR 97220
> Attn: Mark S. Hemstreet

14.     Non-Trustor Borrower

If any Borrower is not also a trustor under the Security Instrument, such Borrower hereby makes all representations and warranties in favor of Lender contained in Article 5 of the Security Instrument, all covenants contained in Sections 6.4, 6.5, 6.6, 6.7, 6.23, 6.24 of the Security Instrument, and all indemnities in favor of Lender contained in Section 6.18 of the Security Instrument, jointly and severally with the trustor. In addition, if any Borrower is not also a trustor under the Security Instrument, any reference to the Trustor in the description of the Events of Default thereunder shall also be deemed to reference any such Borrower.

15.     Debt Service Coverage Ratio

Until the Loan is repaid in full, the NOI Debt Service Coverage Ratio shall not fall below 1.30:1.00, as may be determined by Lender in its sole discretion, at Borrower's sole cost and expense, from time to time. Borrower shall reimburse Lender its costs and expenses in determining the foregoing within ten (10) business days of Lender's written request.  The "**NOI Debt Service Coverage Ratio**" shall mean, as of any date, the ratio calculated by Lender of (i) the Net Operating Income with respect to any period to (ii) the Debt Service with respect to such period.  The "**Net Operating Income**" shall mean the difference between Approved Income and Approved Expenses.  "**Approved Expenses**" shall mean, as determined by Lender, for the relevant period, the greater of (a) all expenses to be incurred by Borrower (determined on the actual basis of accounting) in connection with the operation of the Property and (b) the expenses of the Property as reflected in the appraisal received by Lender in connection with the Loan subject to any adjustment thereto made by Lender in connection with its underwriting of the Loan).  "**Approved Income**" shall mean as determined by Lender, for the relevant period, the lesser of (a) the income, revenue and other receipts to be received by Borrower under the Leases in connection with the operation of the Property in the ordinary course of business (and excluding any extraordinary income or receipts, refundable deposits, lease

termination payments, principal or interest received by Borrower with respect to loans to tenants and fees and reimbursements for work performed by Borrower for tenants), less an appropriate market rate for vacancy and collection loss, (b) the effective gross income from the operation of the Property as reflected in the appraisal received by Lender in connection with the Loan (subject to any adjustment thereto made by Lender in connection with its underwriting of the Loan), in either case reduced by the amount of any free rent or other tenant concessions under the leases then in effect with respect to the Property. "**Debt Service**" shall mean, with respect to any particular period, the scheduled principal and interest payments due under the Note in such period.

16.    Assignment

This Note may be freely transferred and assigned by Lender, its successors, endorsees and assigns. Borrower's ability to assign, delegate, or otherwise, directly or indirectly, transfer its rights or obligations with respect to, in each case, its indebtedness, duties under the Loan Documents, or to be released from liability under this Note as a result of such an assignment, delegation, or other transfer shall be governed, in each case, by Section 6.14 of the Security Instrument regarding the "Transfer" of the trustor's interest therein (it being understood that "Transfer" has the meaning ascribed to it in Section 6.14.1 of the Security Instrument). The Borrower shall not "Transfer" its interest under any of the Loan Documents in violation of the provisions of Section 6.14 of the Security Instrument, such provisions being construed for the purposes of this Section of the Note as if the Borrower hereunder were the trustor under the Security Instrument. Any "Transfer" by the Borrower of its interest under any of the Loan Documents contrary to this provision shall be null and void *ab initio*. For clarity in construing these provisions, the trustor under the Security Instrument is referred to as "Borrower" in the text of the Security Instrument.

17.    Brokers and Financial Advisors

Borrower hereby represents that it has dealt with no financial advisors, brokers, underwriters, placement agents, agents or finders in connection with the Loan other than Colliers International and Tower Capital LLC ("**Broker**") whose fees shall be paid by Borrower pursuant to a separate agreement. Borrower shall indemnify and hold Lender harmless from and against any and all claims, liabilities, costs and expenses (including attorneys' fees, whether incurred in connection with enforcing this indemnity or defending claims of third parties) of any kind in any way relating to or arising from a claim by any Person (including Broker) that such Person acted on behalf of Borrower in connection with the transactions contemplated herein. The provisions of this Section shall survive the expiration and termination of this Note and the repayment of this Note and satisfaction of all of its monetary and nonmonetary obligations set forth under the Loan Documents.

18.    Compliance With Laws

Borrower hereby represents, warrants and covenants that:

18.1    Neither Borrower nor Guarantor nor any of their respective Affiliates is or will be a Person (a) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("**EO13224**"), (b) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons," (c) who commits, threatens to commit or supports "terrorism," as defined in EO13224, or (d) who is otherwise affiliated with any entity or Person listed above (any and all parties or Persons described in subparts (a) through (d) above are herein referred to as a "**Prohibited Person**"). Neither Borrower nor Guarantor nor any of their respective Affiliates will knowingly (i) conduct any business, nor engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224. Borrower shall deliver (from time to time) to Lender any such certification or other evidence as may be requested by Lender in its sole and absolute discretion, confirming each such representation.

Secured Promissory Note
Oregon Form (2019)
112038-0035/146601994.6

Page 8

**EXHIBIT 7**
**Page 8 of 12**

Loan Number ▮▮▮▮▮▮▮

18.2    Neither Borrower nor Guarantor, nor to the knowledge of Borrower, any agent or other Person acting on behalf of the Borrower or Guarantor, has (a) directly or indirectly, used any funds for unlawful contributions, gifts, entertainment or other unlawful expenses related to foreign or domestic political activity, (b) made any unlawful payment to foreign or domestic government officials or employees or to any foreign or domestic political parties or campaigns from corporate funds, (c) failed to disclose fully any contribution made by Borrower or Guarantor (or made by any Person acting on its behalf of which Borrower or Guarantor is aware) which is in violation of law, or (d) violated in any material respect any provision of the Foreign Corrupt Practices Act of 1977 (15 U.S.C. §§ 78dd-1, et seq.), as amended ("**FCPA**").  Each of Borrower and Guarantor shall cause any agent or other Person acting on its behalf to comply with the FCPA, including maintaining and complying with all policies and procedures to ensure compliance with this act.

19.    <u>General Provisions</u>

19.1    <u>Joint and Several Liability</u>.  If this Note is executed by more than one Person or entity as Borrower, the obligations of each such Person or entity shall be joint and several.  No Person or entity shall be a mere accommodation maker, but each shall be primarily and directly liable hereunder.

19.2    <u>Waiver of Presentment</u>.  Except as otherwise provided in any other Loan Document, Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of acceleration, notice of nonpayment, notice of costs, expenses or losses and interest thereon, and notice of interest on interest and late charges.

19.3    <u>Delay in Enforcement</u>.  No previous waiver or failure or delay by Lender in acting with respect to the terms of this Note or the Security Instrument shall constitute a waiver of any breach, default or failure of condition under this Note, the Security Instrument or the obligations evidenced or secured thereby.  A waiver of any term of this Note, the Security Instrument or of any of the obligations evidenced or secured thereby must be made in writing signed by Lender, shall be limited to the express terms of such waiver, and shall not constitute a waiver of any subsequent obligation of Borrower.  The acceptance at any time by Lender of any past due amount shall not be deemed to be a waiver of the right to require prompt payment when due of any other amounts then or thereafter due and payable.

19.4    <u>Time of the Essence</u>.  Time is of the essence with respect to all Borrower's obligations hereunder involving: (i) the payment of money and (ii) providing notice to Lender.

19.5    <u>Governing Law</u>.  This Note and the other Loan Documents shall be governed by and construed under the internal laws of the State of Oregon, except to the extent preempted by federal laws.

19.6    <u>Consent to Jurisdiction</u>.  Borrower irrevocably submits to the jurisdiction of:  (a) any state or federal court sitting in the State of Oregon over any suit, action, or proceeding, brought by Borrower against Lender, arising out of or relating to this Note or the Loan evidenced hereby; (b) any state or federal court sitting in the state where the Property is located or the state in which Borrower's principal place of business is located over any suit, action or proceeding, brought by Lender against Borrower, arising out of or relating to this Note or the Loan evidenced hereby; and (c) any state court sitting in the county of the state where the Property is located over any suit, action, or proceeding, brought by Lender to exercise its STATUTORY POWER OF SALE under the Security Instrument or any action brought by Lender to enforce its rights with respect to the Property.  Borrower irrevocably waives, to the fullest extent permitted by law, any objection that Borrower may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

19.7    <u>Heirs, Successors and Assigns</u>.

        (a)    All of the terms, covenants, conditions and indemnities of Borrower contained in this Note and the other Loan Documents shall be binding upon the heirs, successors and assigns of Borrower and shall inure to the benefit of the successors, indorsees and assigns of Lender.  The foregoing sentence shall

Secured Promissory Note
Oregon Form (2019)
112038-0035/146601994.6

Page 9

**EXHIBIT 7
Page 9 of 12**

Loan Number ▉▉▉▉▉▉▉

not be construed to permit Borrower to assign the Loan or otherwise directly or indirectly transfer its interest therein contrary to Section 14 hereof.

(b)     Lender may assign its right, title, and interest in any or all of the Secured Obligations (as defined in the Security Instrument) arising under this Note to any Person and any such assignee shall succeed to all of Lender's rights with respect thereto.  Upon such assignment, Lender shall be released from all responsibility for the Collateral (as defined in the Security Instrument) to the extent same is assigned to any transferee.  Lender may from time to time sell or otherwise grant participations in any of the Secured Obligations (as defined in the Security Instrument) and the holder of any such participation shall, subject to the terms of any agreement between Lender and such holder, be entitled to the same benefits as Lender with respect to any security for the Secured Obligations (as defined in the Security Instrument) in which such holder is a participant.

19.8    Severability.  If any term of this Note, or the application thereof to any Person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Note, or the application of such term to Persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term of this Note shall be valid and enforceable to the fullest extent permitted by law.

19.9    Further Assurances.  Borrower shall, upon demand by Lender, execute, acknowledge (if appropriate) and deliver any and all documents and instruments and do or cause to be done all further acts reasonably necessary or appropriate to effectuate the provisions hereof.

19.10   Attorneys' Fees.  In the event it is necessary for Lender to retain the services of an attorney or any other party to enforce or to commence any legal action to enforce the terms of this Note, the Security Instrument, or any of the other Loan Documents, or any portion hereof or thereof, Borrower agrees to pay to Lender, in addition to damages or other relief, any and all costs and expenses incurred in connection therewith.

19.11   Disclaimers.  The relationship of Borrower and Lender under this Note and the other Loan Documents is, and shall at all times remain, solely that of borrower and lender; and Lender neither undertakes nor assumes any responsibility or duty to Borrower or to any third party with respect to the Property.  Notwithstanding any other provisions of this Note and the other Loan Documents:  (i) Lender is not, and shall not be construed to be, a partner, joint venturer, member, alter ego, manager, controlling Person or other business associate or participant of any kind of Borrower, and Lender does not intend to ever assume such status; (ii) Lender's activities in connection with this Note and the other Loan Documents shall not be outside the scope of activities of a lender of money, and Lender does not intend to ever assume any responsibility to any Person for the quality, suitability, safety or condition of the Property; and (iii) Lender shall not be deemed responsible for or a participant in any acts, omissions or decisions of Borrower.

19.12   Separate and Community Property.  Any married Person who executes this Note or any other Loan Document as a Borrower agrees that any money judgment which Lender obtains pursuant to the terms of this Note or any other Loan Document may be collected by execution upon any separate property or community property, in each case, of that Person.

19.13   Integration; Interpretation.  The Loan Documents contain or expressly incorporate by reference the entire agreement of the parties with respect to the matters contemplated therein and supersede all prior negotiations or agreements, written or oral.  The Loan Documents shall not be modified except by written instrument executed by all parties.  Any reference in any of the Loan Documents to the Property shall include all or any part of the Property.  Any reference to the Loan Documents includes any amendments, renewals or extensions now or hereafter approved by Lender in writing.

19.14   Commercial Purpose.  Borrower represents that the indebtedness evidenced by the Note is being incurred by Borrower solely for the purpose of carrying on a business or commercial enterprise, and not for personal, family or household purposes.

Secured Promissory Note
Oregon Form (2019)
112038-0035/146601994.6

Page 10

**EXHIBIT 7
Page 10 of 12**

Loan Number █████████

20.    WAIVER OF RIGHT TO JURY TRIAL.

BORROWER HEREBY EXPRESSLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY ANY APPLICABLE LAWS, ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS NOTE OR ANY OTHER LOAN, DOCUMENT (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS NOTE OR ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. BORROWER HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY. NOTWITHSTANDING THE FOREGOING TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, BORROWER HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, BORROWER AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE WITH LENDER. IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. BORROWER ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN. BORROWER HEREBY AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS AND HAS BEEN AFFORDED THE OPPORTUNITY TO HAVE ITS LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.

21.    PATRIOT ACT.  Lender hereby notifies Borrower that pursuant to the requirements of the Patriot Act, it is required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the Patriot Act. Borrower will provide such information promptly upon the request of Lender.

22.    **STATUTORY NOTICE. UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.**

[SIGNATURE PAGE FOLLOWS]

Secured Promissory Note
Oregon Form (2019)
112038-0035/146601994.6

Page 11

**EXHIBIT 7
Page 11 of 12**

Loan Number ▮▮▮▮▮▮

IN WITNESS WHEREOF, Borrower has duly executed this Note to be effective the day and year first above written.

**BORROWER:**

SHILO INN, SEASIDE OCEANFRONT, LLC,
an Oregon limited liability company

By:    Shilo Seaside Oceanfront Corp,
       an Oregon corporation
       Its Manager

By:    _Mark S. Hemstreet_
       Mark S. Hemstreet
       Secretary

**EXHIBIT 7**
**Page 12 of 12**



Recording Instrument #201909985
Recorded By: Clatsop County Clerk
# of Pages: 42 Fee: 307.00
Transaction date: 12/27/2019 14:29:45
Deputy:   Rush

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

AXOS BANK™
9205 West Russell Road, Suite 400
Las Vegas, Nevada 89148

Tax Parcel(s)/APN: 11709, 35156

(Space Above For Recorder's Use)

**LINE OF CREDIT INSTRUMENT**
**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,**
**SECURITY AGREEMENT AND FIXTURE FILING**

SHILO INN, SEASIDE OCEANFRONT, LLC, an Oregon limited liability company (Trustor)

to

TICOR TITLE COMPANY OF OREGON (Trustee)

in favor of

AXOS BANK™ (Lender)

DATED:  December 16, 2019

PROPERTY ADDRESS:  30 North Promenade, Seaside, OR 97138

THIS INSTRUMENT IS ALSO TO BE INDEXED IN THE INDEX OF FINANCING STATEMENTS.  THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH ORS 79.0502.

THE NAMES OF THE DEBTOR AND THE SECURED PARTY, THE MAILING ADDRESS OF THE SECURED PARTY FROM WHICH INFORMATION CONCERNING THE SECURITY INTEREST MAY BE OBTAINED, THE MAILING ADDRESS OF THE DEBTOR AND A STATEMENT INDICATING THE TYPES, OR DESCRIBING THE ITEMS, OF COLLATERAL, ARE DESCRIBED HEREIN, IN COMPLIANCE WITH THE REQUIREMENTS OF THE UNIFORM COMMERCIAL CODE.

The maturity date of the promissory note secured by this Deed of Trust, exclusive of any option to renew or extend such maturity date, is January 1, 2030.

The maximum principal amount to be advanced pursuant to the promissory note(s) secured by this Deed of Trust is $12,300,000.00, which amount may be exceeded by advances to complete construction pursuant to ORS 86.155(2)(c).

Tax Parcel(s)/APN: 11709, 35156

Oregon Form (2019)
112038-0035/146601992.2

**EXHIBIT 8**
**Page 1 of 42**

Recorded by TICOR TITLE   30049002332

LINE OF CREDIT INSTRUMENT
**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**

This DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "**Deed of Trust**"), dated as of December 16, 2019 is entered into by SHILO INN, SEASIDE OCEANFRONT, LLC, an Oregon limited liability company ("**Trustor**"), as Trustor, having its principal place of business at 11707 NE Airport Way, Portland, OR 97220, in favor of Ticor Title Company of Oregon ("**Trustee**"), as Trustee, located at 111 SW Columbia Street, Suite 1000, Portland, OR 97201, for the benefit of AXOS BANK™, a federally chartered savings association ("**Lender**"), as beneficiary, having its principal place of business at 4350 La Jolla Village Drive, Suite 100, San Diego, California, 92122.

RECITALS:

A.     Lender is making a loan (the "**Loan**") to Trustor ("**Borrower**"), which is evidenced by a Secured Promissory Note (all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms), collectively, the "**Note**") in the principal amount of Twelve Million Three Hundred Thousand and No/100 Dollars ($12,300,000.00), executed by Borrower in favor of Lender, dated the same date as this Deed of Trust, payable to the order of Lender.

B.     The loan documents include this Deed of Trust, the Note and the other documents described in the Note as Loan Documents (the "**Loan Documents**").

ARTICLE 1

DEED OF TRUST

1.1.     <u>Grant</u>. For the purposes of and upon the terms and conditions of this Deed of Trust, Trustor irrevocably grants, conveys and assigns to Trustee, in trust for the benefit of Lender, with power of sale and right of entry and possession, all estate, right, title and interest which Trustor now has or may hereafter acquire in, to, under or derived from any or all of the following:

(a)     All right, title and interest which Trustor now has or may later acquire in any real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances, strips and gores of land, streets, ways, alleys, passages, thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water, water courses and water rights and powers, and all sewers and sewer rights, pipes, conduits, wires and other facilities furnishing utility or services to the real property, air rights and development rights and credits, pumps, pipes, flumes and ditches and ditch rights, water stock, ditch and/or reservoir stock or interests, rights to oil, gas, minerals, coal and other substances of any kind or character (the "**Land**") located in the County of Clatsop, State of Oregon, and more particularly described on <u>Exhibit A</u> attached hereto;

(b)     All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected, used or placed on the Land, including, without limitation, all plant equipment, apparatus, machinery, appliances and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "**Improvements**");

(c)     All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Property (hereinafter defined);

2

**EXHIBIT 8
Page 2 of 42**

(d)    All additions and accretions to the property described above;

(e)    All licenses, authorizations, certificates, variances, consents, approvals and other permits now or hereafter pertaining to the Land and all estate, right, title and interest of Trustor in, to, under or derived from all trade names or business names relating to the Land or the present or future development, construction, operation or use of the Land;

(f)    Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Property (hereinafter defined) which may be made with respect to the Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Property, which said award or awards are hereby assigned to Lender;

(g)    Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Property;

(h)    Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Property;

(i)    Any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Property, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

(j)    All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Property or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Property, together with any and all accessions, accessories, attachments and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Property;

(k)    All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights and transferable development rights; all of Trustor's right, title and interest in and to any awards, remunerations, settlements or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

(l)    All leases of the Property, Personalty (as defined below), Fixtures (as defined below), or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Property; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Property;

3

Security Instrument
Oregon Form (2019)
112038-0035/146601992.2

**EXHIBIT 8**
**Page 3 of 42**

(m)      All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property; and

(n)      All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Property, prepaid municipal and utility fees, bonds, revenues, income and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Trustor to encumber hereby all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "**Property**." As used herein, the term "**Fixtures**" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "**Personalty**" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

## ARTICLE 2

## OBLIGATIONS SECURED

2.1.    <u>Obligations Secured</u>.  Trustor makes the foregoing grant and assignment for the purpose of securing the following obligations (the "**Secured Obligations**"):

(a)      Full and punctual payment to Lender of all sums at any time owing under the Note by Borrower;

(b)      Payment and performance of all covenants and obligations of Trustor under this Deed of Trust including, without limitation, indemnification obligations and advances made to protect the Property;

(c)      Payment and performance of all additional covenants and obligations of Trustor and Borrower, in each case, under the Loan Documents except for the Trustor's and/or Borrower's covenants and obligations under any Environmental Indemnity Agreement, executed in favor of Lender, as of the date hereof, including any riders and amendments thereto or replacements thereof (collectively, the "**Environmental Indemnity Agreement**").  For the avoidance of doubt, the Secured Obligations, notwithstanding anything to the contrary contained herein, shall not include, obligations or covenants, in each case, pursuant to:  (i) any guarantee of the Loan, including, without limitation, any amendment thereto or replacement thereof (it being understood that the guarantor(s) under such guarantee/guarantees shall not be the Trustor); (ii) any environmental indemnity regarding the Property executed by, in each case, the Borrower, Trustor and/or any guarantor/additional indemnitor, including, without limitation, the Environmental Indemnity Agreement; and (iii) any similar guarantee or indemnity, including any rider(s) and amendments thereto or replacements thereof, by which a person guarantees or otherwise acts as a surety regarding the Trustor's obligations under the Loan Documents (it being understood that guarantee and guarantees, as used in this Section 2.1(c), shall not be construed to include this Deed of Trust, even if this Deed of Trust is executed by a Trustor that is not the Borrower).  For the avoidance of doubt and without

4

**EXHIBIT 8**
**Page 4 of 42**

limiting the generality of the foregoing provisions of this Section 2.1(c), this Deed of Trust does not secure and shall not be construed to secure, in each case, the Environmental Indemnity Agreement and any guarantee of the Loan.

          (d)    Payment and performance of all covenants and obligations, if any, that any rider, attached as an exhibit to this Deed of Trust, recites are secured hereby;

          (e)    Payment and performance of all future advances and other obligations that the then record owner of all or part of the Property may agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Lender when the obligation is evidenced by a writing that recites that it is secured by this Deed of Trust; however, any obligation secured by this Deed of Trust shall not be construed to be part of any guarantee or Environmental Indemnity Agreement (as the terms guarantee/guarantees and Environmental Indemnity Agreement are used in Section 2.1(c) hereof, including, in each case, any rider(s) or successor documents thereto);

          (f)    All interest and charges on all obligations secured hereby including, without limitation, prepayment charges, late charges and Loan-related fees; and

          (g)    All modifications, extensions and renewals of any of the obligations secured hereby, however evidenced, including, without limitation: (i) modifications of the required principal payment dates or interest payment dates or both, as the case may be, deferring or accelerating payment dates wholly or partly; and (ii) modifications, extensions or renewals at a different rate of interest whether or not any such modification, extension or renewal is evidenced by a new or additional promissory note or notes.

    2.2.    <u>Obligations</u>.  The term "**obligations**" is used herein in its broadest and most comprehensive sense and shall be deemed to include, without limitation, all interest and charges, prepayment charges, late charges, reimbursements for expenses, and Loan-related fees at any time accruing or assessed on any of the Secured Obligations.

    2.3.    <u>Incorporation</u>.  All terms and conditions of the documents that evidence any of the Secured Obligations are incorporated herein by this reference.  All persons who may have or acquire an interest in the Property shall be deemed to have notice of the terms of the Secured Obligations and to have notice that the rate of interest on one or more Secured Obligations may vary from time to time.  As used in this Deed of Trust, "person" or "persons" shall refer to both a natural person and a legal person.

ARTICLE 3

ASSIGNMENT OF RENTS AND LEASES

    3.1.    <u>Assignment</u>.  Trustor absolutely, irrevocably, and unconditionally grants, transfers and assigns to Lender all of Trustor's right, title and interest in, to and under:  (a) all present and future leases of the Property or any portion thereof, all licenses and agreements relating to the management, leasing or operation of the Property or any portion thereof, and all other agreements of any kind relating to the use or occupancy of the Property or any portion thereof, whether such leases, licenses and agreements are now existing or entered into after the date hereof (collectively, the "**Leases**"); and (b) the rents, issues, deposits and profits of the Property, including, without limitation, all amounts payable and all rights and benefits accruing to Trustor under the Leases (the "**Payments**").  The term "**Leases**" shall also include all guarantees of and security for the tenants' performance thereunder, and all amendments, extensions, renewals or modifications thereto that are permitted hereunder.  This is a present and absolute assignment, not an assignment for security purposes only, and Lender's right to the Leases and Payments is not contingent upon, and may be exercised without possession of, the Property.

    3.2.    <u>Grant of License</u>.  Lender confers upon Trustor a revocable license (the "**License**") to collect and retain the Payments as they become due and payable, until the occurrence of an Event of Default (as hereinafter defined).  Upon an Event of Default, the License shall be automatically revoked and

5

**EXHIBIT 8**
**Page 5 of 42**

Lender may collect and apply the Payments pursuant to the terms hereof without notice and without taking possession of the Property. All Payments thereafter collected by Trustor shall be held by Trustor as trustee under a constructive trust for the benefit of Lender. Trustor hereby irrevocably authorizes and directs the tenants under the Leases to rely upon and comply with any notice or demand by Lender for the payment to Lender of any rental or other sums which may at any time become due under the Leases, or for the performance of any of the tenants' undertakings under the Leases, and the tenants shall have no right or duty to inquire as to whether any Event of Default has actually occurred or is then existing. Trustor hereby relieves the tenants from any liability to Trustor by reason of relying upon and complying with any such notice or demand by Lender. Lender may apply, in its sole discretion, any Payments so collected by Lender against any Secured Obligation or any other obligation of Trustor or any other person or entity, under any document or instrument related to or executed in connection with the Loan Documents, whether existing on the date hereof or hereafter arising. Collection of any Payments by Lender shall not cure or waive any Event of Default or notice of an Event of Default or invalidate any acts done pursuant to such notice.

     3.3.   <u>Effect of Assignment</u>. The foregoing irrevocable assignment shall not cause Lender to be: (a) a mortgagee in possession; (b) responsible or liable for the control, care, management or repair of the Property or for performing any of the terms, agreements, undertakings, obligations, representations, warranties, covenants and conditions of the Leases; (c) responsible or liable for any waste committed on the Property by the tenants under any of the Leases or by any other parties for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee, invitee or other person; or (d) responsible for or impose upon Lender any duty to produce rents or profits. Lender shall not directly or indirectly be liable to Trustor or any other person as a consequence of: (e) the exercise or failure to exercise any of the rights, remedies or powers granted to Lender hereunder; or (f) the failure or refusal of Lender to perform or discharge any obligation, duty or liability of Trustor arising under the Leases.

    3.4.   <u>Covenants</u>.

      (a)   <u>All Leases</u>. Trustor shall, at Trustor's sole cost and expense:

        (i)   perform all obligations of the landlord under the Leases and use reasonable efforts to enforce performance by the tenants of all obligations of the tenants under the Leases;

        (ii)   use reasonable efforts to keep the Property leased at all times to tenants that Trustor in good faith believes are creditworthy, at rents not less than the fair market rental value (including, but not limited to, free or discounted rents to the extent the market so requires);

        (iii)   promptly upon Lender's request, deliver to Lender a copy of each requested Lease and all amendments thereto and waivers thereof, as well as any landlord or tenant estoppel certificates requested by Lender;

        (iv)   promptly upon Lender's request, execute and record any additional assignments of landlord's interest under any Lease to Lender and specific subordinations of any Lease to this Deed of Trust, in form and substance satisfactory to Lender; and

        (v)   promptly upon Lender's request, but in any event by June 30th of each year, provide Lender a current rent roll, certified by Trustor as being true and correct, containing the names of all tenants with respect to the Property, the terms of their respective Leases, the spaces occupied and the rentals or fees payable thereunder and the amount of each tenant's security deposit.

6

**EXHIBIT 8**
**Page 6 of 42**

Unless consented to in writing by Lender or otherwise permitted under any other provision of the Loan Documents, Trustor shall not:

(vi)    grant any tenant under any Lease any option, right of first refusal or other right to purchase all or any portion of the Property under any circumstances;

(vii)    grant any tenant under any Lease any right to prepay rent more than one (1) month in advance;

(viii)    except upon Lender's request, execute any assignment of landlord's interest in any Lease;

(ix)    except as set forth in Section 3.4(a)(vii), collect rent or other sums due under any Lease in advance, other than to collect rent one (1) month in advance of the time when it becomes due;

(x)    modify any Lease in a manner inconsistent with the Loan Documents;

(xi)    convey or transfer or suffer or permit a conveyance or transfer of the Property so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees under Leases;

(xii)    consent to any assignment of or subletting under any Major Lease unless required in accordance with its terms;

(xiii)    cancel or terminate any Lease or accept a surrender thereof (except in the exercise of Trustor's commercially reasonable judgment in connection with a tenant default under a Lease that is not a Major Lease) or

(xiv)    execute any lease for a term of greater than five (5) years, which deviates materially from the standard form Lease approved by Lender in writing.

Any such attempted action in violation of the provisions of this Section 3.4(a) shall be null and void.

(b)    <u>Major Leases</u>.  Trustor shall, at Trustor's sole cost and expense, give Lender prompt written notice of any material default by landlord or tenant under any Major Lease (as defined below). Unless consented to in writing by Lender or otherwise permitted under any other provision of the Loan Documents, Trustor, in each case, shall not:

(i)    enter into any Major Lease without first obtaining Lender's prior written consent, which consent shall not be unreasonably withheld unless an Event of Default has occurred;

(ii)    reduce any rent or other sums due from the tenant under any Major Lease;

(iii)    terminate or materially modify or amend any Major Lease; or

(iv)    release or discharge the tenant or any guarantor under any Major Lease from any material obligation thereunder.

Any such attempted action in violation of the provisions of this Section 3.4(b) shall be null and void.

7

Security Instrument
Oregon Form (2019)
112038-0035/146601992.2

**EXHIBIT 8**
**Page 7 of 42**

Without in any way limiting the requirement of Lender's consent hereunder, any sums received by Trustor in consideration of any termination or material modification or amendment of any Major Lease or any release or discharge of any tenant under any Major Lease from any material obligation thereunder shall be applied to reduce the outstanding Secured Obligations (without payment of a prepayment charge) and any such sums received by Trustor shall be held in trust by Trustor for such purpose; provided, however, so long as no Event of Default exists at the time, any sums received by Trustor in consideration of any termination (or the release or discharge of any tenant), modification or amendment of any Major Lease that:  (A) total less than $50,000 shall be payable to Trustor; and (B) total $50,000 or more shall be placed into an impound account and shall be released to Trustor from time to time upon delivery of an executed replacement tenant lease and satisfactory evidence as to the completion of re-tenanting work.  Following the completion of such re-tenanting work, and provided no Default exists at such time, Lender shall release any excess funds received by Trustor with respect to the termination of any Major Lease to Trustor.  "**Major Lease**," as used herein, shall mean, in each case, (x) a Lease of more than twenty percent (20%) of the total rentable area of all buildings forming a part of the Property (assuming the exercise of all expansion rights and all preferential rights to lease additional space contained in any such Lease), as determined by Lender, (y) cell tower Leases, (z) Leases of oil, gas and mineral rights.  Trustor's obligations with respect to Major Leases shall be governed by the provisions of Section 3.4(a) hereof applicable to all Leases as well as by the provisions of this Section 3.4(b).  Lender's failure to deny any written request by Trustor for consent as required by this Section 3.4(b) within twenty (20) Business Days after Lender's receipt of such request (and all documents and information reasonably related thereto) shall be deemed to constitute Lender's consent to such request. "**Business Day**" shall mean any day other than a Saturday, Sunday, legal holiday or other day on which commercial banks in New York, New York are authorized or required by law to close.  All references in this Deed of Trust to a "day" or a "date" shall be to a calendar day unless specifically referenced as a Business Day.

3.5.    Estoppel Certificates.  Within thirty (30) days after request by Lender, Trustor shall deliver to Lender and to any party designated by Lender, estoppel certificates relating to the Leases (excluding Leases of storage units) executed by Trustor and by each of the tenants, in form and substance acceptable to Lender; provided, however, if any tenant fails or refuses to so execute and deliver any such estoppel certificate upon request, Trustor shall use reasonable efforts to cause such tenant to execute and deliver such estoppel certificate but such tenant's continued failure or refusal to do so, despite Trustor's reasonable efforts, shall not constitute a default by Trustor under this Section 3.5.

3.6.    Right of Subordination.  Lender may at any time and from time to time by specific written instrument intended for the purpose unilaterally subordinate the lien of this Deed of Trust to any Lease, without joinder or consent of, or notice to, Trustor, any tenant or any other person.  Notice is hereby given to each tenant under a Lease of such right to subordinate.  No subordination referred to in this Section 3.6 shall constitute a subordination to any lien or other encumbrance, whenever arising, or improve the right of any junior lienholder.  Nothing herein shall be construed as subordinating this Deed of Trust to any Lease.

3.7.    Perfection.  The assignment by Trustor of the Leases and payments related thereto is intended to be perfected upon the recording of this Deed of Trust as provided in ORS 93.806.

ARTICLE 4

SECURITY AGREEMENT AND FIXTURE FILING

4.1.    Security Interest.  This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of ORS Chapter 79 of the Oregon Uniform Commercial Code (the "**Collateral**"), and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, including but not limited to a fixture filing, pursuant to ORS Chapter 79 of the Oregon Uniform Commercial Code with respect to the Personalty and Fixtures.  To this end, Trustor shall and hereby does grant to Lender, a first priority security interest in, under and to the Collateral.

8

**EXHIBIT 8**
**Page 8 of 42**

4.2.    Financing Statements.  Trustor authorizes Lender to file such financing statements and cause such financing statements and other assurances as Lender may from time to time require to be recorded and filed at such times and places as may be required or permitted by law to create, perfect and preserve such security interest.

4.3.    Remedies on Default.  Upon an event of default, Lender may, at its option:  (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the Oregon Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in Oregon or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines.  All of Lender's rights and remedies shall be cumulative and not exclusive.

4.4.    Fixture Filing.  This Deed of Trust shall constitute a fixture filing under the Oregon Uniform Commercial Code.

4.5.    Additional Covenants of Trustor.  Trustor, at its sole cost and expense, (a) shall give Lender at least thirty (30) days' prior written notice of any change in Trustor's principal place of business and the acquisition or use of a trade name or style by Trustor; (b) shall promptly notify Lender in writing of any claim, lien, security interest, right, encumbrance or any other occurrence that may be adverse to Lender's security interest in the Collateral; (c) shall defend the Collateral from all claims, liens, security interests, rights, encumbrances and other matters that are adverse to Lender's security interest in the Collateral; (d) shall promptly pay all costs and expenses relating to the purchase, ownership, or use of the Collateral, including all liens, taxes, assessments and charges of any board, commission, department, agency, court, or other body of any governmental unit (e.g., without limitation, (i) the federal government and the departments thereof and (ii) applicable state governments and any cities, counties, or other political subdivisions or special districts organized thereunder) having jurisdiction over, in each case, the matter, thing, or person in question (collectively, "**Governmental Authorities**") levied, assessed or imposed on all or part of the Collateral; (e) shall not sell, transfer, pledge (including, without limitation, any assignment for the benefit of creditors other than Lender), hypothecate, lease or otherwise dispose of or abandon all or part of the Collateral without Lender's prior written consent, except for the sale of inventory in the ordinary course of Trustor's business or the disposition of any Collateral that is replaced with new Collateral of substantially comparable value and utility; (f) shall not remove any material part of the Collateral that consists of tangible personal property from its location on the Property without Lender's prior written consent; (g) shall, upon Lender's request, give notice, in form and substance acceptable to Lender, to any or all account debtors designated by Lender of Trustor's grant of a security interest in any Collateral that consists of accounts, contract rights, instruments, documents, or general intangibles (collectively, the "**Accounts**" and individually, an "**Account**"); (h) following the occurrence of any Event of Default, shall not compromise, settle, adjust, or grant any discount, credit, or allowance to any Account debtor without Lender's prior written consent; (i) shall undertake any and all other acts necessary or appropriate to maintain, preserve and protect the Collateral and Lender's security interest therein, including any actions requested by Lender; (j) shall not without Lender's prior written consent, given at Lender's sole discretion and signed by an officer of Lender holding the title of Executive Vice President or higher, make or acquiesce in Trustor making any changes to organizational documents of, in each case, Trustor or any affiliate thereof or interest holder therein (e.g., without limitation, articles of organization, articles of incorporation, operating agreement, bylaws, certificate of formation, partnership agreement) that, in each case, violate or are inconsistent with Trustor's obligations under the Loan Documents or materially alter Trustor's performance of its duties under the Loan Documents (each an "**Unauthorized Amendment**"), and Trustor hereby agrees that Unauthorized Amendments shall not adversely affect Lender's rights and remedies against Trustor under the Loan Documents and that Trustor shall be estopped from using any Unauthorized Amendment as a defense to or to otherwise impair, delay, or undermine Lender's remedies against Trustor under the Loan Documents; and (k) shall execute and deliver to Lender such other documents as Lender may request in order to evidence, effectuate, perfect, maintain, preserve or protect Lender's security interest in the Collateral,

9

**EXHIBIT 8**
**Page 9 of 42**

including, without limitation, financing statements, continuation financing statements, financing statement amendments, security agreements, and assignments.  If Trustor fails to execute and deliver to Lender any document requested by Lender pursuant to this Section 4.4 within ten (10) days after such request, then Trustor irrevocably appoints Lender, with full power of substitution, as Trustor's attorney-in-fact, coupled with an interest, with full power, in its own name or in the name of Trustor, to execute such document on behalf of Trustor.  Trustor has set forth above its full and correct name, and Trustor does not presently use any other names or tradenames, except for those tradenames specifically disclosed in writing by Trustor to Lender prior to the recordation of this Deed of Trust.  Nothing contained in this Article 4 may be construed to obligate Lender to act on behalf of Trustor as attorney-in-fact.

    4.6.      FOR PURPOSES OF THE UCC THE FOLLOWING INFORMATION IS FURNISHED:

| | |
|---|---|
| Name, address of Debtor(s): | Shilo Inn, Seaside Oceanfront, LLC<br>11707 NE Airport Way<br>Portland, OR 97220<br>Attn: Mark S. Hemstreet |
| Name and address<br>of Secured Party | Axos Bank<br>4350 La Jolla Village Dr., Ste. 100<br>San Diego, CA 92122<br>Loan No. 90099010950 |
| Description of the type<br>(or items) of property (constituting the<br>Collateral): | See Section 4.1. |
| Description of real property<br>to which the Collateral<br>is attached or upon which<br>it is or will be located: | See Exhibit A hereto. |

## ARTICLE 5

## REPRESENTATIONS AND WARRANTIES

    5.1.    Trustor's Representations and Warranties.  Trustor represents and warrants to Lender that the following statements are true and correct as of the date set forth in the preamble, each and every date during the existence of the Loan, or any portion thereof, as the context admits or requires:

    (a)    Legal Status.  Trustor is qualified or licensed to do business in all jurisdictions in which such license or qualification is required.

    (b)    No Conflicts.  The execution, delivery and performance of the Loan Documents by Trustor and the transactions contemplated hereby will not conflict with or result in a breach of any of the terms or provisions of, or constitute a default under, or result in the creation or imposition of any lien or encumbrance (other than pursuant to the Loan Documents) upon any of the property of Trustor pursuant to the terms of, any agreement or instrument to which Trustor is a party or by which its property is subject, nor will such action result in any violation of the provisions of any statute or any order, rule or regulation of any governmental authority having jurisdiction over Trustor or any of its properties.  Any consent, approval, authorization, order, registration or qualification of or with any governmental authority required for the execution, delivery and performance by Trustor of the Loan Documents has been obtained and is in full force and effect.

Security Instrument
Oregon Form (2019)
112038-0035/146601992.2

**EXHIBIT 8**
**Page 10 of 42**

(c)     Permits.  Trustor, or an affiliate thereof if permitted to do so under applicable law, possess all permits, franchises, licenses, entitlements, trade names and fictitious names, necessary for Trustor to undertake the business activities related to its possession of the Property.

(d)     Authorization and Validity.  The execution and delivery of this Deed of Trust have been duly authorized and this Deed of Trust constitutes a valid and binding obligation of Trustor, in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, moratorium or other laws affecting the enforcement of creditors' rights, or by the application of rules of equity.

(i)     The person executing this Deed of Trust has all necessary power and authority to execute and deliver this Deed of Trust for, on behalf of, and in the name of such Trustor.

(ii)     If Trustor is a trust or Trustor has caused any trust documents to be delivered to Lender in connection with its organizational structure, Trustor's trust documents or such other trust documents have not been amended or altered (except for such amendments as have been provided to Lender) and are in full force and effect as of the date hereof.

(iii)     Trustor has had an adequate opportunity to consult with legal counsel of Trustor's choosing prior to executing and delivering this Deed of Trust.

(e)     Non-Circumvention.  The execution, delivery and performance by Trustor of this Deed of Trust do not violate any provision of any law or regulation, or result in any breach or default under any contract, obligation, indenture or other instrument to which Trustor is a party or by which Trustor is bound.

(f)     Litigation.  There are no pending or threatened actions, claims, investigations, suits or proceedings before any Governmental Authorities, court or administrative agency that may adversely affect the financial condition or operations of Trustor other than those previously disclosed in writing by Trustor to Lender.

(g)     Financial Statements.  The financial statements of Trustor, of each general partner (if Trustor is a partnership) and/or of each member (if Trustor is a limited liability company) previously delivered by Trustor to Lender:  (i) are materially complete and correct; (ii) present fairly the financial condition of such party; and (iii) have been prepared in accordance with the same accounting standard used by Trustor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan, or other accounting standards approved by Lender.  Since the date of such financial statements, there has been no material adverse change in such financial condition, nor have any assets or properties reflected on such financial statements been sold, transferred, assigned, mortgaged, pledged or encumbered except as previously disclosed in writing by Trustor to Lender, prior to Lender's issuing a final commitment letter, and approved in writing by Lender.

(h)     Income Taxes.  There are no pending assessments or adjustments of Trustor's income tax payable with respect to any year.

(i)     Title.  Trustor lawfully holds and possesses fee simple title to the Property, without limitation on the right to encumber same.  This Deed of Trust is a first lien on the Property prior and superior to all other liens and encumbrances on the Property except:  (i) liens for real estate taxes and assessments not yet due and payable; (ii) senior exceptions previously approved by Lender and shown in the title insurance policy insuring the lien of this Deed of Trust; and (iii) other matters, if any, previously disclosed to Lender by Trustor and approved by Lender in a writing specifically referring to this representation and warranty.

(j)     Items Due and Payable.  No Event of Default exists under this Deed of Trust, and all of the following items regarding this Deed of Trust which have become due and payable have been paid.

11

**EXHIBIT 8**
**Page 11 of 42**

(k)    Liens.  There are no mechanics' or similar liens or claims that have been filed for work, labor or material (and no rights are outstanding that under law could give rise to any such liens) affecting the Property that are or may be prior to or equal to the lien of this Deed of Trust.

(l)    Encroachments.  To the best of Trustor's knowledge, except as shown in the survey, if any, previously delivered to Lender, none of the buildings or other improvements that were included for the purpose of determining the appraised value of the Property lies outside of the boundaries or building restriction lines of the Property, and no buildings or other improvements located on adjoining properties encroach upon the Property.

(m)    Tax Returns.  Trustor has provided true, correct and complete copies of the tax returns for Trustor, or of the person whose tax return contains the tax liabilities of Trustor if Trustor is a disregarded entity (collectively, the "**Tax Return**"), which Tax Return is the most recent tax return prepared for Trustor.  The Tax Return gives a true, correct and complete statement of financial condition for Trustor as of the date hereof.

(n)    Taxes Paid.  Trustor has filed all federal, state, county and municipal tax returns required to have been filed by Trustor, and has paid all taxes which have become due pursuant to such returns or to any notice of assessment received by Trustor, and Trustor has no knowledge of any basis for additional assessment with respect to such taxes.  To the best of Trustor's knowledge, there are not presently pending any special assessments against the Property or any part thereof.

(o)    Leases.  All existing Leases are in full force and effect and are enforceable in accordance with their respective terms.  No material breach or default by any party, or event that would constitute a material breach or default by any party after notice or the passage of time, or both, exists under any existing Lease.  None of the landlord's interests under any of the Leases, including, but not limited to, rents, additional rents, charges, issues or profits, has been transferred or assigned.  No rent or other payment under any existing Lease has been paid by any tenant for more than one (1) month in advance.

(p)    Collateral.  Trustor has good title to the existing Collateral.  Trustor has not previously assigned or encumbered Trustor's interest in any of the Collateral, and no financing statement that remains in force covering any of the Collateral has been delivered to any other person or entity.  Trustor's principal place of business is located at the address shown in Section 4.6.

(q)    Condition and Use of Property.  Except as shown in the property condition survey or other engineering reports, if any, previously delivered to or obtained by Lender, the Property is in good condition and repair and is free from any damage, waste or defect that would materially and adversely affect the value of the Property as security for the Loan or the intended use of the Property.  The Property is and shall remain for the term of Loan exclusively used for the same commercial purpose as existing as of the date this Deed of Trust is entered into.

(r)    Wetlands.  No part of the Property consists of or is classified as wetlands, tidelands or swamp and overflow lands.

(s)    Compliance with Laws; ERISA.

(i)    The Property is used exclusively for commercial use and other appurtenant and related uses.  In the event that all or any part of the Improvements are destroyed or damaged, said Improvements shall be legally reconstructed to their condition prior to such damage or destruction, and thereafter exist for the same use without violating any zoning or other ordinances applicable thereto and without the necessity of obtaining any variances or special permits.  No legal proceedings are pending or, to the knowledge of Trustor, threatened with respect to the zoning of the Property.  Neither the zoning nor any other right to construct, use or operate the Property is in any way dependent upon or related to any property other than the Property.  All certifications, permits, licenses and approvals, including certificates of completion and occupancy permits

12

**EXHIBIT 8**
**Page 12 of 42**

required for the legal use, occupancy and operation of the Property (collectively, the "**Licenses**"), have been obtained and are in full force and effect.  The use being made of the Property is in conformity with the certificate of occupancy issued for the Property and all other restrictions, covenants and conditions affecting the Property.

(ii)    Trustor shall not engage in any transaction that would cause any obligation, or action taken or to be taken, hereunder (or the exercise by Lender of any of its rights under the Note, this Agreement and the other Loan Documents) to be a non-exempt (under a statutory or administrative class exemption) prohibited transaction under the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**").

(iii)    Trustor (i) is not and shall not be an "employee benefit plan," as defined in Section 3(3) of ERISA, or a "plan," as defined in Section 4975 of the Code, (ii) none of the assets of Trustor constitutes or will constitute "plan assets" of one or more "benefit plan investors" (as those terms are defined in the Plan Asset Regulation), (iii) Trustor is not and shall not be a "governmental plan" within the meaning of Section 3(32) of ERISA, and (iv) transactions by or with Trustor are not and will not be subject to state statutes regulating investment of, and fiduciary obligations with respect to, governmental plans.  As of the date hereof, neither Trustor, nor any ERISA affiliate maintains, sponsors or contributes to any Plan or any Welfare Plan that provides any benefits to any former employee (or the spouse or dependent of any such former employee) of the Trustor or any of its ERISA Affiliates after such employee's retirement or termination of employment (other than COBRA continuation coverage required to be provided pursuant to Sections 601 through 607 of ERISA or Section 4980B of the Code).

(t)    <u>Change in Business or Operation of Property</u>.  Borrower shall not cease to operate the Property as a commercial hotel property.

(u)    <u>Property Taxes and Other Liabilities</u>.  All taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, and ground rents, if any, that previously became due and owing in respect of the Property have been paid.

(v)    <u>Condemnation</u>.  There is no proceeding pending or threatened for the total or partial condemnation of the Property.

(w)    <u>Homestead</u>.  There is no homestead, dower, or other exemption available to Borrower that would materially interfere with the right to sell the Property at a trustee's sale or the right to foreclose this Deed of Trust.

(x)    <u>Property</u>.  Trustor owns (or will own, prior to the date set forth in the preamble) fee simple title to the Property.  This Deed of Trust creates the lien and security it purports to create and is a valid and binding obligation of Trustor enforceable against Trustor and the Property in accordance with its terms.

(y)    <u>No Default</u>.  The execution, delivery and performance of the obligations imposed on Trustor under this Deed of Trust will not cause Trustor to be in default under the provisions of any agreement, judgment or order to which Trustor is a party or by which Trustor is bound.

(z)    <u>Items Due and Payable</u>.  No Event of Default exists under the Loan, and all of the following items regarding the Property which have become due and payable have been paid, or, with the approval of Lender, an escrow fund sufficient to pay them has been established:  taxes; government assessments; insurance premiums; water, sewer and municipal charges; leasehold payments; ground rents; and any other charges affecting the Property.

(aa)    <u>Compliance with Applicable Laws and Regulations</u>.  All Improvements to the Property and the use of the Property comply with all applicable statutes, rules and regulations, including,

13

without limitation, all applicable statutes, rules and regulations pertaining to requirements for equal opportunity, anti-discrimination, fair housing, environmental protection, zoning and land use. Improvements on the Property comply with applicable health, fire, and building codes and the Americans with Disabilities Act 42 U.S.C.A. Section 12101 et seq., as amended from time to time (the "**ADA**"), or, if exempt from the ADA, the Improvements are accessible to and useable by persons with disabilities and shall at all times during the term of the Loan be in compliance with applicable law and regulations. There is no evidence of any illegal activities relating to controlled substances on the Property. All required permits, licenses and certificates for the lawful use and operation of the Property, including, but limited to, certificates of occupancy, municipal licenses, or the equivalent, have been obtained and are current and in full force and effect.

(bb)    <u>Insurance Policies</u>.  Trustor has furnished to Lender all insurance policies and certificates required pursuant to the Loan Documents.

(cc)    <u>No Insolvency Proceeding or Judgment</u>.  Trustor is not currently (a) the subject of or a party to any completed or pending bankruptcy, reorganization or insolvency proceeding; or (b) the subject of any judgment unsatisfied of record or docketed in any court of the state in which the Property is located or in any court located in the United States.

(dd)    <u>No Subordinate Financing</u>.  Except as otherwise expressly approved by Lender in writing signed by an officer of Lender holding the title Executive Vice President or more senior, no part of the Property is, or will become, subject to a subordinate mortgage, deed of trust, security instrument (other than this Deed of Trust), or other type of subordinate lien.

(ee)    <u>No Labor or Material Supplier Claims</u>.  All parties furnishing labor and materials have been paid in full and, except for such liens or claims insured against by the policy of title insurance to be issued in connection with the Loan, there are no mechanics', laborers' or material supplier's liens or claims outstanding for work, labor or materials affecting the Property, whether prior to, equal with or subordinate to the lien of this Deed of Trust.

(ff)    <u>No Other Interests</u>.  No person has (a) any possessory interest in the Property or right to occupy the same except under and pursuant to the provisions of existing leases by and between tenant and Trustor, the material terms of all such leases having been previously disclosed to Lender, or (b) an option to purchase the Property or an interest therein (including, without limitation, any right of first offer or refusal).

(gg)    <u>Property Characteristics</u>.  No part of the Property is included or assessed under or as part of another tax lot or parcel, nor part of any other property is included or assessed under or as part of the tax lot or parcels for the Property, other than as expressly disclosed to Lender in writing and accepted by Lender during its underwriting process prior to Lender issuing its final commitment letter.

(hh)    <u>Operating Statements</u>.  Trustor has provided Lender a true, correct and complete copy of its most recent operating statement (the "**Operating Statement**") prepared for the Property.  The Operating Statement gives a true, correct and complete statement of financial conditions for the Property as of the date hereof.

(ii)    <u>Service Contracts</u>.  Trustor has provided Lender with a true, correct and complete list of all service contracts and service agreements relating to the Property and/or the ownership, maintenance and operation of the Improvements located on the Property (the "**Service Contracts**").  Each of the Service Contracts is in full force and effect in accordance with its terms; neither party is in default under any of the Service Contracts; true, correct and complete copies of each of the Service Contracts have been provided to Lender in connection with its underwriting of the Loan; and each of the Service Contracts is terminable on not more than thirty (30) days' notice without the payment of any fee, penalty, cost or expense.

Security Instrument
Oregon Form (2019)
112038-0035/146601992.2

**EXHIBIT 8**
**Page 14 of 42**

(jj)    Furniture, Fixtures and Equipment.    Except for furniture and trade fixtures, equipment, and other personal property owned by any tenant of the Property, all furniture, fixtures and equipment used in connection with the ownership, management, operation and maintenance of the Property are free and clear of any right, title or interest of any other person or entity.

(kk)    Financial Statements.    The financial statements of Trustor reflect a positive net worth as of the date thereof.

(ll)    Insolvency.    Trustor is not presently insolvent, and the Loan will not render Trustor insolvent.    The term "insolvent" means, either and in each case, that (i) the sum total of all of an a person's liabilities (whether secured or unsecured, contingent or fixed, or liquidated or unliquidated) is in excess of the value of all such entity's non-exempt assets, i.e., all of the assets of the entity that are available to satisfy claims of creditors or (ii) a person will not be able to pay all creditors as obligations are become due.

(mm)    Fraudulent Transfer.    Trustor has not entered into the Loan or any Loan Document with the actual intent to hinder, delay, or defraud any creditor, and Trustor has received reasonably equivalent value in exchange for its obligations under the Loan Documents.  Giving effect to the transactions contemplated by the Loan Documents, the fair saleable value of Trustor's assets exceeds and will, immediately following the execution and delivery of the Loan Documents, exceed Trustor's total probable liabilities, including subordinated, unliquidated, disputed or contingent liabilities, including the maximum amount of its contingent liabilities or its debts as such debts become absolute and matured.  Trustor's assets do not and, immediately following the execution and delivery of the Loan Documents will not, constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted.  Trustor does not intend to, and does not believe that it will, incur debts and liabilities (including contingent liabilities and other commitments) beyond its ability to pay such debts as they mature (taking into account the timing and amounts to be payable on or in respect of obligations of Trustor).

(nn)    Working Capital.    After the Loan is made, Trustor will have sufficient working capital, including cash flow from the Property or other assets, not only to adequately maintain the Property, but also to pay all of Trustor's outstanding debts as they come due.

(oo)    No Material Change.    There has been no material change in the occupancy of the Property or the business, financial condition or results of operations of Trustor, the Property or, to the best of Trustor's knowledge, any tenant of the Property, from the date of the application to Lender to make the Loan, other than in connection with the regular commencement and/or, expiration of short-term leases and rental agreements ordinarily occurring as part of the business conducted on the Property and as disclosed by Trustor to Lender in Lender's underwriting process for the Loan.

(pp)    Investigation and Inquiry.    Trustor makes the representations and warranties contained this Section 5.1 following Trustor's reasonable inquiry and investigation into the matters and facts to which Trustor is attesting, and Trustor's inquiry and investigation has confirmed the accuracy of Trustor's statements made in this Section 5.1.

(qq)    Federal Reserve Regulations; Investment Company Act.    No part of the proceeds of the Loan will be used for the purpose of purchasing or acquiring any "margin stock" within the meaning of Regulation U of the Board of Governors of the Federal Reserve System or for any other purpose that would be inconsistent with such Regulation U or any other regulation of such Board of Governors, or for any purpose prohibited by Legal Requirements or any Loan Document.  Trustor is not (i) an "investment company" or a company "controlled" by an "investment company," within the meaning of the Investment Company Act of 1940, as amended; or (ii) subject to any other federal or state law or regulation which purports to restrict or regulate its ability to borrow money.

Security Instrument
Oregon Form (2019)
112038-0035/146601992.2

**EXHIBIT 8**
**Page 15 of 42**

ARTICLE 6

RIGHTS AND DUTIES OF THE PARTIES

6.1.    Maintenance and Preservation of the Property.  Trustor shall:  (a) keep the Property in good condition and repair; (b) complete or restore promptly and in workmanlike manner the Property or any part thereof which may be damaged or destroyed (unless, if and to the extent permitted under Section 6.11 hereof, Lender elects to require that insurance proceeds be used to reduce the Secured Obligations and after such repayment the ratio of Secured Obligations to the value of the Property, as reasonably determined by Lender is the same as or lower than it was immediately before the loss or taking occurred); (c) comply and cause the Property to comply with (i) all laws, ordinances, regulations and standards, (ii) all covenants, conditions, restrictions and equitable servitudes, whether public or private, of every kind and character and (iii) all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and pertain to acts committed or conditions existing thereon, including, without limitation, any work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (d) operate and manage the Property at all times in a professional manner and do all other acts that from the character or use of the Property may be reasonably necessary to maintain and preserve its value; (e) promptly after execution, deliver to Lender a copy of any management agreement concerning the Property and all amendments thereto and waivers thereof; and (f) execute and acknowledge all further documents, instruments and other papers as Lender or Trustee deems necessary or appropriate to preserve, continue, perfect and enjoy the benefits of this Deed of Trust and perform Trustor's obligations, including, without limitation, statements of the amount secured hereby then owing and statements of no offset.  Trustor shall not:  (g) remove or demolish all or any material part of the Property; (h) alter either (i) the exterior of the Property in a manner that materially and adversely affects the value of the Property or (ii) the roof or other structural elements of the Property in a manner that requires a building permit; (i) initiate or acquiesce in any change in any zoning or other land classification that affects the Property; (j) materially alter the type of occupancy or use of all or any part of the Property; or (k) commit or permit waste of the Property.

6.2.    Compliance with Laws.  Trustor shall comply with all federal, state and local laws, rules and regulations applicable to the Property, including, without limitation, all zoning and building requirements and all requirements of the ADA.  Trustor shall possess and maintain in full force and effect at all times (a) all certificates of occupancy and other licenses, permits and authorizations required by applicable law for the existing use of the Property and (b) all permits, franchises and licenses and all rights to all trademarks, trade names, patents and fictitious names, if any, required by applicable law for Trustor to conduct the business(es) in which Trustor is now engaged.

6.3.    Litigation.  Trustor shall promptly notify Lender in writing of any litigation pending or threatened against either Trustor claiming damages in excess of $50,000 and of all pending or threatened litigation against either Trustor if the aggregate damage claims against Trustor exceed $100,000.00.

6.4.    Business Structure Change, Alienation of Assets.  Trustor shall not:  (a) merge or consolidate with any other entity, except when authorized to do so with the prior written consent of Lender as expressly authorized pursuant to Section 6.14 hereof; (b) make any substantial change in the nature of Trustor's business or structure; (c) acquire all or substantially all of the assets of any other entity or permit Trustor to acquire all or substantially all of the assets of any other entity; or (d) sell, lease, assign, transfer or otherwise dispose of a material part of Trustor's assets except in the ordinary course of Trustor's business.

6.5.    Accounting Records.  Trustor shall maintain adequate books and records in accordance with the same accounting standard used by Trustor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan or other accounting standards approved by Lender.  Trustor shall permit any representative of Lender, at any reasonable time and from time to time, to inspect, audit and examine such books and records and make copies of same.

16

**EXHIBIT 8**
**Page 16 of 42**

6.6.    <u>Financial Statements and Accounts</u>.

6.6.1.    <u>Statements Required</u>.  During the term of the Loan or while any liabilities of Trustor to Lender under any of the Loan Documents remain outstanding and unless Lender otherwise consents in writing, Trustor shall provide to Lender or cause to be provided to Lender, each in a form acceptable to Lender, the following:

(a)    <u>Leasing Schedule</u>.  Not later than thirty (30) days after written request by Lender, a schedule, signed and dated by Trustor, showing the following lease information regarding each tenant:  the name of the tenant, a description of the premises, monthly or other periodic rental amount, dates of commencement and expiration of the lease, and payment status;

(b)    <u>Balance Sheet and Annual Financial Statements</u>.  With respect to Trustor, not later than ninety (90) days after the close of the respective fiscal years of Trustor, any guarantor, and any indemnitor, balance sheet and financial statements, including, as applicable and without limitation:  (i) balance sheet for the Property, signed and dated by Trustor; (ii) a schedule, signed and dated by Trustor, showing all revenues and expenses during such fiscal year, relating to the Property; (iii) financial statements showing all assets and liabilities of Trustor that shall be certified by a principal, managing member or general partner of Trustor as being true, correct and complete, or upon the request of Lender, audited by an independent certified public accountant; and (iv) financial statements showing all assets and liabilities of each indemnitor and guarantor under any indemnity or guarantee, which shall be certified by such guarantor or indemnitor or the principal, managing member or general partner of such indemnitor or guarantor, as being true, correct and complete, or upon the request of Lender, audited by an independent certified public accountant;

(c)    <u>Tax Returns</u>.  Not later than April 30th of each year, copies of all tax returns (with all schedules) or extensions filed by Trustor (or on Trustor's behalf, if Trustor is a disregarded entity), unless an extension has been obtained, but no event later than the earlier of (i) September 1st of each year or (ii) within twenty (20) days after filing;

(d)    <u>Other Information</u>.  From time to time, such other information with regard to Trustor or the Property as Lender may reasonably request in writing.

6.6.2.    <u>Form; Warranty</u>.  Trustor agrees that all financial statements to be delivered to Lender, pursuant to Section 6.6.1 hereof, regardless of whether they pertain to Trustor shall:  (a) be complete and correct; (b) present fairly the financial condition of the party; (c) disclose all liabilities that are required to be reflected or reserved against; and (d) be prepared in accordance with the same accounting standard used by Trustor to prepare the financial statements delivered to and approved by Lender in connection with the making of the Loan or other accounting standards acceptable to Lender.  By delivering any such financial statement, Trustor shall be deemed to warrant and represent that, as of the date of delivery of any such financial statement, there has been no material adverse change in financial condition, nor have any assets or properties been sold, transferred, assigned, mortgaged, pledged or encumbered since the date of such financial statement except as disclosed by Trustor in a writing delivered to Lender.

Trustor agrees that all leasing schedules and other information to be delivered to Lender pursuant to Section 6.6.1 hereof and this Section 6.6.2, in each case, shall not contain any misrepresentation or omission of a material fact.

6.6.3.    <u>Accounts and Primary Banking Relationships</u>.  Trustor shall establish its primary deposit and operating accounts with Lender.

17

**EXHIBIT 8**
**Page 17 of 42**

6.7.    Costs, Expenses and Fees.  Trustor agrees to pay to Lender immediately and upon demand all costs and expenses incurred by Trustee and Lender in the enforcement of the terms and conditions of this Deed of Trust (including, without limitation, statutory trustee's fees, court costs and attorneys' fees, whether incurred in litigation or not) with interest from the date of expenditure until said sums have been paid at the rate of interest applicable to the principal balance of the Note as specified therein. Trustor shall pay to Lender the full amount of all costs and expenses, including, without limitation, attorneys' fees (i.e., outside counsel), incurred by Lender in connection with: (a) appraisals and inspections of the Property or Collateral required by Lender as a result of (i) a Transfer (as hereinafter defined) or proposed Transfer, or (ii) an Event of Default; (b) any acts performed or proposed to be performed by Lender at Trustor's request or wholly or partially for the benefit of Trustor (including, without limitation, the preparation or review of amendments, consents, authorizations, assumptions, waivers, releases, reconveyances, estoppel certificates or statements of amounts owing under any Secured Obligation); (c) when permissible pursuant to applicable law and without limitation to Lender's rights under sub-clauses (a), (b), and (d) of this Section 6.7, any out-of-pocket expenses or costs incurred by Lender in taking any action prudent or reasonably necessary, in each case, in Lender's judgment to protect or preserve the priority of, in each case, Lender's liens securing the Secured Obligations; and (d) when permissible pursuant to applicable law and without limitation to Lender's rights under the preceding sub-clauses (a), (b), and (c) of this Section 6.7, any out-of-pocket costs and expenses incurred by Lender and its agents in responding to third-party legal process, subpoenas, or similar legal demands received by Lender and its agents as a result of or in relation to, in each case, the Secured Obligations, the Loan Documents, or Trustor's business with Lender, including, without limitation charges, expenses, attorney's fees and costs upon any appeal, and in any bankruptcy proceedings and in any arbitration proceeding (including, without limitation, any adversary proceeding, contested matter or motion) or otherwise incurred by Lender as a result thereof.  Trustor shall pay all costs and expenses arising under this Section 6.7 immediately upon demand by Lender.  Any administrative fees owed to Lender pursuant to the Loan Documents, including, without limitation, those owed pursuant to Section 6.14 hereof (but excluding 6.14.4(a)) shall be due and payable immediately upon Trustor requesting the action from Lender and shall be non-refundable, irrespective of the disposition of the request by Lender.  Trustor shall have no expectation that Lender commence review of any matter or request prior to Trustor paying the required fee pursuant to the Loan Documents.  In addition and without limitation to Lender's right to recover all its out-of-pocket expenses from Trustor on demand as provided in this Section 6.7, Lender shall have the right to require Trustor to provide a legal deposit (i.e., payment in advance) before engaging outside counsel to do any legal work and to refresh that deposit, at Lender's request, over the pendency of the matter.  Trustor shall have no expectation that Lender commence any legal work with outside counsel prior to Trustor paying any legal deposit requested by Lender.  For the avoidance of doubt, any reference in the Loan Documents to out-of-pocket costs or expenses incurred by Lender shall be construed, without limitation to other kinds of costs and expenses incurred by Lender, to include attorneys' fees (i.e., outside counsel).  For the further avoidance of doubt, no other provision regarding Lender's right to payment of fees, costs, and expenses from Trustor contained in either (i) this Deed of Trust or (ii) any other Loan Document, in each case, may be construed to limit Lender's rights pursuant to this Section 6.7, including, without limitation, Lender's right to require an advance deposit for legal fees (it being understood that any other provision of the Loan Documents pertaining to Lender's right to payment of fees, costs, and expenses, from Trustor in each case, shall be construed consistent with this Section 6.7).  Without limiting the generality of the immediately preceding sentence, no provision specifically requiring payment of a fee, cost, or expense to Lender by Trustor, by being so affirmatively and specifically stated in any Loan Document, may be construed to limit Lender's rights to payment pursuant to this Section 6.7 for any fee, cost, or expense, in each case, provided for by this Section 6.7, but not so specifically stated.  In the event that any party brings any suit or other proceeding with respect to the subject matter or enforcement of this Deed of Trust, including without limitation, in appellate proceedings or in any action or participation in, or in connection with, any case or proceeding under Chapter 7, 11 or 13 of the Bankruptcy Code, 11 United States Code Sections 101 et seq., or any successor statutes, the prevailing party (as determined by the court, agency or other authority before which such suit or proceeding is commenced) shall, in addition to such other relief as may be awarded, be entitled to recover reasonable attorneys' fees, expenses and costs of investigation.

18

**EXHIBIT 8**
**Page 18 of 42**

6.8. <u>No Other Liens, Encumbrances and Charges</u>. Without obtaining Lender's prior written consent pursuant to Section 6.14 (which consent shall be granted or withheld in Lender's sole and absolute discretion and at Trustor's sole cost and expense), Trustor shall not incur against the Property any debt, secured or unsecured, direct or indirect, absolute or contingent (including guaranteeing any obligation), other than the Loan and trade debt incurred in the ordinary course of Trustor's business (with any such trade debt to be paid within sixty (60) days of the date such debt was incurred and, in any event, prior to delinquency). Trustor shall immediately discharge by bonding or otherwise any lien, charge or other encumbrance that attaches to the Property in violation of Section 6.14. Subject to Trustor's right to contest such matters under this Deed of Trust or as expressly permitted in the Loan Documents, Trustor shall pay when due all obligations secured by or reducible to liens and encumbrances that shall now or hereafter encumber or appear to encumber all or any part of the Property or any interest therein, whether senior or subordinate hereto, including, without limitation, all claims for work or labor performed, or materials or supplies furnished, in connection with any work of demolition, alteration, repair, improvement or construction of or upon the Property, except such as Trustor may in good faith contest or as to which a bona fide dispute may arise (provided that provision is made to the satisfaction of Lender for eventual payment thereof in the event that Trustor is obligated to make such payment and that any recorded claim of lien, charge or other encumbrance against the Property is immediately discharged by bonding or otherwise).

6.9. <u>Taxes and Other Liabilities</u>. Trustor shall pay and discharge when due any and all indebtedness, obligations, assessments and taxes, both real and personal and including federal and state income taxes and state and local property taxes and assessments by or before the due date. Trustor shall promptly provide to Lender copies of all tax and assessment notices pertaining to the Property. Trustor hereby authorizes Lender to obtain, at Trustor's expense, a tax service contract which shall provide tax information on the Property to Lender for the term of the Loan and any extensions or renewals of the Loan.

6.10. <u>Insurance Coverage</u>. Trustor shall insure the Property against loss or damage by fire and such other hazards as Lender shall from time to time require, however, not to exceed full replacement cost; provided, however, (a) Lender, at Lender's election, may only require flood insurance if all or any portion of the Improvements located on the Property is or becomes located in a special flood hazard area; and (b) Lender, at Lender's election, may only require earthquake insurance if all or any portion of the Property is or becomes located in an earthquake fault zone. Trustor shall also carry public liability insurance and such other insurance as Lender may require, including, without limitation, business interruption insurance or loss of rents insurance. Such policies shall contain a standard mortgage clause naming Lender and its successors and assigns as a loss payee or additional insured, as appropriate, and requiring at least thirty (30) days' prior notice to the holder at termination or cancellation. Trustor shall maintain all required insurance at Trustor's expense, in companies, and in substance and form satisfactory to Lender, including, without limitation, an agreed amount endorsement. Neither Lender nor Trustee, by reason of accepting, rejecting, approving or obtaining insurance shall incur any liability for: (c) the existence, nonexistence, form or legal sufficiency of any insurances; (d) the solvency of any insurer; or (e) the payment of claims.

If Trustor fails to maintain and deliver to Lender the original policies or certificates of insurance required by this Deed of Trust, upon ten (10) days' prior notice to Trustor, Lender may procure such insurance at Trustor's sole cost and expense. Trustor agrees to deliver to Lender promptly upon receipt, but in any event no later than thirty (30) days' prior to the termination of any of such insurance policies, a renewal policy (or certificate of insurance evidencing the same) satisfying the requirements of this Deed of Trust.

**FORCED PLACE INSURANCE NOTICE.**

**THIS NOTICE IS PROVIDED PURSUANT TO ORS 746.201(1):**

**WARNING: UNLESS BORROWER PROVIDES LENDER WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY THIS AGREEMENT, LENDER MAY PURCHASE INSURANCE AT BORROWER'S EXPENSE TO PROTECT LENDER'S**

19

INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT BORROWER'S INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE LENDER PURCHASES MAY NOT PAY ANY CLAIM BORROWER MAKES OR ANY CLAIM MADE AGAINST BORROWER. BORROWER MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT BORROWER HAS OBTAINED PROPERTY COVERAGE ELSEWHERE.

BORROWER IS RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY LENDER. THE COST OF THIS INSURANCE MAY BE ADDED TO BORROWER'S CONTRACT OR THE LOAN BALANCE. IF THIS COST IS ADDED TO BORROWER'S CONTRACT OR THE LOAN BALANCE, THE INTEREST RATE PAYABLE UNDER THE DEFAULT RATE WILL APPLY TO THE ADDED AMOUNT. THE EFFECTIVE DATE OF THE COVERAGE MAY BE THE DATE BORROWER'S PRIOR COVERAGE LAPSED OR THE DATE BORROWER FAILED TO PROVIDE PROOF OF COVERAGE.

THE COVERAGE PURCHASED BY LENDER MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE BORROWER CAN OBTAIN ON ITS OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR MANDATORY LIABILITY INSURANCE REQUIREMENTS IMPOSED BY APPLICABLE LAW.

6.11.    Insurance and Condemnation Proceeds.

(a)    Assignment of Claims. Trustor absolutely and irrevocably assigns to Lender all of the following rights, claims and amounts (collectively, the "**Claims**"), all of which shall be paid to Lender: (i) all awards of damages and all other compensation payable directly or indirectly by reason of a condemnation or proposed condemnation for public or private use affecting all or any part of, or any interest in, the Property; (ii) all other claims and awards for damages to or decrease in value of all or any part of, or any interest in, the Property; (iii) all proceeds of any insurance policies payable by reason of loss sustained to all or any part of the Property; and (iv) all interest which may accrue on any of the foregoing. Trustor shall give Lender prompt written notice of the occurrence of any casualty affecting, or the institution of any proceedings for eminent domain or for the condemnation of, the Property or any portion thereof. Lender may, in each case, commence, appear in, defend or prosecute any Claim, and may adjust, compromise, and settle all Claims, but shall not be responsible for any failure to commence, appear in, defend, prosecute or collect any such Claim regardless of the cause of the failure. All awards, proceeds, and other sums described herein shall be payable to Lender.

(b)    Application of Proceeds; No Event of Default. (1) So long as no Event of Default has occurred and is continuing at the time of Lender's receipt of the proceeds of the Claims (the "**Proceeds**") and no Event of Default occurs thereafter, Lender shall apply the Proceeds in the following order of priority: First, to Lender's expenses in settling, prosecuting or defending the Claims; Second, to the repair or restoration of the Property; and Third, to Trustor if and only if the repair or restoration of the Property has been completed to the satisfaction of Lender, but otherwise, to the Secured Obligations, in any order, without suspending, extending or reducing any obligation of Trustor to make installment payments if the repair or restoration of the Property has not been completed. (2) Notwithstanding the foregoing, Lender shall not have any obligation to make any Proceeds available for the repair or restoration of the Property unless and until all the following conditions have been satisfied in Lender's sole and absolute discretion: (i) delivery to Lender of the Proceeds plus any additional amount that is needed to pay all costs of the repair or restoration (including, without limitation, taxes, financing charges, insurance and rent during the repair period); (ii) establishment of an arrangement for lien releases and disbursement of funds acceptable to Lender; and (iii) delivery to Lender in form and content acceptable to Lender of all of the following: (aa) plans and specifications for the work; (bb) a contract for the work, signed by a contractor acceptable to Lender; (cc) a cost breakdown for the work; (dd) if required by Lender, a payment and performance bond for the work; (ee) evidence of the continuation of all Leases unless consented to in writing by Lender; (ff) evidence that, upon completion of the work, the size, capacity, value, and income coverage ratios for the Property will be at least as great as those which existed immediately before the damage or condemnation

20

**EXHIBIT 8**
**Page 20 of 42**

occurred; and (gg) evidence of the satisfaction of any additional conditions that Lender may reasonably establish to protect Lender's security. Trustor acknowledges that the specific conditions described above are reasonable.

(c)    Application of Proceeds; Event of Default. If an Event of Default has occurred and is continuing at the time of Lender's receipt of the Proceeds or if an Event of Default occurs at any time thereafter, Lender may, at Lender's absolute discretion and regardless of any impairment of security or lack of impairment of security, but subject to applicable law governing use of the Proceeds, if any, apply all or any of the Proceeds to Lender's expenses in settling, prosecuting or defending the Claims and then apply the balance to the Secured Obligations in any order without suspending, extending or reducing any obligation of Trustor to make installment payments, and may release all or any part of the Proceeds to Trustor upon any conditions Lender chooses.

6.12.    Defense and Notice of Losses, Claims and Actions. Trustor shall protect, preserve and defend the Property and title to and right of possession of the Property, the security and priority of this Deed of Trust, and the rights and powers of Lender and Trustee hereunder, in each case, at Trustor's sole expense against all adverse claims, whether the claim: (a) is against a possessory or non-possessory interest; (b) arose prior or subsequent to the date set forth in the preamble; or (c) is senior or junior to Trustor's or Lender's rights. Trustor shall provide Lender and Trustee prompt notice in writing of the assertion of any claim, of the filing of any action or proceeding, of the occurrence of any damage to the Property and of any condemnation offer or action.

6.13.    Right of Inspection. Lender and its independent contractors, agents and employees may enter the Property from time to time at any reasonable time for the purpose of inspecting the Property and ascertaining Trustor's compliance with the terms of this Deed of Trust. Lender will use commercially reasonable efforts to assure that Lender's entry upon and inspection of the Property will not materially and unreasonably interfere with the business or operations of Trustor's tenants on the Property.

6.14.    Transfer of Property or Interests in Trustor.

6.14.1. Prohibition. Trustor acknowledges that Lender has relied upon the principal(s) of Trustor and such principal's or principals' experience in owning and operating properties similar to the Property in connection with the closing of the Loan. Accordingly, except pursuant to the prior written consent of Lender, which Lender may withhold, delay, or condition in Lender's sole discretion (including, without limitation, pursuant to the terms of Section 6.14.4 hereof), Trustor shall not cause or permit any Transfer (as defined herein) of, in each case, itself (i.e., the Trustor), the Property, the Collateral (except for equipment and inventory in the ordinary course of its business, with respect to the Collateral only), or this Deed of Trust. "**Transfer**" means any: (a) sale or exchange; (b) mortgage, pledge, hypothecation, lien, or encumbrance; (c) assignment, including, without limitation, assignment by operation of law or for the benefit of creditors or the delegation of duties; (d) direct or indirect conveyance, transfer, or disposition, including, without limitation, any direct transfer, grant, or release of title or legal ownership and any indirect transfer through the use of a nominee, trustee, or receiver (other than a receiver appointed at Lender's request); (e) direct or indirect change of control of the Trustor through any means, including without limitation, serial transactions, contracts, or a change in the ultimate control or beneficial ownership of Trustor (including, without limitation, any transfer of or by, in each case, (i) a general or limited partnership interest; (ii) stock, shares, or other equity; (iii) issuance of new or treasury stock, shares, or other equity or changes in voting rights or the creation of a new class of stock, shares, or other equity interests, in each case, that, whether through one action or a series of actions, effects a direct or indirect change of control in an entity; (iv) a limited liability company or membership interest; (v) direct or indirect control of a trust; (vi) interest in a joint venture contract; (vii) an Unauthorized Amendment made or permitted in violation of clause (j) of Section 4.4 hereof; or (viii) any other interest analogous or otherwise similar to items (i)-(vii) of this list), as well as changing of a key control person, whether legal or natural, relied upon by Lender as provided in this Section 6.14, such as, without limitation, the naming a new general partner of a partnership or manager or managing member of a limited liability company); and (f) any action, transfer, or event of similar effect to the preceding list of items (a)-(e), and the meaning of the meaning of Transfer shall include any of

21

the foregoing circumstances listed in (a)-(f) whether occurring, in each case, voluntarily, involuntarily, by operation of law, through one action or event, or through a series of transactions, legal transfers, or other actions or events even if each individually would not constitute a change of (1) control in or (2) beneficial ownership of Trustor but as a series would constitute a Transfer.  If a Transfer is made without the prior written consent of Lender (including, without limitation, any Transfer requiring Lender's prior written consent under Section 6.14.2 hereof), Lender shall have the absolute right at its option, without prior demand or notice, to declare all of the Secured Obligations immediately due and payable, except to the extent prohibited by applicable law, and to pursue its rights and remedies under Article 7 hereof.  Lender's consent to one such Transfer shall apply only to the Transfer consented to in that instance and shall not be deemed to be a waiver of the right to require prior written consent to future or successive Transfers.  Without limiting the generality of the foregoing provisions of this Section 6.14.1, the capitalized term "**Assignment**" refers to the subset of Transfers encompassing:  (i) any assignment of Trustor's interest in this Deed of Trust, in each case, including, without limitation, an assignment by operation of law, and (ii) any delegation of duties by Trustor under this Deed of Trust.  Unless Lender, in writing, subsequently ratifies an Assignment made contrary to this Section 6.14, any Assignment by Trustor, whether voluntarily or involuntarily, made contrary to this Section (including, without limitation, any Assignment requiring Lender's prior written consent under Section 6.14.2 hereof) shall be null and void *ab initio*.  Lender's consent to or ratification of, in each case, one such Assignment shall apply only to the Assignment consented to or ratified in that instance and shall not be deemed to be a waiver of the right to require prior written consent to future or successive Assignments.  With regard to any proposed Transfer or Assignment, or other assumption, substitution, or similar action provided for in this Section 6.14 or in Sections 7.1(m)-7.1(p) hereof, in each case, irrespective of whether Lender's consent is required for such action, Trustor shall (i) comply with the provisions of Section 7.1(o) hereof and (ii) provide to Lender or cause to be provided to Lender, in each case, at Lender's request, any information required by Section 6.14.4 hereof (it being understood that it is Lender's prerogative to review any proposed Transfer or Assignment, or other assumption, substitution, or similar action, unless exempt under the limited exception pursuant to Section 7.1(o) hereof applicable only to a Trustor that is a Public Company (as defined in Section 7.1(o)), to allow Lender to determine proper classification and disposition of the proposed action, as well as fees or reimbursements owed, if any, pursuant to, in each case this Section 6.14, Section 6.7 hereof, and Sections 7.1(m)-7.1(p) hereof.

      6.14.2.  <u>Other Permitted Transfers</u>.  Notwithstanding and without limiting the generality of the foregoing Section 6.14.1, the following actions shall be permitted subject to the terms of (i) this Section 6.14.2 and (ii) the terms of Section 6.14.1 with respect to any action that requiring Lender's prior written consent that is taken without such consent (e.g., regarding (x) the definition of Transfer, (y) Assignments that are void, and (z) Lender's rights and remedies, including, without limitation, acceleration, payment of the prepayment fee).  In the case of the actions described in clauses (a) and (c) of this Section 6.14.2, the actions described therein shall be permitted only with the prior written consent of Lender, which consent shall not be unreasonably withheld.  In the case of actions described in clause (b) of this Section 6.14.2, Lender's consent shall not be necessary; however, Trustor shall comply with all applicable terms of this Deed of Trust, including, without limitation, the terms this Section 6.14, Section 6.7 hereof, and of Sections 7.1(m)-7.1(p) regarding Lender's rights to:  (i) review the proposed action and determine its proper classification, (ii) request and receive any due diligence information as provided by Section 6.14.4 hereof, and (iii) receive an advance deposit for or reimbursement from Trustor, in each case, of any out-of-pocket expenses Lender may incur.  In addition, any Transfer contemplated pursuant to clauses (a), (b) and (c) of this Section 6.14.2, shall be permitted, subject to the provisions of this Section 6.14, only so long as Trustor remains as a legal person or, if required, e.g., in the case of a joint venture or general partnership, is reconstituted, following such Transfer, properly authorized hereunder, and so long as those persons responsible for the management of the Property and Trustor remain unchanged following such gift or that any replacement management is approved by Lender pursuant to the terms hereof.

      (a)     Without limiting the provisions of Sections 7.1(m)-7.1(p) hereof, the direct one-time transfer (i.e., of the interest itself, and not by a higher-level change in control) of up to forty-nine (49%) of:  the (i) limited partnership interests in any Trustor that is a limited partnership; (ii) membership interests in any Trustor that is a limited liability company (other than the membership interests (x) of a member that is the manager or managing member

22

**EXHIBIT 8**
**Page 22 of 42**

of such Trustor or (y) that otherwise enables direct or indirect control of such Trustor, which, in each case, shall not be transferable without the prior written consent of Lender, which may be withheld, conditioned or delayed by Lender in its sole and absolute discretion); or (iii) voting stock in any Trustor that is a corporation (other than preferred, special, or similar stock that, despite holding less than 50% of the corporation's total stock allows for direct or indirect control of, in each case, the corporation or its board of directors or other governing body, which shall not be transferable without the prior written consent of Lender, which may be withheld, conditioned or delayed by Lender in its sole and absolute discretion).

(b)    Without limiting the provisions of Sections 7.1(m)-7.1(p) hereof, any involuntary transfer caused by the death or court-adjudicated incapacity of any natural person that is (i) a general partner, shareholder, joint venturer or member of Trustor; (ii) any manager or managing member of Trustor if Trustor is a limited liability company; and (iii) a beneficial owner or other natural person that controls a trust.  For the avoidance of doubt, (x) this Section 6.14.2(b) applies only to involuntary transfers and not to planned estate gifts, which are provided for by Section 6.14.2(c) hereof and (y) this Section 6.14.2(b) applies to involuntary transfers caused by death or court-adjudicated incapacity of natural persons in the roles specified in this Section 6.14.2(b) and not where Trustor is a natural person (i.e., one individual), which is provided for in Section 7.1(p) hereof.

(c)    Without limiting the provisions of Sections 7.1(m)-7.1(p) hereof, gifts for estate planning purposes of any natural person's interests in Trustor or in any of Trustor's general partners, members or joint venturers to the spouse or any lineal descendant of such individual, or to a properly constituted trust for the benefit of any one or more of such individual, spouse or lineal descendant.  Notwithstanding the foregoing provisions of this Section 6.14.2(c), nothing in this Section 6.14.2(c) authorizes title to the Property to be transferred without Lender's prior written consent that would be otherwise required, in each case, under Section 6.14.1 hereof or any other provision this Deed of Trust.

6.14.3. <u>Lender's Written Consent or Ratification</u>:  As used in this Section 6.14, any reference to Lender's written consent, approval, or ratification of a Transfer, in each case, requires a writing made by Lender executed by an officer of Lender holding the title Executive Vice President or higher.

6.14.4. <u>Transfer Costs</u>:  In connection with any Transfer requiring Lender's consent:

(a)    Trustor shall pay an assumption fee in the amount of one percent (1%) of the then unpaid principal balance of the Loan, which shall be due and payable at the closing of the Transfer transaction.

(b)    Trustor shall pay to Lender both (i) an administrative fee of one thousand five hundred dollars ($1,500.00) for Lender processing the Transfer request (irrespective of the disposition thereof) and (ii) all Lender's out-of-pocket costs (including, without limitation, any out-of-pocket legal expenses paid to outside counsel and the cost of any appraisal); and

(c)    The cost of either (i) a "date down" endorsed to Lender's title insurance policy, including any additional endorsements required by Lender, or (ii) a new title insurance policy, satisfactory to Lender in its discretion, if a "date down" is not available.

In addition to the above-stated, Trustor shall comply with all Lender's policies and procedures in connection with providing its consent to a Transfer, including but not limited to (i) Trustor and its transferee entering an assumption agreement acceptable to Lender and providing, as determined by Lender in Lender's sole and absolute discretion, (x) a reaffirmation of guarantee by a then guarantor and/or (y) a substitute guarantor (acceptable to Lender in Lender's sole and absolute discretion) who shall sign a

23

guarantee agreement acceptable to Lender (in Lender's sole and absolute discretion) and (ii) compliance with the provisions of Sections 7.1(o) hereof. Without limiting the generality of the foregoing sentence of this paragraph of this Section 6.14.4, Trustor shall require, in each case, any prospective recipient of the Transfer, prospective new guarantor, prospective new member, partner, or shareholder of Trustor, or prospective new joint venturer to comply with any requests for due diligence information regarding such prospective new interest holder in, as applicable, Trustor or the Property. Nothing in this Section 6.14 may be construed to require Lender to accept any Transfer, Assignment, assumption or similar action where the prospective person receiving or becoming an interest holder in Trustor or the Property or assuming a role of guarantor is a person with which Lender may not conduct business pursuant to law applicable to Lender (a "**Prohibited Person**"), and Lender shall not be deemed to have breached its obligations under any of the Loan Documents for refusing to consent to, approve, or honor any action that requires or may foreseeably require Lender in the future to conduct business with a Prohibited Person.

Nothing in this Section 6.14.4 limits Lender's discretion to withhold, delay, or condition, in each case, its consent pursuant to the provisions of Sections 6.14.1 and 6.14.2 hereof, including, without limitation, Lender's right to: (i) require other conditions not provided for in this Section 6.14.4; (ii) make decisions regarding Lender's assessment of the creditworthiness of any prospective substitute guarantor or party assuming the obligations hereunder as a result of a proposed Transfer; (iii) require additional conditions related to its credit evaluation of any Transfer or party thereto; (iv) require execution of additional documentation; or (v) refer matters to outside counsel at Trustor's expense to assist with reviewing or consummating any proposed Transfer.

6.15.    Acceptance of Trust; Powers and Duties of Trustee.    Trustee accepts this trust when this Deed of Trust is recorded. From time to time upon written request of Lender and presentation of this Deed of Trust, or a certified copy thereof, for endorsement, and without affecting the personal liability of any person for payment of any indebtedness or performance of any Secured Obligation, Trustee may, if authorized by Lender, without liability therefor and without notice: (a) reconvey all or any part of the Property; (b) consent to the making of any map or plat of the Property; (c) join in granting any easement on the Property; (d) join in any declaration of covenants and restrictions; or (e) join in any extension agreement or any agreement subordinating the lien or charge of this Deed of Trust. Nothing contained in the immediately preceding sentence shall be construed to limit, impair or otherwise affect the rights of Trustor in any respect. Except as may otherwise be required by applicable law, Trustee or Lender may from time to time apply to any court of competent jurisdiction for aid and direction in the execution of the trusts hereunder and the enforcement of the rights and remedies available hereunder, and Trustee or Lender may obtain orders or decrees directing or confirming or approving acts in the execution of said trusts and the enforcement of said remedies. Trustee has no obligation to notify any party of any pending sale or any action or proceeding (including, without limitation, actions in which Trustor, Lender or Trustee shall be a party) unless held or commenced and maintained by Trustee under this Deed of Trust. Trustee shall not be obligated to perform any act required of it hereunder unless the performance of the act is requested in writing and Trustee is reasonably indemnified and held harmless against loss, cost, liability and expense.

6.16.    Compensation of Trustee.    Trustor shall pay to Trustee reasonable compensation and reimbursement for services and expenses in the administration of this trust, including, without limitation, reasonable attorneys' fees. Trustor shall pay all indebtedness arising under this Section 6.16 immediately upon demand by Trustee or Lender.

6.17.    Exculpation.    Lender shall not directly or indirectly, be liable to Trustor or any other person as a consequence of: (a) the exercise of the rights, remedies or powers granted to Lender in this Deed of Trust; (b) the failure or refusal of Lender to perform or discharge any obligation or liability of Trustor under any agreement related to the Property or under this Deed of Trust; or (c) any loss sustained by Trustor or any third party resulting from Lender's failure to lease the Property after an Event of Default or from any other act or omission of Lender in managing the Property after an Event of Default unless the loss is caused by the willful misconduct and bad faith of Lender. No liability contrary to the terms of this Section 6.17 may be asserted or enforced against Lender, and Trustor expressly waives all such liability, and to the fullest extent permitted by applicable law, releases Lender therefrom.

24

**EXHIBIT 8**
**Page 24 of 42**

6.18.   Indemnity.  (1) Without in any way limiting any other indemnity contained in this Deed of Trust, Trustor agrees to defend, indemnify and hold harmless Trustee and the Lender Group (hereinafter defined) from and against any claim, loss, damage, cost, expense or liability directly or indirectly arising out of:  (a) the making of the Loan, except for violations of banking laws or regulations by the Lender Group, but subject to the terms of clause (g) of this Section 6.18; (b) this Deed of Trust; (c) the execution of this Deed of Trust or the performance of any act required or permitted hereunder or by law; (d) any failure of Trustor to perform its obligations under this Deed of Trust or the other Loan Documents; (e) any alleged obligation or undertaking on the Lender Group's part to perform or discharge any of the representations, warranties, conditions, covenants or other obligations contained in any other document related to the Property; (f) any act or omission by Trustor or any contractor, agent, employee or representative of Trustor with respect to the Property; or (g) any prohibited transaction, in the sale of a prohibited loan, or in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Lender's sole discretion (it being understood that the indemnification owed under this Section 6.18 shall not be limited by clause (a) of this Section 6.18 hereof to the extent a prohibited transaction, sale of a prohibited loan, or transaction with a Prohibited Person may otherwise fall within clause (a) of this Section 6.18; and (h) an Event of Default under Article 7 hereof, including, without limitation, Lender's exercise of rights and remedies provided pursuant to Article 7 hereof.   (2) Notwithstanding the foregoing provisions of this Section 6.18(1), this indemnity shall not include any claim, loss, damage, cost, expense or liability directly or indirectly arising out of the gross negligence or willful misconduct of any member of the Lender Group or Trustee, or any claim, loss, damage, cost, expense or liability incurred by the Lender Group or Trustee arising from any act or incident on the Property occurring after the full reconveyance and release of the lien of this Deed of Trust on the Property; however, this indemnity shall include, without limitation:  (aa) all consequential and incidental damages (including, without limitation, any third party tort claims or governmental claims, fines or penalties against Trustee or the Lender Group) and (bb) all court costs and attorneys' fees (including, without limitation, expert witness fees) paid or incurred by Trustee or the Lender Group.  "**Lender Group**," as used in this Deed of Trust, shall mean (i) Lender (including, without limitation, any participant in the Loan); (ii) any entity controlling, controlled by or under common control with Lender; (iii) the directors, officers, employees, and agents of Lender and such other entities of the Lender Group; and (iv) the successors, heirs and assigns of the entities and persons described in foregoing clauses (i) through (iii).  Trustor shall pay immediately upon Trustee's or Lender's demand any amounts owing under this indemnity.  Trustor agrees to use legal counsel acceptable to Trustee and the Lender Group in any action or proceeding arising under this indemnity.  IF THE TRUSTOR IS ALSO THE BORROWER, THE PROVISIONS OF THIS SECTION 6.18 SHALL SURVIVE THE TERMINATION AND RELEASE OF THIS DEED OF TRUST, BUT SUCH PROVISIONS SHALL REMAIN SUBJECT TO ANY LIMITATIONS SET FORTH IN THE NOTE.

6.19.   Substitution of Trustee.  From time to time, by a writing signed and acknowledged by Lender and recorded in the official records of the county in which the Property is located, Lender may appoint another trustee to act in the place and stead of Trustee or any successor.  Such writing shall set forth any information required by applicable law.  The execution of such instrument of substitution shall discharge Trustee herein named and shall appoint the new trustee as the trustee hereunder with the same effect as if originally named trustee herein.  A writing recorded pursuant to the provisions of this Section 6.19 shall be conclusive proof of the proper substitution of such new trustee.

6.20.   Releases, Extensions, Modifications and Additional Security.  Without notice to or the consent, approval or agreement of any persons or entities having any interest at any time in the Property or in any manner obligated under the Secured Obligations (the "**Interested Parties**"), Lender may, from time to time:  (a) fully or partially release any person or entity from liability for the payment or performance of any Secured Obligation; (b) extend the maturity of any Secured Obligation; (c) make any agreement with Trustor increasing the amount or otherwise altering the terms of any Secured Obligation; (d) accept additional security for any Secured Obligation; or (e) release all or any portion of the Property, Collateral and other security for any Secured Obligation.  None of the foregoing actions releases or reduces the personal liability of any of the Interested Parties, or releases or impairs the priority of the lien of this Deed of Trust upon the Property.

Security Instrument
Oregon Form (2019)
112038-0035/146601992.2

**EXHIBIT 8**
**Page 25 of 42**

6.21.    Reconveyance.  Upon Lender's written request, and upon surrender of this Deed of Trust or certified copy thereof and any note, instrument or instruments setting forth all obligations secured hereby to Trustee for cancellation, Trustee shall reconvey, without warranty, the Property or that portion thereof then held hereunder.  The recitals of any matters of fact or facts in any reconveyance executed hereunder shall be conclusive proof of the truthfulness thereof.  To the extent permitted by law, the reconveyance may describe the grantee as "the person or persons legally entitled thereto."  Neither Lender nor Trustee has any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance.  When the Property has been fully released reconveyed, the last such reconveyance shall operate as a reassignment of all future rents, issues and profits of the Property to the person or persons legally entitled thereto.

6.22.    Subrogation.  If and in each case, (i) any or all of the proceeds of the Note have been used to pay, reduce, extinguish, extend or renew any indebtedness heretofore existing against the Property or (ii) if Lender pays or discharges any lien or encumbrance against or affecting the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property (collectively, "**Subrogated Interests**") heretofore held by, or in favor of, the holder of such indebtedness or other Subrogated Interest.  If any Subrogated Interest exists, without adversely affecting the priority of this Deed of Trust and the Secured Obligations, any such Subrogated Interest shall be construed in favor of Lender, whether or not it is of record, or has been released, or has been paid in whole or in part.  Nothing in this Section 6.22 may be construed to (x) limit the rights and remedies of Lender under, in each case, this Deed of Trust or any of the other Loan Documents or (y) make the Lender liable for any act or omission of any person previously entitled to enforce or collect amounts due in relation to any Subrogated Interest.

6.23.    Sale or Participation of Loan.  Trustor agrees that Lender may at any time sell, assign, participate or securitize all or any portion of Lender's rights and obligations under this Deed of Trust, and that any such sale, assignment, participation or securitization may be to one or more financial institutions or other entities, to private investors, and/or into the public securities market, in Lender's sole discretion.  Trustor further agrees that Lender may disseminate to any such actual or potential purchaser(s), assignee(s) or participant(s) all documents and financial and other information heretofore or hereafter provided to or known to Lender with respect to:  (a) the Property and its operation; and/or (b) any party connected with the Loan (including, without limitation, Trustor, any partner or member of Trustor, or any constituent partner or member of Trustor).  In the event of any such sale, assignment, participation or securitization, Lender and the other parties to the same shall share in the rights and obligations of Lender set forth in this Deed of Trust as and to the extent they shall agree among themselves.  In connection with any such sale, assignment, participation or securitization, Trustor further agrees that this Deed of Trust shall be sufficient evidence of the obligations of Trustor to each purchaser, assignee or participant, and Trustor within fifteen (15) days after request by Lender, deliver an estoppel certificate verifying for the benefit of Lender and any other party designated by Lender the status and the terms and provisions of the Loan in form and substance acceptable to Lender, and enter into such amendments or modifications to this Deed of Trust as may be reasonably required in order to facilitate any such sale, assignment, participation or securitization without impairing Trustor's rights or increasing Trustor's obligations.  The indemnity obligations of Trustor under this Deed of Trust shall also apply with respect to any purchaser, assignee or participant.

6.24.    ERISA.

(a)    Trustor shall not engage in any transaction which would cause any obligation, or action taken or to be taken, hereunder (or the exercise by Lender of any of its rights under the Note, this Agreement or the other Loan Documents) to constitute a "prohibited transaction" (as defined in Section 406 of ERISA or Section 4975 of the Code) for which there is no applicable statutory or administrative exemption.

(b)    Trustor shall not (i) maintain, sponsor, contribute to or become obligated to contribute to, or suffer or permit any ERISA Affiliate of Trustor to, maintain, sponsor, contribute to or become obligated to contribute to, any Plan or any Welfare Plan that provides any benefits to any former employee (or the spouse or dependent of any such former employee) of the Trustor or any of its ERISA Affiliates after

26

Security Instrument
Oregon Form (2019)
112038-0035/146601992.2

**EXHIBIT 8**
**Page 26 of 42**

such employee's retirement or termination of employment (other than COBRA continuation coverage required to be provided pursuant to Sections 601 through 607 of ERISA or Section 4980B of the Code) or (ii) permit the assets of Trustor to become "plan assets" within the meaning of the Plan Asset Regulation.

(c)    Trustor shall deliver to Lender such certifications or other evidence from time to time throughout the Term, as requested by Lender in its sole discretion, that (A) Trustor is not and does not maintain a Plan or a "governmental plan" within the meaning of Section 3(32) of ERISA; (B) Trustor is not subject to state statutes regulating investments and fiduciary obligations with respect to governmental plans; and (C) the assets of Trustor do not constitute "plan assets" within the meaning of the Plan Asset Regulation.

ARTICLE 7

DEFAULT AND REMEDIES

7.1.    <u>Event of Default</u>.  An "**Event of Default**" occurs automatically upon the occurrence of any one or more of the following events:

(a)    <u>Monetary</u>.  Borrower or Trustor (as applicable) fails to, in any case:  (i) pay when due any sums that by their express terms require immediate payment without any grace period or sums that are payable on the Maturity Date hereunder or under any of the other Loan Documents secured by this Deed of Trust; or (ii) pay within five (5) days when due any other sums payable hereunder or under any of the other Loan Documents secured by this Deed of Trust, including, without limitation, any monthly payment due under the Note.

(b)    <u>Borrower's Performance of Non-Monetary Obligations Under Other Loan Documents</u>.  If Borrower fails to observe, perform or discharge any of its obligations, covenants, conditions or agreements to Lender or any third person, other than Borrower's payment obligations, under any of the Loan Documents (excluding this Deed of Trust); provided that Borrower's breach or failure to perform obligations to a third person shall be a default hereunder only where such breach or failure may materially affect Borrower's assets or Borrower's ability to repay the Loan or perform its obligations under the Loan Documents.

(c)    <u>Trustor's Performance of Non-Monetary Obligations Under Deed of Trust</u>.  Trustor fail to observe, perform or discharge any of Trustor's obligations, covenants, conditions or agreements, other than Trustor's payment obligations, under this Deed of Trust, other than as specifically provided in this Section 7.1, and (i) such failure shall remain uncured for thirty (30) days after written notice thereof shall have been given to Trustor, as the case may be, by Lender; or (ii) if such failure is of such a nature that it cannot be cured within such thirty (30) day period, Trustor shall fail to commence to cure such failure within such thirty (30) day period or shall fail to diligently prosecute such curative action thereafter or shall fail to cure such default within ninety (90) days after written notice thereof was first given to Trustor.

(d)    <u>Representations and Warranties</u>.  Any representation, warranty, certificate or other statement (financial or otherwise) made or furnished by or on behalf of Trustor, if any, to Lender or in connection with any of the Loan Documents, or as an inducement to Lender to make the Loan or to take any action for the benefit of Trustor, in each case, is false, incorrect, incomplete or misleading in any material respect when made or furnished.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(d).

(e)    <u>Condemnation, Attachment</u>.  The condemnation, seizure or appropriation of any material portion (as reasonably determined by Lender) of the Property, or the sequestration or attachment of, or levy or execution upon any of the Property, the Collateral or any other collateral provided by Trustor under any of the Loan Documents, or any material portion of the other assets of Trustor, which sequestration, attachment, levy or execution is not released or dismissed within forty-five (45) days after its occurrence, or the sale of any assets affected by any of the foregoing.

27

(f)     Uninsured Casualty.  The occurrence of an uninsured casualty with respect to any material portion (as determined by Lender) of the Property unless:  (i) no other Event of Default has occurred and is continuing at the time of such casualty or occurs thereafter;  (ii) Trustor promptly notifies Lender of the occurrence of such casualty; and (iii) not more than forty-five (45) days after the occurrence of such casualty, Trustor delivers to Lender immediately available funds ("**Restoration Funds**") in an amount sufficient, in Lender's reasonable opinion, to pay all costs of the repair or restoration (including, without limitation, taxes, financing charges, insurance and rent during the repair period).  So long as no Event of Default has occurred and is continuing at the time of Lender's receipt of the Restoration Funds and no Event of Default occurs thereafter, Lender shall make the Restoration Funds available for the repair or restoration of the Property.  Notwithstanding the foregoing, Lender shall have no obligation to make any Restoration Funds available for repair or restoration of the Property unless and until all the conditions set forth in clauses (ii) and (iii) Section 6.11(b)(2) of this Deed of Trust have been satisfied.   Trustor acknowledges that the specific conditions described above are reasonable.

(g)     Adverse Financial Change.   Any adverse change in the financial condition of Trustor, or any of their partners, or members, or any guarantor, or any other person or entity from the condition shown on the financial statements submitted to Lender and relied upon by Lender in making the Loan, and which change Lender determines will have a material adverse effect on (i) the business, operations or condition of the Property; or (ii) the ability of Trustor to pay or perform Trustor's obligations in accordance with the terms of this Deed of Trust, and the other Loan Documents.

(h)     Voluntary Bankruptcy, Insolvency, Dissolution.  (i) Trustor's filing a petition for relief under the Bankruptcy Reform Act of 1978, as amended or recodified ("**Bankruptcy Code**"), or under any other present or future state or federal law regarding bankruptcy, reorganization or other relief to debtors (collectively, "**Debtor Relief Law**"); or (ii) Trustor's filing any pleading in any involuntary proceeding under the Bankruptcy Code or other Debtor Relief Law that admits the jurisdiction of a court to regulate Trustor or the Property or the petition's material allegations regarding Trustor's insolvency; or (iii) Trustor's making a general assignment for the benefit of creditors; or (iv) Trustor's applying for, or the appointment of, a receiver, trustee, custodian or liquidator of Trustor or any of its property; or (v) the filing by or against Trustor of a petition seeking the liquidation or dissolution of Trustor or the commencement of any other procedure to liquidate or dissolve Trustor.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(h).

(i)     Involuntary Bankruptcy.  Trustor's failure to effect a full dismissal of any involuntary petition under the Bankruptcy Code or other Debtor Relief Law that is filed against Trustor or in any way restrains or limits Trustor or Lender regarding the Loan or the Property, prior to the earlier of the entry of any order granting relief sought in the involuntary petition or forty-five (45) days after the date of filing of the petition.

(j)     Shareholders, Members and Partners.

(1)     If an event specified in Sections 7(h) or 7(i) hereof occurs as to Trustor or any general partner, shareholder or member of Trustor, there shall be no cure period for any Event of Default arising from a breach of this Section 7.1(j)(1).

(2)     If all or any material part of the assets of Trustor, or any shareholder, director, general partner or manager of Trustor are attached, seized, subjected to a writ or levied upon by any court process and Trustor fails to cause such attachment, seizure, writ or levy to be fully released or removed within sixty (60) days after the occurrence of such event.  The cure provision contained in this Section 7.1(j)(2) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

28

(3)     For the avoidance of doubt, the provisions of this Section 7.1(j) shall not be limited because a shareholder, member or general partner of Trustor, in each case, may also be a guarantor of the Loan; rather, in that instance, an Event of Default under this Section 7.1(j) shall exist regarding the condition of such shareholder, member or general partner of Trustor, and the provisions of Section 7.1(k) hereof shall apply regarding Trustor's duty to obtain an acceptable substitute guarantor.  The cure provisions contained in this Section 7.1(j) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(k)     <u>Guarantors</u>.

(1)     If any an event specified in Sections 7(h) or 7(i) hereof as to any guarantor of the Loan, remains uncured for at least forty-five (45) days, and Trustor fails to provide a substitute guarantor acceptable to Lender within sixty (60) days after the occurrence an event specified in Sections 7(h) or 7(i) hereof as to any guarantor of the Loan.

(2)     If all or any material part of the assets of any guarantor of the Loan are attached, seized, subjected to a writ or levied upon by any court process and Trustor fails to either (i) cause such attachment, seizure, writ or levy to be fully released or removed within sixty (60) days after the occurrence of such event or (ii) provide a substitute guarantor acceptable to Lender within sixty (60) days after all or any material part of the assets of any guarantor of the Loan are attached, seized, subjected to a writ or levied upon by any court process.

(3)     If any guarantor of the Loan dies and Trustor fails to provide a substitute guarantor of the Loan acceptable to Lender within sixty (60) days after the death of such guarantor; however, nothing in this Section 7.1(k)(3) may be construed to reduce or limit any rights and remedies Lender may have against the estate of or successors in interest to such guarantor of the Loan who has died, including, without limitation, any right to enforce a guarantee of the Loan against the estate of a guarantor of the Loan who has died.

(4)     For the avoidance of doubt, Trustor acknowledges that, in consideration of the Loan, Borrower and Trustor (as applicable) are required to provide a guarantor of the Loan acceptable to Lender, in Lender's sole discretion, and this Section 7.1(k) shall be construed consistent with such obligation of Trustor.  Nothing in this Section 7.1(k) may be construed to suggest that this Deed of Trust secures any obligations under any guarantee of the Loan (it being understood that this Deed of Trust does not secure any guarantee of the Loan).    The cure provisions contained in this Section 7.1(k) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(l)     <u>Injunctions</u>.  If a court order is entered against Trustor or any shareholder, general partner, member or manager of Trustor enjoining the conduct of all or part of such person's business and Trustor fails to cause such injunction to be fully stayed, dissolved or removed within sixty (60) days after such order is entered.  The cure provision contained in this Section 7.1(l) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(m)     <u>Dissolution</u>.  If Trustor or any shareholder, general partner, member or manager of Trustor is a corporation, partnership, limited liability company or trust, the dissolution, liquidation, or

29

**EXHIBIT 8**
**Page 29 of 42**

termination of existence of such person.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(m).

(n)    <u>Unauthorized Transfers and Assignments</u>.  Any Transfer made or attempted, in each case, in violation of to Section 6.14 hereof (For the avoidance of doubt, the term Transfer includes any Assignment, as defined in Section 6.14 hereof).  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(n).

(o)    <u>Admission of New Partners, Members, or Shareholders</u>.  If applicable, unless Trustor is a publicly traded company listed on a nationally recognized stock exchange (a "**Public Company**") and the trading of shares in such Public Company or other transaction affecting such Public Company does not constitute a Transfer pursuant to Section 6.14 hereof, the admission to Trustor of any new member, partner, shareholder, or joint venturer, in each case, without having first having (i) informed Lender of the proposed admission of a new member, partner, shareholder, or joint venturer, in each case, and (ii) Trustor having received a written response from Lender regarding Lender's review and disposition of the request pursuant to this Section 7.1(o) and Section 6.14 hereof.  Any admission of a new member, partner, joint venturer contrary to this Section 7.1(o) shall be deemed a Transfer in violation of Section 6.14 hereof (For the avoidance of doubt, this Section 7.1(o) does not provide and shall not be construed to provide any Trustor that is a Public Company any right to make or participate in a Transfer in violation of Section 6.14 hereof).  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(o).

(p)    <u>Death; Incompetency</u>.  If Trustor or any general partner, manager, or managing member of Trustor is an individual (i.e., a natural person), the death or incompetency of such person, except (i) where applicable law limits or prohibits Lender's declaration of a default based on such occurrences and (ii) in the case of the death or mental incompetence of a general partner, manager, or managing member, Trustor causes a substitute general partner, manager or managing member, as applicable, to be admitted to Trustor or appointed to such role and Lender, pursuant to Section 6.14 hereof, in good faith determines that the financial condition, credit history, character, experience, ability and expertise of such substitute general partner, manager, or managing member are comparable to the affected general partner or manager and that such substitute general partner or manager is otherwise acceptable to Lender (For the avoidance of doubt, any substitutions or Transfers contemplated by this Section 7.1(p) shall be made consistent with the terms of both Section 7.1(o) hereof and Section 6.14 hereof).

(q)    <u>Impairment of Priority</u>.  If (i) the priority of this Deed of Trust or Lender's security interest under any of the other agreements securing any or all of the Secured Obligations is impaired for any reason; or (ii) the value of the Property has deteriorated, declined or depreciated as a result of any intentional tortious act or omission by Trustor.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(q).

(r)    <u>Condemnation</u>.  If all or any material part of the Property is transferred to any Governmental Authorities as a result of any condemnation proceeding or action with respect to all or any material part of the Property.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(r).

(s)    <u>Failure to Repair Casualty</u>.  If there is an uninsured casualty with respect to the Property, and Trustor (i) fails to commence repairs and reconstruction of the Property within ninety (90) days after such damage or (ii) thereafter fails to diligently prosecute such repairs and reconstruction to completion.  The cure provisions contained in this Section 7.1(s) shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

(t)    <u>Licenses</u>.  Trustor fails to do any act or execute any document at any time requested by Lender to provide it an assignment of all licenses necessary to operate the business for its intended use.  There shall be no cure period for any Event of Default arising from a breach of this Section 7.1(t).

30

Security Instrument
Oregon Form (2019)
112038-0035/146601992.2

**EXHIBIT 8**
**Page 30 of 42**

7.2.    <u>Acceleration</u>.  Upon the occurrence of an Event of Default, Lender may, at its option, declare all sums owing to Lender under the Note and the other Loan Documents immediately due and payable.

7.3.    <u>Rights and Remedies</u>.  In addition to the rights and remedies in Section 7.2 above and as otherwise provided to Lender in this Deed of Trust, at any time after an Event of Default, Lender and Trustee shall each have all of the following rights and remedies:

(a)    <u>Entry on Property</u>.  With or without notice, and without releasing Trustor from any Secured Obligation, and without becoming a mortgagee in possession, to enter upon the Property from time to time and to do such acts and things as Lender or Trustee deem necessary or desirable in order to inspect, investigate, assess and protect the security hereof or to cure any Event of Default, including, without limitation:  (i) to take and possess all documents, books, records, papers and accounts of Trustor or the then owner of the Property that relate to the Property; (ii) to make, terminate, enforce or modify leases of the Property upon such terms and conditions as Lender deems proper; (iii) to make repairs, alterations and improvements to the Property necessary, in Trustee's or Lender's sole judgment, to protect or enhance the security hereof; (iv) to appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender or Trustee hereunder; (v) to pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien which, in the sole judgment of either Lender or Trustee, is or may be senior in priority hereto, the judgment of Lender or Trustee being conclusive, as between the parties hereto; (vi) to obtain insurance; (vii) to pay any premiums or charges with respect to insurance required to be carried hereunder; and/or (viii) to employ legal counsel, accountants, engineers, consultants, contractors and other appropriate persons to assist them;

(b)    <u>Appointment of Receiver</u>.  To apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Property as a matter of strict right and without regard to:  (i) the adequacy of the security for the repayment of the Secured Obligations; (ii) the existence of a declaration that the Secured Obligations are immediately due and payable; or (iii) the filing of a notice of default; and Trustor consents to such appointment;

(c)    <u>Judicial Foreclosure, Injunction</u>.  To commence and maintain an action or actions in any court of competent jurisdiction to foreclose this instrument as a mortgage or to obtain specific enforcement of the covenants of Trustor hereunder, and Trustor agrees that such covenants shall be specifically enforceable by injunction or any other appropriate equitable remedy and that for the purposes of any suit brought under this subparagraph, Trustor waives the defense of laches and any applicable statute of limitations and shall not require Lender to post a point to seek an injunction or any other kind of specific performance;

(d)    <u>Nonjudicial Foreclosure</u>.  To execute a written notice of such an Event of Default and of the election to cause the Property to be sold to satisfy the Secured Obligations.  Trustee shall give and record such notice as applicable law then requires as a condition precedent to a trustee's sale.  When the minimum period of time required by law after such notice has elapsed, Trustee, without notice to or demand upon Trustor except as required by applicable law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, at one or several sales, either as a whole or in separate parcels and in such manner and order, all as Lender in its sole discretion may determine, at public auction to the highest bidder for cash, in lawful money of the United States, payable at time of sale.  Neither Trustor nor any other person other than Lender has the right to direct the order in which the Property is sold.  Subject to requirements and limits imposed by applicable law, Trustee may, from time to time postpone sale of all or any portion of the Property by public announcement at such time and place of sale previously stated, and from time to time, may also postpone the sale by public announcement at the time and place fixed by the preceding postponement.  A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein.  Trustee shall deliver to the purchaser at such sale a deed conveying the Property or portion thereof so sold, but without any covenant or warranty, express or implied from Lender.  The recitals in the deed of any matters or facts shall be

31

**EXHIBIT 8**
**Page 31 of 42**

conclusive proof of the truthfulness thereof.  Any person, including Trustee, Trustor or Lender may purchase at the sale;

Upon sale of the Property at any judicial or nonjudicial foreclosure, Lender may credit bid (as determined by Lender in its sole and absolute discretion) all or any portion of the Secured Obligations. In determining such credit bid, Lender may, but is not obligated to, take into account all or any of the following:  (i) appraisals of the Property as such appraisals may be discounted or adjusted by Lender in its sole and absolute underwriting discretion; (ii) expenses and costs incurred by Lender with respect to the Property prior to foreclosure; (iii) expenses and costs that Lender anticipates will be incurred with respect to the Property after foreclosure, but prior to resale, including, without limitation, costs of structural reports and other due diligence, costs to carry the Property prior to resale, costs of resale (e.g., commissions, attorneys' fees, and taxes), costs of deferred maintenance, repair, refurbishment and retrofit, costs of defending or settling litigation affecting the Property, and lost opportunity costs (if any), including the time value of money during any anticipated holding period by Lender; (iv) declining trends in real property values generally and with respect to properties similar to the Property; (v) anticipated discounts upon resale of the Property as a distressed or foreclosed property; (vi) the existence of additional collateral (if any), for the Secured Obligations; and (vii) such other factors or matters that Lender (in its sole and absolute discretion) deems appropriate.  In regard to the above, Trustor acknowledges and agrees that:  (viii) Lender is not required to use any or all of the foregoing factors to determine the amount of its credit bid; (ix) this paragraph does not impose upon Lender any additional obligations that are not imposed by law at the time the credit bid is made; (x) the amount of Lender's credit bid need not have any relation to any loan-to-value ratios specified in the Loan Documents or previously discussed between Trustor and Lender; (xi) Lender's credit bid may be (at Lender's sole and absolute discretion) higher or lower than any appraised value of the Property; and (xii) Trustor acknowledges and understands that Lender has no duty to act in Trustor's best interest and expects that Lender will act in Lender's best interest, as determined by Lender, in Lender's sole discretion;

(e)    Multiple Foreclosures.  To resort to and realize upon the security hereunder and any other security now or later held by Lender concurrently or successively and in one or several consolidated or independent judicial actions or lawfully taken nonjudicial proceedings, or both, and to apply the proceeds received upon the Secured Obligations all in such order and manner as Trustee and Lender or either of them determine in their sole discretion;

(f)    Rights to Collateral.  To exercise all rights Trustee or Lender may have with respect to the Collateral under this Deed of Trust, the UCC or otherwise at law; and

(g)    Other Rights.  To exercise such other rights as Trustee or Lender may have at law or in equity or pursuant to the terms and conditions of this Deed of Trust or any of the other Loan Documents.

In connection with any sale or sales hereunder, Lender may elect to treat any of the Property that consists of a right in action or that is property that can be severed from the Property (including, without limitation, any Improvements) without causing structural damage thereto as if the same were personal property or a fixture, as the case may be, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Property.  Any sale of Collateral hereunder shall be conducted in any manner permitted by the UCC.

No specific right or remedy provided in this Section 7.3 may be construed, in each case, to create a duty for Lender to act or exercise any specific right or remedy or make Lender liable for any failure to exercise such right or remedy.  Without limiting the generality of the immediately preceding sentence, nothing in this Section 7.3 may be construed to make Lender responsible for the Property; its operation, maintenance, or condition; or any circumstances occurring on the Land, in each case, prior to Lender taking title to the Land.  No failure to exercise any right or remedy provided by this Section 7.3 may be construed as a waiver of such right or remedy by Lender or as any limitation on Lender's ability to exercise such right or remedy.  The provisions of this Article 7 are intended to benefit Lender and Lender's interests preserving and enforcing its security interest in the Property and obtaining full and timely repayment of the Secured

32

**EXHIBIT 8**
**Page 32 of 42**

Obligations, and thus, the parties hereto intend that such provisions are interpreted consistent with the best interests of Lender, in Lender's determination thereof, to the fullest extent permitted by applicable law.

7.4.    <u>Application of Foreclosure Sale Proceeds</u>.  If any foreclosure sale is effected, Trustee shall apply the proceeds of such sale in the following order of priority:  <u>First</u>, to the costs, fees and expenses of exercising the power of sale and of the sale, including, without limitation, the payment of the Trustee's fees and attorneys' fees; <u>Second</u> to the payment of the Secured Obligations that are secured by this Deed of Trust, in such order as Lender shall determine in its sole discretion; <u>Third</u>, to satisfy the outstanding balance of obligations secured by any junior liens or encumbrances in the order of their priority; and <u>Fourth</u>, to the Trustor or the Trustor's successor in interest, or in the event the Property has been sold or transferred to another, to the vested owner of record at the time of the Trustee's sale.

7.5.    <u>Waiver of Marshaling Rights</u>.  Trustor, for itself and for all parties claiming through or under Trustor, and for all parties who may acquire a lien on or interest in the Property, hereby waives all rights to have the Property and/or any other property, including, without limitation, the Collateral, which is now or later may be security for any Secured Obligation, marshaled upon any foreclosure of this Deed of Trust or on a foreclosure of any other security for any of the Secured Obligations.

7.6.    <u>No Cure or Waiver</u>.  Neither Lender's nor Trustee's nor any receiver's entry upon and taking possession of all or any part of the Property, nor any collection of rents, issues, profits, insurance proceeds, condemnation proceeds or damages, other security or proceeds of other security, or other sums, nor the application of any collected sum to any Secured Obligation, nor the exercise of any other right or remedy by Lender or Trustee or any receives cures or waives any Event of Default or notice of default under this Deed of Trust, or nullifies the effect of any notice of default or sale (unless all Secured Obligations then due have been paid or performed and Trustor has cured all other Events of Default hereunder, in each case, as determined by Lender), or impairs the status of the security, or prejudices Lender or Trustee in the exercise of any right or remedy, or may be construed as an affirmation by Lender of any tenancy, lease or option or a subordination of the lien of this Deed of Trust.

7.7.    <u>Power to File Notices and Cure Events of Default</u>.  Trustor hereby irrevocably appoints Lender and its successors and assigns, as its attorney-in-fact, which power of attorney is coupled with an interest, to perform any obligation of Trustor hereunder upon the occurrence of an event, act or omission that, with notice or passage of time or both, would constitute an Event of Default; provided, however, (a) Lender as such attorney-in-fact shall only be accountable for such funds as are actually received by Lender; and (b) Lender shall not be liable to Trustor or any other person or entity for any failure to act under this Section 7.8.

7.8.    <u>Remedies Cumulative</u>.  All rights and remedies of Lender and Trustee provided hereunder are cumulative and are in addition to all rights and remedies provided by applicable law (including specifically, and without limitation, that of foreclosure of this Deed of Trust as though it were a mortgage) or in any other agreements between Trustor and Lender.  Lender may enforce any one or more remedies or rights hereunder successively or concurrently.

ARTICLE 8

INTENTIONALLY OMITTED

ARTICLE 9

GENERAL PROVISIONS

9.1.    <u>Integration and Additional Provisions</u>.  The Loan Documents contain the complete and entire agreement of the parties with respect to matters contemplated by the Loan Documents, and the Loan Documents supersede all prior and contemporaneous agreements, negotiations, communications, understandings, and discussions, in each case, whether written or oral.  The Loan Documents grant further

33

rights to Lender and contain further agreements and affirmative and negative covenants by Trustor that apply to this Deed of Trust and to the Property and such further rights and agreements are incorporated herein by this reference. Without limiting the generality of the preceding provisions of this Section 9.1. IF THE TRUSTOR IS ALSO THE BORROWER, THE PROVISIONS OF THIS SECTION 9.1 SHALL SURVIVE THE TERMINATION AND RELEASE OF THIS DEED OF TRUST, BUT SUCH PROVISIONS SHALL REMAIN SUBJECT TO ANY LIMITATIONS SET FORTH IN THE NOTE.

9.2.    Non-Waiver.  By accepting payment of any amount secured hereby after its due date or late performance of any other Secured Obligation, Lender shall not waive its right against any person obligated directly or indirectly hereunder or on any Secured Obligation, either to require prompt payment or performance when due of all other sums and obligations so secured or to declare default for failure to make such prompt payment or performance.  No exercise of any right or remedy by Lender or Trustee hereunder constitutes a waiver of any other right or remedy herein contained or provided by applicable law.  No failure by Lender or Trustee to exercise any right or remedy hereunder arising upon any Event of Default may be construed to prejudice Lender's or Trustee's rights or remedies upon, in each case, the continued existence of such Event of Default or occurrence of any other or subsequent Event of Default.  No delay by Lender or Trustee in exercising any such right or remedy may be construed to preclude Lender or Trustee from the exercise thereof at any time while that Event of Default is continuing.  No notice to or demand on Trustor shall by itself or the fact that was provided, in each case, entitle Trustor to any other or further notice or demand in similar or other circumstances.

9.3.    Consents and Approvals.    Wherever Lender's consent, approval, acceptance or satisfaction is required under any provision of this Deed of Trust or any of the other Loan Documents, unless either applicable law or a specific provision of one of the Loan Documents requires a different standard of Lender, such consent, approval, acceptance or satisfaction shall be in Lender's sole and absolute discretion.

9.4.    Permitted Contests.    After prior written notice to Lender, Trustor may contest, by appropriate legal or other proceedings conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of any lien, levy, tax or assessment, or any lien of any laborer, mechanic, materialman, supplier or vendor, or the application to Trustor or the Property of any law or the validity thereof, the assertion or imposition of which, or the failure to pay when due, would constitute an Event of Default, subject to the requirements that:  (a) Trustor pursues the contest diligently, in a manner that Lender determines is not prejudicial to Lender, and that does not impair the lien of this Deed of Trust; (b) the Property, or any part hereof or estate or interest therein, shall not be in any danger of being sold, forfeited, damaged, or lost by reason of such proceedings; (c) in the case of the contest of any law or other legal requirement, Lender shall not be in any danger of any civil or criminal liability; and (d) if required by Lender, Trustor deposits with Lender any funds or other forms of assurance (including a bond or letter of credit) satisfactory to Lender to protect Lender from the consequences of the contest being unsuccessful. Trustor's right to contest pursuant to the terms of this provision shall not relieve Trustor of its obligations under the Loan or to make payments to Lender as and when due.

9.5.    Further Assurances.    Trustor shall, upon demand by Lender or Trustee, execute, acknowledge (if appropriate) and deliver any and all documents and instruments and do or cause to be done all further acts reasonably necessary or appropriate to effectuate the provisions hereof.

9.6.    Attorneys' Fees.  In the event it is necessary for Lender to retain the services of an attorney or any other party to enforce or to commence any legal action to enforce the terms of this Deed of Trust, or any of the other Loan Documents, or any portion hereof or thereof, Trustor agrees to pay to Lender, in addition to damages or other relief, any and all costs and expenses, including, without limitation, expert witness fees and reasonable attorney's fees incurred by Lender as a result thereof.

9.7.    Trustor and Lender Defined.    The term "**Trustor**" includes both the original Trustor including all persons executing this Deed of Trust as a trustor and any subsequent owner or owners of any of the Property; however, while any subsequent owner may have duties under this Deed of Trust by having

34

**EXHIBIT 8**
**Page 34 of 42**

taken title subject to this Deed of Trust, this Security Agreement does not affirmatively grant any rights against Lender to a subsequent owner who did not take title to the Property through a Transfer that fully complies with the terms of this Deed of Trust.  The term "**Lender**" includes the original Lender and any future owner or holder, including assignees, pledgees and participants, of the Note or any interest therein. Nothing in this Section 9.7 may be construed to authorize Trustor to make or participate in a Transfer prohibited by the terms of this Deed of Trust, including, without limitation, the provisions of Section 6.14 hereof.

       9.8.    <u>Disclaimers</u>.

           (a)    <u>Relationship</u>.  The relationship of Trustor and Lender under this Deed of Trust and the other Loan Documents is, and shall at all times remain, solely that of Trustor and Lender; and Lender neither undertakes nor assumes any responsibility or duty to Trustor or to any third party with respect to the Property.  Notwithstanding any other provisions of this Deed of Trust and the other Loan Documents: (i) Lender is not, and shall not be construed to be, a partner, joint venturer, member, alter ego, manager, controlling person or other business associate or participant of any kind of Trustor, and Lender does not intend to ever assume such status; (ii) Lender's activities in connection with this Deed of Trust and the other Loan Documents shall not be outside the scope of activities of a Lender of money, and Lender does not intend to ever assume any responsibility to any person for the quality, suitability, safety or condition of the Property; and (iii) Lender shall not be deemed responsible for or a participant in any acts, omissions or decisions of Trustor; and

           (b)    <u>No Liability</u>.  Lender shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any person or property arising from any construction on, or occupancy or use of, the Property, whether caused by or arising from:  (i) any defect in any building, structure, grading, fill, landscaping or other improvements thereon or in any on-site or off-site improvement or other facility therein or thereon; (ii) any act or omission of Trustor or any of Trustor's agents, employees, independent contractors, licensees or invitees; (iii) any accident in or on the Property or any fire, flood or other casualty or hazard thereon; (iv) the failure of Trustor or any of Trustor's licensees, employees, invitees, agents, independent contractors or other representatives to maintain the Property in a safe condition; or (v) any nuisance made or suffered on any part of the Property.

       9.9.    <u>Severability</u>.  Each representation, warranty, promise, covenant, or similar statement by the Trustor contained herein (in each case a "**Statement**") shall constitute a separate Statement upon which the Lender may rely.  Wherever possible, each Statement shall be interpreted in such manner as to be effective and valid under applicable law, but if any Statement of this Deed of Trust shall be prohibited by or invalid under applicable law, such Statement shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such Statement or the remaining Statements of this Deed of Trust.  If and only if a Statement cannot be interpreted in a manner to be valid under applicable law, such Statement deemed to be prohibited or invalid may be reformed to have the meaning as close as possible to the meaning provided in this Deed of Trust, as long as such reformed meaning is consistent with the intent and purpose of this Deed of Trust to benefit Lender's interests regarding (i) full and timely payment and performance of the Secured Obligations and (ii) Lender's protection of its interests in the Property and the Collateral.  Without limiting the preceding provisions of this Section 9.9, if any provision (for the avoidance of doubt, including not only Statements, but other terms of this Deed of Trust that would not be defined as "Statements") of this Deed of Trust is deemed, in a final non-appealable decision, by a competent court with jurisdiction over the parties and the subject matter to be prohibited or unenforceable under applicable law, the particular provision of this Deed of Trust shall be deemed modified so as to constitute a provision conforming as nearly as possible to the void or unenforceable provision while still remaining valid and enforceable under applicable law, and the remaining terms or provisions of this Deed of Trust shall not be affected thereby; however, if and only if, a provision is prohibited by or unenforceable under applicable law and cannot be reformed as contemplated by the preceding clauses of this Section 9.9, such void or unenforceable provision shall be ineffective to the extent it is void or unenforceable and be severed from the rest of this Deed of Trust without, in each case, invalidating this Deed of Trust; adversely affecting the other terms of this Deed of Trust; or limiting the enforceability of this Deed of Trust.

Security Instrument
Oregon Form (2019)
112038-0035/146601992.2

**EXHIBIT 8**
**Page 35 of 42**

9.10.    <u>Relationship of Articles</u>.  The rights, remedies and interests of Lender under this Deed of Trust established by Article 1 and the security agreement established by Article 4 are independent and cumulative, and there shall not be a merger of any lien created by this Deed of Trust with any security interest created by any other pledge or security agreement, if any exists among the Loan Documents. Lender may elect to exercise or enforce any of its rights, remedies or interests under either or both this Deed of Trust and any other security agreement, if any, as Lender may from time to time deem appropriate. The Assignment of Rents and Leases established by Article 3 is similarly independent of and separate from this Deed of Trust and the Security Agreement and may be enforced separately without adversely affecting the priority or enforceability, in each case, of this Deed of Trust and the lien on the Property it creates.

9.11.    <u>Merger</u>.  No merger shall occur as a result of Lender's acquiring any other estate in, or any other lien on, the Property unless Lender consents to a merger in writing (signed by an officer of Lender holding the title of Executive Vice President or higher).

9.12.    <u>Obligations of Trustor, Joint and Several</u>.  If more than one person has executed this Deed of Trust as "**Trustor**," the obligations of all such persons hereunder shall be joint and several.

9.13.    <u>Separate and Community Property</u>.  Any married person who executes this Deed of Trust as a Trustor agrees that any money judgment that Lender or Trustee obtains pursuant to the terms of this Deed of Trust or any other obligation of that married person secured by this Deed of Trust may be collected by execution upon any separate property or community property of that person.

9.14.    <u>Interpretation and Amendment</u>.  The Loan Documents shall not be modified except by written instrument executed by all parties, and in the case of Lender, to be binding upon Lender, such written instrument must be signed by an officer of Lender holding the title of Executive Vice President or higher.  With respect to this Deed of Trust, in addition to complying with the immediately foregoing sentence, to be valid, such amendment must also be recorded in the official records of the county in which the Land is situated, with Lender having expressly authorized such recording in writing.  Any reference in any of the Loan Documents to the Property or Collateral shall include all or any part of the Property or Collateral.  Any reference to the Loan Documents includes any amendments, renewals or extensions now or hereafter approved by Lender in writing pursuant to the terms hereof.  When the identity of the parties or other circumstances make it appropriate, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.  Article, section, and sub-section headings used herein are for convenience of reference only, are not part of this Agreement, and are not to affect the construction of or to be taken into consideration in interpreting this Agreement.  This Agreement shall be construed without regard to which party drafted this Agreement (it being understood that the parties reject any rule of construction favoring a presumption against the drafter).

9.15.    <u>Capitalized Terms</u>.  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Loan Documents.

9.16.    <u>Successors in Interest</u>.  The terms, covenants, and conditions herein contained shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties hereto.  The foregoing sentence shall not be construed to permit Trustor to Transfer the Loan, the Property, or any interest it has in either the Loan or the Property, in each case, except as otherwise permitted under this Deed of Trust or the other Loan Documents, including, without limitation, the terms of Section 6.14 hereof.

9.17.    <u>Governing Law</u>.  This Deed of Trust and the other Loan Documents and the obligations arising hereunder and thereunder shall be governed by, and construed in accordance with, the laws of the State of Oregon applicable to contracts made and performed in Oregon and any applicable federal law, including, to the extent, with respect to Lender's rights and obligations, that federal law preempts the laws of the State of Oregon.  Except as provided in the immediately preceding sentence, Trustor hereby unconditionally and irrevocably waives, to the fullest extent permitted by law, any claim to assert that the law of any jurisdiction other than Oregon governs this Deed of Trust and other Loan Documents.

Security Instrument
Oregon Form (2019)
112038-0035/146601992.2

**EXHIBIT 8**
**Page 36 of 42**

9.18.    <u>Consent to Jurisdiction</u>.  Trustor irrevocably submits to the Jurisdiction of:  (a) any state or federal court sitting in the State of Oregon over any suit, action, or proceeding, brought by Trustor against Lender, arising out of or relating to this Deed of Trust or the Loan; (b) any state or federal court sitting in the state where the Property is located or the state in which Trustor's principal place of business is located over any suit, action or proceeding, brought by Lender against Trustor, arising out of or relating to this Deed of Trust or the Loan; and (c) any state court sitting in the county of the state where the Property is located over any suit, action, or proceeding, brought by Lender to exercise its STATUTORY POWER OF SALE under this Deed of Trust or any action brought by Lender to enforce its rights with respect to the Collateral. Trustor irrevocably waives, to the fullest extent permitted by law, any objection that Trustor may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

9.19.    <u>Exhibits</u>.  Any and all Exhibits are incorporated into this Deed of Trust by this reference.

9.20.    <u>Addresses; Request for Notice</u>.  All notices and other communications that are required or permitted to be given to a party under this Deed of Trust shall be in writing, refer to the Loan number, and shall be sent to such party, either by personal delivery, by overnight delivery service, or by certified first-class mail, return receipt requested to the addressee below.  All such notices and communications shall be effective upon receipt of such delivery, or if refused or deemed undeliverable, in each case, on the date the first delivery was attempted.  The addresses of the parties are set forth on page 1 of this Deed of Trust. Trustor's principal place of business is at the address set forth on page 1 of this Deed of Trust.

Any Trustor whose address is set forth on page 1 of this Deed of Trust hereby requests that a copy of notice of default and notice of sale be delivered to it at that address.  Failure to insert an address shall constitute a designation of Trustor's last known address as the address for such notice.  Any party shall have the right to change its address for notice hereunder to any other location within the continental United States by giving thirty (30) days' notice to the other parties in the manner set forth above.

9.21.    <u>Counterparts</u>.  This Deed of Trust may be executed in any number of counterparts, each of which, when executed and delivered, will be deemed an original and all of which taken together, will be deemed to be one and the same instrument.

9.22.    <u>Time is of the Essence</u>.  Time is of the essence with respect to all of Trustor's obligations and agreements hereunder regarding, in each case, (i) the payment of money; (ii) where any deadline or period for performance is provided; and (iii) where notice, reports, financial statements, information concerning the Property and its operation, or other information is required to be delivered to Lender.

9.23.    <u>Customer Identification - USA Patriot Act Notice</u>.  Lender hereby notifies Trustor that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56, signed into law October 26, 2001), as amended (the "**Act**"), and Lender's policies and practices, Lender is required to obtain, verify and record certain information and documentation that identifies Trustor, which information includes the name and address of Trustor and such other information that will allow Lender to identify Trustor in accordance with the Act.

9.24.    **Waiver of Jury Trial and Dispute Resolution**.

(a)      TO THE FULLEST EXTENT PERMITTED BY LAW, TRUSTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE BY JURY AND WAIVES ANY RIGHT TO TRIAL BY JURY WITH REGARD TO THIS DEED OF TRUST OR ANY OTHER LOAN DOCUMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.   THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY TRUSTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.

37

BENEFICIARY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY TRUSTOR.

(b)     With respect to any Dispute (as defined below) which arises under the terms of this Deed of Trust, the following paragraphs ("**Dispute Resolution Provision**") concern the resolution of any and all controversies or claims between Trustor (including any persons claiming by or through Trustor) and Lender, whether arising in contract or tort or by statute, that arise out of or relate to (i) this Deed of Trust (including any renewals, extensions or modifications) or (ii) any of the other Loan Documents (collectively, a "**Dispute**"); provided, however, in no event may any Collection Action (as defined herein) by Lender be within the meaning of a Dispute.

(i)     As used herein, (i) the "**Act**" means the Federal Arbitration Act (Title 9, U.S. Code), and (ii) "**JAMS**" means JAMS (a/k/a JAMS Mediation, Arbitration, ADR Services) or any successor thereto.

(ii)     Intentionally Omitted.

(iii)     This Subsection (iii) of this Section 9.24(b) is itemized by paragraphs with numerals, as follows:

(1)     If and only if both Trustor and Lender so consent, any Dispute shall be resolved by binding arbitration in accordance with the Act.  The Act shall apply even though this Deed of Trust provides that it is governed by the law of a specified state; however, the decision of the arbitrators shall be consistent with applicable law, to the extent not preempted by the Act (whether by law or by this Deed of Trust's election of the Act).  Arbitration proceedings will be determined in accordance with the Act, the rules and procedures for the arbitration of financial services disputes of JAMS, and the terms of this Dispute Resolution Provision.  In the event of any inconsistency, the terms of this Dispute Resolution Provision shall control.

(2)     The arbitration shall be administered by JAMS and conducted in any U.S. state where real or tangible personal property collateral for the Loan is located.  All Disputes shall be determined by one arbitrator; however, if any Dispute exceeds FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00), or if more than one Dispute is made at the same time and cumulatively the Disputes exceed FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00), upon the request of any party, the Disputes shall be decided by three (3) arbitrators.  All arbitration hearings shall commence within ninety (90) days of the demand for arbitration and close within ninety (90) days of commencement, and the award of the arbitrator(s) shall be issued within thirty (30) days of the close of the hearing.  However, the arbitrator(s), upon a showing of good cause, may extend the commencement of the hearing for up to an additional sixty (60) days.  The arbitrator(s) shall provide a concise written statement of reasons for the award.  The arbitration award may be submitted to any court having jurisdiction to be confirmed and enforced.

(3)     The arbitrator(s) will have the authority to decide whether any Dispute is barred by the statute of limitations and, if so, to dismiss the arbitration on that basis.  For purposes of the application of the statute of limitations, the service on JAMS under applicable JAMS rules of a notice of Dispute is the equivalent of the filing of a lawsuit.  Any dispute concerning this arbitration provision or whether a Dispute is arbitrable shall be determined by the arbitrator(s).  The arbitrator(s) shall have the power to award legal fees pursuant to the terms of this Deed of Trust.

(c)     This Dispute Resolution Provision shall not limit the right of Lender, in each case, to (v) exercise self-help remedies, when permitted by applicable law, including, without limitation, setoff or acting as an attorney-in-fact to receive Accounts; (w) initiate judicial or non-judicial foreclosure against any real or personal property (e.g., without limitation, the Property and the Collateral, in each case); (x) exercise any judicial or power of sale rights, (y) act in a court of law to obtain an interim remedy, including, without limitation and in each case, injunctive relief, writ of possession or appointment of a receiver, or additional

Security Instrument
Oregon Form (2019)
112038-0035/146601992.2

**EXHIBIT 8**
**Page 38 of 42**

or supplementary remedies, or (z) bring any action for payment.  Each of the actions described in the foregoing subclauses (v) through (z) of this Section 9.24(d) shall constitute a "**Collection Action.**"

        (d)      The filing of a court action is not intended to constitute a waiver of the right of Lender, including, without limitation, on behalf of the suing party, to require thereafter submission of the Dispute to a referee.

ARTICLE 10

INTENTIONALLY OMITTED


ARTICLE 11

STATE-SPECIFIC PROVISIONS

11.1.    <u>Principles of Construction</u>.  In the event of any inconsistencies between the terms and conditions of this Article 11 and the other terms and conditions of this Deed of Trust, the terms and conditions of this Article 11 will control and be binding.  To the extent that any provision in this Deed of Trust is inconsistent with ORS 86.705 through 86.795, such provision shall be disregarded and relevant provisions of ORS 86.705 to 86.795 shall be substituted therefor.

11.2.    <u>Commercial Property</u>.  This Deed of Trust is not, and will not be, a "residential trust deed" (as that term is defined in ORS 86.705(6)).

11.3.    **<u>Statutory Notice</u>.  UNDER OREGON LAW, MOST AGREEMENTS, PROMISES, AND COMMITMENTS MADE BY TRUSTOR CONCERNING LOANS AND OTHER CREDIT EXTENSIONS THAT ARE NOT FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.**

[Signature page follows]

Security Instrument
Oregon Form (2019)
112038-0035/146601992.2

**EXHIBIT 8**
**Page 39 of 42**

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the day and year set forth above.

**BORROWER:**

SHILO INN, SEASIDE OCEANFRONT, LLC,
an Oregon limited liability company

By:    Shilo Seaside Oceanfront Corp,
       an Oregon corporation
       Its Manager

By:    *Mark S. Hemstreet*
       Mark S. Hemstreet
       Secretary

40

**EXHIBIT 8**
**Page 40 of 42**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )
                             ) ss.
County of _Orange_____   )

On _____Dec. 23_____, 20_19_, before    me,
___Kayla Moreau_____, a Notary Public, personally appeared
_____Mark Hemstreet_____, who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[Affix seal here]

KAYLA CHERE MOREAU-BRADFORD
Notary Public – California
Orange County
Commission # 2193499
My Comm. Expires Apr 24, 2021

_Signature of Notary Public_

**EXHIBIT 8**
**Page 41 of 42**

**EXHIBIT A**

LEGAL DESCRIPTION

That portion of Lot 2 in Section 21, Township 6 North, Range 10 West, Willamette Meridian, County of Clatsop, State of Oregon, described as follows:

Beginning at a point 50 feet West of the Southwest corner of Ocean Grove as laid out and recorded by George K. Grimes; thence North 88° 47' 00" West along the Westerly extension of the South line of Ocean Grove a distance of 313.56 feet to the Easterly line of North Prom, in the City of Seaside; thence North 12° 16' 35" East along said Easterly line of North Prom a distance of 219.55 feet to the centerline of Oceanway extended Westerly; thence South 88° 41' 00" East along said centerline a distance of 271.82 feet to a point that is 50 feet West of the West line of Ocean Grove; thence South 01° 19" 00" West parallel with the West line of Ocean Grove 215.00 feet, more or less, to the point of beginning.

Together with right of access easement for ingress and egress as described in that instrument recorded September 9, 1983 at Book 604, Page 315, Clatsop County Records.

0

**EXHIBIT 8**
**Page 42 of 42**

FILED: DEC 27, 2019 02:07 PM
OREGON SECRETARY OF STATE

**UCC**          LIEN NO. 92139816          SHILO INN, SEASIDE O

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A.  NAME & PHONE OF CONTACT AT FILER (optional)

B.  E-MAIL CONTACT AT FILER (optional)

C.  SEND ACKNOWLEDGMENT TO: (Name and Address)

**CORPSMART**
106 5th Ave SE Olympia, WA
800.737.6012
www.corp-smart.com
orders@corp-smart.com

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1.  DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| SHILO INN, SEASIDE OCEANFRONT, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 11707 NE Airport Way | Portland | OR | 97220 | USA |

2.  DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3.  SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Axos Bank | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 9205 West Russell Road, Suite 400 | Las Vegas | NV | 89148 | USA |

4.  COLLATERAL: This financing statement covers the following collateral:

**ALL ASSETS OF THE DEBTOR, INCLUDING, WITHOUT LIMITATION, ALL OF THE COLLATERAL DESCRIBED ON SCHEDULE "1" ATTACHED HERETO AND MADE A PART HEREOF.**

5.  Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
    ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
    ☐ Agricultural Lien  ☐ Non-UCC Filing

7.  ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8.  OPTIONAL FILER REFERENCE DATA:
**Oregon Form (2019) Property Name: 30 North Promenade, Seaside, OR 97138 (112038-0035/146601991.2)**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**EXHIBIT 9
Page 1 of 5**

UCC-1 Financing Statement (cont'd)
Secured Party:    Axos Bank™, a federally chartered savings association
Debtor:    SHILO INN, SEASIDE OCEANFRONT, LLC, an Oregon limited liability company

## SCHEDULE 1

As used herein, **"Deed of Trust"** shall mean that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (as amended, modified, restated, renewed or extended from time to time) dated as of December 16, 2019, encumbering the Property (hereinafter defined).

All of the Debtor's right, title and interest in and to the following:

(a)    All right, title and interest which Debtor now has or may later acquire in any real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances, strips and gores of land, streets, ways, alleys, passages, thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Debtor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water, water courses and water rights and powers, and all sewers and sewer rights, pipes, conduits, wires and other facilities furnishing utility or services to the real property, air rights and development rights and credits, pumps, pipes, flumes and ditches and ditch rights, water stock, ditch and/or reservoir stock or interests, rights to oil, gas, minerals, coal and other substances of any kind or character (the "**Land**") located in the County of Clatsop, State of Oregon, and more particularly described on Exhibit A attached hereto;

(b)    All right, title and interest which Debtor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected, used or placed on the Land, including, without limitation, all plant equipment, apparatus, machinery, appliances and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "**Improvements**");

(c)    All right, title and interest which Debtor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Property (hereinafter defined);

(d)    All additions and accretions to the property described above;

(e)    All licenses, authorizations, certificates, variances, consents, approvals and other permits now or hereafter pertaining to the Land and all estate, right, title and interest of Debtor in, to, under or derived from all trade names or business names relating to the Land or the present or future development, construction, operation or use of the Land;

(f)    Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Debtor and all subsequent owners of the Property (hereinafter defined) which may be made with respect to the Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Property, which said award or awards are hereby assigned to Secured Party;

(g)    Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Property;

(h)    Any and all claims or demands which Debtor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Property;

Oregon Form (2019)

**EXHIBIT 9**
**Page 2 of 5**

(i)       Any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Property, now or hereafter, whether or not such policies name Secured Party as an insured and whether or not such policies are required by Secured Party, and whether or not such claims thereunder are characterized as personal claims; .

(j)       All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Property or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Property, together with any and all accessions, accessories, attachments and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Property;

(k)       All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights and transferable development rights; all of Debtor's right, title and interest in and to any awards, remunerations, settlements or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Debtor from non-governmental sources;

(l)       All leases of the Property, Personalty (as defined below), Fixtures (as defined below), or any part thereof, now or hereafter entered into and all right, title and interest of Debtor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Debtor now or hereafter existing pertaining to the use and enjoyment of the Property; and all right, title and interest of Debtor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Property;

(m)       All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property;

(n)       All rents, income, issues and profits (subject, however, to the rights given in the Deed of Trust to Secured Party to collect and apply same), including, without limitation, the accounts, revenues and proceeds of any business operation conducted by or on behalf of Debtor on or through the use of the Property, prepaid municipal and utility fees, bonds, revenues, income and other benefits to which Debtor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Debtor to encumber hereby all property located or to be located upon the above-described real property. Said real property (or the leasehold estate if the Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "**Property**." As used herein, the term "**Fixtures**" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "**Personalty**" shall include all furniture, furnishings, equipment, machinery, goods,

**EXHIBIT 9**
**Page 3 of 5**

contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in the Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Debtor's right, title, and interest in and to all such property.

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)
Oregon Form (2019)
112038-0035/146601991.2

**EXHIBIT 9**
**Page 4 of 5**

## EXHIBIT A

### Legal Description of Property

That portion of Lot 2 in Section 21, Township 6 North, Range 10 West, Willamette Meridian, County of Clatsop, State of Oregon, described as follows:

Beginning at a point 50 feet West of the Southwest corner of Ocean Grove as laid out and recorded by George K. Grimes; thence North 88° 47' 00" West along the Westerly extension of the South line of Ocean Grove a distance of 313.56 feet to the Easterly line of North Prom, in the City of Seaside; thence North 12° 16' 35" East along said Easterly line of North Prom a distance of 219.55 feet to the centerline of Oceanway extended Westerly; thence South 88° 41' 00" East along said centerline a distance of 271.82 feet to a point that is 50 feet West of the West line of Ocean Grove; thence South 01° 19' 00" West parallel with the West line of Ocean Grove 215.00 feet, more or less, to the point of beginning.

Together with right of access easement for ingress and egress as described in that instrument recorded September 9, 1983 at Book 604, Page 315, Clatsop County Records.

## GUARANTY

This **GUARANTY** (this "**Guaranty**"), dated as of December 16, 2019, made by MARK S. HEMSTREET, having an address at 11707 NE Airport Way, Portland, OR 97220 ("**Guarantor**"), in favor of AXOS BANK™, a federally chartered savings association (together with its successors and assigns, hereinafter referred to as "**Lender**"), having an address of 4350 La Jolla Village Drive, Suite 100, San Diego, California 92122.

R E C I T A L S:

A.      Pursuant to that certain Secured Promissory Note dated as of the date hereof (as the same may be amended, modified, supplemented or replaced from time to time, the "**Note**") between SHILO INN, SEASIDE OCEANFRONT, LLC, an Oregon limited liability company ("**Borrower**") and Lender, Lender has agreed to make a loan (the "**Loan**") to Borrower in an aggregate principal amount not to exceed $12,300,000.00, subject to the terms and conditions of the Note;

B.      As a condition to Lender's making the Loan, Lender is requiring that Guarantor execute and deliver to Lender this Guaranty; and

C.      Guarantor hereby acknowledges that Guarantor will materially benefit from Lender's agreeing to make the Loan;

**NOW, THEREFORE**, in consideration of the premises set forth herein and as an inducement for and in consideration of the agreement of Lender to make the Loan pursuant to the Note, Guarantor hereby agrees, covenants, represents and warrants to Lender as follows:

**1.      Definitions**.

(a)      All capitalized terms used and not defined herein shall have the respective meanings given such terms in the Note.

(b)      The term "**Guaranteed Obligations**" means:  (a) all indebtedness and obligations, of any nature whatsoever, of the Borrower under the Note and other Loan Documents and any and all extensions, renewals, substitutions, replacements, and modifications thereof, whether now in existence or hereafter created, including, without limitation, (i) all principal of and interest on the Note, and (ii) all fees, charges, costs, and other amounts payable by Borrower under the Note and the other Loan Documents; (b) the payment and performance of all obligations of Borrower under each Loan Document; and (c) all costs and expenses, including reasonable fees and out of pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under this Guaranty, the Security Instrument, and any other Loan Document.

(c)      The term "**Governmental Authority**" means, collectively (a) the United States; (b) the state, county, city, and any other political subdivision of the jurisdiction in which the Property is located; (c) all other governmental or quasi-governmental authorities, boards, bureaus, agencies, commissions, departments, administrative tribunals, and other instrumentalities or authorities including, without limitation all judicial authorities and public utilities having or exercising jurisdiction over Borrower or the Property.

**EXHIBIT 10**
**Page 1 of 10**

2.    **Guaranty**.

(a)    Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Lender the full, prompt and complete payment when due of the Guaranteed Obligations.

(b)    All sums payable to Lender under this Guaranty shall be payable on demand and without reduction for any offset, claim, counterclaim or defense.

(c)    Guarantor hereby agrees to indemnify, defend and save harmless Lender from and against any and all costs, losses, liabilities, claims, causes of action, expenses and damages, including reasonable attorneys' fees and disbursements, which Lender may suffer or which otherwise may arise by reason of Borrower's failure to pay any of the Guaranteed Obligations when due, irrespective of whether such costs, losses, liabilities, claims, causes of action, expenses or damages are incurred by Lender prior or subsequent to (i) Lender's declaring the unpaid principal, interest and other sums evidenced or secured by the Loan Documents to be due and payable, (ii) the commencement or completion of a judicial or non-judicial foreclosure of the Security Instrument or (iii) the conveyance of all or any portion of the Property by deed-in-lieu of foreclosure.

(d)    Guarantor agrees that no portion of any sums applied (other than sums received from Guarantor in full or partial satisfaction of its obligations hereunder), from time to time, in reduction of the Loan shall be deemed to have been applied in reduction of the Guaranteed Obligations until such time as the Loan has been paid in full, or Guarantor shall have made the full payment required hereunder, it being the intention hereof that the Guaranteed Obligations shall be the last portion of the Loan to be deemed satisfied.

(e)    Notwithstanding anything to the contrary herein or in the other Loan Documents, this Guaranty is and shall remain unsecured.

3.    **Representations and Warranties**.  Guarantor hereby represents and warrants to Lender as follows (which representations and warranties shall be given as of the date hereof and shall survive the execution and delivery of this Guaranty):

(a)    **Execution**.  This Guaranty has been duly executed and delivered by Guarantor.

(b)    **Enforceability**.  This Guaranty constitutes a legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally.

(c)    **No Violation**.  The execution, delivery and performance by Guarantor of its obligations under this Guaranty do not and will not violate any law, regulation, order, writ, injunction or decree of any court or governmental body, agency or other instrumentality applicable to Guarantor, or result in a breach of any of the terms, conditions or provisions of, or constitute a default under, or result in the creation or imposition of any mortgage, lien, charge or encumbrance of any nature whatsoever upon any of the assets of Guarantor pursuant to the terms of any mortgage, indenture, agreement, trust instrument, or other instrument to which Guarantor is a party or by which it or any of its properties is bound.  Guarantor is not in default under any other guaranty which it has provided to Lender.

2

**EXHIBIT 10
Page 2 of 10**

(d)    **No Litigation**.  There are no actions, suits or proceedings at law or at equity, pending or, to Guarantor's best knowledge, threatened against or affecting Guarantor or which involve or might involve the validity or enforceability of this Guaranty or which might materially adversely affect the financial condition of Guarantor or the ability of Guarantor to perform any of its obligations under this Guaranty.  Guarantor is not in default beyond any applicable grace or cure period with respect to any order, writ, injunction, decree or demand of any Governmental Authority which might materially adversely affect the financial condition of Guarantor or the ability of Guarantor to perform any of its obligations under this Guaranty.

(e)    **Consents**.    All consents, approvals, orders or authorizations of, or registrations, declarations or filings with, all Governmental Authorities (collectively, the "**Consents**") that are required in connection with the valid execution, delivery and performance by Guarantor of this Guaranty have been obtained and Guarantor agrees that all Consents required in connection with the carrying out or performance of any of Guarantor's obligations under this Guaranty will be obtained when required.

(f)    **Financial Statements and Other Information**.  All financial statements of Guarantor heretofore delivered to Lender are true and correct in all material respects and fairly present the financial condition of Guarantor as of the respective dates thereof, and no materially adverse change has occurred in the financial conditions reflected therein since the respective dates thereof.  None of the aforesaid financial statements or any certificate or statement furnished to Lender by or on behalf of Guarantor in connection with the transactions contemplated hereby, and none of the representations and warranties in this Guaranty contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein or herein not misleading.  Guarantor is not insolvent within the meaning of the United States Bankruptcy Code or any other applicable law, code or regulation and the execution, delivery and performance of this Guaranty will not render Guarantor insolvent.

(g)    **Consideration**.  Guarantor is the owner, directly or indirectly, of certain legal and beneficial equity interests in Borrower.

4.    **Financial and Tax Reporting**.

(a)    **Financial Reporting.**  Guarantor shall from time to time, upon request by Lender, deliver to Lender such financial statements as Lender may reasonably require, including as applicable as determined by Lender, a balance sheet, an income and expense statement, a personal financial statement including schedule of real estate and a statement of financial affairs, all in form and content acceptable to Lender.  Guarantor shall also furnish to Lender complete copies of all federal and state income tax returns (including accompanying schedules and related K-1's) filed by Guarantor within thirty (30) days after filing (provided that if returns are not filed on time then a copy of any applicable extension filings shall be made available for delivery to Lender upon Lender's request as provided above within thirty (30) days after the extension filing due date).  Upon request by Lender, all such tax returns must be prepared by an independent certified public accountant or attorney. Each of the statements, schedules, documents, items and reports required by this paragraph shall be certified to be complete and accurate by Guarantor (or for an entity Guarantor, an individual having authority to bind Guarantor), and shall be in such form and contain such detail as Lender may reasonably require.  Lender may at Lender's discretion require that any statements, schedules or reports be audited at Borrower's expense by independent certified public accountants acceptable to Lender.  Guarantor acknowledges and agrees that (a) the reporting requirements of this paragraph apply to each Guarantor if more than one Guarantor is executing this Guaranty, and (b) that failure of any Guarantor to provide financial statements,

3

information, documents or tax returns required by this paragraph within thirty (30) days of request by Lender shall constitute a material Event of Default under the Loan.  Guarantor acknowledges and agrees that Lender may from time to time (i) verify and re-verify any information contained in Borrower's application for the Loan, (ii) order additional credit reports from any credit reporting agency with respect to Borrower and Guarantor, and (iii) report Borrower's and Guarantor's name(s), account information and payment history to any credit reporting agency.

(b)     **Tax Reporting**.  Guarantor pay when due all taxes, assessments and other liens and charges against Guarantor related to tax payments, including, without limitation, each payment due under any payment plan or settlement established with the Internal Revenue Service, State of Oregon, State of California and State of Washington.  Guarantor shall provide to Lender, within three Business Days after Lender's request therefor, evidence in form and substance satisfactory to Lender of Guarantor's timely payment of taxes, assessments or liens or charges related to Guarantor's tax liability, release of tax liens that have been paid in full, and Guarantor's good standing with all tax authorities with jurisdiction over Guarantor and its assets.

### 5.     Unconditional Character of Obligations of Guarantor.

(a)     The obligations of Guarantor hereunder shall be irrevocable, absolute and unconditional, irrespective of the validity, regularity or enforceability, in whole or in part, of the other Loan Documents or any provision thereof, or the absence of any action to enforce the same, any waiver or consent with respect to any provision thereof, the recovery of any judgment against Borrower, Guarantor or any other Person or any action to enforce the same, any failure or delay in the enforcement of the obligations of Borrower under the other Loan Documents or Guarantor under this Guaranty, or any setoff, counterclaim, and irrespective of any other circumstances which might otherwise limit recourse against Guarantor by Lender or constitute a legal or equitable discharge or defense of a guarantor or surety.  Lender may enforce the obligations of Guarantor under this Guaranty by a proceeding at law, in equity or otherwise, independent of any loan foreclosure or similar proceeding or any deficiency action against Borrower or any other Person at any time, either before or after an action against the Property or any part thereof, Borrower or any other Person.  **This Guaranty is a guaranty of payment and performance and not merely a guaranty of collection.**  Guarantor waives diligence, notice of acceptance of this Guaranty, filing of claims with any court, any proceeding to enforce any provision of any other Loan Document, against Guarantor, Borrower or any other Person, any right to require a proceeding first against Borrower or any other Person, or to exhaust any security (including, without limitation, the Property) for the performance of the Guaranteed Obligations or any other obligations of Borrower or any other Person, or any protest, presentment, notice of default or other notice or demand whatsoever (except to the extent expressly provided to the contrary in this Guaranty).

(b)     The obligations of Guarantor under this Guaranty, and the rights of Lender to enforce the same by proceedings, whether by action at law, suit in equity or otherwise, shall not be in any way affected by any of the following:

(i)     any insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting Borrower, the Property or any part thereof, Guarantor or any other Person;

4

(ii)     any failure by Lender or any other Person, whether or not without fault on its part, to perform or comply with any of the terms of the Note, or any other Loan Documents, or any document or instrument relating thereto;

(iii)    the sale, transfer or conveyance of the Property or any interest therein to any Person, whether now or hereafter having or acquiring an interest in the Property or any interest therein and whether or not pursuant to any foreclosure, trustee sale or similar proceeding against Borrower or the Property or any interest therein;

(iv)    the conveyance to Lender, any Affiliate of Lender or Lender's nominee of the Property or any interest therein by a deed-in-lieu of foreclosure;

(v)     the release of Borrower or any other Person from the performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law or otherwise; or

(vi)    the release in whole or in part of any collateral for any or all Guaranteed Obligations or for the Loan or any portion thereof.

(c)     Except as otherwise specifically provided in this Guaranty, Guarantor hereby expressly and irrevocably waives all defenses in an action brought by Lender to enforce this Guaranty based on claims of waiver, release, surrender, alteration or compromise and all setoffs, reductions, or impairments, whether arising hereunder or otherwise.

(d)     Lender may deal with Borrower and Affiliates of Borrower in the same manner and as freely as if this Guaranty did not exist and shall be entitled, among other things, to grant Borrower or any other Person such extension or extensions of time to perform any act or acts as may be deemed advisable by Lender, at any time and from time to time, without terminating, affecting or impairing the validity of this Guaranty or the obligations of Guarantor hereunder.

(e)     No compromise, alteration, amendment, modification, extension, renewal, release or other change of, or waiver, consent, delay, omission, failure to act or other action with respect to, any liability or obligation under or with respect to, or of any of the terms, covenants or conditions of, the Loan Documents shall in any way alter, impair or affect any of the obligations of Guarantor hereunder, and Guarantor agrees that if any Loan Document are modified with Lender's consent, the Guaranteed Obligations shall automatically be deemed modified to include such modifications.

(f)     Lender may proceed to protect and enforce any or all of its rights under this Guaranty by suit in equity or action at law, whether for the specific performance of any covenants or agreements contained in this Guaranty or otherwise, or to take any action authorized or permitted under applicable law, and shall be entitled to require and enforce the performance of all acts and things required to be performed hereunder by Guarantor.  Each and every remedy of Lender shall, to the extent permitted by law, be cumulative and shall be in addition to any other remedy given hereunder or now or hereafter existing at law or in equity.

(g)     No waiver shall be deemed to have been made by Lender of any rights hereunder unless the same shall be in writing and signed by Lender, and any such waiver shall

be a waiver only with respect to the specific matter involved and shall in no way impair the rights of Lender or the obligations of Guarantor to Lender in any other respect or at any other time.

(h)      At the option of Lender, Guarantor may be joined in any action or proceeding commenced by Lender against Borrower in connection with or based upon any other Loan Documents and recovery may be had against Guarantor in such action or proceeding or in any independent action or proceeding against Guarantor to the extent of Guarantor's liability hereunder, without any requirement that Lender first assert, prosecute or exhaust any remedy or claim against Borrower or any other Person, or any security for the obligations of Borrower or any other Person.

(i)      Guarantor agrees that this Guaranty shall continue to be effective or shall be reinstated, as the case may be, if at any time any payment is made by Borrower or Guarantor to Lender and such payment is rescinded or must otherwise be returned by Lender (as determined by Lender in its sole and absolute discretion) upon insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting Borrower or Guarantor, all as though such payment had not been made.

(j)      In the event that Guarantor shall advance or become obligated to pay any sums under this Guaranty or in connection with the Guaranteed Obligations or in the event that for any reason whatsoever Borrower or any subsequent owner of the Property or any part thereof is now, or shall hereafter become, indebted to Guarantor, Guarantor agrees that (i) the amount of such sums and of such indebtedness and all interest thereon shall at all times be subordinate as to lien, the time of payment and in all other respects to all sums, including unpaid principal and interest and other amounts, at any time owed to Lender under the Loan Documents, and (ii) Guarantor shall not be entitled to enforce or receive payment thereof until all principal, interest and other sums due pursuant to the Loan Documents have been paid in full.  Nothing herein contained is intended or shall be construed to give Guarantor any right of subrogation in or under the Loan Documents or any right to participate in any way therein, or in the right, title or interest of Lender in or to any collateral for the Loan, notwithstanding any payments made by Guarantor under this Guaranty, until the actual and irrevocable receipt by Lender of payment in full of all principal, interest and other sums due with respect to the Loan or otherwise payable under the Loan Documents.  If any amount shall be paid to Guarantor on account of such subrogation rights at any time when any such sums due and owing to Lender shall not have been fully paid, such amount shall be paid by Guarantor to Lender for credit and application against such sums due and owing to Lender.

(k)      Guarantor's obligations hereunder shall survive a foreclosure, deed-in-lieu of foreclosure or similar proceeding involving the Property and the exercise by Lender of any or all of its remedies pursuant to the Loan Documents.

(l)      Intentionally Omitted.

**6.      Entire Agreement/Amendments**.   This instrument represents the entire agreement between the parties with respect to the subject matter hereof.   The terms of this Guaranty shall not be waived, altered, modified, amended, supplemented or terminated in any manner whatsoever except by written instrument signed by Lender and Guarantor.

**7.      Successors and Assigns**. This Guaranty shall be binding upon Guarantor, and Guarantor's estate, heirs, personal representatives, successors and assigns, may not be

6

**EXHIBIT 10**
**Page 6 of 10**

assigned or delegated by Guarantor and shall inure to the benefit of Lender and its successors and assigns.

**8.** **Applicable Law and Consent to Jurisdiction**.  This Guaranty shall be governed by, and construed in accordance with, the substantive laws of the state in which the Property is located.  Guarantor irrevocably (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Guaranty may be brought in a court of record with jurisdiction in the county and state in which the Property is located, or in the courts of the United States of America located in California, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.  Guarantor irrevocably consents to the service of any and all process in any such suit, action or proceeding by service of copies of such process to Guarantor at its address provided in Section 13 hereof.  Nothing in this Section 8, however, shall affect the right of Lender to serve legal process in any other manner permitted by law or affect the right of Lender to bring any suit, action or proceeding against Guarantor or its property in the courts of any other jurisdictions.

**9.** **Section Headings**.  The headings of the sections and paragraphs of this Guaranty have been inserted for convenience of reference only and shall in no way define, modify, limit or amplify any of the terms or provisions hereof.

**10.** **Severability**.  Any provision of this Guaranty which may be determined by any competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.  To the extent permitted by applicable law, Guarantor hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.

**11.** **WAIVER OF TRIAL BY JURY**.  GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

**12.** **Other Guaranties**.  The obligations of Guarantor hereunder are separate and distinct from, and in addition to, the obligations of Guarantor now or hereafter arising under any other guaranties, indemnification agreements or other agreements to which Guarantor is now or hereafter becomes a party.  In no event shall Guarantor be entitled to any credit against amounts due under this Guaranty by reason of amounts paid to Lender by Guarantor or any other Person under or by reason of the other guaranties, indemnification agreements or other agreements to which Guarantor is now or hereafter becomes a party.

**13.** **Notices**.  All notices, consents, approvals and requests required or permitted hereunder (a "**Notice**") shall be given in writing and shall be effective for all purposes if either

7

**EXHIBIT 10**
**Page 7 of 10**

hand delivered with receipt acknowledged, or by a nationally recognized overnight delivery service (such as Federal Express), or by certified or registered United States mail, return receipt requested, postage prepaid, or by facsimile and confirmed by facsimile answer back, in each case addressed as follows (or to such other address or Person as a party shall designate from time to time by notice to the other party):  If to Lender: Axos Bank, 4350 La Jolla Village Drive, Suite 100, San Diego, California 92122, Attention:  Legal Department; if to Guarantor: 11707 NE Airport Way, Portland, OR 97220.  A notice shall be deemed to have been given:  in the case of hand delivery, at the time of delivery; in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day; or in the case of overnight delivery, upon the first attempted delivery on a Business Day; or in the case of facsimile, upon the confirmation of such facsimile transmission.

14.    **Guarantor's Receipt of Loan Documents**.  Guarantor by its execution hereof acknowledges receipt of true copies of all of the Loan Documents, the terms and conditions of which are hereby incorporated herein by reference.

15.    **Interest; Expenses.**

(a)    If Guarantor fails to pay all or any sums due hereunder upon demand by Lender, the amount of such sums payable by Guarantor to Lender shall bear interest from the date of demand until paid at the Default Rate in effect from time to time.

(b)    Guarantor hereby agrees to pay all costs, charges and expenses, including reasonable attorneys' fees and disbursements, that may be incurred by Lender in enforcing the covenants, agreements, obligations and liabilities of Guarantor under this Guaranty.

16.    **Joint and Several Obligations**.  If Guarantor consists of more than one Person, each such Person shall have joint and several liability for the obligations of Guarantor hereunder.

17.    **State Specific Provisions.**

(a)    In the event of any inconsistencies between the terms and conditions of this Section 17, and the other terms and conditions of this Guaranty, the terms of this Section 17 will control and be binding.

(b)    The obligations of Guarantor under this Guaranty are in addition to the obligations of all other guarantors of the Loan.

(c)    Guarantor's obligations under this Guaranty are not secured by the Security Instrument granted by Borrower.

(d)    With respect to any references in the Guaranty related to attorneys' fees, such fees shall include, without limitation, all costs and expenses (both in-house and outside counsel), incurred by Lender in enforcing this Guaranty against Guarantor, whether incurred at the trial or appellate level, in an arbitration proceeding, in bankruptcy (including, without limitation, any adversary proceeding, contested matter or motion) or otherwise.

(e)    Guarantor understands that a nonjudicial foreclosure of the Security Instrument granted by Borrower or any other deed of trust or trust deed securing the indebtedness of Borrower to Lender, granted by any person other than Guarantor, could impair or eliminate any subrogation, reimbursement or contribution rights Guarantor may have against the grantor of such

Security Instrument or other deed of trust or trust deed; nevertheless, Guarantor waives and relinquishes any defense based upon the loss of such rights or any other defense that may otherwise arise out of ORS 86.797 or any other applicable anti-deficiency statute of another state. Guarantor understands and agrees that Lender may in its discretion nonjudicially foreclose one or more Security Instrument or other deeds of trust granted to it by Borrower, then collect from Guarantor a sum equal to the difference between the total amount of the Obligations and the amount of the successful bid at each trustee sale.

(f)    The death of Guarantor will not revoke this Guaranty as to such decedent unless and until written notice is actually received by Lender and until all of the Guaranteed Obligations then existing are fully paid and discharged.

(g)    Guarantor expressly agrees that this Guaranty is for the benefit of his or her marital community and that recourse may be had against Guarantor's separate property and all of the community property of Guarantor and his or her spouse for all of Guarantor's obligations hereunder.

**UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.**

[*Signature Page Follows.*]

9

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the date first above written.  Where applicable law so provides, Guarantor intends that this Guaranty shall be deemed to be signed and delivered as a sealed instrument.

**GUARANTOR:**

MARK S. HEMSTREET

10

**EXHIBIT 10**
**Page 10 of 10**

## GUARANTY

This **GUARANTY** (this "**Guaranty**"), dated as of December 16, 2019, made by SHILO SEASIDE OCEANFRONT CORP, an Oregon corporation, having an address at 11707 NE Airport Way, Portland, OR 97220 ("**Guarantor**"), in favor of AXOS BANK™, a federally chartered savings association (together with its successors and assigns, hereinafter referred to as "**Lender**"), having an address of 4350 La Jolla Village Drive, Suite 100, San Diego, California 92122.

R E C I T A L S:

A.      Pursuant to that certain Secured Promissory Note dated as of the date hereof (as the same may be amended, modified, supplemented or replaced from time to time, the "**Note**") between SHILO INN, SEASIDE OCEANFRONT, LLC, an Oregon limited liability company ("**Borrower**") and Lender, Lender has agreed to make a loan (the "**Loan**") to Borrower in an aggregate principal amount not to exceed $12,300,000.00, subject to the terms and conditions of the Note;

B.      As a condition to Lender's making the Loan, Lender is requiring that Guarantor execute and deliver to Lender this Guaranty; and

C.      Guarantor hereby acknowledges that Guarantor will materially benefit from Lender's agreeing to make the Loan;

**NOW, THEREFORE**, in consideration of the premises set forth herein and as an inducement for and in consideration of the agreement of Lender to make the Loan pursuant to the Note, Guarantor hereby agrees, covenants, represents and warrants to Lender as follows:

1.      **Definitions**.

(a)      All capitalized terms used and not defined herein shall have the respective meanings given such terms in the Note.

(b)      The term "**Guaranteed Obligations**" means:  (a) all indebtedness and obligations, of any nature whatsoever, of the Borrower under the Note and other Loan Documents and any and all extensions, renewals, substitutions, replacements, and modifications thereof, whether now in existence or hereafter created, including, without limitation, (i) all principal of and interest on the Note, and (ii) all fees, charges, costs, and other amounts payable by Borrower under the Note and the other Loan Documents; (b) the payment and performance of all obligations of Borrower under each Loan Document; and (c) all costs and expenses, including reasonable fees and out of pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under this Guaranty, the Security Instrument, and any other Loan Document.

(c)      The term "**Governmental Authority**" means, collectively (a) the United States; (b) the state, county, city, and any other political subdivision of the jurisdiction in which the Property is located; (c) all other governmental or quasi-governmental authorities, boards, bureaus, agencies, commissions, departments, administrative tribunals, and other instrumentalities or authorities including, without limitation all judicial authorities and public utilities having or exercising jurisdiction over Borrower or the Property.

1

**EXHIBIT 11**
**Page 1 of 10**

2. **Guaranty**.

(a)     Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Lender the full, prompt and complete payment when due of the Guaranteed Obligations.

(b)     All sums payable to Lender under this Guaranty shall be payable on demand and without reduction for any offset, claim, counterclaim or defense.

(c)     Guarantor hereby agrees to indemnify, defend and save harmless Lender from and against any and all costs, losses, liabilities, claims, causes of action, expenses and damages, including reasonable attorneys' fees and disbursements, which Lender may suffer or which otherwise may arise by reason of Borrower's failure to pay any of the Guaranteed Obligations when due, irrespective of whether such costs, losses, liabilities, claims, causes of action, expenses or damages are incurred by Lender prior or subsequent to (i) Lender's declaring the unpaid principal, interest and other sums evidenced or secured by the Loan Documents to be due and payable, (ii) the commencement or completion of a judicial or non-judicial foreclosure of the Security Instrument or (iii) the conveyance of all or any portion of the Property by deed-in-lieu of foreclosure.

(d)     Guarantor agrees that no portion of any sums applied (other than sums received from Guarantor in full or partial satisfaction of its obligations hereunder), from time to time, in reduction of the Loan shall be deemed to have been applied in reduction of the Guaranteed Obligations until such time as the Loan has been paid in full, or Guarantor shall have made the full payment required hereunder, it being the intention hereof that the Guaranteed Obligations shall be the last portion of the Loan to be deemed satisfied.

(e)     Notwithstanding anything to the contrary herein or in the other Loan Documents, this Guaranty is and shall remain unsecured.

3. **Representations and Warranties**.  Guarantor hereby represents and warrants to Lender as follows (which representations and warranties shall be given as of the date hereof and shall survive the execution and delivery of this Guaranty):

(a)     **Execution**.  This Guaranty has been duly executed and delivered by Guarantor.

(b)     **Enforceability**.  This Guaranty constitutes a legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally.

(c)     **No Violation**.  The execution, delivery and performance by Guarantor of its obligations under this Guaranty do not and will not violate any law, regulation, order, writ, injunction or decree of any court or governmental body, agency or other instrumentality applicable to Guarantor, or result in a breach of any of the terms, conditions or provisions of, or constitute a default under, or result in the creation or imposition of any mortgage, lien, charge or encumbrance of any nature whatsoever upon any of the assets of Guarantor pursuant to the terms of any mortgage, indenture, agreement, trust instrument, or other instrument to which Guarantor is a party or by which it or any of its properties is bound.  Guarantor is not in default under any other guaranty which it has provided to Lender.

**EXHIBIT 11**
**Page 2 of 10**

(d)    **No Litigation**.  There are no actions, suits or proceedings at law or at equity, pending or, to Guarantor's best knowledge, threatened against or affecting Guarantor or which involve or might involve the validity or enforceability of this Guaranty or which might materially adversely affect the financial condition of Guarantor or the ability of Guarantor to perform any of its obligations under this Guaranty.  Guarantor is not in default beyond any applicable grace or cure period with respect to any order, writ, injunction, decree or demand of any Governmental Authority which might materially adversely affect the financial condition of Guarantor or the ability of Guarantor to perform any of its obligations under this Guaranty.

(e)    **Consents**.    All consents, approvals, orders or authorizations of, or registrations, declarations or filings with, all Governmental Authorities (collectively, the "**Consents**") that are required in connection with the valid execution, delivery and performance by Guarantor of this Guaranty have been obtained and Guarantor agrees that all Consents required in connection with the carrying out or performance of any of Guarantor's obligations under this Guaranty will be obtained when required.

(f)    **Financial Statements and Other Information**.  All financial statements of Guarantor heretofore delivered to Lender are true and correct in all material respects and fairly present the financial condition of Guarantor as of the respective dates thereof, and no materially adverse change has occurred in the financial conditions reflected therein since the respective dates thereof.  None of the aforesaid financial statements or any certificate or statement furnished to Lender by or on behalf of Guarantor in connection with the transactions contemplated hereby, and none of the representations and warranties in this Guaranty contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein or herein not misleading.  Guarantor is not insolvent within the meaning of the United States Bankruptcy Code or any other applicable law, code or regulation and the execution, delivery and performance of this Guaranty will not render Guarantor insolvent.

(g)    **Consideration**.  Guarantor is the owner, directly or indirectly, of certain legal and beneficial equity interests in Borrower.

4.    **Financial Reporting**.  Guarantor shall from time to time, upon request by Lender, deliver to Lender such financial statements as Lender may reasonably require, including as applicable as determined by Lender, a balance sheet, an income and expense statement, a personal financial statement including schedule of real estate and a statement of financial affairs, all in form and content acceptable to Lender.  Guarantor shall also furnish to Lender complete copies of all federal and state income tax returns (including accompanying schedules and related K-1's) filed by Guarantor within thirty (30) days after filing (provided that if returns are not filed on time then a copy of any applicable extension filings shall be made available for delivery to Lender upon Lender's request as provided above within thirty (30) days after the extension filing due date).  Upon request by Lender, all such tax returns must be prepared by an independent certified public accountant or attorney.  Each of the statements, schedules, documents, items and reports required by this paragraph shall be certified to be complete and accurate by Guarantor (or for an entity Guarantor, an individual having authority to bind Guarantor), and shall be in such form and contain such detail as Lender may reasonably require.  Lender may at Lender's discretion require that any statements, schedules or reports be audited at Borrower's expense by independent certified public accountants acceptable to Lender.  Guarantor acknowledges and agrees that (a) the reporting requirements of this paragraph apply to each Guarantor if more than one Guarantor is executing this Guaranty, and (b) that failure of any Guarantor to provide financial statements, information, documents or tax returns required by this paragraph within thirty (30) days of request by Lender shall constitute a material Event of Default under the Loan.  Guarantor acknowledges

3

**EXHIBIT 11**
**Page 3 of 10**

and agrees that Lender may from time to time (i) verify and re-verify any information contained in Borrower's application for the Loan, (ii) order additional credit reports from any credit reporting agency with respect to Borrower and Guarantor, and (iii) report Borrower's and Guarantor's name(s), account information and payment history to any credit reporting agency.

**5.      Unconditional Character of Obligations of Guarantor**.

(a)      The obligations of Guarantor hereunder shall be irrevocable, absolute and unconditional, irrespective of the validity, regularity or enforceability, in whole or in part, of the other Loan Documents or any provision thereof, or the absence of any action to enforce the same, any waiver or consent with respect to any provision thereof, the recovery of any judgment against Borrower, Guarantor or any other Person or any action to enforce the same, any failure or delay in the enforcement of the obligations of Borrower under the other Loan Documents or Guarantor under this Guaranty, or any setoff, counterclaim, and irrespective of any other circumstances which might otherwise limit recourse against Guarantor by Lender or constitute a legal or equitable discharge or defense of a guarantor or surety.  Lender may enforce the obligations of Guarantor under this Guaranty by a proceeding at law, in equity or otherwise, independent of any loan foreclosure or similar proceeding or any deficiency action against Borrower or any other Person at any time, either before or after an action against the Property or any part thereof, Borrower or any other Person.  **This Guaranty is a guaranty of payment and performance and not merely a guaranty of collection.**  Guarantor waives diligence, notice of acceptance of this Guaranty, filing of claims with any court, any proceeding to enforce any provision of any other Loan Document, against Guarantor, Borrower or any other Person, any right to require a proceeding first against Borrower or any other Person, or to exhaust any security (including, without limitation, the Property) for the performance of the Guaranteed Obligations or any other obligations of Borrower or any other Person, or any protest, presentment, notice of default or other notice or demand whatsoever (except to the extent expressly provided to the contrary in this Guaranty).

(b)      The obligations of Guarantor under this Guaranty, and the rights of Lender to enforce the same by proceedings, whether by action at law, suit in equity or otherwise, shall not be in any way affected by any of the following:

(i)      any insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting Borrower, the Property or any part thereof, Guarantor or any other Person;

(ii)      any failure by Lender or any other Person, whether or not without fault on its part, to perform or comply with any of the terms of the Note, or any other Loan Documents, or any document or instrument relating thereto;

(iii)      the sale, transfer or conveyance of the Property or any interest therein to any Person, whether now or hereafter having or acquiring an interest in the Property or any interest therein and whether or not pursuant to any foreclosure, trustee sale or similar proceeding against Borrower or the Property or any interest therein;

(iv)      the conveyance to Lender, any Affiliate of Lender or Lender's nominee of the Property or any interest therein by a deed-in-lieu of foreclosure;

Oregon Form (2019)
112038-0035/146602018.2

**EXHIBIT 11
Page 4 of 10**

(v)    the release of Borrower or any other Person from the performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law or otherwise; or

(vi)    the release in whole or in part of any collateral for any or all Guaranteed Obligations or for the Loan or any portion thereof.

(c)    Except as otherwise specifically provided in this Guaranty, Guarantor hereby expressly and irrevocably waives all defenses in an action brought by Lender to enforce this Guaranty based on claims of waiver, release, surrender, alteration or compromise and all setoffs, reductions, or impairments, whether arising hereunder or otherwise.

(d)    Lender may deal with Borrower and Affiliates of Borrower in the same manner and as freely as if this Guaranty did not exist and shall be entitled, among other things, to grant Borrower or any other Person such extension or extensions of time to perform any act or acts as may be deemed advisable by Lender, at any time and from time to time, without terminating, affecting or impairing the validity of this Guaranty or the obligations of Guarantor hereunder.

(e)    No compromise, alteration, amendment, modification, extension, renewal, release or other change of, or waiver, consent, delay, omission, failure to act or other action with respect to, any liability or obligation under or with respect to, or of any of the terms, covenants or conditions of, the Loan Documents shall in any way alter, impair or affect any of the obligations of Guarantor hereunder, and Guarantor agrees that if any Loan Document are modified with Lender's consent, the Guaranteed Obligations shall automatically be deemed modified to include such modifications.

(f)    Lender may proceed to protect and enforce any or all of its rights under this Guaranty by suit in equity or action at law, whether for the specific performance of any covenants or agreements contained in this Guaranty or otherwise, or to take any action authorized or permitted under applicable law, and shall be entitled to require and enforce the performance of all acts and things required to be performed hereunder by Guarantor.  Each and every remedy of Lender shall, to the extent permitted by law, be cumulative and shall be in addition to any other remedy given hereunder or now or hereafter existing at law or in equity.

(g)    No waiver shall be deemed to have been made by Lender of any rights hereunder unless the same shall be in writing and signed by Lender, and any such waiver shall be a waiver only with respect to the specific matter involved and shall in no way impair the rights of Lender or the obligations of Guarantor to Lender in any other respect or at any other time.

(h)    At the option of Lender, Guarantor may be joined in any action or proceeding commenced by Lender against Borrower in connection with or based upon any other Loan Documents and recovery may be had against Guarantor in such action or proceeding or in any independent action or proceeding against Guarantor to the extent of Guarantor's liability hereunder, without any requirement that Lender first assert, prosecute or exhaust any remedy or claim against Borrower or any other Person, or any security for the obligations of Borrower or any other Person.

(i)    Guarantor agrees that this Guaranty shall continue to be effective or shall be reinstated, as the case may be, if at any time any payment is made by Borrower or Guarantor to Lender and such payment is rescinded or must otherwise be returned by Lender (as determined

5

**EXHIBIT 11**
**Page 5 of 10**

by Lender in its sole and absolute discretion) upon insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting Borrower or Guarantor, all as though such payment had not been made.

(j)     In the event that Guarantor shall advance or become obligated to pay any sums under this Guaranty or in connection with the Guaranteed Obligations or in the event that for any reason whatsoever Borrower or any subsequent owner of the Property or any part thereof is now, or shall hereafter become, indebted to Guarantor, Guarantor agrees that (i) the amount of such sums and of such indebtedness and all interest thereon shall at all times be subordinate as to lien, the time of payment and in all other respects to all sums, including unpaid principal and interest and other amounts, at any time owed to Lender under the Loan Documents, and (ii) Guarantor shall not be entitled to enforce or receive payment thereof until all principal, interest and other sums due pursuant to the Loan Documents have been paid in full.  Nothing herein contained is intended or shall be construed to give Guarantor any right of subrogation in or under the Loan Documents or any right to participate in any way therein, or in the right, title or interest of Lender in or to any collateral for the Loan, notwithstanding any payments made by Guarantor under this Guaranty, until the actual and irrevocable receipt by Lender of payment in full of all principal, interest and other sums due with respect to the Loan or otherwise payable under the Loan Documents.  If any amount shall be paid to Guarantor on account of such subrogation rights at any time when any such sums due and owing to Lender shall not have been fully paid, such amount shall be paid by Guarantor to Lender for credit and application against such sums due and owing to Lender.

(k)     Guarantor's obligations hereunder shall survive a foreclosure, deed-in-lieu of foreclosure or similar proceeding involving the Property and the exercise by Lender of any or all of its remedies pursuant to the Loan Documents.

(l)     Intentionally Omitted.

**6.     Entire Agreement/Amendments**.   This instrument represents the entire agreement between the parties with respect to the subject matter hereof.  The terms of this Guaranty shall not be waived, altered, modified, amended, supplemented or terminated in any manner whatsoever except by written instrument signed by Lender and Guarantor.

**7.     Successors and Assigns**.  This Guaranty shall be binding upon Guarantor, and Guarantor's estate, heirs, personal representatives, successors and assigns, may not be assigned or delegated by Guarantor and shall inure to the benefit of Lender and its successors and assigns.

**8.     Applicable Law and Consent to Jurisdiction**.  This Guaranty shall be governed by, and construed in accordance with, the substantive laws of the state in which the Property is located.  Guarantor irrevocably (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Guaranty may be brought in a court of record with jurisdiction in the county and state in which the Property is located, or in the courts of the United States of America located in California, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.  Guarantor irrevocably consents to the service of any and all process in any such suit, action or proceeding by service of copies of such process to Guarantor at its address provided in Section 13 hereof.  Nothing in this Section 8,

6

however, shall affect the right of Lender to serve legal process in any other manner permitted by law or affect the right of Lender to bring any suit, action or proceeding against Guarantor or its property in the courts of any other jurisdictions.

9.    **Section Headings**.  The headings of the sections and paragraphs of this Guaranty have been inserted for convenience of reference only and shall in no way define, modify, limit or amplify any of the terms or provisions hereof.

10.    **Severability**.  Any provision of this Guaranty which may be determined by any competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.  To the extent permitted by applicable law, Guarantor hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.

11.    **WAIVER OF TRIAL BY JURY**.  GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

12.    **Other Guaranties**.  The obligations of Guarantor hereunder are separate and distinct from, and in addition to, the obligations of Guarantor now or hereafter arising under any other guaranties, indemnification agreements or other agreements to which Guarantor is now or hereafter becomes a party.  In no event shall Guarantor be entitled to any credit against amounts due under this Guaranty by reason of amounts paid to Lender by Guarantor or any other Person under or by reason of the other guaranties, indemnification agreements or other agreements to which Guarantor is now or hereafter becomes a party.

13.    **Notices**.  All notices, consents, approvals and requests required or permitted hereunder (a "**Notice**") shall be given in writing and shall be effective for all purposes if either hand delivered with receipt acknowledged, or by a nationally recognized overnight delivery service (such as Federal Express), or by certified or registered United States mail, return receipt requested, postage prepaid, or by facsimile and confirmed by facsimile answer back, in each case addressed as follows (or to such other address or Person as a party shall designate from time to time by notice to the other party):  If to Lender: Axos Bank, 4350 La Jolla Village Drive, Suite 100, San Diego, California 92122, Attention:  Legal Department; if to Guarantor: 11707 NE Airport Way, Portland, OR 97220.  A notice shall be deemed to have been given:  in the case of hand delivery, at the time of delivery; in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day; or in the case of overnight delivery, upon the first attempted delivery on a Business Day; or in the case of facsimile, upon the confirmation of such facsimile transmission.

**EXHIBIT 11**
**Page 7 of 10**

**14.    Guarantor's Receipt of Loan Documents**.  Guarantor by its execution hereof acknowledges receipt of true copies of all of the Loan Documents, the terms and conditions of which are hereby incorporated herein by reference.

**15.    Interest; Expenses.**

(a)    If Guarantor fails to pay all or any sums due hereunder upon demand by Lender, the amount of such sums payable by Guarantor to Lender shall bear interest from the date of demand until paid at the Default Rate in effect from time to time.

(b)    Guarantor hereby agrees to pay all costs, charges and expenses, including reasonable attorneys' fees and disbursements, that may be incurred by Lender in enforcing the covenants, agreements, obligations and liabilities of Guarantor under this Guaranty.

**16.    Joint and Several Obligations**.  If Guarantor consists of more than one Person, each such Person shall have joint and several liability for the obligations of Guarantor hereunder.

**17.    State Specific Provisions.**

(a)    In the event of any inconsistencies between the terms and conditions of this Section 17, and the other terms and conditions of this Guaranty, the terms of this Section 17 will control and be binding.

(b)    The obligations of Guarantor under this Guaranty are in addition to the obligations of all other guarantors of the Loan.

(c)    Guarantor's obligations under this Guaranty are not secured by the Security Instrument granted by Borrower.

(d)    With respect to any references in the Guaranty related to attorneys' fees, such fees shall include, without limitation, all costs and expenses (both in-house and outside counsel), incurred by Lender in enforcing this Guaranty against Guarantor, whether incurred at the trial or appellate level, in an arbitration proceeding, in bankruptcy (including, without limitation, any adversary proceeding, contested matter or motion) or otherwise.

(e)    Guarantor understands that a nonjudicial foreclosure of the Security Instrument granted by Borrower or any other deed of trust or trust deed securing the indebtedness of Borrower to Lender, granted by any person other than Guarantor, could impair or eliminate any subrogation, reimbursement or contribution rights Guarantor may have against the grantor of such Security Instrument or other deed of trust or trust deed; nevertheless, Guarantor waives and relinquishes any defense based upon the loss of such rights or any other defense that may otherwise arise out of ORS 86.797 or any other applicable anti-deficiency statute of another state. Guarantor understands and agrees that Lender may in its discretion nonjudicially foreclose one or more Security Instrument or other deeds of trust granted to it by Borrower, then collect from Guarantor a sum equal to the difference between the total amount of the Obligations and the amount of the successful bid at each trustee sale.

**UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY**

Oregon Form (2019)
112038-0035/146602018.2

**EXHIBIT 11
Page 8 of 10**

**BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.**

[*Signature Page Follows.*]

Oregon Form (2019)
112038-0035/146602018.2

**EXHIBIT 11
Page 9 of 10**

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the date first above written.  Where applicable law so provides, Guarantor intends that this Guaranty shall be deemed to be signed and delivered as a sealed instrument.

**GUARANTOR**

SHILO SEASIDE OCEANFRONT CORP,
an Oregon corporation

By: _____
Mark S. Hemstreet
Secretary

Oregon Form (2019)
112038-0035/146602018.2

10

**EXHIBIT 11**
**Page 10 of 10**



**6/1/2020**

SHILO INN, SEASIDE OCEANFRONT, LLC
30 NORTH PROMENADE
SEASIDE OR 97138

Re:       ▄▄▄▄▄▄▄▄▄▄
          30 NORTH PROMENADE, SEASIDE, OR 97138

## <u>NOTICE OF INTENT TO ACCELERATE</u>

Dear SHILO INN, SEASIDE OCEANFRONT, LLC

 Axos Bank ("Noteholder") is the current holder of that certain promissory note (the "Note").  The loan evidenced by the Note (the "Loan") is in default on account of your failure to make the payment due on 03/01/2020, and all subsequent payments (the "Default").

Pursuant to the Note, so long as any monthly installment remains past due for thirty (30) days or more, interest shall accrue on the unpaid principal from the payment due date of the first such unpaid monthly installment at the default rate of 18% (the "Default Rate").  As the Loan is currently due for 03/01/2020, interest accrues at the Default Rate from and after that date.

You have the right to cure the Default.  Demand is hereby made for the payment of the unpaid amounts due and owing under the Loan, which, as of 06/01/2020, are in the amount of $376,675.52, plus any interest, late charges, and other fees that may accrue under the Loan subsequent to the date of this notice (the "Cure Amount"). If you have any questions regarding the Cure Amount, please contact the Noteholder's representative, Special Assets, at 877-764-9998 to obtain the exact amount.  The Cure Amount should be made in certified funds and mailed to the Noteholder at the following address: Axos Bank, 4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122 Attn: Special Assets.

Please be advised that if the Cure Amount is not received by the Noteholder within thirty (30) days from the date of this letter: (1) the Loan balance will be accelerated with the full amount remaining on the Loan becoming due and payable in full; (2) the power of sale clause in the trust deed or mortgage securing the Loan will be invoked; and (3) foreclosure proceedings will be initiated against the property securing the Loan. Accordingly, the failure to cure the Default may result in the foreclosure and sale of your property.  If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the Default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, the Noteholder shall be entitled to collect all fees and costs incurred in pursuing any of its remedies, including but not

MEMBER
**FDIC**

EQUAL HOUSING
**LENDER**

**EXHIBIT 12**
**Page 1 of 16**

limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

You may request a copy of the loan documents, including the promissory note, deed of trust or mortgage, any assignment of the deed of trust or mortgage, as applicable, and your payment history.

If you are a service member, or the dependent of a service member, you may be entitled to certain additional protections under the federal Servicemembers Civil Relief Act.

Please be advised that any acceptance by the Noteholder, or any of its respective representatives, of any amounts less than the amount due and owing on the Loan is not intended, and shall not be deemed, to constitute a waiver of any of the Noteholder's rights, remedies or recourse under the Loan documents, or at law or in equity, and application of such payments is not intended, nor shall it be deemed, to be a modification, rearrangement or extension of the Loan documents. Any such payments will be applied in such order as the Noteholder may elect in its sole and absolute discretion, without any waiver by the Noteholder of its right to pursue any of its rights and remedies under the Loan documents, or at law or in equity.

Nothing set forth herein is intended, nor shall it be deemed, to modify, limit, release, reduce or waive any of the Noteholder's rights, remedies and/or privileges under the Loan documents, or at law or in equity, all of which are specifically reserved.

**TO THE EXTENT THAT ANY OF YOUR OBLIGATIONS HAVE BEEN DISCHARGED, DISMISSED, OR ARE SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR ANY ATTEMPT TO COLLECT ANY SUCH OBLIGATION.  IF APPLICABLE, THIS NOTICE IS GIVEN PURSUANT TO 11 U.S.C. §362(b)(11).**

If you have any questions regarding this notice, please contact me directly at 877-764-9998.

Sincerely,

Erik Bowen
ebowen@axosbank.com
VP Portfolio Management

**Notice Date:  06/01/2020**

**EXHIBIT 12**
**Page 2 of 16**



**Account No.:** ███████████████

**Property Address: 30 North Promenade, Seaside, OR 97138**

---

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

We want you to know that assistance may be available to help you avoid foreclosure.  We want to talk with you about your current loan situation to see if you qualify for one of our options, such as:

- **Loan Modification -** *Modifying the current terms of your loan to give you a more affordable and sustainable monthly home loan payment*

- **Repayment Arrangements -** *Developing a plan to repay the full amount owed over time*

- **Deed-in-Lieu -** *Signing a deed transferring title to the property over to Axos Bank to avoid foreclosure*

- **Short Sale -** *Selling the property and then Axos agrees to accept less than a full payoff of the loan from the sale of the property rather than foreclosing on it*

- **Full Reinstatement -** *Paying all past due amounts to bring your loan current*

---

**WHAT YOU NEED TO DO**

Please call us at 855-818-4115, so we can discuss in greater detail your situation and the various options available to help you.  Please be prepared to provide us with your financial information (for example, income and expenses). We may also require you to provide additional documentation so we can better understand your situation.  All options listed above are subject to Axos Bank approval.  There is no guarantee that your request will be approved, but we will diligently work with you toward that goal.

If your loan and debt has been discharged in Bankruptcy, this letter should not be understood as an attempt to collect a debt or a demand for payment from you.  You do not have to discuss or enter into a loan modification or other loss mitigation arrangement with Axos Bank.  If you have previously filed for bankruptcy and your personal liability on your mortgage has been discharged, we intend to honor that discharge.  However, your home remains subject to foreclosure if you are not current on the payments required by the mortgage.  Axos Bank would like to discuss with you options that may help you to avoid foreclosure.  If you would like to discuss these options, please contact us.

Additionally, we want to make you aware of free or low cost housing counseling made possible by the U.S. Department of Housing and Urban Development (HUD).  Housing counselors can help you understand the law and your options.  They can also help you organize your finances and represent you in negotiations with your lender if you need this assistance.  You may find a HUD-approved housing counselor near you by calling 1-800-569-4287 or online at http://www.consumerfinance.gov/find-a-housing-counselor/.  For hearing-impaired customers, HUD Counseling Agency (TDD) numbers are available at 1-800-877-8339.

This communication is from Axos Bank, the servicer of your home loan.



**EXHIBIT 12**
**Page 3 of 16**

Servicemembers Civil Relief
Act Notice Disclosure

**U.S Department of Housing
and Urban Development
Office of Housing**

OMB Approval 2502 -0584
Exp 3/31/2021

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC §§ 3901-4043) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).

- Reserve and National Guard personnel who have been activated and are on Federal active duty

- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section

- 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds

- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.

- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.

- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.

- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. Contact information for the Bank can be found on the cover sheet of this packet.

- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php

- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800- 342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form **HUD - 92070**
(6/2017)

**EXHIBIT 12
Page 4 of 16**



**6/1/2020**

SHILO INN, SEASIDE OCEANFRONT, LLC
11707 NORTH EAST AIRPORT WAY
PORTLAND OR 97220


Re:      ███████████
30 NORTH PROMENADE, SEASIDE, OR 97138

## <u>NOTICE OF INTENT TO ACCELERATE</u>

Dear SHILO INN, SEASIDE OCEANFRONT, LLC

 Axos Bank ("Noteholder") is the current holder of that certain promissory note (the "Note"). The loan evidenced by the Note (the "Loan") is in default on account of your failure to make the payment due on 03/01/2020, and all subsequent payments (the "Default").

Pursuant to the Note, so long as any monthly installment remains past due for thirty (30) days or more, interest shall accrue on the unpaid principal from the payment due date of the first such unpaid monthly installment at the default rate of 18% (the "Default Rate"). As the Loan is currently due for 03/01/2020, interest accrues at the Default Rate from and after that date.

You have the right to cure the Default. Demand is hereby made for the payment of the unpaid amounts due and owing under the Loan, which, as of 06/01/2020, are in the amount of $376,675.52, plus any interest, late charges, and other fees that may accrue under the Loan subsequent to the date of this notice (the "Cure Amount"). If you have any questions regarding the Cure Amount, please contact the Noteholder's representative, Special Assets, at 877-764-9998 to obtain the exact amount. The Cure Amount should be made in certified funds and mailed to the Noteholder at the following address: Axos Bank, 4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122 Attn: Special Assets.

Please be advised that if the Cure Amount is not received by the Noteholder within thirty (30) days from the date of this letter: (1) the Loan balance will be accelerated with the full amount remaining on the Loan becoming due and payable in full; (2) the power of sale clause in the trust deed or mortgage securing the Loan will be invoked; and (3) foreclosure proceedings will be initiated against the property securing the Loan. Accordingly, the failure to cure the Default may result in the foreclosure and sale of your property. If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the Default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, the Noteholder shall be entitled to collect all fees and costs incurred in pursuing any of its remedies, including but not

4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122
Phone: 877-764-9998 • Fax: 858-649-2821
www.axosbank.com

MEMBER FDIC        EQUAL HOUSING LENDER

**EXHIBIT 12**
**Page 5 of 16**

limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

You may request a copy of the loan documents, including the promissory note, deed of trust or mortgage, any assignment of the deed of trust or mortgage, as applicable, and your payment history.

If you are a service member, or the dependent of a service member, you may be entitled to certain additional protections under the federal Servicemembers Civil Relief Act.

Please be advised that any acceptance by the Noteholder, or any of its respective representatives, of any amounts less than the amount due and owing on the Loan is not intended, and shall not be deemed, to constitute a waiver of any of the Noteholder's rights, remedies or recourse under the Loan documents, or at law or in equity, and application of such payments is not intended, nor shall it be deemed, to be a modification, rearrangement or extension of the Loan documents. Any such payments will be applied in such order as the Noteholder may elect in its sole and absolute discretion, without any waiver by the Noteholder of its right to pursue any of its rights and remedies under the Loan documents, or at law or in equity.

Nothing set forth herein is intended, nor shall it be deemed, to modify, limit, release, reduce or waive any of the Noteholder's rights, remedies and/or privileges under the  Loan documents, or at law or in equity, all of which are specifically reserved.

**TO THE EXTENT THAT ANY OF YOUR OBLIGATIONS HAVE BEEN DISCHARGED, DISMISSED, OR ARE SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR ANY ATTEMPT TO COLLECT ANY SUCH OBLIGATION.  IF APPLICABLE, THIS NOTICE IS GIVEN PURSUANT TO 11 U.S.C. §362(b)(11).**

If you have any questions regarding this notice, please contact me directly at 877-764-9998.

Sincerely,

Erik Bowen
ebowen@axosbank.com
VP Portfolio Management


**Notice Date:  06/01/2020**

**EXHIBIT 12**
**Page 6 of 16**



**Account No.:** ████████████████████

**Property Address: 30 North Promenade, Seaside, OR 97138**

---

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

We want you to know that assistance may be available to help you avoid foreclosure.  We want to talk with you about your current loan situation to see if you qualify for one of our options, such as:

- **Loan Modification -** *Modifying the current terms of your loan to give you a more affordable and sustainable monthly home loan payment*

- **Repayment Arrangements -** *Developing a plan to repay the full amount owed over time*

- **Deed-in-Lieu -** *Signing a deed transferring title to the property over to Axos Bank to avoid foreclosure*

- **Short Sale -** *Selling the property and then Axos agrees to accept less than a full payoff of the loan from the sale of the property rather than foreclosing on it*

- **Full Reinstatement -** *Paying all past due amounts to bring your loan current*

---

**WHAT YOU NEED TO DO**

Please call us at 855-818-4115, so we can discuss in greater detail your situation and the various options available to help you.  Please be prepared to provide us with your financial information (for example, income and expenses). We may also require you to provide additional documentation so we can better understand your situation.  All options listed above are subject to Axos Bank approval.  There is no guarantee that your request will be approved, but we will diligently work with you toward that goal.

If your loan and debt has been discharged in Bankruptcy, this letter should not be understood as an attempt to collect a debt or a demand for payment from you.  You do not have to discuss or enter into a loan modification or other loss mitigation arrangement with Axos Bank.  If you have previously filed for bankruptcy and your personal liability on your mortgage has been discharged, we intend to honor that discharge.  However, your home remains subject to foreclosure if you are not current on the payments required by the mortgage.  Axos Bank would like to discuss with you options that may help you to avoid foreclosure.  If you would like to discuss these options, please contact us.

Additionally, we want to make you aware of free or low cost housing counseling made possible by the U.S. Department of Housing and Urban Development (HUD).  Housing counselors can help you understand the law and your options.  They can also help you organize your finances and represent you in negotiations with your lender if you need this assistance.  You may find a HUD-approved housing counselor near you by calling 1-800-569-4287 or online at http://www.consumerfinance.gov/find-a-housing-counselor/.  For hearing-impaired customers, HUD Counseling Agency (TDD) numbers are available at 1-800-877-8339.

This communication is from Axos Bank, the servicer of your home loan.

4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122
Phone: 877-764-9998 • Fax: 858-649-2821
www.axosbank.com



**EXHIBIT 12**
**Page 7 of 16**

Servicemembers Civil Relief
Act Notice Disclosure

**U.S Department of Housing
and Urban Development
Office of Housing**

OMB Approval 2502-0584
Exp 3/31/2021

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC §§ 3901-4043) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).

- Reserve and National Guard personnel who have been activated and are on Federal active duty

- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section

- 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds

- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.

- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.

- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.

- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. Contact information for the Bank can be found on the cover sheet of this packet.

- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php

- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800- 342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form **HUD - 92070**
(6/2017)

**EXHIBIT 12
Page 8 of 16**



**6/1/2020**

MARK S. HEMSTREET
11707 NORTH EAST AIRPORT WAY
PORTLAND OR 97220

Re:    ▮▮▮▮▮▮▮▮▮▮
       30 NORTH PROMENADE, SEASIDE, OR 97138

<u>**NOTICE OF INTENT TO ACCELERATE**</u>

Dear MARK S. HEMSTREET,

 Axos Bank ("Noteholder") is the current holder of that certain promissory note (the "Note").  The loan evidenced by the Note (the "Loan") is in default on account of your failure to make the payment due on 03/01/2020, and all subsequent payments (the "Default").

Pursuant to the Note, so long as any monthly installment remains past due for thirty (30) days or more, interest shall accrue on the unpaid principal from the payment due date of the first such unpaid monthly installment at the default rate of 18% (the "Default Rate").  As the Loan is currently due for 03/01/2020, interest accrues at the Default Rate from and after that date.

You have the right to cure the Default.  Demand is hereby made for the payment of the unpaid amounts due and owing under the Loan, which, as of 06/01/2020, are in the amount of $376,675.52, plus any interest, late charges, and other fees that may accrue under the Loan subsequent to the date of this notice (the "Cure Amount"). If you have any questions regarding the Cure Amount, please contact the Noteholder's representative, Special Assets, at 877-764-9998 to obtain the exact amount.  The Cure Amount should be made in certified funds and mailed to the Noteholder at the following address: Axos Bank, 4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122 Attn: Special Assets.

Please be advised that if the Cure Amount is not received by the Noteholder within thirty (30) days from the date of this letter: (1) the Loan balance will be accelerated with the full amount remaining on the Loan becoming due and payable in full; (2) the power of sale clause in the trust deed or mortgage securing the Loan will be invoked; and (3) foreclosure proceedings will be initiated against the property securing the Loan. Accordingly, the failure to cure the Default may result in the foreclosure and sale of your property.  If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the Default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, the Noteholder shall be entitled to collect all fees and costs incurred in pursuing any of its remedies, including but not

4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122
Phone: 877-764-9998 • Fax: 858-649-2821
www.axosbank.com

MEMBER
FDIC

EQUAL HOUSING
LENDER

EXHIBIT 12
Page 9 of 16

limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

You may request a copy of the loan documents, including the promissory note, deed of trust or mortgage, any assignment of the deed of trust or mortgage, as applicable, and your payment history.

If you are a service member, or the dependent of a service member, you may be entitled to certain additional protections under the federal Servicemembers Civil Relief Act.

Please be advised that any acceptance by the Noteholder, or any of its respective representatives, of any amounts less than the amount due and owing on the Loan is not intended, and shall not be deemed, to constitute a waiver of any of the Noteholder's rights, remedies or recourse under the Loan documents, or at law or in equity, and application of such payments is not intended, nor shall it be deemed, to be a modification, rearrangement or extension of the Loan documents. Any such payments will be applied in such order as the Noteholder may elect in its sole and absolute discretion, without any waiver by the Noteholder of its right to pursue any of its rights and remedies under the Loan documents, or at law or in equity.

Nothing set forth herein is intended, nor shall it be deemed, to modify, limit, release, reduce or waive any of the Noteholder's rights, remedies and/or privileges under the Loan documents, or at law or in equity, all of which are specifically reserved.

**TO THE EXTENT THAT ANY OF YOUR OBLIGATIONS HAVE BEEN DISCHARGED, DISMISSED, OR ARE SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR ANY ATTEMPT TO COLLECT ANY SUCH OBLIGATION. IF APPLICABLE, THIS NOTICE IS GIVEN PURSUANT TO 11 U.S.C. §362(b)(11).**

If you have any questions regarding this notice, please contact me directly at 877-764-9998.

Sincerely,

Erik Bowen
ebowen@axosbank.com
VP Portfolio Management

**Notice Date:  06/01/2020**

**EXHIBIT 12**
**Page 10 of 16**



**Account No.:** ███████████████████

**Property Address: 30 North Promenade, Seaside, OR 97138**

---

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

We want you to know that assistance may be available to help you avoid foreclosure.  We want to talk with you about your current loan situation to see if you qualify for one of our options, such as:

- **Loan Modification -** *Modifying the current terms of your loan to give you a more affordable and sustainable monthly home loan payment*

- **Repayment Arrangements -** *Developing a plan to repay the full amount owed over time*

- **Deed-in-Lieu -** *Signing a deed transferring title to the property over to Axos Bank to avoid foreclosure*

- **Short Sale -** *Selling the property and then Axos agrees to accept less than a full payoff of the loan from the sale of the property rather than foreclosing on it*

- **Full Reinstatement -** *Paying all past due amounts to bring your loan current*

---

**WHAT YOU NEED TO DO**

Please call us at 855-818-4115, so we can discuss in greater detail your situation and the various options available to help you.  Please be prepared to provide us with your financial information (for example, income and expenses). We may also require you to provide additional documentation so we can better understand your situation.  All options listed above are subject to Axos Bank approval.  There is no guarantee that your request will be approved, but we will diligently work with you toward that goal.

If your loan and debt has been discharged in Bankruptcy, this letter should not be understood as an attempt to collect a debt or a demand for payment from you.  You do not have to discuss or enter into a loan modification or other loss mitigation arrangement with Axos Bank.  If you have previously filed for bankruptcy and your personal liability on your mortgage has been discharged, we intend to honor that discharge.  However, your home remains subject to foreclosure if you are not current on the payments required by the mortgage.  Axos Bank would like to discuss with you options that may help you to avoid foreclosure.  If you would like to discuss these options, please contact us.

Additionally, we want to make you aware of free or low cost housing counseling made possible by the U.S. Department of Housing and Urban Development (HUD).  Housing counselors can help you understand the law and your options.  They can also help you organize your finances and represent you in negotiations with your lender if you need this assistance.  You may find a HUD-approved housing counselor near you by calling 1-800-569-4287 or online at http://www.consumerfinance.gov/find-a-housing-counselor/.   For hearing-impaired customers, HUD Counseling Agency (TDD) numbers are available at 1-800-877-8339.

This communication is from Axos Bank, the servicer of your home loan.



**EXHIBIT 12**
**Page 11 of 16**

Servicemembers Civil Relief
Act Notice Disclosure

**U.S Department of Housing
and Urban Development
Office of Housing**

OMB Approval  2502 -0584
Exp 3/31/2021

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC §§ 3901-4043) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).

- Reserve and  National Guard personnel who have been activated and are on Federal active duty

- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section

- 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds

- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.

- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.

- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.

- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. Contact information for the Bank can be found on the cover sheet of this packet.

- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining his files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php

- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800- 342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form **HUD - 92070**
(6/2017)

**EXHIBIT 12
Page 12 of 16**



**6/1/2020**

MARK S. HEMSTREET
30 NORTH PROMENADE
SEASIDE, OR 97138

Re:  ███████████
     30 NORTH PROMENADE, SEASIDE, OR 97138

### <u>NOTICE OF INTENT TO ACCELERATE</u>

Dear MARK S. HEMSTREET,

 Axos Bank ("Noteholder") is the current holder of that certain promissory note (the "Note").  The loan evidenced by the Note (the "Loan") is in default on account of your failure to make the payment due on 03/01/2020, and all subsequent payments (the "Default").

Pursuant to the Note, so long as any monthly installment remains past due for thirty (30) days or more, interest shall accrue on the unpaid principal from the payment due date of the first such unpaid monthly installment at the default rate of 18% (the "Default Rate").  As the Loan is currently due for 03/01/2020, interest accrues at the Default Rate from and after that date.

You have the right to cure the Default.  Demand is hereby made for the payment of the unpaid amounts due and owing under the Loan, which, as of 06/01/2020, are in the amount of $376,675.52, plus any interest, late charges, and other fees that may accrue under the Loan subsequent to the date of this notice (the "Cure Amount"). If you have any questions regarding the Cure Amount, please contact the Noteholder's representative, Special Assets, at 877-764-9998 to obtain the exact amount.  The Cure Amount should be made in certified funds and mailed to the Noteholder at the following address: Axos Bank, 4350 La Jolla Village Drive, Suite 140, San Diego, CA 92122 Attn: Special Assets.

Please be advised that if the Cure Amount is not received by the Noteholder within thirty (30) days from the date of this letter: (1) the Loan balance will be accelerated with the full amount remaining on the Loan becoming due and payable in full; (2) the power of sale clause in the trust deed or mortgage securing the Loan will be invoked; and (3) foreclosure proceedings will be initiated against the property securing the Loan. Accordingly, the failure to cure the Default may result in the foreclosure and sale of your property.  If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the Default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, the Noteholder shall be entitled to collect all fees and costs incurred in pursuing any of its remedies, including but not

MEMBER
FDIC

EQUAL HOUSING
LENDER

**EXHIBIT 12**
**Page 13 of 16**

limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

You may request a copy of the loan documents, including the promissory note, deed of trust or mortgage, any assignment of the deed of trust or mortgage, as applicable, and your payment history.

If you are a service member, or the dependent of a service member, you may be entitled to certain additional protections under the federal Servicemembers Civil Relief Act.

Please be advised that any acceptance by the Noteholder, or any of its respective representatives, of any amounts less than the amount due and owing on the Loan is not intended, and shall not be deemed, to constitute a waiver of any of the Noteholder's rights, remedies or recourse under the Loan documents, or at law or in equity, and application of such payments is not intended, nor shall it be deemed, to be a modification, rearrangement or extension of the Loan documents. Any such payments will be applied in such order as the Noteholder may elect in its sole and absolute discretion, without any waiver by the Noteholder of its right to pursue any of its rights and remedies under the Loan documents, or at law or in equity.

Nothing set forth herein is intended, nor shall it be deemed, to modify, limit, release, reduce or waive any of the Noteholder's rights, remedies and/or privileges under the Loan documents, or at law or in equity, all of which are specifically reserved.

**TO THE EXTENT THAT ANY OF YOUR OBLIGATIONS HAVE BEEN DISCHARGED, DISMISSED, OR ARE SUBJECT TO AN AUTOMATIC STAY OF A BANKRUPTCY ORDER UNDER THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR ANY ATTEMPT TO COLLECT ANY SUCH OBLIGATION. IF APPLICABLE, THIS NOTICE IS GIVEN PURSUANT TO 11 U.S.C. §362(b)(11).**

If you have any questions regarding this notice, please contact me directly at 877-764-9998.

Sincerely,

Erik Bowen
ebowen@axosbank.com
VP Portfolio Management

**Notice Date: 0 6 / 0 1 / 2 0 2 0**

**EXHIBIT 12**
**Page 14 of 16**



**Account No.:** ███████████████████

**Property Address: 30 North Promenade, Seaside, OR 97138**

---

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

We want you to know that assistance may be available to help you avoid foreclosure. We want to talk with you about your current loan situation to see if you qualify for one of our options, such as:

- **Loan Modification -** *Modifying the current terms of your loan to give you a more affordable and sustainable monthly home loan payment*

- **Repayment Arrangements -** *Developing a plan to repay the full amount owed over time*

- **Deed-in-Lieu -** *Signing a deed transferring title to the property over to Axos Bank to avoid foreclosure*

- **Short Sale -** *Selling the property and then Axos agrees to accept less than a full payoff of the loan from the sale of the property rather than foreclosing on it*

- **Full Reinstatement -** *Paying all past due amounts to bring your loan current*

---

**WHAT YOU NEED TO DO**

Please call us at 855-818-4115, so we can discuss in greater detail your situation and the various options available to help you. Please be prepared to provide us with your financial information (for example, income and expenses). We may also require you to provide additional documentation so we can better understand your situation. All options listed above are subject to Axos Bank approval. There is no guarantee that your request will be approved, but we will diligently work with you toward that goal.

If your loan and debt has been discharged in Bankruptcy, this letter should not be understood as an attempt to collect a debt or a demand for payment from you. You do not have to discuss or enter into a loan modification or other loss mitigation arrangement with Axos Bank. If you have previously filed for bankruptcy and your personal liability on your mortgage has been discharged, we intend to honor that discharge. However, your home remains subject to foreclosure if you are not current on the payments required by the mortgage. Axos Bank would like to discuss with you options that may help you to avoid foreclosure. If you would like to discuss these options, please contact us.

Additionally, we want to make you aware of free or low cost housing counseling made possible by the U.S. Department of Housing and Urban Development (HUD). Housing counselors can help you understand the law and your options. They can also help you organize your finances and represent you in negotiations with your lender if you need this assistance. You may find a HUD-approved housing counselor near you by calling 1-800-569-4287 or online at http://www.consumerfinance.gov/find-a-housing-counselor/. For hearing-impaired customers, HUD Counseling Agency (TDD) numbers are available at 1-800-877-8339.

This communication is from Axos Bank, the servicer of your home loan.



**EXHIBIT 12**
**Page 15 of 16**

Servicemembers Civil Relief
Act Notice Disclosure

**U.S Department of Housing
and Urban Development
Office of Housing**

OMB Approval  2502 -0584
Exp 3/31/2021

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC §§ 3901-4043) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force Marine Corps and Coast Guard).

- Reserve and  National Guard personnel who have been activated and are on Federal active duty

- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section

- 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds

- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.

- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.

- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.

- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders. Contact information for the Bank can be found on the cover sheet of this packet.

- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php

- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800- 342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form **HUD - 92070**
(6/2017)

**EXHIBIT 12
Page 16 of 16**

80th OREGON LEGISLATIVE ASSEMBLY--2020 Special Session

## Enrolled

# House Bill 4204

Sponsored by Representative KOTEK; Representatives DEXTER, FAHEY, HOLVEY, KENY-GUYER, LAWRENCE SPENCE, MCLAIN, MITCHELL, NERON, NOSSE, PILUSO, POWER, REARDON, SMITH WARNER, Senators FAGAN, HASS, WAGNER (at the request of Joint Committee on the First Special Session of 2020)

CHAPTER .................................................

AN ACT

Relating to strategies to protect Oregonians from the effects of the COVID-19 pandemic; and declaring an emergency.

**Be It Enacted by the People of the State of Oregon:**

**SECTION 1.** **(1) The Legislative Assembly finds and declares that:**

**(a) The provisions of this section might affect the terms and conditions of certain contracts into which residents of this state have entered.**

**(b) The effects of the provisions of this section are not substantial because the provisions have a limited scope and duration and are necessary to protect the public health, safety and welfare. For these reasons the provisions do not undermine a contractual bargain, interfere with a party's reasonable expectations or prevent a party from safeguarding or reinstating the party's rights.**

**(c) Even if a provision of this section has the effect of undermining a contractual bargain, interfering with a party's reasonable expectations or preventing a party from safeguarding or reinstating the party's rights, the provision is appropriate and reasonable as a means by which to implement the significant and legitimate public purpose of responding to the declaration of a state of emergency issued by the Governor on March 8, 2020.**

**(2) As used in this section:**

**(a) "Borrower" means a mortgagor of real property, a grantor, as defined in ORS 86.705, a purchaser in a land sale contract, a person that enters into a retail installment contract with, or gives a security interest to, a lender for subject property and a successor in interest to the mortgagor, grantor, purchaser or person. For the purposes of this paragraph, "successor in interest" means a person to whom a borrower has transferred an interest in subject property under any of the following circumstances:**

**(A) The transfer occurs by devise, descent or operation of law at the borrower's death;**

**(B) A relative of the borrower receives the transfer as a result of the borrower's death;**

**(C) The spouse or children of the borrower become owners of the subject property;**

**(D) The transfer results from a decree of dissolution of marriage, a legal separation agreement or an incidental separation agreement under which the spouse of the borrower becomes an owner of the subject property; or**

EXHIBIT 13
Page 1 of 4

(E) The transfer does not relate to rights to occupy the subject property, but the subject property becomes trust property in an inter vivos trust in which the borrower remains a beneficiary.

(b) "Emergency period" means a period that begins on March 8, 2020, and ends on September 30, 2020, except that the Governor may specify a later date by executive order not later than 30 days before September 30, 2020.

(c) "Financing agreement" means:

(A) A contract under which a borrower must make payments to a lender to satisfy an obligation that is secured by a mortgage, a trust deed, a land sale contract or a lien or other security interest in subject property; and

(B) A retail installment contract, as defined in ORS 83.010, for which the subject matter is personal property that is used as a residence.

(d) "Foreclosure avoidance measure" has the meaning given that term in ORS 86.707.

(e) "Forfeiture remedy" has the meaning given that term in ORS 93.905.

(f) "Lender" means a beneficiary or trustee, both as defined in ORS 86.705, a mortgagee, as defined in ORS 87.005, a seller in a land sale contract, a licensee, as defined in ORS 86A.303, a retail seller, as defined in ORS 83.010, in a retail installment contract for subject property or an agent, affiliate or employee of a beneficiary, trustee, mortgagee, seller, retail seller or licensee.

(g) "Subject property" means:

(A) Real property located in this state; and

(B) Personal property that is used as a residence in this state.

(h) "Trust deed" has the meaning given that term in ORS 86.705.

(i) "Trustee" has the meaning given that term in ORS 86.705.

(3)(a) During the emergency period, a lender may not treat as a default a borrower's failure to make a periodic installment payment or to pay any other amount that is due to the lender on or in connection with an obligation that is subject to a financing agreement if at any time during the emergency period the borrower notifies the lender that the borrower will not be able to make the periodic installment payment. In lieu of treating the failure to pay as a default, and only if the lender and borrower do not otherwise agree to modify, defer or otherwise mitigate a loan, including by agreeing to a foreclosure avoidance measure in accordance with ORS 86.726, 86.729, 86.732, 86.736, 86.741 and 86.744, the lender shall:

(A) Defer from collecting the periodic installment payment during the emergency period; and

(B) Permit the borrower to pay an amount the borrower owes to the lender as a result of a deferral under this subsection at the scheduled or anticipated date on which full performance of the obligation is due.

(b) After an escrow analysis and in accordance with the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.), a lender may adjust the amount of any escrow impound payment the borrower has an obligation to make under the financing agreement and may take into account any shortage or deficiency that results from deferring payments under this subsection.

(c) A borrower does not need to provide a notification to a lender under paragraph (a) of this subsection more than once. If the subject property is a residence with four or fewer dwelling units, the notification must attest that the borrower's failure to pay is a result of a loss of income related to the COVID-19 pandemic. If the subject property is commercial property or residential property with more than four dwelling units, the notification must include financial statements or other evidence that demonstrates a loss of income related to the COVID-19 pandemic and must disclose any funds the borrower received from the United States Small Business Administration under the Paycheck Protection Program, as implemented under the Paycheck Protection Program Flexibility Act of 2020 (P.L. 116-142) or other state or federal relief programs.

**EXHIBIT 13**
**Page 2 of 4**

(d) A lender may not, with respect to a financing agreement that is subject to paragraph (a) or (b) of this subsection:

(A) Impose or collect charges, fees, penalties, attorney fees or other amounts that, but for the provisions of this section, the lender might have imposed or collected from a borrower for failing, during the emergency period, to make a periodic installment payment or pay another amount due on or in connection with the borrower's obligation;

(B) Impose a default rate of interest that, but for the provisions of this section, the lender might have imposed or collected from a borrower for failing, during the emergency period, to make a periodic installment payment or pay another amount due on or in connection with the borrower's obligation;

(C) Treat in any manner the borrower's failure during the emergency period to make a periodic installment payment or pay another amount due on or in connection with the obligation as an ineligibility for a foreclosure avoidance measure;

(D) Require or charge for an inspection, appraisal or a broker opinion of value, not otherwise permitted in the absence of a default;

(E) Initiate cash management not already in existence before the effective date of this 2020 special session Act;

(F) Implement lockbox procedures not already in existence before the effective date of this 2020 special session Act;

(G) Take control of the operating revenue from real property secured by the financing document unless the control was established before the effective date of this 2020 special session Act; or

(H) Declare a default based on the failure of a borrower to meet financial covenants due to inadequate operating revenue resulting from the COVID-19 pandemic.

(4) Notwithstanding ORS 18.860 to 18.993, 86.752, 87.262, 87.272, 88.010 and 93.905 to 93.940, and except as provided in subsection (10) of this section, a lender may not at any time during the emergency period:

(a) Foreclose a trust deed by advertisement and sale;

(b) Bring an action or suit to foreclose a mortgage or trust deed or to enforce an obligation under a retail installment contract for subject property;

(c) Enforce a forfeiture remedy; or

(d) Bring an action or suit to foreclose a lien or other security interest on, or petition for an order of foreclosure by advertisement and sale of, subject property.

(5) Notwithstanding ORS 18.920, 18.924, 86.764 and 93.915 and except as provided in subsection (10) of this section, if a lender initiated a foreclosure with respect to subject property before the effective date of this 2020 special session Act, the period of time that must elapse between the time a lender initiated the foreclosure and the time at which a trustee's sale, forfeiture remedy or other foreclosure may occur is tolled during the emergency period. After the emergency period expires, a trustee's sale may continue as if uninterrupted if the lender complies with the provisions of ORS 86.782 (12), a lender may obtain a forfeiture remedy if the lender complies with the provisions of ORS 93.918 and, for other types of foreclosure proceedings, a foreclosure may continue if the lender complies with the requirements of applicable law.

(6) Notwithstanding ORS 18.860 to 18.993 and 88.010 and except as provided in subsection (10) of this section, during the emergency period a court may not enter a judgment of foreclosure and sale or issue a writ of execution with respect to subject property. A court shall dismiss without prejudice any action or suit commenced during the emergency period to foreclose a lien upon subject property.

(7)(a) Notwithstanding ORS 86.782 and except as provided in subsection (10) of this section, a trustee's sale may not occur during the emergency period. Any purported trustee's sale during the emergency period is void and does not transfer or foreclose any rights to subject property.

Enrolled House Bill 4204 (HB 4204-A)                                      Page 3

**EXHIBIT 13**
**Page 3 of 4**

(b) Notwithstanding ORS 18.860 to 18.993 and except as provided in subsection (10) of this section, an execution sale of subject property may not occur during the emergency period. Any purported execution sale of subject property during the emergency period is void and does not transfer or foreclose any rights to the subject property.

(8) A borrower that suffers an ascertainable loss of money or property because a lender took an action prohibited under subsection (3) of this section may bring an action in a circuit court of this state to recover the borrower's actual damages. A borrower who prevails in the action may also recover the borrower's court costs and attorney fees.

(9) Within 60 days following the effective date of this 2020 special session Act, each lender authorized to do business in this state must provide written notice by mail to all of the lender's borrowers of a borrower's rights for accommodation under this section.

(10) This section does not:

(a) Apply to judgments of foreclosure and sale, writs of execution or notices of a trustee's sale that:

(A) Were issued or given before the emergency period began;

(B) Occur in connection with a tax foreclosure proceeding under ORS 312.010 to 312.120 or 312.130 to 312.240; or

(C) Occur after a person has recorded a notice of intent to abandon real property under ORS 93.770 (2)(a) or a judicial order that authorizes an abandonment of real property under ORS 93.770 (2)(b); or

(b) Relieve a borrower of the duty to repay the full amount of any obligation that is subject to a waiver, deferral, modification or forbearance under the provisions of this section.

<u>SECTION 2.</u> Section 1 of this 2020 special session Act is repealed 90 days after the expiration of the emergency period as defined in section 1 of this 2020 special session Act.

<u>SECTION 3.</u> This 2020 special session Act being necessary for the immediate preservation of the public peace, health and safety, an emergency is declared to exist, and this 2020 special session Act takes effect on its passage.

————————

**Passed by House June 26, 2020**

..............................................................
Timothy G. Sekerak, Chief Clerk of House


..............................................................
Tina Kotek, Speaker of House

**Passed by Senate June 26, 2020**


..............................................................
Peter Courtney, President of Senate

**Received by Governor:**

.........................M.,.............................................., 2020

**Approved:**

.........................M.,.............................................., 2020


..............................................................
Kate Brown, Governor

**Filed in Office of Secretary of State:**

.........................M.,.............................................., 2020


..............................................................
Bev Clarno, Secretary of State

Enrolled House Bill 4204 (HB 4204-A)                                        Page 4

**EXHIBIT 13**
**Page 4 of 4**